FILED

2024 Aug-21  PM 06:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER ROBINSON** | ) | **CIVIL ACTION NO.:** |
| **Plaintiff,** | ) | |
| **v.** | ) | **2:23-cv-01381-AMM** |
| **SPRING OAKS CAPITAL, LLC, et. al.** | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |
| | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STRIKE CONFIDENTIAL DESIGNATION, AND ALTERNATIVELY, FOR LEAVE TO FILE UNDER SEAL (DOC. 31)

COMES NOW the Plaintiff, Christopher Robinson ("Robinson" or "Plaintiff"), and hereby responds to Defendant Spring Oaks Capital, LLC's ("Spring Oaks" or "Defendant") Motion To Strike Confidential Designation, And Alternatively, For Leave To File Under Seal (Doc. 31) and says as follows:

### Introduction

After being ordered to produce the fee agreements between Plaintiff and his lawyers, Christopher Robinson did so, designating the attorney fee agreement as Confidential – Attorneys Eyes Only pursuant to protective order. Spring Oaks now seeks an order from this court compelling plaintiff to remove the confidential designation of the fee agreements reportedly "[b]ecause Defendant intends to cite the fee agreement in its motion for summary judgment." Alternatively, Defendant

seeks leave to file the fee agreements in support of its motion for summary judgment under seal. (Doc. 31 at p. 1).

Defendant can accomplish its goal either by filing the documents under seal, as it acknowledges, or by less onerous means by filing the proposed redacted copy or by taking advantage of the proposed stipulation of fact Plaintiff offered. Each of these alternatives allows Defendant to support its summary judgment with the information and documents it seeks to get before this court.

### **Background and Procedural History**

1.      The parties started down this road when Defendant sought production of Plaintiff's fee agreements with his counsel in discovery. (Docs. 19 and 26).

2.      Defendant sought to compel "the Plaintiff to produce contracts or agreements with his counsel as it pertains to the terms of representation in this matter, and for any work, consultation, or representation regarding the drafting, preparation or issuance of the September 27, 2022, written communication ("Communication") that forms the sole basis for Plaintiff's entire lawsuit herein." (Doc. 26 p. 1)

3.      The purported reason at that time put for by the Defendant was based on Defendant's suspicion that Plaintiff's counsel was acting as a credit repair organization. It argued to this court that,

> Defendant is entitled to know whether the dispute Plaintiff lodged in this case was submitted by, prepared on behalf of the consumer by, or submitted on a form supplied to the consumer by a credit repair

organization. A credit repair organization is specifically defined under Title IV of the Consumer Credit Protection Act, and will be more fully addressed in Defendant's Motion to Compel, if allowed. For purposes of this pleading, the Fair Credit Reporting Act does not require the Defendant even to investigate disputes received by a consumer if the dispute itself was prepared by an entity that can be defined as a credit repair organization. The purpose of seeking the contracts between Plaintiff and his counsel is to determine whether Plaintiff's counsel may have been acting in this regard in facilitating Plaintiff's form dispute.

(Doc. 19 pp. 1-2).[1]

4.     Granting Defendant's motion to compel, this court held "[t]he Agreements that Mr. Robinson referenced in his response are responsive to the discovery request made by Spring Oaks, relevant to his claim against Spring Oaks, and are not protected by attorney-client privilege or the work product doctrine." (Doc. 30 p. 2).

5.     Plaintiff produced the contracts marking them as "Confidential – Attorneys Eyes Only."

6.     After receiving Plaintiff's fee agreements with his counsel and finding that the contracts did not support Defendant's belief that Plaintiff's counsel was acting as a credit repair organization, Defendant now seeks to argue that Plaintiff's fee agreements evidence that Plaintiff has no damages and no standing. (Ex. "1")

7.     Additionally, to justify a purported public interest in the confidential documents, Defendant has now shifted its justification to assert that Plaintiff's

---

[1] Plaintiff addressed this argument, which was rejected by the Seventh Circuit in an analogous fact pattern when it decided *Evans v. Portfolio Recovery Assocs.*, LLC 889 F.3d 337 (7th Cir. 2018). Thus, Plaintiff will not belabor the point here.

counsel through its actions is a danger to the public, necessitating publication of the fee agreements between Plaintiff and his counsel. (Doc. 31 pp.8-9).

8.    Counsel for the parties met and conferred on multiple occasions on July 23, 2023, and multiple times on July 31, 2023, as stated by defense counsel in its Motion to Strike. (Doc. 31 pp. 2-3).

9.    During these meetings and in follow up emails Defense counsel asserted that Plaintiff's position and lawsuit was meritless and threatened to seek fees against Plaintiff's counsel. (Ex. 1, 2).

10.    However, it appeared that the overriding concern for removal of the confidential designation was the time and expense of having to file certain documents under seal. (Ex. 2, 3).

11.    Defendant represents to this court that the final meet and confer on July 31, 2024, resulted only in Plaintiff's counsel refusing to remove the confidential designation. (Doc. 31 p. 3).

12.    However, Defendant's summary of the facts ignores the reality of the final meet and confer, as well as Plaintiff's additional efforts to compromise. (Ex. 3).

13.    In fact, Plaintiff proposed multiple alternatives during the meet and confer and by follow up email in an effort of compromise based on what Plaintiff understood were Defendant's basis for removal of the Confidential designation – to avoid the

time and expense of filing under seal and to provide the court with what it believed

was evidence undercutting plaintiff's damages claim. These were:

     a. File the fee agreements under seal;
     b. Plaintiff would agree to a stipulation of fact summarizing the redacted language such that Defendant could present to the court what it believes is evidence undercutting Plaintiff's damages and make the corresponding arguments;
     c. File redacted copies of the fee agreements and if necessary, file the unredacted copies under seal for the benefit of the court.

(Ex. 3).

14.    Defense counsel rejected the compromise proposals and did not respond to

Plaintiff's follow up email. (Ex. 3)

## **Argument**

**A. Plaintiff's Proposed Stipulation Of Fact Would Have Allowed Defendant To Present Its Evidence Without Having To File Under Seal And Without Removing The Confidential Designation Of The Fee Agreements.**

Throughout the discussions regarding the confidentiality of Plaintiff's fee

agreement with his counsel, Plaintiff has demonstrated a willingness to come to a

reasonable compromise to address Defendant's concerns regarding the fee

agreements. After Defendant initially sought to compel the production of these

agreements, Plaintiff produced the documents marked as "Confidential – Attorneys

Eyes Only" to protect the sensitive information contained within them (Background

¶ 5). This designation was appropriate given the nature of the information, which

includes proprietary fee structures and case strategy crucial to Plaintiff's legal

representation. (Background ¶ 8).

Defendant, however, has pursued an all or nothing approach, requiring Plaintiff to either remove the "improper" Confidential designation or only agree to the redaction of Plaintiff's personal information. Given the private, confidential and sensitive nature of the fee agreements, such a designation was entirely appropriate certainly during the discovery phase. Courts have repeatedly noted that the public interest and "right of access is not absolute, however. The right of access does not apply to discovery and, where it does apply, may be overcome by a showing of good cause." *Romero v. Drummond*, 480 F.3d 1234, 1245 (11th Cir. 2007) *citing United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir.1986).

In response to Defendant's concerns, Plaintiff offered a reasonable and legally sound compromise in the form of a factual stipulation. The proposed stipulation was designed to summarize the redacted portions of the fee agreements, thereby allowing Defendant to present its argument regarding the alleged lack of damages without requiring the full, public disclosure of sensitive information (Background ¶ 15). Defendant rejected the stipulation and insisted on pursuing full disclosure.

The proposed stipulation is a practical solution that balances the interests of both parties. It allows Defendant to advance its legal arguments without compromising the confidentiality of Plaintiff's attorney-client relationship, case

strategy and the proprietary information contained within the fee agreements.[2] The Fifth Circuit's decision in *Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.* supports this approach, emphasizing that once confidential information is disclosed, "it cannot be made secret again." (913 F.3d 443, 449).

Furthermore, the court's role in managing confidentiality is to ensure that sensitive information is protected while still facilitating the judicial process. As the Fifth Circuit noted in *United States ex rel. Frey v. Health Mgmt. Sys.*, redacting information is often preferable to full disclosure because it represents the "least restrictive means of safeguarding sensitive information" (2024 WL 1528682, at *4). However, redaction in this case to remove Plaintiff's case strategy and proprietary fee structure information was not acceptable to Spring Oaks. Plaintiff's proposed stipulation aligns with the principles above in *Frey* by offering a narrowly tailored solution that protects sensitive information while still allowing the relevant facts to be presented to the court.

Defendant's refusal to engage with the proposed compromise fails to recognize the potential harm that could result from unsealing the fee agreements.

---

[2] Defendant initially sought the agreements for the sole purpose of seeking evidence that Plaintiff's counsel was a credit repair organization and Plaintiff produced the unredacted agreements confidentially based on that representation. However, courts have routinely held that communications, including within the fee agreement, are confidential and privileged where they may reveal "the client's motivation for creation of the relationship or possible litigation strategy." Matter of Wit. Before Sp. Mar. 1980 Gr. Jury, 729 F.2d 489 (7th Cir. 1984) *citing* "*n re Grand Jury Witness (Salas),* 695 F.2d 359, 362 (9th Cir. 1982)"

This harm includes not only the exposure of proprietary fee structures but also the undermining of Plaintiff's legal strategy, which could provide Defendants in other cases insight into Plaintiff's legal strategy.

Given these considerations, the proposed stipulation should have been accepted as a fair and effective means of resolving the issue.

## B. Plaintiff's Fee Agreement With His Counsel Is Covered By The Protective Order.

Spring Oaks argues in its motion to strike that the protective order in this case is limited in scope to documents produced by either Plaintiff or Defendant, and therefore does not extend to Plaintiff's fee agreement with his counsel. This argument, however, misinterprets both the intent and the language of the protective order, as well as the broader principles governing confidentiality in litigation.

The protective order was established to protect sensitive information from unnecessary disclosure during the litigation process. The order's purpose is to prevent the disclosure of any document that contains proprietary, sensitive, or confidential information that could cause harm to the producing party or any other party involved in the litigation. This principle is not limited to documents produced by the parties but extends to any documents that are relevant to the case and warrant protection. Excluding the fee agreement from the protective order's coverage would contradict this purpose.

Furthermore, the language of the protective order itself does not limit its application to documents produced solely by the parties. The protective order explicitly allows for the designation of documents as "Confidential – Attorneys Eyes Only" when they contain sensitive or proprietary information, which would include documents produced by third parties, as well as documents such as the fee agreement at issue here. Spring Oaks' argument fails to recognize that protective orders often extend beyond the immediate parties to protect any relevant document that, if disclosed, could cause undue harm or prejudice. Plaintiff's fee agreement with his counsel contains detailed information about the fee structure and strategic legal which is precisely the type of information the protective order is designed to safeguard.

The court in *United States ex rel. Frey v. Health Mgmt. Sys.* also recognized the necessity of protecting commercially sensitive information, stating that "a party's interest in sealing information that competitors would use to its disadvantage can overcome the public's right to access judicial records." *United States ex rel. Frey v. Health Mgmt. Sys.,* 3:19-CV-0920-B, 2024 WL 1528682, at *5 (N.D. Tex. Mar. 27, 2024). Here, Plaintiff's fee agreement contains such commercially sensitive information, and its disclosure could provide competitors with an unfair advantage, thereby justifying its designation as "Confidential – Attorneys Eyes Only."

Given these considerations, the fee agreement between Plaintiff and his

counsel is clearly within the scope of the protective order, and its confidentiality designation should be maintained.

## C. Plaintiff Has Shown Good Cause For His Fee Agreement With His Counsel To Remain Confidential.

In determining whether good cause exists to maintain the confidentiality designation, the court must apply the balancing test articulated in *Romero v. Drummond Co.*, which requires weighing the public's right of access to judicial records against the party's interest in keeping the information confidential. *Romero v. Drummond Co.*, 480 F.3d 1234 (11th Cir. 2007) The court in *Romero* recognized that "[t]he common-law right of access to judicial proceedings, an essential component of our system of justice, is instrumental in securing the integrity of the process." However, this right is not absolute and may be overridden by a showing of good cause, which requires a careful balance of interests. *Romero,* 480 F.3d 1234, 1245. "[A] showing of good cause, which requires 'balanc[ing] the asserted right of access against the other party's interest in keeping the information confidential.'" *Romero v. Drummond Co*., 480 F.3d 1234, 1246 (11th Cir. 2007) (quoting *Chicago Tribune*, 263 F.3d at 1309). "'[T]he nature and character of the information in question'" determines "'[w]hether good cause exists." *Id*. *Lombard v. Baker*, 2:22-cv-328-ECM-JTA (WO), at *15 (M.D. Ala. Mar. 6, 2023).

*Lombard* recently discussed some factors court should consider, such as,

"whether the records are sought for such illegitimate purposes as to promote public scandal or gain unfair commercial advantage, whether access is likely to promote public understanding of historically significant events, and whether the press has already been permitted substantial access to the contents of the records." *Newman*, 696 F.2d at 803 (citing *Warner Commc'ns*, 435 U.S. at 598-603 & n. 11); *see also Belo*, 654 F.2d at 434 (noting that the Supreme Court "recogniz[es] that a number of factors may militate against public access"). Other factors may be relevant as well. *See*, *e.g.*, *Romero*, 480 F.3d at 1246 (holding that, in conducting the good cause balancing test, "courts consider, among other factors, whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents").

*Lombard* at *15-16.

## 1. **The Privacy and Proprietary Interests Involved**:

The fee agreements in this case contain sensitive and proprietary information regarding the fee structure and strategic legal decisions made by Plaintiff's counsel. Disclosure of this information would not only harm Plaintiff's counsel by revealing competitive details to other Defendants, but it could also allow plaintiff's counsel's competitors the ability to undercut counsel to put plaintiff's counsel at a competitive disadvantage. Additionally, it could also undermine the attorney-client relationship by exposing strategic legal decisions to the opposing party and the public. In this

case, the need to protect sensitive information outweighs any minimal public interest in disclosure.

2. **The Public Interest and Potential Harm of Disclosure**:

The public interest in accessing the fee agreements is minimal, especially when balanced against the significant potential harm that would result from their disclosure. Here, the fee agreements do not involve issues of public concern, and their disclosure would not contribute to public understanding of the judicial process. Instead, disclosure would likely serve to harm Plaintiff's counsel by revealing sensitive and proprietary information that could be exploited by competitors as well as case strategy that could be exploited by other non-party debt collectors and their counsel.

Defendant argues in Section C of its motion to strike that public interest justifies the disclosure of Plaintiff's fee agreement with his attorneys due to the existence of five cases against this Defendant in the Northern District of Alabama. (Doc. 31 p. 8-9). It is difficult to imagine how these cases impact the administration of justice or the efficient operation of the courts. The mere fact that multiple cases have been filed against the same Defendant does not create a public interest that overrides the need for confidentiality. The administration of justice and the efficient operation of the courts are not affected by the number of cases against this single

defendant, especially when those cases are handled within the regular course of litigation.

Moreover, Defendant contends that access to the fee agreements will provide insight into the funding of Plaintiff's litigation efforts, implying that this has a bearing on the court's operations. This argument is both speculative and unfounded. Access to the agreements would not inform the Defendant or the public about any potential impact on the court, as the source of funding for Plaintiff's litigation is irrelevant to the issues at hand.

Furthermore, Defendant's unsupported funding argument opens the door to irrelevant and invasive inquiries. If the public disclosure of plaintiff's counsel's fee agreements is necessary to understand the "funding" of this and other litigation, such reasoning taken to its logical conclusion can lead to an invasive inquiry into all of Plaintiff's sources of funding. If this argument were accepted, what about demands for disclosure of counsel's other cases, such as personal injury settlements, Fair Credit Reporting Act (FCRA) lawsuits, Plaintiff's counsel's private banking information, and any loans or financial arrangements supporting counsel's litigation practice.

Furthermore, there is no evidence in the fee agreements produced that Plaintiff's counsel is acting as a credit repair organization. The Defendant's claim that Plaintiff's counsel's business practices resemble those of companies engaged in

credit repair services is baseless and unsupported by the facts. The agreements simply outline the terms of representation between Plaintiff and his counsel, with no indication of credit repair activities.

Finally, Defendant also suggests that Plaintiff's counsel's business practices, akin to those of credit repair organizations, have worked a financial hardship upon consumers. This argument is speculative and lacks any evidentiary support. There is no evidence that Plaintiff's counsel's lawsuits against Spring Oaks Capital, LLC for violations of the FDCPA have caused any financial hardship to consumers. On the contrary, these lawsuits aim to protect consumers by holding debt collectors accountable for unlawful practices. The assertion that these lawsuits have harmed consumers is an attempt to distract from the Defendant's own conduct and does not justify the public disclosure of confidential fee agreements.

3. **Availability of Less Intrusive Means**:

The court in *Romero* noted the importance of considering whether there are less intrusive means available to achieve the same ends. In this case, Plaintiff has already proposed several less intrusive alternatives, including redacting sensitive portions of the fee agreements or filing them under seal, as well as the proposed stipulation of fact. (Background ¶¶ 15-16). These alternatives would allow Defendant to use the necessary information in its motion for summary judgment without compromising the confidentiality of the fee agreements.

4. **The Risk of Improper Use of Information**:

One of the key concerns in this case is the potential for Defendant to use the fee agreements for improper purposes. As discussed in *Lombard*, courts must be vigilant against the risk that confidential information might be used for "illegitimate purposes" such as "promot[ing] public scandal or gain[ing] unfair commercial advantage." *Lombard*, at *15. In this case, there is a significant risk that Defendant intends to publicize the fee agreements not for legitimate purposes related to the litigation, but rather to use them as a tool to inform other debt collectors and collection counsel as to Plaintiff's counsel's litigation strategy. Such use would be a violation of the principles outlined in *Romero* and *Lombard*, which emphasizes that judicial records should not be used for improper purposes.

## Conclusion

Given these factors, the balancing test under *Romero* and *Lombard* strongly favors maintaining the confidentiality designation of the fee agreements. The minimal public interest in these documents does not outweigh the significant potential harm that would result from their disclosure. Moreover, the availability of less intrusive means, such as redaction or a stipulation of fact, provides a practical solution that protects both the confidentiality of the sensitive information and Defendant's need to use the documents in its motion.

Respectfully Submitted,

*/s/ M. Stan Herring*
**John G. Watts (WAT056)**
**M. Stan Herring (HER037)**
**W. James Sears**
Watts & Herring, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 879-2447
(888) 522-7167 *facsimile*
john@wattsherring.com
stan@wattsherring.com

**Attorneys for Plaintiff**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **August 21, 2024,** a copy of the foregoing has been served on the following counsel for by using the CM/ECF system, U.S. Mail, postage prepaid and properly addressed and/or email to the email addresses below:

**John K Rossman**
ROSSMAN ATTORNEY GROUP PLLC
4628 Bruce Avenue
Edna, MN 55424
952-201-1507
Email: john.rossman@rossmanattorneygroup.com

**Neal D Moore , III**
CHRISTIAN AND SMALL LLP
505 20th Street North
Suite 1800
Birmingham, AL 35203
205-795-6588
Fax: 205-328-7234
Email: ndmoore@csattorneys.com


*Counsel for the defendant*
*Spring Oaks Capital, LLC*



                                        */s/ M. Stan Herring*
                                        OF COUNSEL

17