Christopher Robinson vs. Spring Oaks Capital    Deposition of Christopher B. Robinson

Case 2:23-cv-01381-AMM   Document 44-2   Filed 10/10/24   Page 1 of 165

FILED

2024 Oct-10  PM 03:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

1

1          IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ALABAMA
2                    SOUTHERN DIVISION
    ----------------------------------------------------
3

    CHRISTOPHER ROBINSON,
4
              Plaintiff,
5
         vs.          Civil Action No.: 2:23-cv-01381-AMM
6
    SPRING OAKS CAPITAL, LLC, et al.,
7
              Defendants.
8
    ----------------------------------------------------
9

10

11

12

13     VIDEOCONFERENCE DEPOSITION OF CHRISTOPHER B. ROBINSON

14               Taken on April 23, 2024

15

16

17

18

19

20

21               Reported by Tracy Jo Wold, RPR
22               BOGUCKI COURT REPORTING
                 616 79th Avenue North
23               Brooklyn Park, MN 55444
                  Phone:  (763) 242-1277
24              Laura@BoguckiReporting.com

25

2

1          The Videoconference Deposition of

2     CHRISTOPHER B. ROBINSON was taken pursuant to Notice

3     of Taking Deposition and was taken before Tracy Jo

4     Wold, a notary public in and for the County of

5     Scott, State of Minnesota, on April 23, 2024, taken

6     via Zoom, commencing at approximately 12:00 p.m.

7

8          A P P E A R A N C E S :

9          Patricia S. Lockhart, WATTS & HERRING,

10     LLC, The Kress Building, 301 19th Street North,

11     Birmingham, Alabama 35203, appeared for and on

12     behalf of the Plaintiff.

13          John K. Rossman, ROSSMAN ATTORNEY GROUP,

14     PLLC, P.O. Box 24140, Edina, Minnesota 55424,

15     appeared for and on behalf of the Defendants.

16

17

18

19

20

21

22

23

24

25

3

```
 1                        I N D E X

 2                                             PAGE:

 3

 4        THE WITNESS:

 5        CHRISTOPHER B. ROBINSON

 6

 7        EXAMINATION BY:

 8        MR. ROSSMAN                              5

 9        MS. LOCKHART

10

11        EXHIBITS MARKED:

12        A                                     5
              Spring Oaks Capital letter dated 4/5/22
13
          B                                     5
14            Letter from Mr. Robinson to Spring Oaks dated
              9/27/22
15
          C                                     5
16            Letter from Mr. Robinson to Spring Oaks dated
              9/27/22
17
          D                                     5
18            Letter from Spring Oaks to Mr. Robinson dated
              10/31/22
19
          E                                     5
20            Notice of Electronic Filing

21        F                                     5
              TransUnion credit report
22
          G                                     5
23            Plaintiff's Responses to Spring Oaks Capital,
              LLC's First Interrogatories, Requests for
24            Production of Documents, Requests for Admission
              to Plaintiff
25
```

Christopher Robinson vs. Spring Oaks Capital    Deposition of Christopher B. Robinson

Case 2:23-cv-01381-AMM   Document 44-2   Filed 10/10/24   Page 4 of 165

4

1       OBJECTIONS:

2       MS. LOCKHART:  40:2, 40:16

3       MR. ROSSMAN:  74:24

4

5       REQUESTED INFORMATION:

6       NONE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Christopher Robinson vs. Spring Oaks Capital   Deposition of Christopher B. Robinson

Case 2:23-cv-01381-AMM   Document 44-2   Filed 10/10/24   Page 5 of 165

5

1    WHEREUPON, the following proceedings were
2 duly had:
3            (Deposition Exhibits A through G
4 pre-marked for identification.)
5            **CHRISTOPHER B. ROBINSON,**
6 a witness in the above-entitled action, after having
7 been first duly sworn, deposes and says as follows:
8                    EXAMINATION
9 BY MR. ROSSMAN:
10 Q.  Good afternoon, Mr. Robinson.  My name is John
11      Rossman and I am an attorney.  I represent Spring
12      Oaks Capital regarding a lawsuit that you had
13      brought against it.  And today we're taking your
14      deposition.
15           A couple of ground rules regarding a
16      deposition.  Obviously, we're by video here.  We're
17      going to be looking at some documents.  If at any
18      time you can't hear me or you're not being heard,
19      just raise your hand, let us know.  We'll definitely
20      stop the deposition because we have to record your
21      words.  So if you can't hear my words, you can't
22      respond to them, so just definitely let me know.
23           Likewise, if you need a break, if you need to
24      take, you know, time out for whatever, just let us
25      know, we'll take a break.  I'm not expecting this is

6

1      going to last longer than 90 minutes.  My goal is to
2      take less than 90 minutes if at all possible.  But
3      certainly if you need to take a break, let us know
4      and we'll take a break for you.
5           So with that out of the way, the only
6      recommendation I have is, if you do answer a
7      question, if you can answer with a yes or no or
8      something verbal rather than a nod of the head.  The
9      court reporter is recording words but not
10      necessarily recording movements.
11           So, if you could, please state for the
12      record your full name.
13 A.  Christopher B. Robinson.
14 Q.  And what does the B stand for?
15 A.  Brandon.
16 Q.  And what is your date of birth, please?
17 A.  ▓▓▓▓▓▓, 1982.
18 Q.  And where did you go to -- I'm sorry.  Where do you
19      currently reside?
20 A.  Falkville, Alabama.
21 Q.  And where are you currently employed?
22 A.  It's I-L -- it's a temporary service called Spherion
23      in Huntsville.
24 Q.  And what do you do for Spherion?
25 A.  I work at a manufacturing place in Hartselle.

7

1 Q.  Got it.  Is that full time?
2 A.  **Yes.**
3 Q.  And how long have you worked for Spherion?
4 A.  **Just a few months.**
5 Q.  And where did you work prior to Spherion?
6 A.  **Let's see.  I worked at GXO, Capital Materials, and**
7      **before then I drove an 18-wheeler.**
8 Q.  Got it.  So this particular lawsuit involves some
9      credit card charges from 2021.  Do you recall what
10      your employment was in 2021?  I think we'll start
11      specifically July 2021 through I believe --
12 A.  **Driving a dump truck.**
13 Q.  You were driving truck then?
14 A.  **A dump truck, yes.**
15 Q.  And who was your employer then?
16 A.  **Miles Trucking.**
17 Q.  And then were you the owner of a company called
18      Robinson Trucking, LLC?
19 A.  **I wanted to start my own company, but I didn't get**
20      **no longer do it.  That was what it was going to be**
21      **called.**
22 Q.  Are you related to a person by the name of Carl
23      Robinson?
24 A.  **I don't recall.**
25 Q.  Okay.  So there is a company in Alabama called

8

1      Robinson Trucking, LLC.  That is not your company?
2 A.  **No, that's not.**
3 Q.  Okay.
4 A.  **If it's Carl Robinson, I don't know who that is.**
5 Q.  Okay.
6 A.  **But I wanted to start me a dump truck company under**
7      **that name.  I had my own DOT numbers, but I didn't**
8      **have the money up front to get it started.**
9 Q.  Got it.  So when you say DOT numbers, what is
10      involved in obtaining those DOT numbers?
11 A.  **It's just your outfit number like how they can find**
12      **you on the DOT.**
13           (Reporter requested clarification.)
14 A.  **Oh, the DOT numbers, they affiliated with a company**
15      **name where they can find you when you go across the**
16      **scales.  They can pull up everything like your --**
17      **how many trucks you got and all that stuff.**
18 Q.  And at the time you had two trucks?
19 A.  **No, I didn't have two trucks because I didn't have**
20      **the money up -- you know, the capital to get it**
21      **started.**
22 Q.  So you had the one truck at that time?
23 A.  **No.  Didn't have none.**
24 Q.  Didn't have any trucks?
25           (Reporter requested clarification.)

Defendant's Exhibit B - Robinson Dep.  5 of 165

Christopher Robinson vs. Spring Oaks Capital        Deposition of Christopher B. Robinson

Case 2:23-cv-01381-AMM   Document 44-2   Filed 10/10/24   Page 6 of 165

9

1  Q.  Could you say it again, please.
2  A.  **I said I was driving for Miles Trucking in Madison,**
3      **Alabama.  But at the time I wanted to buy a truck**
4      **for him but I didn't have the capital to do it.**
5  Q.  As far as when you were driving the dump truck, were
6      you -- did you typically report -- did you typically
7      write up on your taxes, rather, meals and expenses
8      that you had incurred in the course of driving a
9      truck?
10 A.  **No.  Only when I drove for -- an 18-wheeler across**
11     **country, I did.**
12 Q.  And when was that?
13 A.  **From 2016 -- or 2015 until 2019, December.**
14 Q.  Got it.
15 A.  **They gave me an allowance of 25, 50 dollars a day,**
16     **something like that.**
17 Q.  Got it.
18 A.  **Per diem.**
19 Q.  Tell me, where did you go to school?
20 A.  **Hartselle, Alabama.  Hartselle High School.**
21 Q.  And what's the highest grade level that you
22     completed?
23 A.  **I graduated high school.**
24 Q.  Thank you.  I want to ask a little bit about -- you
25     know, let's look at some of the documents.  So I've

10

1      pulled together the documents here.  I'm going to
2      share screen with those documents if I can get this
3      to work.
4          MS. LOCKHART:  I always have the worst
5      time with screen share as well.
6          MR. ROSSMAN:  Yeah, I'm not seeing a great
7      way to share the screen because I didn't set the
8      meeting and so I don't have a share screen option
9      here.
10         (Discussion held off the record.)
11 BY MR. ROSSMAN, CONTINUING:
12 Q.  Can you see, Mr. Robinson, what now says Exhibit A,
13     Deposition of Christopher Robinson on the screen?
14 A.  **Yes.**
15 Q.  I am going to scroll to -- I'm going to scroll to
16     what we have marked as Robinson Deposition Exhibit
17     Number 1.  And it's also Bates labeled number 9 and
18     10.  And I'm going to ask some questions about that.
19         So, Mr. Robinson, I'm showing you what's been
20     marked as Deposition Exhibit Number 1.  Do you
21     recognize, based on what you can see on the screen,
22     whether you've seen this document before?
23 A.  **I've never seen that document before.**
24 Q.  Okay.  At the top you can see it's addressed to
25     Christopher B. Robinson.  Do you see that there?

11

1  A.  **Yes.**
2  Q.  And then do you see what the address is there, 20
3      Burney Mountain Road in Falkville, Alabama.  Is that
4      your address?
5  A.  **Yes.**
6  Q.  And were you residing at that address on April 5th,
7      2022?
8  A.  **Yeah.**
9  Q.  How long have you resided at that address?
10 A.  **How long have I lived there so far?  I believe it's**
11     **been since September something of 2019, '18.**
12 Q.  Got it.
13 A.  **I think for almost, let's see, four years.**
14 Q.  Got it.  And so this -- and I'm just going to scroll
15     down just a little bit on this letter.  First of
16     all, this letter says Spring Oaks Capital, LLC is a
17     debt collector.  Do you see that here?
18 A.  **Yeah.  Yes, sir.**
19 Q.  So, based on seeing that portion of this letter,
20     does that refresh your recollection as to whether
21     you received this letter, whether you've seen this
22     letter previously?
23 A.  **I haven't seen this letter previously at all.**
24 Q.  Got it.  Right underneath that, it says, "Our
25     information shows," and it says, "You had an Indigo

12

1      Mastercard account originated with Celtic Bank with
2      account number" -- and I'll just read the last four
3      digits of the account number -- 3527.
4          Is that a true statement that you had an Indigo
5      Mastercard account with Celtic Bank ending with the
6      number 3527?
7  A.  **No.  Not that one, no, sir.**
8  Q.  Did you have some other account with Celtic Bank?
9  A.  **No.  Only credit cards I've had were the Discover**
10     **and Capital One.  Those are the only two I ever had.**
11 Q.  So you never had an account with Indigo Mastercard?
12 A.  **No.  No, sir.**
13 Q.  Got it.  I'm going to move ahead to -- just going to
14     scroll ahead to the next exhibit, which is Exhibit
15     B.  I'm sorry, I'm going to go to Exhibit C.  Let's
16     start with that one.
17         I now have on the screen what's been marked as
18     Exhibit C.
19         MR. ROSSMAN:  I'll give you the Bates
20     numbers and the other numbers right here, Patricia.
21     So this is Robinson Deposition Exhibit 6, 7, and 8.
22 BY MR. ROSSMAN, CONTINUING:
23 Q.  Mr. Robinson, I'm showing you what's been marked as
24     Robinson Deposition Exhibit 8.  Do you recognize
25     this document, just this page of this document?

Christopher Robinson vs. Spring Oaks Capital     Deposition of Christopher B. Robinson

Case 2:23-cv-01381-AMM   Document 44-2   Filed 10/10/24   Page 7 of 165

---

**13**

1 A. Not that I know of, no, sir.
2 Q. Okay. But do you recognize your address on the
3    upper left-hand corner?
4 A. Yes.
5 Q. And on the right-hand portion, do you see where it
6    says, "First-class September 27th, 2022," and then
7    below that it says, "Mailed from ZIP"?
8 A. Yes, I see that.
9 Q. 34747. Is that your ZIP code?
10 A. That 34747?
11 Q. Yeah.
12 A. No.
13 Q. Do you know if that's -- to the best of your
14    knowledge, do you know what ZIP code -- what area
15    that ZIP code is for, if you know?
16 A. Not that I know of.
17 Q. Thank you.
18    I'm just going to scroll ahead to the next page
19    here and I'm going to show you what's been marked as
20    Robinson Deposition Exhibit 7. I'm going to shrink
21    down the font so you can see the entire page
22    perhaps. Tell me if it's too small for you to read.
23    But I believe you should see on your screen a letter
24    dated September 27, 2022. Do you see that document
25    there?

**14**

1 A. Yes, I do.
2 Q. Do you recognize that document?
3 A. Yes, sir.
4 Q. Could you please state what that document is.
5 A. That document is a letter sent from my lawyers to
6    Spring Oaks.
7 Q. Did you write this letter?
8 A. No, sir, I didn't --
9 Q. Who wrote it?
10 A. -- but it's my letter.
11 Q. I'm sorry I interrupted you. Say that again?
12 A. I say my lawyers printed it out and I had to approve
13    it. It was sent to y'all.
14 Q. Got it. Do you recall when you retained those
15    lawyers?
16 A. No, sir, I don't remember how long it's been.
17 Q. And what -- what lawyer -- I'm not asking you
18    anything your lawyer said to you, but do you recall
19    what lawyer drafted this letter?
20 A. It's in my -- it's in my words but done
21    professionally. So I had Mr. Watts, attorney, his
22    people do it for me.
23 Q. Got it. Do you recall how you came to meet with
24    your attorneys?
25 A. Yes, sir.

**15**

1 Q. How was that?
2 A. How was that?
3 Q. Yeah.
4 A. Well, it was with Discovery.
5 Q. Got it. So I guess I don't understand. Let me ask
6    the question this way. How did you come to meet
7    your attorneys for the first time?
8 A. First time. Whenever Discovery Card was -- what I
9    owed them money.
10 Q. Got it.
11 A. Paid them up.
12 Q. Do you recall when that was?
13 A. No, sir. I don't remember the year or nothing. It
14    wasn't that long ago.
15 Q. Got it. And so did you pay any money to your
16    attorney to write this letter?
17 A. No, sir.
18 Q. Got it. And then I want to go through the wording
19    on this letter. It says, "I'm disputing this debt
20    and all other debts you claim that I have." Do you
21    see that there?
22 A. Yes, sir.
23 Q. What does that mean?
24 A. What does that mean, all the debts that you claim
25    that I have?

**16**

1 Q. Mm-hmm.
2 A. It means that I do not owe a debt that y'all say I
3    do, that I have, basically.
4 Q. Got it. And then it goes on to say, "You can find
5    all the debts you claim to have on me -- I dispute
6    them all." What do you mean by that?
7 A. By I dispute them all? At the same time this here
8    comes up, Celtic Bank stuff came up. There was a
9    breach of security in two different places. My
10    information was stolen.
11 Q. Tell me about that breach of security in two
12    different places, please.
13 A. T-Mobile and Automation Temporary Service --
14    Personnel Service in Decatur, Alabama. It ain't
15    been that long.
16 Q. Got it. So those were two instances where your
17    identity was compromised?
18 A. Yes, sir.
19 Q. Got it. Did you receive notification from those
20    companies saying that your identity was compromised?
21 A. Yes, sir.
22 Q. Got it. And what did you do in response to
23    receiving -- you said the first -- who did you
24    receive the first identity notification from?
25 A. Automation Personnel Service, Decatur, Alabama.

Christopher Robinson vs. Spring Oaks Capital    Deposition of Christopher B. Robinson

Case 2:23-cv-01381-AMM   Document 44-2   Filed 10/10/24   Page 8 of 165

17

1  Q.  And what did you do when you received that notice
2      from Automation Service in Decatur, Alabama?
3  A.  I followed the prompts on the letter to do what was
4      to be done because mine was -- all my information
5      was stolen, Social Security, date of birth, address,
6      my picture ID, my Social Security card, and all that
7      stuff they took too.  So all I did was -- go ahead.
8  Q.  Just so I'm clear, was this -- the items were
9      physically stolen from you or was this a data breach
10     where your data was taken?
11 A.  All my data was taken from there.
12 Q.  Got it.  Got it.  Do you recall what steps they
13     mentioned for you to do in that letter?
14 A.  To call this number.  And I tried to get my own
15     lawyer, but nobody would help me.
16 Q.  Got it.  I understand.  And then do you recall
17     roughly when that data breach occurred with respect
18     to the Automation in Decatur?
19 A.  2021.
20 Q.  Got it.  Then you mentioned that there was a second
21     security breach involving your data.  Do you recall
22     when that was?
23 A.  T-Mobile was probably about six months later.
24 Q.  Got it.  So that would have been possibly 2022?
25 A.  About the end of '21.

18

1  Q.  Got it.  Got it.  And what kind of notification did
2      you receive with respect to that data breach?
3  A.  A letter in the mail telling me my information --
4      same stuff, my information were compromised through
5      a data breach.
6  Q.  And what steps did you take in response to that?
7  A.  Just like they said, go on this website or the
8      T-Mobile website and put in for this, that, and the
9      other.  Just like signing up for the lawsuit.
10 Q.  Got it.  So you believe that the Celtic Bank account
11     was the subject of identity theft?
12 A.  Yes, sir.
13 Q.  Why doesn't this letter dated September 22nd --
14     September 27th, 2022, make any reference to identity
15     theft?
16 A.  I don't understand that.  What did you say again?
17 Q.  Why doesn't this letter dated September 27th, 2022,
18     that you sent to Spring Oaks Capital make any
19     reference to identity theft?
20 A.  I don't know.
21 Q.  Why doesn't this letter dated September 27th, 2022,
22     make any reference to your identity being
23     compromised by the Automation Company in Decatur?
24 A.  I didn't know what steps to be taken for me to take
25     care of it, really.  This is the first time I ever

19

1      had it done.
2  Q.  But yet you wrote this letter in connection with
3      your lawyers.  And I don't want you to tell me what
4      your lawyers said, but you did draft it in
5      connection with your lawyers?
6  A.  Yes, I did.
7  Q.  And so why doesn't this letter also mention the
8      T-Mobile data breach that you were given notice of?
9  A.  Like I said, I don't know.
10            (Reporter requested clarification.)
11 A.  He said why does this letter not mention any of this
12     in there.  Because I didn't think it needed to be
13     done.  I didn't think about saying it.  This right
14     here was identity theft or nothing like that.  I
15     didn't know what to do.  I'm new at this.  This is
16     my first time ever.
17 Q.  Understood.  Did you think it would be helpful for
18     Spring Oaks Capital to know that your dispute was
19     identity theft?
20 A.  Yeah, I didn't think of it at the time.
21 Q.  I want to go on to the next line in this letter
22     here.  It says, "Please note I do not want you to
23     send me any information.  I simply want you to know
24     that I dispute any debts you claim to have on me."
25     What does that mean?

20

1  A.  I don't see that on there.
2  Q.  I'm sorry, it's -- I'm looking at the second
3      paragraph and I'm looking at the -- I could probably
4      even highlight this.  Maybe I could.  I just
5      highlighted it on the screen.  Can you see that?
6  A.  All right.
7  Q.  It says -- and I won't read it again -- what does it
8      mean in your words where you say:  Don't send me any
9      information.  I simply want you to know that I
10     dispute any debts that you claim you have on me?
11 A.  That you can either email me or call me.
12 Q.  We'll get to that in a second.  I want to ask about
13     this sentence, though, where it says, "I do not want
14     you to send me any information."  Why not?
15 A.  I don't know.
16 Q.  The letter also says -- I highlighted here -- "I
17     simply want you to know that I dispute any debts
18     that you claim you have on me."  What was your
19     intent with that?
20 A.  My intent with that?
21 Q.  Mm-hmm.
22 A.  Whatever credit card y'all say I had, I never had.
23 Q.  But it doesn't say that in this letter?
24 A.  No.
25 Q.  And then I want to go to the next sentence here.  It

Defendant's Exhibit B - Robinson Dep.  8 of 165

Christopher Robinson vs. Spring Oaks Capital    Deposition of Christopher B. Robinson

Case 2:23-cv-01381-AMM   Document 44-2   Filed 10/10/24   Page 9 of 165

21

1    says, "This is not a request for validation or
2    verification."  Do you see that there?
3  A. **This is not a request for validation or**
4    **verification, yeah, I see that.**
5  Q. What does that mean?
6  A. **I don't know.  I'm not the smartest person in the**
7    **world.**
8  Q. So what was your -- what did you mean with this
9    statement, "This is not a request for validation or
10   verification"?
11 A. **I want to go to my car real quick so I can hear**
12   **y'all.  Give me a minute, please.**
13 Q. No problem.
14 A. **Brightness.  Sorry.**
15 Q. No, no worries.  You're good.  The only quiet place
16   is in your car.  I've got a dog that barks too.  I
17   understand.
18 A. **I'd rather sit in the car.**
19 Q. Not a problem.
20       So I just asked you -- we were looking at this
21   letter.  It says, "This is not a request for
22   validation or verification."  What was your intent
23   with that sentence?
24 A. **Validation and verification?  Verify,**
25   **verification -- I've only had two credit cards.  I**

22

1    **don't understand it myself either.**
2  Q. Got it.  And then there is a final sentence in that
3    paragraph that says, "I am not interested in you
4    sending me any documentation."  Do you see that?
5  A. **Yes.**
6  Q. Why weren't you interested in Spring Oaks sending
7    you any documentation?
8  A. **Because harassment through mail, I guess.**
9  Q. And had you received other letters from Spring Oaks
10   Capital?
11 A. **No.**
12 Q. But you were --
13 A. **I didn't receive one document.  Sorry.**
14 Q. So you've never received any documents from Spring
15   Oaks Capital?
16 A. **No, sir.**
17 Q. Got it.  Let's go on to the next paragraph.  It
18   says, "If you want to communicate with me, there are
19   only two convenient ways I want you to communicate
20   with me -- text and email."  It says, "All other
21   ways are inconvenient, and I do not want you to
22   communicate with me in any way other than email or
23   text."  Do you see that?
24 A. **Yes, sir.**
25 Q. Why was -- why did you make that request?

23

1  A. **Why did I make that request?  Because you get all**
2    **kinds of robo calls on the phone -- cell phone these**
3    **days.**
4  Q. I understand.
5  A. **So that way I don't get harassment phone calls from**
6    **people saying you owe this, you owe that.**
7  Q. So really your concern here was that you were going
8    to receive harassing phone calls from Spring Oaks
9    and you wanted to prevent that, correct?
10 A. **Yes, sir.**
11 Q. Did you receive any harassing phone calls from
12   Spring Oaks?
13 A. **I've never received one phone call from them.**
14 Q. And you've also never received any letters from
15   them.  The final sentence -- or the final paragraph
16   on this letter says, "The only convenient times to
17   communicate with me (only by text and email) are
18   Monday to Friday from 1 p.m. to 4 p.m."  Why did you
19   say that?
20 A. **1 to 4?  That's usually when I was driving an**
21   **18-wheeler that's the only times I had free time.**
22 Q. Understood.  But you --
23 A. **And if I'm driving an 18-wheeler, if I get on my**
24   **phone, my company would have hired me.**
25 Q. No, I understand that.  No, that totally makes sense

24

1    to me.  But you haven't worked driving an 18-wheeler
2    since 2019, correct?
3  A. **Yes.  But I drive a dump truck between there and**
4    **there off and on for a few years.**
5  Q. Got it.
6  A. **And in my job --**
7  Q. Yep.
8  A. **My job between 1 p.m. and 4 p.m. when I worked in**
9    **manufacturing, you know, my breaks are in between**
10   **those two, so.**
11 Q. Understood.  Understood.  Are there other convenient
12   times or ways to communicate with you?
13 A. **By the time I get off work, it would be 5 o'clock so**
14   **everybody's usually closed by then.**
15 Q. But that would be another convenient time to
16   communicate with you would be after 5 o'clock?
17 A. **Yeah.  Used to, but not now.**
18 Q. Understood.  Did you receive any emails from Spring
19   Oaks Capital?
20 A. **Not that I recall, I haven't.**
21 Q. Do you save your emails?
22 A. **Yep.  Yes, sir.**
23 Q. How long do you save an email?
24 A. **Let me look and see how long they actually stay on.**
25   **I don't even know, really.**

Christopher Robinson vs. Spring Oaks Capital    Deposition of Christopher B. Robinson

Case 2:23-cv-01381-AMM   Document 44-2   Filed 10/10/24   Page 10 of 165

25

1  Q.  No, not a problem.  You don't need to look right
2      now.  We can talk about it later.  But anyway,
3      that's good.  Let's go on and see if there is
4      anything else.
5          Oh, I just want to look at this last sentence
6      of this letter.  It says, "All other times are
7      inconvenient for me so only communicate with me from
8      1 p.m. to 4 p.m."  Do you see that there?
9  A.  Yes, sir.
10 Q.  But that's not really true because, like you said,
11     if you were communicated after 5 p.m. after you were
12     done with work, that wouldn't be really
13     inconvenient, but you think most debt collectors are
14     closed at that time?
15 A.  Well, now you can't -- you used to be able to call
16     after 5 o'clock.
17 Q.  Sure.  Yep.  Absolutely.
18 A.  Like now --
19 Q.  Go ahead.
20 A.  You can't call me until 1 o'clock in the morning,
21     from 3 to 1 o'clock.
22 Q.  Oh, that's the shift you work out at the --
23 A.  3 --
24 Q.  Yep.
25 A.  3 p.m. to 1 a.m.

26

1  Q.  Got it.  But in September 2022 you were working at
2      GXO, correct?
3  A.  No.  It was last year, 2023.
4  Q.  Got it.  Got it.  So what company were you working
5      at on September 2022 when you sent this letter?
6  A.  I was off and on between jobs, driving a dump truck
7      whenever he needed me.
8  Q.  Got it.  So on the days when you weren't working,
9      there really wasn't any inconvenient time for you to
10     receive a call because you weren't at work during
11     those times, correct?
12 A.  Again, I missed it.
13 Q.  I said, so when you weren't working, there was no
14     inconvenient time to call you because you wouldn't
15     be at work on those days?
16 A.  Yes, sir.  I was busy, you know, trying to find a
17     job.
18 Q.  Yep.  Understood.
19         I want to look at a couple other documents
20     here.  We're looking to look at Exhibit D and I'll --
21     just for reference, I'll go to the first page of the
22     Robinson deposition exhibits.  This is Robinson
23     Deposition Exhibit 8.
24         MR. ROSSMAN:  And it's also, Patricia, our
25     Bates label number 1.  What I did was, when we

27

1      produced -- so this document is the response which
2      has all the credit card statements.  Those
3      statements were out of order so I reorganized them
4      into chronological order.  So the Bates label
5      numbers will be out of order, but the Robinson
6      deposition numbers will be in order and the
7      statements will also be in chronological order.
8      Just so you know so you don't think I'm doing
9      something fast and loose here with the exhibits.  I
10     reorganized them.  You'll see as we go through them.
11         MS. LOCKHART:  Thank you for the
12     clarification.
13         MR. ROSSMAN:  Yep, no worries.
14 BY MR. ROSSMAN, CONTINUING:
15 Q.  So, Mr. Robinson, I'm showing you on the screen now
16     a letter dated October 31st, 2022.  Have you seen
17     this letter before?
18 A.  No, sir.
19 Q.  Got it.  And you see that this letter is also
20     addressed to you at 20 Burney Mountain Road in
21     Falkville, Alabama 35622?
22 A.  Yes, sir.
23 Q.  And you see that this letter is from Spring Oaks
24     Capital?
25 A.  Where is that at?

28

1  Q.  It's at -- I'm sorry -- the upper right-hand side
2      where it says Spring Oaks Capital, LLC and there is
3      an emblem.
4  A.  Oh, I see it now.
5  Q.  Yep, an emblem with a leaf.  That's their emblem.
6  A.  This little window pops up too here and I get to
7      read everything you're saying.
8  Q.  Got it.  Got it.  If you can't see the document, let
9      us know.  We can certainly slow down.
10 A.  It wasn't that it was fast.  It's just I got this
11     little window that pops up that whatever you're
12     saying, I can read everything what you're saying.
13 Q.  Got it.  Perfect.  Good.
14         All right.  I'm going to go to -- minimize this
15     screen -- I'm looking at what's been marked as -- so
16     this is Robinson Deposition Exhibit 10 and it's also
17     Bates label number 3 from what we produced in
18     connection with our document production.
19         Mr. Robinson, I'm showing you what's been
20     marked as Robinson Deposition Exhibit 10.  Do you
21     recognize what this document is?
22 A.  It's like a Discovery bill.
23 Q.  Yeah.
24 A.  Credit card bill.
25 Q.  Yeah.  And do you see who this bill is addressed to?

Christopher Robinson vs. Spring Oaks Capital     Deposition of Christopher B. Robinson

Case 2:23-cv-01381-AMM   Document 44-2   Filed 10/10/24   Page 11 of 165

29

1   A.   Yes.
2   Q.   And who is it addressed to?
3   A.   It says Christopher B. Robinson, 20 Burney Mountain
4        Road, Falkville, Alabama 35622.
5   Q.   And that's the address you were residing at on July
6        18, 2021?
7   A.   July what?  18th, 2021?
8   Q.   Yeah.
9   A.   Yeah, I see that.
10  Q.   Do you recall receiving this credit card statement?
11  A.   Not in my mailbox.
12  Q.   Do you recall receiving any credit card statements
13       from Genesis FS Card Services?
14  A.   No, sir.
15  Q.   Go partway down the statement and I'm going to try
16       and expand the font a little bit so we can see what
17       charges were made.  Keep in mind this is from 2021.
18       There is a charge -- and I'm looking at
19       transactions.  It shows, on June 6, a transaction at
20       Hardee's in Hartselle, Alabama.  Are you familiar
21       with that Hardee's in Hartselle, Alabama?
22  A.   I don't use Hardee's at all.
23  Q.   Okay.  What about the Foodmart in Hartselle,
24       Alabama?
25  A.   I don't even know where that place is located.  All

30

1        I know is the Chevron, Shell, and stuff like that.
2   Q.   What about O'Reilly Auto Parts?
3   A.   I've used them a few times but I pay cash.
4   Q.   So it's your position -- let's go through -- what
5        about Buffalo Rock Vending in Huntsville, Alabama?
6   A.   I don't know them.
7   Q.   How far is Huntsville, Alabama from where you live?
8   A.   An hour.
9   Q.   An hour away?
10  A.   Forty-five to an hour, depending on.
11  Q.   Do you conduct any business in Huntsville, Alabama?
12       Do you drive a truck there, have any business there?
13  A.   No.  No.  Drove truck there off and on for three
14       years, but never been to no Buffalo Rock Vending.
15  Q.   Okay.  But you have been to Huntsville, though?
16  A.   Yeah.  That's where GXO, Kohler, and all them were
17       at.
18  Q.   Got it.  And I guess because I don't know the
19       geography real well, how close is Hartselle to where
20       you live?
21  A.   Depends on how fast you drive.
22  Q.   How many miles, sir?  Good answer.
23  A.   How many miles?
24  Q.   Yeah.
25  A.   Let's see.  I'm two minutes from the Cullman County

31

1        line and Falkville downtown is six miles from
2        Hartselle and you gotta travel another three or four
3        miles to get to my house.
4   Q.   Got it.  So it's very close?
5   A.   About 10 to 12 miles.
6   Q.   Ten or 15 minutes.  So this is like 10 or 15 minutes
7        away from your house.  Is there someone else living
8        in your house that uses your credit card?
9   A.   No.
10  Q.   Is there someone else generally that uses your
11       credit card?
12  A.   No.  My wife don't even know -- she got her own
13       stuff.
14  Q.   Got it.  Understood.  I'm going to scroll ahead to
15       another document.  I'll let you know when I'm there.
16       Give me a second.  Actually, I don't think -- I'm
17       now going to go to Exhibit E which starts at
18       Robinson Deposition Exhibit 29.  And actually, we'll
19       start out with the complaint.  So let me just get
20       there.  I'll make the font a little bit smaller so
21       we can see the entire page.
22            Mr. Robinson, I've now put up on the screen a
23       document from the Circuit Court of Jefferson County,
24       Alabama.  Do you recognize that document?
25  A.   No.

32

1   Q.   Okay.  And this is -- do you see where it says your
2        name at the top there as the plaintiff?
3   A.   Yeah.
4   Q.   And you see where it says Spring Oaks Capital as the
5        defendant right underneath your name?
6   A.   Yes, sir.
7   Q.   And it says jury trial demanded?
8   A.   Yes, sir.
9   Q.   And it says complaint?
10  A.   Yes.
11  Q.   Does that refresh your recollection as to what this
12       document is?
13  A.   Yes, sir.
14  Q.   And what is this document?
15  A.   Document's a lawsuit.
16  Q.   I want to ask you some questions about this document
17       starting in paragraph 1.  I'm going to highlight --
18       now that I know I can highlight, I'm going to
19       highlight a phrase here.  It says, "This action
20       arises out of the Defendant's repeated violation of
21       the Fair Debt Collection Practices Act."
22            Could you please state what those repeated
23       violations are.
24  A.   Could you give me some examples of them?
25            MS. LOCKHART:  I'm sorry, I was on mute.

Christopher Robinson vs. Spring Oaks Capital    Deposition of Christopher B. Robinson

Case 2:23-cv-01381-AMM    Document 44-2    Filed 10/10/24    Page 12 of 165

33

1    I object.  That calls for legal conclusions and he's
2    not an attorney.
3    BY MR. ROSSMAN, CONTINUING:
4  Q.  Fair enough.  In your own words, can you please
5    describe what this paragraph means where it says,
6    "This action arises out of Defendant's repeated
7    violations"?
8  A.  I guess it's rephrasing (sic) to my credit report.
9  Q.  How so?
10  A.  How so?  I forgot how it was listed on there.
11  Q.  Not a problem.
12  A.  Something about it done been resolved and I was
13    disputing it, but y'all saying it's resolved and
14    it's not resolved.
15  Q.  Understood.  Understood completely.  We'll get
16    specifically to that portion of your credit report,
17    but I appreciate that.  Thank you.
18        I want to go to the next page and I'm going to
19    highlight another phrase here.  It says -- the
20    entire paragraph is, This action arises out of
21    Defendant's repeated violations of the Fair Debt
22    Collection Practices Act, 15 U.S.C. 1692 et seq.
23    (FDCPA) by the Defendant and its agents in their
24    illegal efforts to collect a consumer debt from
25    Plaintiff.

34

1        And I highlighted the illegal efforts to
2    collect a consumer debt.  I'm not asking you for a
3    legal conclusion.  I am asking you to tell me in
4    your own words what this sentence means,
5    specifically the phrase "illegal collection
6    efforts."
7  A.  Illegal efforts to collect a consumer debt from
8    Plaintiff.  I don't know about that sentence.
9  Q.  Understood.  Not a problem.
10        I'm going to scroll ahead here, let's see,
11    highlight paragraph 9 here.  It says, Plaintiff
12    allegedly incurred a financial obligation that was
13    primarily for personal, family or household purposes
14    and is therefore a debt as that term is defined by
15    15 U.S.C. Section 1692a(5).
16        Could you please describe for me in your own
17    words the first part of that.  Specifically, what is
18    meant by plaintiff allegedly incurred a financial
19    obligation that was primarily for personal, family,
20    or household purposes?
21  A.  I guess it referring to y'all saying I have a credit
22    card through you, credit card debt.
23  Q.  And then paragraph 13, I'm going to highlight that,
24    and I'll scroll it up just a little bit here in the
25    center of the screen.  Paragraph 13 says, "Defendant

35

1    claimed Plaintiff owed Defendant money."  What does
2    that mean?
3  A.  I owe someone money.
4  Q.  And then paragraph 15, which says, "Plaintiff sent a
5    letter to Defendant and it was delivered to
6    Defendant on October 3, 2022."  Do you see that?
7  A.  Yes, I do.
8  Q.  Could you please state what that means.
9  A.  That was a letter I sent to y'all, right?
10  Q.  And then I'm going to go to paragraph 17, highlight
11    this.  Paragraph 17 says, "Despite this, and in
12    violation of the FDCPA, Defendant updated
13    Plaintiff's credit report with an account from
14    Defendant without marking the account as disputed."
15        Could you please describe in your own words how
16    defendant updated plaintiff's credit report with an
17    account from defendant without marking the account
18    as disputed?
19  A.  I'm not aware -- dispute this -- oh, yeah, I put --
20    y'all said it was resolved but it's not resolved.
21  Q.  Got it.  I'm going to highlight number 18 here, it
22    says, "On July 21, 2023, Defendant updated its
23    account on the July 28th, 2023 TransUnion report of
24    Plaintiff without showing the account as disputed."
25  A.  Same reference as 17.

36

1  Q.  Got it.  Thank you.  And then I want to highlight
2    paragraph 20 and I'll also move it up on the screen
3    so it's a little more centered.  Paragraph 20 says,
4    "The conduct of Defendant has proximately caused
5    Plaintiff damages."  What does that mean?
6  A.  The damages like depression and anxiety from y'all
7    saying I owed money, but I don't owe no money to
8    y'all.
9  Q.  Could you please describe those damages in more
10    detail.
11  A.  In more detail?
12  Q.  Yes.
13  A.  I got anxiety issues, depression, and I'm ADHD too.
14    So, you know, that's all I can say about that.
15  Q.  Do you treat with a medical doctor for your
16    depression and anxiety?
17  A.  Yes.
18  Q.  And do you have specific medication that you're
19    prescribed for your depression and anxiety?
20  A.  I take three -- I take four different kinds of
21    depression medication, two anxiety, blood pressure
22    medicine, and everything else now.
23  Q.  And the specific question that I have is, how was my
24    client's conduct, Spring Oaks Capital -- how did my
25    client's conduct cause your depression and anxiety?

Christopher Robinson vs. Spring Oaks Capital    Deposition of Christopher B. Robinson

Case 2:23-cv-01381-AMM   Document 44-2   Filed 10/10/24   Page 13 of 165

37

1  A.  Made it worse.

2  Q.  How?

3  A.  How?  By a lawsuit, trying to sue me for money that

4      I did not owe.

5  Q.  So are you asserting that Spring Oaks Capital sued

6      you?

7  A.  We're in court for it.

8  Q.  So you're asserting that your stress and anxiety

9      comes from the lawsuit that we're looking at right

10     now?

11 A.  No.  It's coming from, you know, people stealing my

12     identity and everything else and then using my

13     identity to get credit cards and stuff like that.

14     Like, I had someone got my name and number when they

15     stole all my information and opened up a utility

16     bill in my name, but I already had that resolved.

17 Q.  You also mentioned you have high blood pressure.

18     Can you please state how my client's conduct

19     impacted your high blood pressure?

20 A.  I didn't get high blood pressure medicine until -- I

21     don't know.

22 Q.  So you don't know if there is a relationship between

23     your high blood pressure and the conduct of Spring

24     Oaks?

25 A.  I'm a very nervous person when it comes to messing

38

1      with the police or the judge.

2  Q.  You mentioned a lawsuit.  Have you been sued by a

3      debt collector?

4  A.  Yeah, once for the credit card I told you I had,

5      Discovery.

6  Q.  Sure.  The Discover card and Discover sued you?

7  A.  Yep, because through COVID-19 I lost my job.

8  Q.  Understood.  I'm sorry to hear that.

9  A.  But I paid them off.

10 Q.  Do you recall roughly when they sued you?  Was that

11     after the pandemic?

12 A.  I don't recall the specific date.

13 Q.  Did that lawsuit caused you stress and anxiety?

14 A.  Not really.  It was other things that did it too.

15 Q.  Such as?

16 A.  I really don't want to say.

17 Q.  Are you refusing to answer my question about what

18     caused your stress and anxiety?

19 A.  Well, it's really a personal issue.  Not that.  It's

20     something else.

21 Q.  So there are other factors in your life that were

22     causing stress and anxiety that you are not

23     disclosing under oath today?

24 A.  Yeah.  Death in my family, yeah.  I don't take death

25     very well.  I'm still not over my momma dying, so

39

1      I'd rather just leave it at that.

2  Q.  Understood.  Understood.  Yep.  No.  Understood.

3          Let's continue looking at some more documents

4      here.  Yeah, let's continue looking at this

5      complaint.  I want to go to paragraph 22.  Highlight

6      it here real quickly.  Says, "Plaintiff is entitled

7      to damages and reasonable attorney's fees and costs

8      from Defendant."  What damages are you entitled to?

9  A.  Credit report.  And having me go through all this

10     right here now.

11 Q.  Understood.  So what is that?  I mean, is that a

12     dollar amount or what exactly are your damages?  How

13     would you describe.  I'm not asking for a lawyer

14     description.  I'm asking for your description of

15     what your damages are.

16 A.  For the stress, the going through being on my credit

17     report, and other things like going to court and

18     having to deal with this when you couldn't just deal

19     with it outside of court.  It's stressful and just

20     call it more -- whatever you say -- depression and

21     anxiety issues.

22 Q.  You also mentioned here reasonable attorney's fees

23     and costs.  What are those?

24 A.  What all the -- what the lawyers would charge, their

25     fee.  I don't recall what their fee is.

40

1  Q.  What have you agreed to pay the lawyers?

2          MS. LOCKHART:  And I'm going to object to

3      that.  That's a fee agreement.  That's privileged

4      information.

5          MR. ROSSMAN:  So you're instructing your

6      client not to answer?

7          MS. LOCKHART:  I'm objecting, yes.

8          MR. ROSSMAN:  Two different -- you can

9      object, but you're instructing him not to answer as

10     well?

11         MS. LOCKHART:  I would instruct him not to

12     answer, yes.

13         MR. ROSSMAN:  Fair enough.

14 BY MR. ROSSMAN, CONTINUING:

15 Q.  Have you paid your lawyers anything to date?

16         MS. LOCKHART:  Once again, I object to

17     that question.  That's privileged information.  It's

18     attorney-client privilege.

19         MR. ROSSMAN:  Let's continue on with some

20     documents.  To be clear, then, you're instructing

21     him not to answer based on attorney-client

22     privilege?

23         MS. LOCKHART:  Correct.

24 BY MR. ROSSMAN, CONTINUING:

25 Q.  Let's move forward to another document.  Let's go to

Christopher Robinson vs. Spring Oaks Capital          Deposition of Christopher B. Robinson

Case 2:23-cv-01381-AMM   Document 44-2   Filed 10/10/24   Page 14 of 165

41

1      Exhibit F.
2                MR. ROSSMAN:  And, Patricia, I'll show you
3      the first page, it's Robinson Deposition Exhibit --
4      starts at 41.  I better move this up a little bit
5      here.
6  BY MR. ROSSMAN, CONTINUING:
7   Q.  Mr. Robinson, I'm showing you what's been marked for
8      identification as Robinson Deposition Exhibit 41.
9      Get it centered again.  Do you recognize what this
10     document is?
11  A.  It's a credit report.
12  Q.  Yep.  Did you pull this credit report yourself?
13  A.  A lady named Vicki did.
14  Q.  So is that someone at your house or is that someone
15     at your lawyer's office?
16  A.  Lawyer's office.
17  Q.  Got it.
18  A.  They pull it once a year for me.  She calls me.
19     Pulls it for me and we go through it.
20  Q.  Do you send out other dispute letters then?
21  A.  Yes, sir.  Sent out many of them.
22  Q.  How many dispute letters do you think you've sent
23     out?
24  A.  I don't recall.
25  Q.  Are all the dispute letters the same?

42

1   A.  No.
2   Q.  Are all the dispute letters similar to the one we
3      looked at earlier?  We can pull it back up on the
4      screen.
5   A.  Yeah.
6   Q.  Let's go there.  I'm just going to scroll back to
7      that exhibit.  That's one version of it.  Exhibit C.
8      So we're back to Robinson Deposition Exhibit 7.  You
9      mentioned you sent other dispute letters to other
10     creditors.  Would the dispute letter that you sent
11     to other creditors state "only contact me between 1
12     and 4 p.m."?
13  A.  I don't recall.  Yeah, they all say that.
14  Q.  Do they all say "only communicate with me by email"?
15  A.  Yep.
16  Q.  How many --
17  A.  That's how they contact me, through email.
18  Q.  Yeah.  Got it.
19         So going back to this credit report.  Let me
20     get back there.  Sorry.  It's Exhibit F, which is
21     this credit report.
22         I want to go through a few pages of it with
23     you.  I want to go to what's page 45, Robinson
24     deposition exhibits page 45.  And you see there in
25     the middle of the page, Mr. Robinson, it says

43

1      Kohler.  First of all, the top of this section says
2      employers.  I'll highlight that?
3   A.  Yeah, I see that.
4   Q.  And below that says Kohler and shows a date verified
5      of May 5th, 2021.  Were you working at Kohler in May
6      of 2021?
7   A.  That's when they do a credit report to see, you
8      know, before they hire you.
9   Q.  Right.
10  A.  That's all I know about that.  I did work for them
11     after that.
12  Q.  Got it.  Understood.
13  A.  Every job pulls a credit report.
14  Q.  I'll scroll down to another page.  Give me a second.
15     I'm now showing you what's been marked for
16     identification as Robinson Deposition Exhibit 49.
17     It starts with accounts with adverse information.
18     Do you see that there?
19  A.  Yeah.
20  Q.  It says, right below that, "Adverse information
21     typically remains on your credit file for up to 7
22     years from the date of the delinquency.  To help you
23     understand what is generally considered adverse, we
24     have added brackets to those items for this report.
25     For your protection, your account numbers have been

44

1      partially masked, and in some cases scrambled."
2         So the first account I show with adverse
3      information is Ally Financial?
4   A.  Yes, sir.
5   Q.  Did you have an account with Ally Financial?
6   A.  Yes, I see I did.
7   Q.  And did you pay that account off?
8   A.  That account was paid for just last year.
9   Q.  But they charged it off at some point; is that
10     correct?
11  A.  When I went through the pandemic, yeah, they did
12     because I got behind on it and they worked with me
13     and worked with me, just like any other people would
14     do.
15  Q.  Yep, understood.  But this -- go ahead.
16  A.  Oh, that was my car me and my grandmother went to go
17     get.
18  Q.  Got it.  What kind of vehicle was that?
19  A.  A Kia Soul.  A hamster car.
20  Q.  Yeah, no, I hear you.  Do you still have that
21     vehicle?
22  A.  The insurance totaled it out but I bought it back
23     from them.
24  Q.  Understood.  So did the default on the Ally
25     Financial account cause you stress?

Christopher Robinson vs. Spring Oaks Capital    Deposition of Christopher B. Robinson

Case 2:23-cv-01381-AMM   Document 44-2   Filed 10/10/24   Page 15 of 165

---

45

1   A.   Not really.  They knew what -- they knew what was
2        going on and they worked with me.
3   Q.   You knew that this reduced your credit score,
4        correct?
5   A.   Yeah, I know it does.  But it's paid off now so I
6        ain't going to worry about it.
7   Q.   But back before it was paid off, it caused you
8        stress though, correct?
9   A.   No, not really.
10  Q.   So having a charged off account did not cause you
11       any stress.  Is that your testimony?
12  A.   On that one, yeah.
13  Q.   Got it.
14  A.   Because they worked with me.
15  Q.   And then I want to go to right at the top of page,
16       Robinson Deposition Exhibit 50.  So it's right below
17       the red lettering 49.  I'll highlight this for you.
18       It's the remark on this account.  Here we go.  Do
19       you see that portion that I just highlighted?  It
20       says, "Completed investigation of FCRA
21       dispute-consumer disagreed."  Tell me about that.
22  A.   I don't know.
23  Q.   Did you dispute that account --
24  A.   I have no idea --
25  Q.   Go ahead.

---

46

1   A.   I have no idea what it is.
2   Q.   Did you dispute this account with Ally Financial?
3   A.   Never.  Well, we agreed on the final payment, we
4        did.
5   Q.   So where it says, "Completed investigation of FCRA
6        dispute" that I highlighted, that is incorrect?  Is
7        that your testimony today?
8   A.   What do you mean by that?
9   Q.   So I highlighted on the screen, "Completed
10       investigation of FCRA dispute-consumer disagreed."
11       So you're stating that is a false statement on your
12       credit bureau's report?
13  A.   Well, yeah, because we settled what was less than
14       what was owed on the car.  That shouldn't be there
15       neither.
16  Q.   Got it.  So the next statement is, "Settled-less
17       than full BLNC.  Paid in full/was a charge off."  Do
18       you see that?
19  A.   It was paid in full.  There wasn't no charge off.
20  Q.   So there is two false statements here regarding the
21       Ally Financial account on your credit bureau; is
22       that correct?
23  A.   Looks like it to me.
24  Q.   Does that cause you any stress?
25  A.   That being on there, yeah, that there would cause

---

47

1        stress because that ain't what happened.
2   Q.   Does that cause you any anxiety?
3   A.   After realizing it, yeah.  It shouldn't be -- that
4        shouldn't be on there anyway.
5   Q.   Let's keep going through this document.
6   A.   That's a piece of paperwork from them.
7   Q.   I'm at the very bottom of Robinson Deposition
8        Exhibit 51 that I have on the screen.  Do you see
9        Covington Credit?
10  A.   Yes, sir.
11  Q.   Is that an account that you have?
12  A.   Not that I know of.
13  Q.   Okay.  So this shows that -- I'm going to just
14       scroll down a little bit.  Do you see where it says,
15       Date opened, May 18, 2021?
16  A.   Yeah, I see that.
17  Q.   Do you think that it's possible this was part of
18       that identity theft that you mentioned?
19  A.   Yeah.
20  Q.   And then I'm going to show you also where it says --
21       I'll highlight it here for you.  The pay status.  Do
22       you see the pay status there that I just
23       highlighted?
24  A.   Yeah.
25  Q.   And you see where it shows that it was charged off?

---

48

1   A.   Yeah.
2   Q.   Were you aware that you had this charged off account
3        on your credit bureau report?
4   A.   I don't recall, but I have to go back and look.
5   Q.   Have you disputed this account with the creditor?
6   A.   No.
7   Q.   I'm going to show you one other section I'm going to
8        highlight on this Covington.  Do you see the remarks
9        there where it says, "Purchased by another lender;
10       unpaid balance charged off"?
11  A.   I guess they sold it, I guess.  I don't know.  I
12       don't know much about what everything on the credit
13       report.
14  Q.   Do you believe that these statements on this credit
15       report about the Covington account are accurate?
16  A.   I don't recall if they're accurate or not.
17  Q.   Signatures here --
18  A.   I said I guess it shows up on my credit report, it
19       is, but it's not my account.
20  Q.   Does it cause you stress knowing that you have
21       another account on your credit bureau that was --
22       that you're not familiar with?
23  A.   Yeah.
24  Q.   Let's keep going.  I think this is the one you were
25       talking about earlier.  So I have at the top of

---

Christopher Robinson vs. Spring Oaks Capital     Deposition of Christopher B. Robinson

Case 2:23-cv-01381-AMM   Document 44-2   Filed 10/10/24   Page 16 of 165

49

1    page -- or at the bottom of page, Robinson
2    Deposition Exhibit 53, do you see the line there for
3    Discover Bank?
4  A.  Yep.  That's the only credit card I ever had except
5    for Capital One.
6  Q.  Got it.  I'm highlighting some language on here
7    where it says, "Pay status, account paid in full was
8    a charge-off."  Is that a true statement?
9  A.  Well, it depends on what year that credit report was
10    taken.
11  Q.  So this is the credit report from November 2023 and
12    it shows that this is updated last March of 2023.
13    Do you see where I highlighted that?
14  A.  Yeah.
15  Q.  Do you believe that that's an accurate statement
16    that this was a charged off account as of March of
17    2023?
18  A.  No.  It shouldn't have been a charge-off.
19  Q.  I'm highlighting partway through the middle of page
20    54, Robinson Deposition Exhibit page 54, the
21    estimated month and year this item will be removed.
22    Do you see that as March 2027?
23  A.  Yeah.
24  Q.  What efforts, if any, have you made to remove this
25    from your credit bureau report?

50

1  A.  Sir, repeat that again.
2  Q.  What efforts, if any, have you made to remove this
3    from your credit report?
4  A.  Well, it's supposed to have already been paid --
5    well, it won't show removed.  It just say paid in
6    full.
7  Q.  But it also shows it was charged off?
8  A.  It shouldn't be saying charge-off.
9  Q.  So that's an error on your credit report?
10  A.  That charge-off, yeah.
11  Q.  Got it.  I'm just going to scroll to the next one
12    here.  I'm now near the bottom of page 57 of the
13    Robinson deposition exhibits and I just highlighted
14    the trade line for First Premier Bank.  Do you see
15    that there?
16  A.  Yeah, I see the name and I guess the numbers.
17  Q.  Yeah.  Did you have an account with First Premier
18    Bank?
19  A.  Not that I recall, I didn't.
20  Q.  And you can see that this account was open.  I'm
21    highlighting it.  Says it was open June 11, 2021.
22    Do you see that there?
23  A.  Yeah.
24  Q.  And you had mentioned that you potentially were the
25    victim of identity theft at that time; is that

51

1    correct?
2  A.  Yes, sir.
3  Q.  Do you think that this First Premier Bank account
4    could be the result of identity theft?
5  A.  Yep.  Yes, sir.  I said that would be the next thing
6    to work on getting that one.
7  Q.  And then I just highlighted the pay status.  Do you
8    see where the pay status is marked as charge-off?
9  A.  Yes, sir.
10  Q.  And I'm also highlighting the estimated month and
11    year that this item will be removed as June 2028.
12    Do you see that there?
13  A.  Yes.
14  Q.  Does this inaccurate information on your credit
15    report cause you stress?
16  A.  Yep.
17  Q.  Does this inaccurate information on your credit
18    report cause you anxiety?
19  A.  Yes.
20  Q.  I'm going to go to the next page.  I'm now down to
21    the trade line MRV Banks.
22  A.  I have no idea what that is.
23  Q.  Understood.  And you see that this has a date opened
24    of October 7, 2022?
25  A.  Yes, sir.

52

1  Q.  And the pay status on this one -- sorry.  Do you see
2    where the pay status is listed on this one as
3    charged off?  Sold, was charged off.
4  A.  Yes, sir.
5  Q.  And I just highlighted where it says estimated month
6    and year to be removed October 2029 from the credit
7    bureau.  Do you see that there?
8  A.  Yes, sir.
9  Q.  Does this inaccurate item on your credit bureau
10    report cause you stress?
11  A.  Yeah.  It's another credit card, yes.
12  Q.  And does this incorrect entry on your credit bureau
13    report cause you anxiety?
14  A.  Yes, sir.  It needs to be -- none of this belongs to
15    me except for Discover.
16  Q.  I'm going to highlight another item from the credit
17    bureau.  Sorry.  Here we go.
18  A.  Security Finance.
19  Q.  Yep, Security Finance.  Do you recognize Security
20    Finance as being one of your creditors?
21  A.  Yes, sir.  I know that one.
22  Q.  Okay.  And this one shows a pay status as
23    charge-off.  I just highlighted that there.  Do you
24    see that?
25  A.  Yes, sir.

Christopher Robinson vs. Spring Oaks Capital     Deposition of Christopher B. Robinson

Case 2:23-cv-01381-AMM   Document 44-2   Filed 10/10/24   Page 17 of 165

53

1  Q.  Is that accurate?
2  A.  **To my knowledge, probably is.**
3  Q.  Okay.  Does it cause you stress seeing that
4       charge-off on your credit bureau when you know it's
5       accurate?
6  A.  **On the charge-off?**
7  Q.  Mm-hmm.
8  A.  **Yeah, it does a little.**
9  Q.  Yeah.  Does it cause anxiety as well?
10 A.  **Just like the stress, yeah.**
11 Q.  Yeah.  And so this item I'm highlighting right here
12      that you agree is accurate, it says estimated month
13      and year this item will be removed is December 2027.
14      Do you see that there?
15 A.  **Yes, sir.**
16 Q.  Scroll to the next page here.  Now looking at the
17      account for Wells Fargo Card Services.  Do you see
18      that one here?
19 A.  **Yes, sir.**
20 Q.  And it looks like this one was opened on --
21 A.  **Yep.  That's when I started driving 18-wheeler then.**
22 Q.  So this would be an account that you did open?
23 A.  **That I had the joint account with my wife, yeah.**
24 Q.  Got it.  Highlighting the status on this.  It shows
25      pay status as charged off.  Is that accurate?

54

1  A.  **Yeah, it should be.**
2  Q.  Got it.  And it shows on this one -- highlighting it
3       right now.
4  A.  **Yeah.**
5  Q.  You see where I'm going.  You know what I'm doing
6       now.  Do you see the month and year is March 2027
7       this will be removed from your credit?
8  A.  **Yes.**
9  Q.  Does it cause you stress knowing this is another
10      accurate item that will be on your credit until
11      2027?
12 A.  **The accurate one that I own, yeah.**
13 Q.  Yep.  Does that cause you anxiety as well?
14 A.  **Yes, just a little.**
15 Q.  Understood.  I'm going to scroll to the next page
16      here.
17 A.  **I do owe Wells Fargo that money.  I know that for**
18      **sure.**
19 Q.  I'm also going to highlight on the screen Robinson
20      Deposition Exhibit 75 and I highlighted the World
21      Finance Corporation.  Do you recognize that account?
22 A.  **World Finance Corporation, where are they out of?  I**
23      **think, yeah, I know them.  They're --**
24 Q.  They're some home repairs; is that correct?
25 A.  **Sir?**

55

1  Q.  Some home repairs?
2  A.  **No.  I think it's like a Security Finance.  It's a**
3       **little company where you can borrow money from.**
4  Q.  Got it.  Got it.
5  A.  **That's my guess.  I don't know really.**
6  Q.  Understood.  I'm showing you the pay status on this
7       one is sold, was charged off.  Do you see that
8       there?
9  A.  **Yeah.**
10 Q.  Do you believe that's accurate?
11 A.  **Not to my knowledge.**
12 Q.  Understood.  And then I'm also highlighting the
13      remarks here where it says, "Purchased by another
14      lender, unpaid balance charged off."  Do you believe
15      that's accurate?
16 A.  **To my knowledge, I don't know.**
17 Q.  Does it cause you anxiety knowing that there is this
18      incorrect information on your credit bureau
19      regarding World Finance Corporation?
20 A.  **Yes.**
21 Q.  And this causes stress as well?
22 A.  **Yeah.**
23 Q.  Okay.  This one here and then we've got LVNV Funding
24      is the next adverse item on your credit bureau.
25 A.  **I have no idea what that one is.**

56

1  Q.  You have no idea what LVNV Funding is?
2  A.  **No.**
3  Q.  Yeah, understood.  So you deem this to be an
4       inaccurate report for LVNV Funding?
5  A.  **Sir?**
6  Q.  You would deem this line on your credit bureau to be
7       inaccurate because you don't know LVNV Funding?
8  A.  **Yes.**
9  Q.  And I just highlighted the pay status.
10 A.  **I know there is a bunch of them when I had my credit**
11      **report pulled that the half of it don't belong to**
12      **me.  I never had.**
13 Q.  Got it.  And so here the remarks section it says,
14      "Account information disputed by consumer (FCRA)
15      placed for collection."  Is that a correct
16      statement?
17 A.  **To not to my knowledge.  I have no idea.**
18 Q.  Did you ever dispute this debt?
19 A.  **I believe I sent them a letter, yes.  A professional**
20      **letter from my lawyers.**
21 Q.  Understood.  So is the information -- this
22      information -- I already asked you that whether this
23      information is inaccurate.  I'm going to go to the
24      next one more which is --
25 A.  **Resurgent Receivables.**

Christopher Robinson vs. Spring Oaks Capital          Deposition of Christopher B. Robinson

Case 2:23-cv-01381-AMM   Document 44-2   Filed 10/10/24   Page 18 of 165

57

1   Q.  Are you familiar with Resurgent Receivables?
2   A.  **That's in dispute too.**
3   Q.  Got it.
4   A.  **Same as y'all.**
5   Q.  So I highlighted the pay status on this one.  It
6       shows that it's in collection.  Do you see that?
7   A.  **Yes.**
8   Q.  And you see the estimated date that this would be
9       removed is 2026.  Do you see that there?
10  A.  **Yes.**
11  Q.  So it's your position that this is also an
12      inaccurate reporting in the credit bureau?
13  A.  **Yeah.**
14  Q.  Have you ever had an account with Credit One Bank?
15  A.  **Never heard of them.**
16  Q.  And does it cause you stress knowing that this
17      Resurgent Receivables trade line is on your credit
18      report?
19  A.  **Just like the rest of them.**
20  Q.  And does it cause you anxiety?
21  A.  **Yeah.**
22  Q.  Now we get to Spring Oaks Capital.
23  A.  **That's the first time I've ever seen or heard of**
24      **Celtic Bank is when y'all were talking about it**
25      **between my lawyer and y'all and on my credit report.**

58

1   Q.  Have you heard of -- have you heard of Indigo Card?
2   A.  **Not to my knowledge, no.**
3   Q.  Okay.  So this is really -- so this is the trade
4       line for Spring Oaks Capital and I want to go right
5       to the remarks section.
6   A.  **Yep.**
7   Q.  And because that's what we're talking about, I know
8       you referenced it a couple of times.  So right here
9       it says, "Account previously in dispute-now
10      resolved, reported by credit grant, placed for
11      collection."  And I'm not asking for a legal
12      interpretation, but in your own words what does this
13      mean?
14  A.  **That means that it's inaccurate information**
15      **obtained.  It's resolved when it wasn't resolved.**
16      **If it was resolved, we wouldn't be in court right**
17      **now.**
18  Q.  What was your expectation when you sent the dispute
19      letter to Spring Oaks Capital?  What was your
20      expectation as to what would happen?
21  A.  **That they would remove it and resolve it.  I really**
22      **don't know.  It's the first time I've done this.**
23      **Never thought I'd be in this situation.**
24  Q.  But you had previously disputed your account with
25      Discover Bank so it wasn't truly the first time you

59

1       had done this?
2   A.  **Well, my lawyers that I've got now helped me with**
3       **that.**
4   Q.  Right.  So this --
5   A.  **It's the first time I've ever been through it in my**
6       **life, is what I'm getting to the point.  I didn't**
7       **expect none of this to ever happen to me about**
8       **people to open up accounts that didn't belong to me.**
9   Q.  Understood.  I'm now moved to Robinson Deposition
10      Exhibit 108.  And I have on the screen a document
11      that's titled Plaintiff's Responses to Spring Oaks
12      Capital, LLC's First Interrogatories, Requests For
13      Production of Documents and Request For Admission to
14      Plaintiff.  Do you recognize this document?
15  A.  **Yes, sir.**
16  Q.  And how do you recognize this document?
17  A.  **I got a copy of it in my email from my lawyers.**
18          THE WITNESS:  Can we take a break or
19      whatever?
20          MR. ROSSMAN:  Yes.  Absolutely.
21          THE WITNESS:  Do you mind?  I'm holding on
22      to a cigarette.  I don't want to smoke while
23      we're --
24          MR. ROSSMAN:  You go smoke.  You go smoke.
25      Don't let us stand in your way.  Why don't we take a

60

1       ten-minute break.  Let's reconvene at 1:25 Central
2       Time.
3           (Recess taken.)
4   BY MR. ROSSMAN, CONTINUING:
5   Q.  You're still under oath and we're looking at
6       Robinson deposition exhibits.  We're at page 109.  I
7       was just about to ask you about -- I'm going to
8       Interrogatory Number 6.  Do you see that on the
9       screen there?
10  A.  Yes.
11  Q.  Could you -- it says, "Please itemize with
12      particularity all damages alleged by Plaintiff."
13      And it says, "I suffered mental anguish and
14      emotional distress as a result of Defendant's
15      actions.  I have disputed the debt with my dispute
16      letter dated September 27, 2022 that was received by
17      them on or around October 3, 2022.  They ignored my
18      dispute and did not update my credit report as
19      disputed.  They even lied and said it was previously
20      in dispute and now resolved when I never quit
21      disputing it and it never has been resolved.  Being
22      ignored like this is very upsetting.  It makes me
23      feel anxious and like I'm being harassed.  Their
24      actions were dishonest and made me constantly wonder
25      how else they might be trying to violate my rights

Christopher Robinson vs. Spring Oaks Capital    Deposition of Christopher B. Robinson

Case 2:23-cv-01381-AMM   Document 44-2   Filed 10/10/24   Page 19 of 165

61

1     in collecting a disputed debt from me."

2        I want to focus on that last sentences where

3     you say, "Their actions were dishonest and made me

4     constantly wonder how else they might be trying to

5     violate my rights in collecting a disputed debt from

6     me."  Could you explain what that sentence means?

7  **A.  Dishonest is what's on my credit report which y'all**

8     **listed in the remarks.  Wondering how else they can,**

9     **well, this is how else they trying to is go to court**

10    **for it.  Violating my rights in collecting a**

11    **disputed debt from me like it don't belong to me,**

12    **you know, causing all kinds of ruffles.**

13  Q.  Did you say "causing all kinds of ruffles"?

14  **A.  Well, like between my and my wife, yes.**

15  Q.  Got it.  Understood.

16  **A.  In my marriage.**

17     **I was making sure I wasn't covering up the**

18    **speaker on my tablet. I thought I was there for a**

19    **minute because I'm holding it up where I can see**

20    **and I don't know where the microphone is on it. Oh,**

21    **there it is. I see it now.**

22  Q.  I may be -- I thought I had one more question here.

23    Oh, here we go.  So I'm looking at Interrogatory

24    Number 19.  I want to kind of understand what your

25    damages were.  We've talked about emotional

62

1     distress.  We've talked about anxiety.  Have you

2     applied for any credit and been denied credit as a

3     result of the Spring Oaks trade line on your credit

4     report?

5  **A.  Yes.**

6  Q.  And what credit did you apply for that you were

7     denied?

8  **A.  American Express and another major credit card. I**

9    **don't remember the name.**

10  Q.  When did you apply for the credit with American

11    Express?

12  **A.  I think it was October of last year.  I believe --**

13    **don't hold me to that, but I think it's sometime**

14    **around that time.**

15  Q.  So it's your testimony today that you applied for

16    credit with American Express last year and you were

17    denied because of the Spring Oaks trade line; is

18    that correct?

19  **A.  As well as all the other false documents that's on**

20    **my credit report.**

21  Q.  Understood.  I want to go to this response here.  So

22    Defendant's Interrogatory Number 19 says, "With

23    respect to each application for credit submitted by

24    Plaintiff September 13, 2022 to present, please

25    identify:  The name of the creditor or potential

63

1     creditor; the date of the application; and the

2     result of the application."

3        And you responded, "I have submitted three

4     applications for credit since that time, but I don't

5     recall the dates.  I submitted an application for

6     credit with Total Card, Indigo, and First Digital.

7     I was approved for all three cards."

8        I want to focus a little bit on the sentence

9     where you say you applied for an Indigo card.  Do

10    you see where it says that there?

11  **A.  Yeah.**

12  Q.  Do you recall applying for an Indigo credit card?

13  **A.  Just about six months ago, yeah.**

14  Q.  Okay.  And you were granted credit from Indigo?

15  **A.  Yeah.  It was last year, about October, November.**

16  Q.  Got it.  I want to take us back to Deposition

17    Exhibit A.

18  **A.  I didn't know who they were until just last year.**

19  Q.  Understood.  I want to go back to what is marked as

20    it's our Bate stamp number 9, but it's Robinson

21    Deposition Exhibit Number 1.  Got it on the screen

22    here.  We looked at this at the beginning of the

23    deposition.  This is that demand letter that was

24    sent to you that you don't recall receiving,

25    correct?

64

1  **A.  Yes.**

2  Q.  And then it says here, "Our information shows," and

3    then it says, "You had an Indigo Mastercard account

4    originating with Celtic Bank with account number

5    ending in 3527."  Do you see that there?

6  **A.  Yes, sir.**

7  Q.  So it's your testimony that you did have an Indigo

8    Mastercard account or that you did not have an

9    Indigo Mastercard account?

10  **A.  At that time I didn't.  I didn't know who Indigo was**

11    **until just last year off Credit Karma.**

12  Q.  So it's your testimony that you have gotten an

13    Indigo credit card since you sued Spring Oaks

14    Capital?

15  **A.  Yes, I do.**

16  Q.  Let me go back to that page.

17  **A.  You passed it three times.**

18  Q.  Yeah, I know.

19  **A.  I think it was on 19.**

20  Q.  I'm almost there.  Here we go.  Here we go.  So

21    we're just going through these interrogatories here.

22  **A.  Number 19.**

23  Q.  You're absolutely correct.  So tell me about your

24    application with Total Card.

25  **A.  Total Card?**

Christopher Robinson vs. Spring Oaks Capital     Deposition of Christopher B. Robinson

Case 2:23-cv-01381-AMM   Document 44-2   Filed 10/10/24   Page 20 of 165

65

1  Q.  Mm-hmm.
2  A.  I got approved of it, but only like $200.
3  Q.  Sure.  What about First Digital?
4  A.  First Digital was -- all three of these came off
5      Credit Karma and I was approved through Credit
6      Karma.
7  Q.  Got it.  So you had mentioned early that you've only
8      had two credit cards in your life.  Discover --
9  A.  Besides -- at that time, yes.
10 Q.  So you're qualifying that statement now.  You're
11     saying you only had two credit cards in your life at
12     what time period?
13 A.  Before this one right here come up.
14 Q.  What date was that?
15 A.  Whenever this dispute with -- when I -- see, 2021 --
16     2021 is when I had two credit cards prior to that
17     with Capital One and Discover.
18 Q.  And since 2021, how many credit cards do you have?
19 A.  Since 2023, I've got those three.  It's Total Card,
20     Indigo, and First Digital.  2023, about the end of
21     2023 around, you know, September, October, November,
22     that's when I got those three and they've been in
23     good standing so far.
24 Q.  I want to go back to your credit bureau report
25     because I didn't see any trade lines on your credit

66

1      bureau report for Total Card, Indigo, or First
2      Credit.
3  A.  That was pulled in March.
4  Q.  2023, yeah.
5  A.  It was pulled in March of 2023.
6  Q.  November 2023.
7  A.  November?
8  Q.  Yep.
9  A.  Well, they should have showed up by now.
10 Q.  I agree.  Let's go back and look at it.
11 A.  Now, at least, they should show up if you pull it up
12     now.
13 Q.  Here's the first page of what we referred to as
14     Robinson Deposition Exhibit 41.  This one was
15     created November 29th, 2023.  I don't see any entry
16     on here for Indigo.  So I'm wondering -- sorry, let
17     me get to the current accounts.  That's inquiries.
18     Promotional inquiries.  These are hard inquiries.
19     Payment history.  Where is current accounts?  Here
20     we go.  Almost there.  Sorry.
21         So let's go to the -- these are the
22     satisfactory accounts on your credit bureau as of
23     November 29, 2023.  And we got the Bank of Missouri,
24     which is a Total Visa.  So you had that credit card
25     as of -- so right now you have a Bank of Missouri

67

1      Total Visa card?
2  A.  Not -- no Bank of Missouri, no.
3  Q.  But you do have a Total Visa card?
4  A.  I don't know the specific date that it was opened.
5  Q.  I'm just trying to find out if you have this card in
6      your wallet right now.  This shows satisfactory
7      accounts.  I'm trying to figure out what accounts
8      you have right now.
9  A.  I don't know the account number on it.
10 Q.  That's okay.  But you generally, yes or no, do you
11     have a Total Visa account?
12 A.  I'm trying to figure that out what it's called and
13     everything.
14 Q.  Yep.
15 A.  It says Total on it.  That's all it says.
16 Q.  Yep.  So my guess would be that would be that card
17     right there.
18 A.  No, that ain't that card right there because the
19     account number's different.  Sorry.
20 Q.  Got it.  Got it.  So the other --
21 A.  It's a different account number.
22 Q.  I'm sorry.  Go ahead.
23 A.  I said that's a different account number.
24 Q.  Got it.  And then we also show a current account for
25     Brigit Coastal Community Bank.  Are you familiar

68

1      with that?
2  A.  I have no idea what that is.
3  Q.  Got it.  And then there is looks like there is two
4      accounts, actually, for this Brigit Coastal
5      Community Bank.  One looks like it's a note that was
6      paid off?
7  A.  I have no -- I don't recall that.
8  Q.  Got it.  Do you have any accounts with MoneyLion?
9  A.  I've got a MoneyLion account, but it wasn't that
10     year at all.
11 Q.  Got it.  And then I think you had mentioned the
12     First Digital account in the discovery response.
13     You said you applied for a credit card with three
14     accounts.  Was First Digital one of those three
15     accounts?
16 A.  Recently, yeah.  But that's not the same account
17     number that I've got.
18 Q.  Got it.  But this does show an open date of
19     September 2023.  So clearly you were getting credit
20     at the time that the Spring Oaks Capital trade line
21     was on your report, correct?
22 A.  I don't think it's been that long.
23 Q.  Let me ask the question a different way.  The Spring
24     Oaks Capital trade line on your credit didn't
25     prevent you from getting credit with First Digital?

Christopher Robinson vs. Spring Oaks Capital    Deposition of Christopher B. Robinson

Case 2:23-cv-01381-AMM   Document 44-2   Filed 10/10/24   Page 21 of 165

69

1   A.   That account is not mine.  That's a different
2        account number.  The last -- the four numbers you
3        see up there is different than what I got.
4   Q.   Understood.  But you see that the last four numbers
5        are stars.  They don't give the last four digits.
6   A.   I'm talking about the other four.
7   Q.   Got it.  All right.
8   A.   The four in front of that are different.  On all
9        three of them, they're all different.
10  Q.   And then we talked about this World Finance
11       Corporation account.
12  A.   Yep.
13  Q.   But I don't see Indigo on here.  So this was months
14       after you would have applied for that Indigo card.
15       Do you have an Indigo credit card in your wallet
16       right now?
17  A.   Yeah.  I use it every day.
18  Q.   Does it say Celtic Bank on it or what bank does it
19       say on it?
20  A.   It says on the back of it, if you can see it, it
21       says Celtic Bank on it.  It's the first time I've
22       ever heard of them when I got this card.
23  Q.   So you got your Celtic Bank card and you use that
24       card like today or is that an old card?
25  A.   No, that's a new card.  That ain't been that long

70

1        that it's been open.
2   Q.   Got it.
3   A.   I could bring up their -- I can bring up my account
4        and tell you when it was opened.
5   Q.   No.  I believe you.  All right.
6   A.   Because this is a new card.  This is a new card and
7        it expires in 2028.  So been very recent, less than
8        six months.
9   Q.   Got it.
10  A.   I use the same Social Security number, same
11       everything.  My name's on it.  And it's a different
12       account than the one y'all saying I owe that I have,
13       but I never had that one.
14  Q.   Understood.  Understood.  Thank you.  I appreciate
15       it.
16            Let me see if I've got more questions here on
17       your discovery responses.  We were at Interrogatory
18       18.  Let's get back there.
19  A.   Because that first statement I ever got from them
20       was January 10th, 2024.  So it was this year when I
21       got that account.
22  Q.   Let's go on to -- I think we're pretty close to
23       being done here.
24  A.   I've been getting statements for 2024 so I opened
25       this up recently, like in January.

71

1   Q.   Understood.  Understood.
2            MR. ROSSMAN:  I don't have any other
3        questions.  That's all I've got.  Ms. Lockhart,
4        unless you have something, I think we can conclude
5        the deposition here.
6            MS. LOCKHART:  I always put it on mute for
7        background noise.  I'm sorry.  Then I forget that
8        I'm on mute.  I do want to follow up and ask him a
9        couple of questions.  I need about two minutes to
10       get this organized.
11           MR. ROSSMAN:  Yeah, no worries.  Let's
12       reconvene at, say, 1:50.  It's like seven minutes
13       from now.  Does that give you enough time?
14           MS. LOCKHART:  That's perfect.  I have
15       some notes here and I just need to get them in
16       order.  That's all.
17           MR. ROSSMAN:  Let's reconvene here in
18       seven minutes and we'll go from there.
19           (Recess taken.)
20               EXAMINATION
21  BY MS. LOCKHART:
22  Q.   I'm going to ask you a couple questions, Chris.  You
23       said that your information or your identity was
24       compromised.  When you were given notice from -- you
25       said it was T-Mobile and Automation Temporary

72

1        Services?
2   A.   Yes.  Yes, ma'am.
3   Q.   And you followed the steps that they gave you.  Did
4        you feel at that time that you had done everything
5        that you needed to do to take care of it?
6   A.   Yes.
7   Q.   To the best of your knowledge?
8   A.   Best of my knowledge, yes.
9   Q.   So at that time you thought you had taken care of
10       the errors or that it was just a done deal, so to
11       speak?
12  A.   Yeah.
13  Q.   Now, in regards to Spring Oaks, have you ever done
14       business with Spring Oaks?
15  A.   No.
16  Q.   So before this showed up on your credit report, did
17       you know who Spring Oaks was?
18  A.   No.
19  Q.   And have you ever signed any contracts with Spring
20       Oaks?
21  A.   No.
22  Q.   Now, in this present lawsuit, did you write your
23       complaint or -- your complaint being a lawsuit.
24       That's what a lawsuit is called.  Did you rely on
25       your attorneys to write that complaint for you?

Christopher Robinson vs. Spring Oaks Capital    Deposition of Christopher B. Robinson

Case 2:23-cv-01381-AMM   Document 44-2   Filed 10/10/24   Page 22 of 165

73

1   A.  **Professionally, yes.**
2   Q.  Professionally, yes.  And did you rely on your
3       attorneys to know what statutes may have been
4       violated according to the FDCPA?
5   A.  **At the time I didn't know until they mentioned it to**
6       **me.**
7   Q.  Okay.  Now, this debt that Spring Oaks purports that
8       they own, when you disputed it to Spring Oaks in
9       general, was it your belief that it would be
10      resolved?
11  A.  **Yes.**
12  Q.  And did you believe that Spring Oaks would mark that
13      account as disputed on your credit report?
14  A.  **Yes, ma'am.**
15  Q.  At any time did you tell Spring Oaks that it was
16      resolved?
17  A.  **No.**
18  Q.  So when you got your credit report back and you saw
19      that the account wasn't disputed or wasn't marked as
20      disputed or consumer disputes, it says that it was
21      resolved, how did that make you feel?
22  A.  **Like I had been lied to or taken advantage of.**
23  Q.  That's your question.  How did it make you feel in
24      your words?
25  A.  **How did it make me feel?  Like I had been used and**

74

1       **like anxiety issues, like made me really anxiety --**
2       **I can't say it.  Made me feel anxious.**
3   Q.  It made you feel anxious, okay.  And have you lost
4       any sleep over it?
5   A.  **Yes.  I take sleeping medication that don't work**
6       **half the time.**
7   Q.  Okay.  And even so, you know, even if you did take
8       sleeping medications, at the time that you
9       discovered it or when you discovered that this was
10      not disputed on your credit report, did that make
11      you lose sleep?
12  A.  **Yes.**
13  Q.  Has it caused any fights or discord in your
14      marriage?
15  A.  **Yes, ma'am.**
16  Q.  And has it caused any confusion in general in life?
17  A.  **Yes.**
18  Q.  Okay.  Now, once again, we touched a second ago on,
19      you know, relying on your attorneys to kind of help
20      you figure out maybe what rights had been violated,
21      but did you also rely on your attorneys about
22      damages or what kind of compensation you may be
23      entitled to if something had been violated here?
24          MR. ROSSMAN:  Objection; leading.  I mean,
25      it's a deposition, I'll let it go, but at some point

75

1       I'm going to start to squawk here, Patricia.
2           MS. LOCKHART:  Duly noted.
3   A.  **Do I answer it?**
4           MR. ROSSMAN:  Yeah.
5   A.  **Do I answer it?**
6   Q.  Yes.
7   A.  **Can you repeat the question again?**
8   Q.  It was just, you know, in general did you rely on
9       your attorneys to help you figure out what kind of
10      damages that you may be entitled to?
11  A.  **Yes, because I had no knowledge of anything like**
12      **that.**
13  Q.  Earlier you were asked about your expectations when
14      Spring Oaks -- or what your expectations were from
15      sending Spring Oaks a dispute letter and I just want
16      to ask about it too.  What were your expectations?
17      Like, did you expect anything to be done about it?
18  A.  **Yes.**
19  Q.  In your words --
20  A.  **Like it to be resolved.  That way I wouldn't have to**
21      **go to court and stuff like we're doing now.**
22      **Wouldn't have to miss work.**
23  Q.  And earlier we had touched on one of the sentences
24      Mr. Rossman picked up on that was in the complaint
25      and he had asked what that meant and he said, you

76

1       know, how do you think they might violate your
2       rights, I think was the caption or the sum of it.
3       And I kind of missed that answer.  When you said
4       violate your rights, what exactly in your answer
5       were you alluding to?  What did you feel might
6       happen?
7   A.  **The reputation with credit bureau and stuff like**
8       **that, like when I first -- like car, for example.  I**
9       **got a car and I paid it off.  It was, you know,**
10      **stuff like that.  Nothing major.**
11          MS. LOCKHART:  Okay.  And I think that's
12      all that I have.  I believe that's all I have for
13      now, Mr. Rossman.  Thank you.
14              EXAMINATION
15  BY MR. ROSSMAN:
16  Q.  I have some quick redirect so I'm going to try to do
17      the share screen again.  I'm looking at Exhibit F
18      which starts at Deposition Exhibit 41.
19      Mr. Robinson, we've been discussing your TransUnion
20      credit report, correct?
21  A.  **Yes.**
22  Q.  And in fact, this is what we're looking at right now
23      on the screen, Deposition Exhibit 41 is a copy of
24      your TransUnion credit report from November 29,
25      2023, correct?

Christopher Robinson vs. Spring Oaks Capital     Deposition of Christopher B. Robinson

Case 2:23-cv-01381-AMM   Document 44-2   Filed 10/10/24   Page 23 of 165

77

1  A.  Yes.
2  Q.  We discussed that there are inaccuracies on this
3      TransUnion credit report, correct?
4  A.  Yes, sir.
5  Q.  And specifically we discussed the fact that -- I'm
6      trying to scroll to the correct page here.  There
7      was incorrect information regarding Ally Financial
8      on your credit report?
9  A.  Yes.  They're in the process of fixing it too.  I
10     talked to them directly.
11 Q.  Got it.  We also discussed that there is incorrect
12     information on your credit report regarding
13     Covington Credit?
14 A.  Yes.
15 Q.  And we also discussed that there is inaccurate
16     information on your credit bureau report regarding
17     Discover Bank?
18 A.  Yes.  Even though it was paid.
19 Q.  And these are all on your TransUnion credit report.
20     We also discussed that there was inaccurate
21     information on your TransUnion credit report
22     regarding First Premier Bank?
23 A.  Yes.
24 Q.  And we discussed how these inaccuracies caused you
25     stress?

78

1  A.  Yes.
2  Q.  And we discussed how these inaccuracies caused you
3      anxiety?
4  A.  Yes, sir.
5  Q.  And then we also discussed that there was an
6      inaccurate trade line on your TransUnion credit
7      report regarding MRV Banks?
8  A.  Yes.
9  Q.  And we further discussed that there was an
10     inaccurate trade line on your TransUnion credit
11     report regarding Security Finance?
12 A.  Well, yeah, that one too.
13 Q.  They're marked as charged off.  We also discussed
14     how your TransUnion credit report contained an
15     inaccurate trade line for Wells Fargo Card Services?
16 A.  Yes.
17 Q.  And that was also on your TransUnion credit report?
18 A.  Yes, sir.
19 Q.  We discussed how -- get to the right page -- we
20     further discussed how there is inaccurate
21     information on your TransUnion credit report
22     regarding World Finance Corporation?
23 A.  Yes.
24 Q.  And we discussed how there is inaccurate information
25     on your credit report regarding LVNV Funding?

79

1  A.  Yes.
2  Q.  We also discussed how there is inaccurate
3      information on your TransUnion credit report
4      regarding Resurgent Receivables?
5  A.  Yes, sir.
6  Q.  And finally, we discussed how there is inaccurate
7      credit reporting on your credit report regarding
8      Spring Oaks Financial?
9  A.  Yes.
10 Q.  All these inaccuracies we discussed are on your
11     TransUnion credit report?
12 A.  I guess it is.  I don't know if it shows up on the
13     other two.
14 Q.  Why haven't you sued TransUnion?
15 A.  I didn't know if I could.  That's something new.
16     I've never done this before, like I said before,
17     until now.
18 Q.  Do you agree that TransUnion is publishing a report
19     with inaccurate information regarding you?
20 A.  I believe so.
21 Q.  And do you believe that that inaccurate TransUnion
22     report is harming you?
23 A.  Yes.  And with all the other remarks too, yes.  But
24     the remarks come from the vendor anyway, don't they?
25 Q.  If they didn't, would that change your answer?

80

1  A.  No.
2  Q.  So if TransUnion put those remarks on your credit
3      report instead of the furnishers, would that change
4      your answer as to who's liable here?
5  A.  I don't know.  Probably not because it comes from
6      the grantor.  Everything does.
7  Q.  It comes from where?
8  A.  The person who grants it.
9  Q.  The grantor?
10 A.  Like the customer.  If the customer makes a
11     complaint, it's against that company.
12 Q.  So is it your position that TransUnion has no
13     responsibility to you for publishing inaccurate
14     information on your credit report?
15 A.  The information gotta come from the vendor anyway,
16     right?
17 Q.  That's not my question.  My question is whether it's
18     your position that TransUnion is liable --
19 A.  They need to be held accountable, yes.  And so does
20     the other party too.
21 Q.  But you've never taken any action against
22     TransUnion?
23 A.  Not that I know of.
24 Q.  What other creditors have you sued?
25 A.  It would be the very first one and I got other ones

Christopher Robinson vs. Spring Oaks Capital    Deposition of Christopher B. Robinson

Case 2:23-cv-01381-AMM  Document 44-2  Filed 10/10/24  Page 24 of 165

81

1    **in line too.**
2  Q.  What other creditors are you going to sue?
3  A.  **Those that are on my credit report that I have no**
4    **affiliation with.**
5  Q.  Were you aware of that item on the credit report
6    before the deposition today?
7  A.  **Spring Oaks?**
8  Q.  Were you aware of the trade line -- we looked at
9    several trade lines here and you said you weren't
10    familiar with them.  I believe one of them was for
11    Covington?
12  A.  **Yeah.**
13  Q.  So were you familiar --
14  A.  **They got dispute letters just as well as Spring Oaks**
15    **did, all of them did.**
16  Q.  Have you ever read --
17  A.  **Sir?  I said every one of them -- everything it says**
18    **on there that I have no affiliation with does have**
19    **dispute letters that were sent to them.**
20          MR. ROSSMAN:  Got it.  I have no further
21    questions.
22          MS. LOCKHART:  Me neither.
23          MR. ROSSMAN:  Do you want to read and sign
24    the transcript?  I think that's the last piece of
25    business that we need to figure out here.

82

1          MS. LOCKHART:  How do we do that via
2    video?  Are you going to send us a copy?
3          MR. ROSSMAN:  She'll provide us with a
4    copy.
5          MS. LOCKHART:  Yes.  I would definitely
6    like a copy.
7          MR. ROSSMAN:  And I would as well.
8          (Whereupon, the deposition concluded at
9    approximately 2:06 p.m.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Christopher Robinson vs. Spring Oaks Capital          Deposition of Christopher B. Robinson

Case 2:23-cv-01381-AMM   Document 44-2   Filed 10/10/24   Page 25 of 165

83

1                           **ERRATA SHEET**

2          DEPONENT:  CHRISTOPHER ROBINSON

3          RE:  CHRISTOPHER ROBINSON vs. SPRING OAKS CAPITAL

4          REPORTER:  Tracy Jo Wold

5          <u>Page No</u>.  <u>Line No</u>.  <u>Correction/Reason</u>:

6          _____   _____   _____

7          _____   _____   _____

8          _____   _____   _____

9          _____   _____   _____

10         _____   _____   _____

11         _____   _____   _____

12         _____   _____   _____

13         _____   _____   _____

14         _____   _____   _____

15         _____   _____   _____

16         _____   _____   _____

17         _____   _____   _____

18         _____   _____   _____

19         _____   _____   _____

20

21         _____          _____
           Date               Signature

22         <u>**RETURN PROCEDURE**</u>:   **RETURN BY:  JUNE 5, 2024**

23         **Return this original errata sheet to: John Rossman**

24         Retain a copy for your records

25         E-mail a copy to reporter and all counsel of record

84

1    STATE OF MINNESOTA)
                      )  SS
2    COUNTY OF SCOTT   )

3              Be it known that I took the deposition of
     CHRISTOPHER B. ROBINSON on April 23, 2024, via Zoom;
4
               That I was then and there a notary public
5    in and for the County of Scott, State of Minnesota,
     and that by virtue thereof I was duly authorized to
6    administer an oath;

7              That the witness before testifying was by
     me first duly sworn to testify to the whole truth
8    and nothing but the truth relative to said cause;

9              That the testimony of said witness was
     recorded in stenotype by myself and transcribed into
10   typewriting, and that the deposition is a true
     record of testimony given by the witness to the best
11   of my ability;

12             That I am not related to any of the
     parties hereto nor interested in the outcome of the
13   action;

14             That I am not financially interested in
     the action and have no contract with the parties,
15   attorneys, or persons with an interest in the action
     that affects or has a substantial tendency to affect
16   my impartiality;

17             That all parties who ordered copies have
     been charged at the same rate for such copies;

18

19
               WITNESS MY HAND AND SEAL THIS 30th day of
20   April, 2024.

21

22

23   _____
     Tracy Jo Wold
24   Court Reporter

25

Christopher Robinson vs. Spring Oaks Capital    Deposition of Christopher B. Robinson

Case 2:23-cv-01381-AMM   Document 44-2   Filed 10/10/24   Page 27 of 165

1

**$**

**$200** [1] - 65:2

**'**

**'18** [1] - 11:11
**'21** [1] - 17:25

**1**

**1** [13] - 10:17, 10:20, 23:18, 23:20, 24:8, 25:8, 25:20, 25:21, 25:25, 26:25, 32:17, 42:11, 63:21
**10** [5] - 10:18, 28:16, 28:20, 31:5, 31:6
**10/31/22** [1] - 3:18
**108** [1] - 59:10
**109** [1] - 60:6
**10th** [1] - 70:20
**11** [1] - 50:21
**12** [1] - 31:5
**12:00** [1] - 2:6
**13** [3] - 34:23, 34:25, 62:24
**15** [5] - 31:6, 33:22, 34:15, 35:4
**1692** [1] - 33:22
**1692 a(5)** [1] - 34:15
**17** [3] - 35:10, 35:11, 35:25
**18** [4] - 29:6, 35:21, 47:15, 70:18
**18-wheeler** [6] - 7:7, 9:10, 23:21, 23:23, 24:1, 53:21
**18th** [1] - 29:7
**19** [4] - 61:24, 62:22, 64:19, 64:22
**1982** [1] - 6:17
**19th** [2] - 2:10, 6:17
**1:25** [1] - 60:1
**1:50** [1] - 71:12

**2**

**20** [5] - 11:2, 27:20, 29:3, 36:2, 36:3
**2015** [1] - 9:13
**2016** [1] - 9:13
**2019** [3] - 9:13, 11:11, 24:2
**2021** [14] - 7:9, 7:10, 7:11, 17:19, 29:6, 29:7, 29:17, 43:5, 43:6, 47:15, 50:21, 65:15, 65:16, 65:18
**2022** [15] - 11:7, 13:6, 13:24, 17:24, 18:14,

18:17, 18:21, 26:1, 26:5, 27:16, 35:6, 51:24, 60:16, 60:17, 62:24
**2023** [16] - 26:3, 35:22, 35:23, 49:11, 49:12, 49:17, 65:19, 65:20, 65:21, 66:4, 66:5, 66:6, 66:15, 66:23, 68:19, 76:25
**2024** [7] - 1:14, 2:5, 70:20, 70:24, 83:22, 84:3, 84:20
**2026** [1] - 57:9
**2027** [4] - 49:22, 53:13, 54:6, 54:11
**2028** [2] - 51:11, 70:7
**2029** [1] - 52:6
**21** [1] - 35:22
**22** [1] - 39:5
**22nd** [1] - 18:13
**23** [3] - 1:14, 2:5, 84:3
**24140** [1] - 2:14
**242-1277** [1] - 1:23
**25** [1] - 9:15
**27** [2] - 13:24, 60:16
**27th** [4] - 13:6, 18:14, 18:17, 18:21
**28th** [1] - 35:23
**29** [3] - 31:18, 66:23, 76:24
**29th** [1] - 66:15
**2:06** [1] - 82:9
**2:23-cv-01381-AMM** [1] - 1:5

**3**

**3** [6] - 25:21, 25:23, 25:25, 28:17, 35:6, 60:17
**301** [1] - 2:10
**30th** [1] - 84:19
**31st** [1] - 27:16
**34747** [2] - 13:9, 13:10
**35203** [1] - 2:11
**3527** [3] - 12:3, 12:6, 64:5
**35622** [2] - 27:21, 29:4

**4**

**4** [5] - 23:18, 23:20, 24:8, 25:8, 42:12
**4/5/22** [1] - 3:12
**40:16** [1] - 4:2
**40:2** [1] - 4:2

**41** [5] - 41:4, 41:8, 66:14, 76:18, 76:23
**45** [2] - 42:23, 42:24
**49** [2] - 43:16, 45:17

**5**

**5** [13] - 3:8, 3:12, 3:13, 3:15, 3:17, 3:19, 3:21, 3:22, 24:13, 24:16, 25:11, 25:16, 83:22
**50** [2] - 9:15, 46:16
**51** [1] - 47:8
**53** [1] - 49:2
**54** [2] - 49:20
**55424** [1] - 2:14
**55444** [1] - 1:23
**57** [1] - 50:12
**5th** [2] - 11:6, 43:5

**6**

**6** [3] - 12:21, 29:19, 60:8
**616** [1] - 1:22

**7**

**7** [6] - 6:17, 12:21, 13:20, 42:8, 43:21, 51:24
**74:24** [1] - 4:3
**75** [1] - 54:20
**763** [1] - 1:23
**79th** [1] - 1:22

**8**

**8** [3] - 12:21, 12:24, 26:23

**9**

**9** [3] - 10:17, 34:11, 63:20
**9/27/22** [2] - 3:14, 3:16
**90** [2] - 6:1, 6:2

**A**

**a.m** [1] - 25:25
**ability** [1] - 84:11
**able** [1] - 25:15
**above-entitled** [1] - 5:6
**absolutely** [3] - 25:17, 59:20, 64:23
**according** [1] - 73:4
**account** [64] - 12:1, 12:2, 12:3, 12:5, 12:8,

12:11, 18:10, 35:13, 35:14, 35:17, 35:23, 35:24, 43:25, 44:2, 44:5, 44:7, 44:8, 44:25, 45:10, 45:18, 45:23, 46:2, 46:21, 47:11, 48:2, 48:5, 48:15, 48:19, 48:21, 49:7, 49:16, 50:17, 50:20, 51:3, 53:17, 53:22, 53:23, 54:21, 56:14, 57:14, 58:9, 58:24, 64:3, 64:4, 64:8, 64:9, 67:9, 67:11, 67:19, 67:21, 67:23, 67:24, 68:9, 68:12, 68:16, 69:1, 69:2, 69:11, 70:3, 70:12, 70:21, 73:13, 73:19
**accountable** [1] - 80:19
**accounts** [11] - 43:17, 59:8, 66:17, 66:19, 66:22, 67:7, 68:4, 68:8, 68:14, 68:15
**accurate** [11] - 48:15, 48:16, 49:15, 53:1, 53:5, 53:12, 53:25, 54:10, 54:12, 55:10, 55:15
**Act** [1] - 32:21
**act** [1] - 33:22
**Action** [1] - 1:5
**action** [8] - 5:6, 32:19, 33:6, 33:20, 80:21, 84:13, 84:14, 84:15
**actions** [3] - 60:15, 60:24, 61:3
**added** [1] - 43:24
**address** [7] - 11:2, 11:4, 11:6, 11:9, 13:2, 17:5, 29:5
**addressed** [4] - 10:24, 27:20, 28:25, 29:2
**ADHD** [1] - 36:13
**administer** [1] - 84:6
**Admission** [2] - 3:24, 59:13
**advantage** [1] - 73:22
**adverse** [5] - 43:17, 43:20, 43:23, 44:2, 55:24
**affect** [1] - 84:15
**affects** [1] - 84:15
**affiliated** [1] - 8:14
**affiliation** [2] - 81:4,

81:18
**afternoon** [1] - 5:10
**agents** [1] - 33:23
**ago** [3] - 15:14, 63:13, 74:18
**agree** [3] - 53:12, 66:10, 79:18
**agreed** [2] - 40:1, 46:3
**agreement** [1] - 40:3
**ahead** [10] - 12:13, 12:14, 13:18, 17:7, 25:19, 31:14, 34:10, 44:15, 45:25, 67:22
**ain't** [5] - 16:14, 45:6, 47:1, 67:18, 69:25
**al** [1] - 1:6
**Alabama** [18] - 2:11, 6:20, 7:25, 9:3, 9:20, 11:3, 16:14, 16:25, 17:2, 27:21, 29:4, 29:20, 29:21, 29:24, 30:5, 30:7, 30:11, 31:24
**ALABAMA** [1] - 1:1
**alleged** [1] - 60:12
**allegedly** [2] - 34:12, 34:18
**allowance** [1] - 9:15
**alluding** [1] - 76:5
**Ally** [6] - 44:3, 44:5, 44:24, 46:2, 46:21, 77:7
**almost** [3] - 11:13, 64:20, 66:20
**American** [3] - 62:8, 62:10, 62:16
**amount** [1] - 39:12
**AND** [1] - 84:19
**anguish** [1] - 60:13
**answer** [14] - 6:6, 6:7, 30:22, 38:17, 40:6, 40:9, 40:12, 40:21, 75:3, 75:5, 76:3, 76:4, 79:25, 80:4
**anxiety** [22] - 36:6, 36:13, 36:16, 36:19, 36:21, 36:25, 37:8, 38:13, 38:18, 38:22, 39:21, 47:2, 51:18, 52:13, 53:9, 54:13, 55:17, 57:20, 62:1, 74:1, 78:3
**anxious** [3] - 60:23, 74:2, 74:3
**anyway** [4] - 25:2, 47:4, 79:24, 80:15
**appeared** [2] - 2:11, 2:15
**application** [5] -

Christopher Robinson vs. Spring Oaks Capital     Deposition of Christopher B. Robinson

Case 2:23-cv-01381-AMM   Document 44-2   Filed 10/10/24   Page 28 of 165

2

62:23, 63:1, 63:2, 63:5, 64:24

**applications** [1] - 63:4

**applied** [5] - 62:2, 62:15, 63:9, 68:13, 69:14

**apply** [2] - 62:6, 62:10

**applying** [1] - 63:12

**appreciate** [2] - 33:17, 70:14

**approve** [1] - 14:12

**approved** [3] - 63:7, 65:2, 65:5

**April** [5] - 1:14, 2:5, 11:6, 84:3, 84:20

**area** [1] - 13:14

**arises** [3] - 32:20, 33:6, 33:20

**asserting** [2] - 37:5, 37:8

**ATTORNEY** [1] - 2:13

**attorney** [6] - 5:11, 14:21, 15:16, 33:2, 40:18, 40:21

**attorney 's** [2] - 39:7, 39:22

**attorney -client** [2] - 40:18, 40:21

**attorneys** [8] - 14:24, 15:7, 72:25, 73:3, 74:19, 74:21, 75:9, 84:15

**authorized** [1] - 84:5

**auto** [1] - 30:2

**Automation** [3] - 16:13, 17:2, 71:25

**automation** [3] - 16:25, 17:18, 18:23

**Avenue** [1] - 1:22

**aware** [4] - 35:19, 48:2, 81:5, 81:8

### B

**background** [1] - 71:7

**balance** [2] - 48:10, 55:14

**Bank** [15] - 12:1, 12:5, 12:8, 16:8, 18:10, 50:14, 50:18, 51:3, 57:14, 57:24, 64:4, 69:18, 69:21, 69:23, 77:22

**bank** [9] - 49:3, 58:25, 66:23, 66:25, 67:2, 67:25, 68:5, 69:18, 77:17

**Banks** [2] - 51:21, 78:7

**barks** [1] - 21:16

**based** [3] - 10:21, 11:19, 40:21

**Bate** [1] - 63:20

**bates** [1] - 27:4

**Bates** [4] - 10:17, 12:19, 26:25, 28:17

**beginning** [1] - 63:22

**behalf** [2] - 2:12, 2:15

**behind** [1] - 44:12

**belief** [1] - 73:9

**belong** [3] - 56:11, 59:8, 61:11

**belongs** [1] - 52:14

**below** [4] - 13:7, 43:4, 43:20, 45:16

**best** [4] - 13:13, 72:7, 72:8, 84:10

**better** [1] - 41:4

**between** [8] - 24:3, 24:8, 24:9, 26:6, 37:22, 42:11, 57:25, 61:14

**bill** [4] - 28:22, 28:24, 28:25, 37:16

**Birmingham** [1] - 2:11

**birth** [2] - 6:16, 17:5

**bit** [8] - 9:24, 11:15, 29:16, 31:20, 34:24, 41:4, 47:14, 63:8

**BLNC** [1] - 46:17

**blood** [5] - 36:21, 37:17, 37:19, 37:20, 37:23

**BOGUCKI** [1] - 1:22

**borrow** [1] - 55:3

**bottom** [3] - 47:7, 49:1, 50:12

**bought** [1] - 44:22

**Box** [1] - 2:14

**brackets** [1] - 43:24

**Brandon** [1] - 6:15

**breach** [8] - 16:9, 16:11, 17:9, 17:17, 17:21, 18:2, 18:5, 19:8

**break** [6] - 5:23, 5:25, 6:3, 6:4, 59:18, 60:1

**breaks** [1] - 24:9

**brightness** [1] - 21:14

**Brigit** [2] - 67:25, 68:4

**bring** [2] - 70:3

**Brooklyn** [1] - 1:23

**brought** [1] - 5:13

**Buffalo** [2] - 30:5, 30:14

**Building** [1] - 2:10

**bunch** [1] - 56:10

**bureau** [18] - 46:21, 48:3, 48:21, 49:25, 52:7, 52:9, 52:12, 52:17, 53:4, 55:18, 55:24, 56:6, 57:12, 65:24, 66:1, 66:22, 76:7, 77:16

**bureau 's** [1] - 46:12

**Burney** [2] - 27:20, 29:3

**burney** [1] - 11:3

**business** [4] - 30:11, 30:12, 72:14, 81:25

**busy** [1] - 26:16

**buy** [1] - 9:3

**BY** [13] - 3:7, 5:9, 10:11, 12:22, 27:14, 33:3, 40:14, 40:24, 41:6, 60:4, 71:21, 76:15, 83:22

### C

**CAPITAL** [2] - 1:6, 83:3

**Capital** [24] - 3:12, 3:23, 5:12, 11:16, 12:10, 18:18, 19:18, 22:10, 22:15, 24:19, 27:24, 28:2, 32:4, 36:24, 37:5, 49:5, 57:22, 58:4, 58:19, 59:12, 64:14, 65:17, 68:20, 68:24

**capital** [3] - 7:6, 8:20, 9:4

**caption** [1] - 76:2

**car** [8] - 21:11, 21:16, 21:18, 44:16, 44:19, 46:14, 76:8, 76:9

**Card** [7] - 53:17, 63:6, 64:24, 64:25, 65:19, 66:1, 78:15

**card** [38] - 7:9, 15:8, 17:6, 20:22, 27:2, 28:24, 29:10, 29:12, 29:13, 31:8, 31:11, 34:22, 38:4, 38:6, 49:4, 52:11, 58:1, 62:8, 63:9, 63:12, 64:13, 66:24, 67:1, 67:3, 67:5, 67:16, 67:18, 68:13, 69:14, 69:15, 69:22, 69:23, 69:24, 69:25, 70:6

**cards** [8] - 12:9, 21:25, 37:13, 63:7, 65:8, 65:11, 65:16,

**care** [3] - 18:25, 72:5, 72:9

**Carl** [2] - 7:22, 8:4

**cases** [1] - 44:1

**cash** [1] - 30:3

**caused** [4] - 36:4, 38:13, 38:18, 45:7, 74:13, 74:16, 77:24, 78:2

**causes** [1] - 55:21

**causing** [3] - 38:22, 61:12, 61:13

**cell** [1] - 23:2

**Celtic** [10] - 12:1, 12:5, 12:8, 16:8, 18:10, 57:24, 64:4, 69:18, 69:21, 69:23

**center** [1] - 34:25

**centered** [2] - 36:3, 41:9

**central** [1] - 60:1

**certainly** [2] - 6:3, 28:9

**change** [2] - 79:25, 80:3

**charge** [12] - 29:18, 39:24, 46:17, 46:19, 49:8, 49:18, 50:8, 50:10, 51:8, 52:23, 53:4, 53:6

**charge -off** [8] - 49:8, 49:18, 50:8, 50:10, 51:8, 52:23, 53:4, 53:6

**charged** [14] - 44:9, 45:10, 47:25, 48:2, 48:10, 49:16, 50:7, 52:3, 53:25, 55:7, 55:14, 78:13, 84:17

**charges** [2] - 7:9, 29:17

**Chevron** [1] - 30:1

**Chris** [1] - 71:22

**CHRISTOPHER** [8] - 1:3, 1:13, 2:2, 3:5, 5:5, 83:2, 83:3, 84:3

**Christopher** [4] - 6:13, 10:13, 10:25, 29:3

**chronological** [2] - 27:4, 27:7

**cigarette** [1] - 59:22

**circuit** [1] - 31:23

**Civil** [1] - 1:5

**claim** [6] - 15:20, 15:24, 16:5, 19:24, 20:10, 20:18

**claimed** [1] - 35:1

**clarification** [4] - 8:13, 8:25, 19:10,

65:18

**class** [1] - 13:6

**clear** [2] - 17:8, 40:20

**clearly** [1] - 68:19

**client** [3] - 40:6, 40:18, 40:21

**client 's** [3] - 36:24, 36:25, 37:18

**close** [3] - 30:19, 31:4, 70:22

**closed** [2] - 24:14, 25:14

**coastal** [2] - 67:25, 68:4

**code** [3] - 13:9, 13:14, 13:15

**collect** [3] - 33:24, 34:2, 34:7

**collecting** [3] - 61:1, 61:5, 61:10

**Collection** [2] - 32:21, 33:22

**collection** [34] - 34:5, 56:15, 57:6, 58:11

**collector** [2] - 11:17, 38:3

**collectors** [1] - 25:13

**coming** [1] - 37:11

**commencing** [1] - 2:6

**communicate** [8] - 22:18, 22:19, 22:22, 23:17, 24:12, 24:16, 25:7, 42:14

**communicated** [1] - 25:11

**community** [2] - 67:25, 68:5

**companies** [1] - 16:20

**company** [11] - 7:17, 7:19, 7:25, 8:1, 8:6, 8:14, 18:23, 23:24, 26:4, 55:3, 80:11

**compensation** [1] - 74:22

**complaint** [8] - 31:19, 32:9, 39:5, 72:23, 72:25, 75:24, 80:11

**completed** [4] - 9:22, 45:20, 46:5, 46:9

**completely** [1] - 33:15

**compromised** [5] - 16:17, 16:20, 18:4, 18:23, 71:24

**concern** [1] - 23:7

**conclude** [1] - 71:4

**concluded** [1] - 82:8

Christopher Robinson vs. Spring Oaks Capital     Deposition of Christopher B. Robinson

Case 2:23-cv-01381-AMM   Document 44-2   Filed 10/10/24   Page 29 of 165

3

conclusion [1] - 34:3
conclusions [1] - 33:1
conduct [6] - 30:11, 36:4, 36:24, 36:25, 37:18, 37:23
confusion [1] - 74:16
connection [3] - 19:2, 19:5, 28:18
considered [1] - 43:23
constantly [2] - 60:24, 61:4
consumer [7] - 33:24, 34:2, 34:7, 45:21, 46:10, 56:14, 73:20
contact [2] - 42:11, 42:17
contained [1] - 78:14
continue [1] - 39:3, 39:4, 40:19
CONTINUING [8] - 10:11, 12:22, 27:14, 33:3, 40:14, 40:24, 41:6, 60:4
contract [1] - 84:14
contracts [1] - 72:19
convenient [4] - 22:19, 23:16, 24:11, 24:15
copies [2] - 84:17, 84:17
copy [7] - 59:17, 76:23, 82:2, 82:4, 82:6, 83:24, 83:25
corner [1] - 13:3
Corporation [5] - 54:21, 54:22, 55:19, 69:11, 78:22
correct [20] - 23:9, 24:2, 26:2, 26:11, 40:23, 44:10, 45:4, 45:8, 46:22, 51:1, 54:24, 56:15, 62:18, 63:25, 64:23, 68:21, 76:20, 76:25, 77:3, 77:6
Correction /Reason [1] - 83:5
costs [2] - 39:7, 39:23
counsel [1] - 83:25
country [1] - 9:11
county [2] - 30:25, 31:23
COUNTY [1] - 84:2
County [2] - 2:4, 84:5
couple [5] - 5:15, 26:19, 58:8, 71:9,

71:22
course [1] - 9:8
COURT [2] - 1:1, 1:22
court [8] - 6:9, 31:23, 37:7, 39:17, 39:19, 58:16, 61:9, 75:21
Court [1] - 84:24
covering [1] - 61:17
COVID -19 [1] - 38:7
Covington [5] - 47:9, 48:8, 48:15, 77:13, 81:11
created [1] - 66:15
Credit [4] - 57:14, 65:5, 66:2
credit [119] - 3:21, 7:9, 12:9, 20:22, 21:25, 27:2, 28:24, 29:10, 29:12, 31:8, 31:11, 33:8, 33:16, 34:21, 34:22, 35:13, 35:16, 37:13, 38:4, 39:9, 39:16, 41:11, 41:12, 42:19, 42:21, 43:7, 43:13, 43:21, 45:3, 46:12, 46:21, 47:9, 48:3, 48:12, 48:14, 48:18, 48:21, 49:4, 49:9, 49:11, 49:25, 50:3, 50:9, 51:14, 51:17, 52:6, 52:9, 52:11, 52:12, 52:16, 53:4, 54:7, 54:10, 55:18, 55:24, 56:6, 56:10, 57:12, 57:17, 57:25, 58:10, 60:18, 61:7, 62:2, 62:3, 62:6, 62:8, 62:10, 62:16, 62:20, 62:23, 63:4, 63:6, 63:12, 63:14, 64:11, 64:13, 65:8, 65:11, 65:16, 65:18, 65:24, 65:25, 66:22, 66:24, 68:13, 68:19, 68:24, 68:25, 69:15, 72:16, 73:13, 73:18, 74:10, 76:7, 76:20, 76:24, 77:3, 77:8, 77:12, 77:13, 77:16, 77:19, 77:21, 78:6, 78:10, 78:14, 78:17, 78:21, 78:25, 79:3, 79:7, 79:11, 80:2, 80:14, 81:3, 81:5
creditor [3] - 48:5, 62:25, 63:1
creditors [5] - 42:10, 42:11, 52:20, 80:24, 81:2

Cullman [1] - 30:25
current [3] - 66:17, 66:19, 67:24
customer [2] - 80:10

**D**

damages [11] - 36:5, 36:6, 36:9, 39:7, 39:8, 39:12, 39:15, 60:12, 61:25, 74:22, 75:10
data [8] - 17:9, 17:10, 17:11, 17:17, 17:21, 18:2, 18:5, 19:8
date [13] - 6:16, 17:5, 38:12, 40:15, 43:4, 43:22, 47:15, 51:23, 57:8, 63:1, 65:14, 67:4, 68:18
Date [1] - 83:21
dated [10] - 3:12, 3:14, 3:16, 3:18, 13:24, 18:13, 18:17, 18:21, 27:16, 60:16
dates [1] - 63:5
days [3] - 23:3, 26:8, 26:15
deal [3] - 39:18, 72:10
death [2] - 38:24
Debt [1] - 32:21
debt [17] - 11:17, 15:19, 16:2, 25:13, 33:21, 33:24, 34:2, 34:7, 34:14, 34:22, 38:3, 56:18, 60:15, 61:1, 61:5, 61:11, 73:7
debts [6] - 15:20, 15:24, 16:5, 19:24, 20:10, 20:17
Decatur [5] - 16:14, 16:25, 17:2, 17:18, 18:23
December [2] - 9:13, 53:13
deem [2] - 56:3, 56:6
default [1] - 44:24
defendant [13] - 32:5, 33:23, 34:25, 35:1, 35:5, 35:6, 35:12, 35:14, 35:16, 35:17, 35:22, 36:4, 39:8
defendant 's [5] - 32:20, 33:6, 33:21, 60:14, 62:22
Defendants [1] - 1:7, 2:15
defined [1] - 34:14
definitely [3] - 5:19, 5:22, 82:5

delinquency [1] - 43:22
delivered [1] - 35:5
demand [1] - 63:23
demanded [1] - 32:7
denied [3] - 62:2, 62:7, 62:17
DEPONENT [1] - 83:2
deposes [1] - 5:7
DEPOSITION [1] - 1:13
deposition [36] - 5:14, 5:16, 5:20, 10:13, 12:21, 12:24, 13:20, 26:22, 26:23, 27:6, 28:16, 28:20, 31:18, 41:3, 41:8, 42:8, 42:24, 45:16, 47:7, 49:2, 49:20, 50:13, 54:20, 59:9, 60:6, 63:16, 63:23, 66:14, 71:5, 74:25, 76:18, 76:23, 81:6, 82:8, 84:3, 84:10
Deposition [7] - 2:1, 2:3, 5:3, 10:16, 10:20, 43:16, 63:21
depression [7] - 36:6, 36:13, 36:16, 36:19, 36:21, 36:25, 39:20
describe [5] - 33:5, 34:16, 35:15, 36:9, 39:13
description [2] - 39:14
despite [1] - 35:11
detail [2] - 36:10, 36:11
diem [1] - 9:18
different [13] - 16:9, 16:12, 36:20, 40:8, 67:19, 67:21, 67:23, 68:23, 69:1, 69:3, 69:8, 69:9, 70:11
Digital [7] - 63:6, 65:3, 65:4, 65:20, 68:12, 68:14, 68:25
digits [1] - 12:3, 69:5
directly [1] - 77:10
disagreed [2] - 45:21, 46:10
disclosing [1] - 38:23
discord [1] - 74:13
discover [9] - 12:9, 38:6, 49:3, 52:15, 58:25, 65:8, 65:17, 77:17
discovered [2] - 74:9

discovery [6] - 15:4, 15:8, 28:22, 38:5, 68:12, 70:17
discussed [16] - 77:2, 77:5, 77:11, 77:15, 77:20, 77:24, 78:2, 78:5, 78:9, 78:13, 78:19, 78:20, 78:24, 79:2, 79:6, 79:10
discussing [1] - 76:19
Discussion [1] - 10:10
dishonest [3] - 60:24, 61:3, 61:7
dispute [29] - 16:5, 16:7, 19:18, 19:24, 20:10, 20:17, 35:19, 41:20, 41:22, 41:25, 42:2, 42:9, 42:10, 45:21, 45:23, 46:2, 46:6, 46:10, 56:18, 57:2, 58:9, 58:18, 60:15, 60:18, 60:20, 60:15, 75:15, 81:14, 81:19
dispute -consumer [2] - 45:21, 46:10
dispute -now [1] - 58:9
disputed [16] - 35:14, 35:18, 35:24, 48:5, 56:14, 58:24, 60:15, 60:19, 61:1, 61:5, 61:11, 73:8, 73:13, 73:19, 73:20, 74:10
disputes [1] - 73:20
disputing [3] - 15:19, 33:13, 60:21
distress [2] - 60:14, 62:1
DISTRICT [2] - 1:1, 1:1
DIVISION [1] - 1:2
doc tor [1] - 36:15
document [24] - 10:22, 10:23, 12:25, 13:24, 14:2, 14:4, 14:5, 22:13, 27:1, 28:8, 28:18, 28:21, 31:15, 31:23, 31:24, 32:12, 32:14, 32:16, 40:25, 41:10, 47:5, 59:10, 59:14, 59:16
document 's [1] - 32:15
documentation [2] - 22:4, 22:7
Documents [2] -

Christopher Robinson vs. Spring Oaks Capital          Deposition of Christopher B. Robinson

Case 2:23-cv-01381-AMM   Document 44-2   Filed 10/10/24   Page 30 of 165

4

3:24, 59:13

**documents** [9] -
5:17, 9:25, 10:1, 10:2,
22:14, 26:19, 39:3,
40:20, 62:19

**dog** [1] - 21:16

**dollar** [1] - 39:12

**dollars** [1] - 9:15

**done** [14] - 14:20,
17:4, 19:1, 19:13,
25:12, 33:12, 58:22,
59:1, 70:23, 72:4,
72:10, 72:13, 75:17,
79:16

**DOT** [5] - 8:7, 8:9,
8:10, 8:12, 8:14

**down** [7] - 11:15,
13:21, 28:9, 29:15,
43:14, 47:14, 51:20

**downtown** [1] - 31:1

**draft** [1] - 19:4

**drafted** [1] - 14:19

**drive** [3] - 24:3,
30:12, 30:21

**driving** [10] - 7:12,
7:13, 9:2, 9:5, 9:8,
23:20, 23:23, 24:1,
26:6, 53:21

**drove** [3] - 7:7, 9:10,
30:13

**duly** [5] - 5:2, 5:7,
75:2, 84:5, 84:7

**dump** [6] - 7:12, 7:14,
8:6, 9:5, 24:3, 26:6

**during** [1] - 26:10

**dying** [1] - 38:25

**E**

**E-mail** [1] - 83:25

**early** [1] - 65:7

**Edina** [1] - 2:14

**efforts** [6] - 33:24,
34:1, 34:6, 34:7,
49:24, 50:2

**either** [2] - 20:11,
22:1

**Electronic** [1] - 3:20

**email** [8] - 20:11,
22:20, 22:22, 23:17,
24:23, 42:14, 42:17,
59:17

**emails** [2] - 24:18,
24:21

**emblem** [3] - 28:3,
28:5

**emotional** [2] -
60:14, 61:25

**employed** [1] - 6:21

**employer** [1] - 7:15

**employers** [1] - 43:2

**employment** [1] -
7:10

**end** [2] - 17:25, 65:20

**ending** [2] - 12:5,
64:5

**entire** [3] - 13:21,
31:21, 33:20

**entitled** [5] - 5:6,
39:6, 39:8, 74:23,
75:10

**entry** [2] - 52:12,
66:15

**ERRATA** [1] - 83:1

**errata** [1] - 83:23

**error** [1] - 50:9

**errors** [1] - 72:10

**estimated** [5] - 49:21,
51:10, 52:5, 53:12,
57:8

**et** [2] - 1:6, 33:22

**exactly** [2] - 39:12,
76:4

**EXAMINATION** [4] -
3:7, 5:8, 71:20, 76:14

**example** [1] - 76:8

**examples** [1] - 32:24

**except** [2] - 49:4,
52:15

**exhibit** [19] - 10:12,
12:14, 12:15, 12:18,
26:20, 28:16, 28:20,
31:17, 31:18, 41:1,
41:3, 42:7, 42:20,
45:16, 49:20, 63:17,
76:17

**Exhibit** [17] - 10:16,
10:20, 12:21, 12:24,
13:20, 26:23, 41:8,
42:8, 43:16, 47:8,
49:2, 54:20, 59:10,
63:21, 66:14, 76:18,
76:23

**exhibits** [5] - 26:22,
27:9, 42:24, 50:13,
60:6

**EXHIBITS** [1] - 3:11

**Exhibits** [1] - 5:3

**expand** [1] - 29:16

**expect** [2] - 59:7,
75:17

**expectation** [2] -
58:18, 58:20

**expectations** [3] -
75:13, 75:14, 75:16

**expecting** [1] - 5:25

**expenses** [1] - 9:7

**expires** [1] - 70:7

**explain** [1] - 61:6

**Express** [3] - 62:8,

62:11, 62:16

**F**

**fact** [2] - 76:22, 77:5

**factors** [1] - 38:21

**Fair** [1] - 32:21

**fair** [3] - 33:4, 33:21,
40:13

**Falkville** [5] - 6:20,
11:3, 27:21, 29:4, 31:1

**false** [3] - 46:11,
46:20, 62:19

**familiar** [6] - 29:20,
48:22, 57:1, 67:25,
81:10, 81:13

**family** [3] - 34:13,
34:19, 38:24

**far** [4] - 9:5, 11:10,
30:7, 65:23

**Fargo** [3] - 53:17,
54:17, 78:15

**fast** [3] - 27:9, 28:10,
30:21

**FCRA** [4] - 45:20,
46:5, 46:10, 56:14

**FDCPA** [5] - 33:23,
35:12, 73:4

**fee** [3] - 39:25, 40:3

**fees** [2] - 39:7, 39:22

**few** [4] - 7:4, 24:4,
30:3, 42:22

**fights** [1] - 74:13

**figure** [5] - 67:7,
67:12, 74:20, 75:9,
81:25

**file** [1] - 43:21

**Filing** [1] - 3:20

**final** [4] - 22:2, 23:15,
46:3

**finally** [1] - 79:6

**Finance** [10] - 52:18,
52:19, 52:20, 54:21,
54:22, 55:2, 55:19,
69:10, 78:11, 78:22

**financial** [4] - 34:12,
34:18, 46:2, 79:8

**Financial** [4] - 44:3,
44:5, 44:25, 46:21,
77:7

**financially** [1] - 84:14

**first** [24] - 5:7, 11:15,
13:6, 15:7, 15:8,
16:23, 16:24, 18:25,
19:16, 26:21, 34:17,
41:13, 43:1, 44:2,
57:23, 58:22, 58:25,
59:5, 66:13, 69:21,
70:19, 76:8, 80:25,
84:7

**First** [14] - 3:23,
50:14, 50:17, 51:3,
59:12, 63:6, 65:3,
65:4, 65:20, 66:1,
68:12, 68:14, 68:25,
77:22

**first-class** [1] - 13:6

**five** [1] - 30:10

**fixing** [1] - 77:9

**focus** [2] - 61:2, 63:8

**follow** [1] - 71:8

**followed** [2] - 17:3,
72:3

**following** [1] - 5:1

**follows** [1] - 5:7

**font** [3] - 13:21,
29:16, 31:20

**Foodmart** [1] - 29:23

**FOR** [1] - 1:1

**forget** [1] - 71:7

**forgot** [1] - 33:10

**forty** [1] - 30:10

**forty-five** [1] - 30:10

**forward** [1] - 40:25

**four** [9] - 11:13, 12:2,
31:2, 36:20, 69:2,
69:4, 69:5, 69:6, 69:8

**free** [1] - 23:21

**Friday** [1] - 23:18

**front** [2] - 8:8, 69:8

**FS** [1] - 29:13

**full** [6] - 6:12, 7:1,
46:17, 46:19, 49:7,
50:6

**full/was** [1] - 46:17

**Funding** [5] - 55:23,
56:1, 56:4, 56:7, 78:25

**furnishers** [1] - 80:3

**G**

**general** [3] - 73:9,
74:16, 75:8

**generally** [3] - 31:10,
43:23, 67:10

**genesis** [1] - 29:13

**geography** [1] -
30:19

**given** [3] - 19:8,
71:24, 84:10

**goal** [1] - 6:1

**gotta** [2] - 31:2, 80:15

**grade** [1] - 9:21

**graduated** [1] - 9:23

**grandmother** [1] -
44:16

**grant** [1] - 58:10

**granted** [1] - 63:14

**grantor** [2] - 80:6,
80:9

**grants** [1] - 80:8

**great** [1] - 10:6

**ground** [1] - 5:15

**GROUP** [1] - 2:13

**guess** [12] - 15:5,
22:8, 30:18, 33:8,
34:21, 48:11, 48:18,
50:16, 55:5, 67:16,
79:12

**GXO** [3] - 7:6, 26:2,
30:16

**H**

**half** [2] - 56:11, 74:6

**hamster** [1] - 44:19

**HAND** [1] - 84:19

**hand** [4] - 5:19, 13:3,
13:5, 28:1

**harassed** [1] - 60:23

**harassing** [2] - 23:8,
23:11

**harassment** [2] -
22:8, 23:5

**hard** [1] - 66:18

**Hardee 's** [3] - 29:20,
29:21, 29:22

**harming** [1] - 79:22

**Hartselle** [8] - 6:25,
9:20, 29:20, 29:21,
29:23, 30:19, 31:2

**head** [1] - 6:8

**hear** [5] - 5:18, 5:21,
21:11, 38:8, 44:20

**heard** [6] - 5:18,
57:15, 57:23, 58:1,
69:22

**held** [2] - 10:10,
80:19

**help** [4] - 17:15,
43:22, 74:19, 75:9

**helped** [1] - 59:2

**helpful** [1] - 19:17

**hereto** [1] - 84:12

**HERRING** [1] - 2:9

**high** [6] - 9:20, 9:23,
37:17, 37:19, 37:20,
37:23

**highest** [1] - 9:21

**highlight** [17] - 20:4,
32:17, 32:18, 32:19,
33:19, 34:11, 34:23,
35:10, 35:21, 36:1,
39:5, 43:2, 45:17,
47:21, 48:8, 52:16,
54:19

**highlighted** [15] -
20:5, 20:16, 34:1,
45:19, 46:6, 46:9,
47:23, 49:13, 50:13,

Christopher Robinson vs. Spring Oaks Capital        Deposition of Christopher B. Robinson

Case 2:23-cv-01381-AMM   Document 44-2   Filed 10/10/24   Page 31 of 165

5

51:7, 52:5, 52:23, 54:20, 56:9, 57:5

**highlighting** [8] - 49:6, 49:19, 50:21, 51:10, 53:11, 53:24, 54:2, 55:12

**hire** [1] - 43:8

**hired** [1] - 23:24

**history** [1] - 66:19

**hmm** [4] - 16:1, 20:21, 53:7, 65:1

**hold** [1] - 62:13

**holding** [2] - 59:21, 61:19

**home** [2] - 54:24, 55:1

**hour** [3] - 30:8, 30:9, 30:10

**house** [4] - 31:3, 31:7, 31:8, 41:14

**household** [2] - 34:13, 34:20

**Huntsville** [5] - 6:23, 30:5, 30:7, 30:11, 30:15

**I**

**ID** [1] - 17:6

**idea** [7] - 45:24, 46:1, 51:22, 55:25, 56:1, 56:17, 68:2

**identification** [3] - 5:4, 41:8, 43:16

**identify** [1] - 62:25

**identity** [15] - 16:17, 16:20, 16:24, 18:11, 18:14, 18:19, 18:22, 19:14, 19:19, 37:12, 37:13, 47:18, 50:25, 51:4, 71:23

**ignored** [2] - 60:17, 60:22

**IL** [1] - 6:22

**illegal** [4] - 33:24, 34:1, 34:5, 34:7

**impacted** [1] - 37:19

**impartiality** [1] - 84:16

**IN** [1] - 1:1

**inaccuracies** [4] - 77:2, 77:24, 78:2, 79:10

**inaccurate** [20] - 51:14, 51:17, 52:9, 56:4, 56:7, 56:23, 57:12, 58:14, 77:15, 77:20, 78:6, 78:10, 78:15, 78:20, 78:24, 79:2, 79:6, 79:19,

79:21, 80:13

**inconvenient** [5] - 22:21, 25:7, 25:13, 26:9, 26:14

**incorrect** [5] - 46:6, 52:12, 55:18, 77:7, 77:11

**incurred** [3] - 9:8, 34:12, 34:18

**Indigo** [19] - 11:25, 12:4, 12:11, 58:1, 63:6, 63:9, 63:12, 63:14, 64:3, 64:7, 64:9, 64:10, 64:13, 65:20, 66:1, 66:16, 69:13, 69:14, 69:15

**INFORMATION** [1] - 4:5

**information** [34] - 11:25, 16:10, 17:4, 18:3, 18:4, 19:23, 20:9, 20:14, 37:15, 40:4, 40:17, 43:17, 43:20, 44:3, 51:14, 51:17, 55:18, 56:14, 56:21, 56:22, 56:23, 58:14, 64:2, 71:23, 77:7, 77:12, 77:16, 77:21, 78:21, 78:24, 79:3, 79:19, 80:14, 80:15

**inquiries** [3] - 66:17, 66:18

**instances** [1] - 16:16

**instead** [1] - 80:3

**instruct** [1] - 40:11

**instructing** [3] - 40:5, 40:9, 40:20

**insurance** [1] - 44:22

**intent** [3] - 20:19, 20:20, 21:22

**interest** [1] - 84:15

**interested** [4] - 22:3, 22:6, 84:12, 84:14

**interpretation** [1] - 58:12

**interrogatories** [1] - 64:21

**Interrogatories** [1] - 3:23, 59:12

**Interrogatory** [1] - 60:8

**interrogatory** [3] - 61:23, 62:22, 70:17

**interrupted** [1] - 14:11

**investigation** [3] - 45:20, 46:5, 46:10

**involved** [1] - 8:10

**involves** [1] - 7:8

**involving** [1] - 17:21

**issue** [1] - 38:19

**issues** [3] - 36:13, 39:21, 74:1

**item** [1] - 49:21, 51:11, 52:9, 52:16, 53:11, 53:13, 54:10, 55:24, 81:5

**itemize** [1] - 60:11

**items** [2] - 17:8, 43:24

**J**

**January** [2] - 70:20, 70:25

**Jefferson** [1] - 31:23

**Jo** [4] - 1:21, 2:3, 83:4, 84:23

**job** [5] - 24:6, 24:8, 26:17, 38:7, 43:13

**jobs** [1] - 26:6

**John** [3] - 2:13, 5:10, 83:23

**joint** [1] - 53:23

**judge** [1] - 38:1

**July** [6] - 6:17, 7:11, 29:5, 29:7, 35:22, 35:23

**June** [3] - 29:19, 50:21, 51:11

**JUNE** [1] - 83:22

**jury** [1] - 32:7

**K**

**Karma** [3] - 64:11, 65:5, 65:6

**keep** [3] - 29:17, 47:5, 48:24

**Kia** [1] - 44:19

**kind** [7] - 18:1, 44:18, 61:24, 74:19, 74:22, 75:9, 76:3

**kinds** [4] - 23:2, 36:20, 61:12, 61:13

**knowing** [4] - 48:20, 54:9, 55:17, 57:16

**knowledge** [9] - 13:14, 53:2, 55:11, 55:16, 56:17, 58:2, 72:7, 72:8, 75:11

**known** [1] - 84:3

**Kohler** [3] - 30:16, 43:1, 43:4, 43:5

**Kress** [1] - 2:10

**L**

**label** [3] - 26:25, 27:4, 28:17,

**labeled** [1] - 10:17

**lady** [1] - 41:13

**language** [1] - 49:6

**last** [16] - 6:1, 12:2, 25:5, 26:3, 44:8, 49:12, 61:2, 62:12, 62:16, 63:15, 63:18, 64:11, 69:2, 69:4, 69:5, 81:24

**laura @ BoguckiReporting . com** [1] - 1:24

**lawsuit** [11] - 5:12, 7:8, 18:9, 32:15, 37:3, 37:9, 38:2, 38:13, 72:22, 72:23, 72:24

**lawyer** [6] - 14:17, 14:18, 14:19, 17:15, 39:13, 57:25

**lawyer 's** [2] - 41:15, 41:16

**lawyers** [12] - 14:5, 14:12, 14:15, 19:3, 19:4, 19:5, 39:24, 40:1, 40:15, 56:20, 59:2, 59:17

**leading** [1] - 74:24

**leaf** [1] - 28:5

**least** [1] - 66:11

**leave** [1] - 39:1

**left** [1] - 13:3

**left-hand** [1] - 13:3

**legal** [3] - 33:1, 34:3, 58:11

**lender** [2] - 48:9, 55:14

**less** [4] - 6:2, 46:13, 46:16, 70:7

**letter** [43] - 3:12, 11:15, 11:16, 11:19, 11:21, 11:22, 11:23, 13:23, 14:5, 14:7, 14:10, 14:19, 15:16, 15:19, 17:3, 17:13, 18:3, 18:13, 18:17, 18:21, 19:2, 19:7, 19:11, 19:21, 20:16, 20:23, 21:21, 23:16, 25:6, 26:5, 27:16, 27:17, 27:19, 27:23, 35:5, 35:9, 42:10, 56:19, 56:20, 58:19, 60:16, 63:23, 75:15

**Letter** [2] - 3:14, 3:16, 3:18

**lettering** [1] - 45:17

**letters** [9] - 22:9, 23:14, 41:20, 41:22, 41:25, 42:2, 42:9, 81:14, 81:19

**level** [1] - 9:21

**liable** [2] - 80:4, 80:18

**lied** [2] - 60:19, 73:22

**life** [5] - 38:21, 59:6, 65:8, 65:11, 74:16

**likewise** [1] - 5:23

**line** [18] - 19:21, 31:1, 49:2, 50:14, 51:21, 56:6, 57:17, 58:4, 62:3, 62:17, 68:20, 68:24, 78:6, 78:10, 78:15, 81:1, 81:8, 83:5

**lines** [2] - 65:25, 81:9

**listed** [3] - 33:10, 52:2, 61:8

**live** [2] - 30:7, 30:20

**lived** [1] - 11:10

**living** [1] - 31:7

**LLC** [6] - 1:6, 2:10, 7:18, 8:1, 11:16, 28:2

**LLC 's** [2] - 3:23, 59:12

**located** [1] - 29:25

**Lockhart** [2] - 2:9, 71:3

**LOCKHART** [18] - 3:9, 4:2, 10:4, 27:11, 32:25, 40:2, 40:7, 40:11, 40:16, 40:23, 71:6, 71:14, 71:21, 75:2, 76:11, 81:22, 82:1, 82:5

**look** [8] - 9:25, 24:24, 25:1, 25:5, 26:19, 26:20, 48:4, 66:10

**looked** [2] - 42:3, 63:22, 81:8

**looking** [14] - 5:17, 20:2, 20:3, 21:20, 28:15, 29:18, 37:9, 39:3, 39:4, 53:16, 60:5, 61:23, 76:17, 76:22

**looks** [4] - 46:23, 53:20, 68:3, 68:5

**loose** [1] - 27:9

**lose** [1] - 74:11

**lost** [2] - 38:7, 74:3

**LVNV** [5] - 55:23, 56:1, 56:4, 56:7, 78:25

**M**

**ma'am** [3] - 72:2, 73:14, 74:15

**Madison** [1] - 9:2

**mail** [3] - 18:3, 22:8, 83:25

**mailbox** [1] - 29:11

Christopher Robinson vs. Spring Oaks Capital    Deposition of Christopher B. Robinson

Case 2:23-cv-01381-AMM   Document 44-2   Filed 10/10/24   Page 32 of 165

6

**mailed** [1] - 13:7
**major** [2] - 62:8, 76:10
**manufacturing** [2] - 6:25, 24:9
**March** [6] - 49:12, 49:16, 49:22, 54:6, 66:3, 66:5
**mark** [1] - 73:12
**MARKED** [1] - 3:11
**marked** [14] - 5:4, 10:16, 10:20, 12:17, 12:23, 13:19, 28:15, 28:20, 41:7, 43:15, 51:8, 63:19, 73:19, 78:13
**marking** [2] - 35:14, 35:17
**marriage** [2] - 61:16, 74:14
**masked** [1] - 44:1
**Mastercard** [6] - 12:1, 12:5, 12:11, 64:3, 64:8, 64:9
**materials** [1] - 7:6
**meals** [1] - 9:7
**mean** [13] - 15:23, 15:24, 16:6, 19:25, 20:8, 21:5, 21:8, 35:2, 36:5, 39:11, 46:8, 58:13, 74:24
**means** [6] - 16:2, 33:5, 34:4, 35:8, 58:14, 61:6
**meant** [2] - 34:18, 75:25
**medical** [1] - 36:15
**medication** [3] - 36:18, 36:21, 74:5
**medications** [1] - 74:8
**medicine** [2] - 36:22, 37:20
**meet** [2] - 14:23, 15:6
**meeting** [1] - 10:8
**mental** [1] - 60:13
**mention** [2] - 19:7, 19:11
**mentioned** [11] - 17:13, 17:20, 37:17, 38:2, 39:22, 42:9, 47:18, 50:24, 65:7, 68:11, 73:5
**messing** [1] - 37:25
**microphone** [1] - 61:20
**middle** [2] - 42:25, 49:19
**might** [4] - 60:25, 61:4, 76:1, 76:5

**miles** [6] - 7:16, 30:22, 30:23, 31:1, 31:3, 31:5
**Miles** [1] - 9:2
**mind** [2] - 29:17, 59:21
**mine** [2] - 17:4, 69:1
**minimize** [1] - 28:14
**Minnesota** [3] - 2:5, 2:14, 84:5
**MINNESOTA** [1] - 84:1
**minute** [3] - 21:12, 60:1, 61:19
**minutes** [8] - 6:1, 6:2, 30:25, 31:6, 71:9, 71:12, 71:18
**miss** [1] - 75:22
**missed** [2] - 26:12, 76:3
**Missouri** [3] - 66:23, 66:25, 67:2
**MN** [1] - 1:23
**Mobile** [5] - 16:13, 17:23, 18:8, 19:8, 71:25
**momma** [1] - 38:25
**Monday** [1] - 23:18
**money** [11] - 8:8, 8:20, 15:9, 15:15, 35:1, 35:3, 36:7, 37:3, 54:17, 55:3
**MoneyLion** [2] - 68:8, 68:9
**month** [5] - 49:21, 51:10, 52:5, 53:12, 54:6
**months** [5] - 7:4, 17:23, 63:13, 69:13, 70:8
**morning** [1] - 25:20
**most** [1] - 25:13
**mountain** [3] - 11:3, 27:20, 29:3
**move** [4] - 12:13, 36:2, 40:25, 41:4
**moved** [1] - 59:9
**movements** [1] - 6:10
**MR** [32] - 3:8, 4:3, 5:9, 10:6, 10:11, 12:19, 12:22, 26:24, 27:13, 27:14, 33:3, 40:5, 40:8, 40:13, 40:14, 40:19, 40:24, 41:2, 41:6, 59:20, 59:24, 60:4, 71:2, 71:11, 71:17, 74:24, 75:4, 76:15, 81:20, 81:23, 82:3, 82:7
**MRV** [2] - 51:21, 78:7

**MS** [18] - 3:9, 4:2, 10:4, 27:11, 32:25, 40:2, 40:7, 40:11, 40:16, 40:23, 71:6, 71:14, 71:21, 75:2, 76:11, 81:22, 82:1, 82:5
**mute** [3] - 32:25, 71:6, 71:8
**MY** [1] - 84:19

## N

**name** [12] - 5:10, 6:12, 7:22, 8:7, 8:15, 32:2, 32:5, 37:14, 37:16, 50:16, 62:9, 62:25
**name 's** [1] - 70:11
**named** [1] - 41:13
**near** [1] - 50:12
**necessarily** [1] - 6:10
**need** [8] - 5:23, 6:3, 25:1, 71:9, 71:15, 80:19, 81:25
**needed** [3] - 19:12, 26:7, 72:5
**needs** [1] - 52:14
**nervous** [1] - 37:25
**never** [16] - 10:23, 12:11, 20:22, 22:14, 23:13, 23:14, 30:14, 46:3, 56:12, 57:15, 58:23, 60:20, 60:21, 70:13, 79:16, 80:21
**new** [5] - 19:15, 69:25, 70:6, 79:15
**next** [14] - 12:14, 13:18, 19:21, 20:25, 22:17, 33:18, 46:16, 50:11, 51:5, 51:20, 53:16, 54:15, 55:24, 56:24
**nobody** [1] - 17:15
**noise** [1] - 71:7
**none** [3] - 8:23, 52:14, 59:7
**NONE** [1] - 4:6
**North** [2] - 1:22, 2:10
**NORTHERN** [1] - 1:1
**notary** [2] - 2:4, 84:4
**note** [2] - 19:22, 68:5
**noted** [1] - 75:2
**notes** [1] - 71:15
**nothing** [4] - 15:13, 19:14, 76:10, 84:8
**Notice** [2] - 2:2, 3:20
**notice** [3] - 17:1, 19:8, 71:24
**notification** [3] -

16:19, 16:24, 18:1
**November** [8] - 49:11, 63:15, 65:21, 66:6, 66:7, 66:15, 66:23, 76:24
**number** [21] - 8:11, 10:17, 12:2, 12:3, 12:6, 17:14, 26:25, 28:17, 35:21, 37:14, 61:24, 62:22, 63:20, 64:4, 64:22, 67:9, 67:21, 67:23, 68:17, 69:2, 70:10
**Number** [4] - 10:17, 10:20, 60:8, 63:21
**number 's** [1] - 67:19
**numbers** [12] - 8:7, 8:9, 8:10, 8:14, 12:20, 27:5, 27:6, 43:25, 50:16, 69:2, 69:4

## O

**o'clock** [4] - 24:13, 24:16, 25:16, 25:20, 25:21
**O'Reilly** [1] - 30:2
**OAKS** [2] - 1:6, 83:3
**Oaks** [44] - 3:12, 3:14, 3:16, 3:18, 3:23, 5:12, 11:16, 14:6, 18:18, 19:18, 22:6, 22:9, 22:15, 23:8, 23:12, 24:19, 27:23, 28:2, 32:4, 36:24, 37:5, 37:24, 57:22, 58:4, 58:19, 59:11, 62:3, 62:17, 64:13, 68:20, 68:24, 72:13, 72:14, 72:17, 72:20, 73:7, 73:8, 73:12, 73:15, 75:14, 75:15, 79:8, 81:7, 81:14
**oath** [3] - 38:23, 60:5, 84:6
**object** [4] - 33:1, 40:2, 40:9, 40:16
**objecting** [1] - 40:7
**objection** [1] - 74:24
**OBJECTIONS** [1] - 4:1
**obligation** [2] - 34:12, 34:19
**obtained** [1] - 58:15
**obtaining** [1] - 8:10
**obviously** [1] - 5:16
**occurred** [1] - 17:17
**October** [27] - 27:16, 35:6, 51:24, 52:6, 60:17, 62:12, 63:15,

65:21
**OF** [4] - 1:1, 1:13, 84:1, 84:2
**office** [2] - 41:15, 41:16
**old** [1] - 69:24
**once** [4] - 38:4, 40:16, 41:18, 74:18
**one** [38] - 8:22, 12:7, 12:16, 22:13, 23:13, 42:2, 42:7, 45:12, 48:7, 48:24, 50:11, 51:6, 52:1, 52:2, 52:20, 52:21, 52:22, 53:18, 53:20, 54:2, 54:12, 55:7, 55:23, 55:25, 56:24, 57:5, 61:22, 65:13, 66:14, 68:5, 68:14, 70:12, 70:13, 75:23, 78:12, 80:25, 81:10, 81:17
**One** [4] - 12:10, 49:5, 57:14, 65:17
**ones** [1] - 80:25
**open** [6] - 50:20, 50:21, 53:22, 59:8, 68:18, 70:1
**opened** [7] - 37:15, 47:15, 51:23, 53:20, 67:4, 70:4, 70:24
**option** [1] - 10:8
**order** [6] - 27:3, 27:4, 27:5, 27:6, 27:7, 71:16
**ordered** [1] - 84:17
**organized** [1] - 71:10
**original** [1] - 83:23
**originated** [1] - 12:1
**originating** [1] - 64:4
**outcome** [1] - 84:12
**outfit** [1] - 8:11
**outside** [1] - 39:19
**owe** [8] - 16:2, 23:6, 35:3, 36:7, 37:4, 54:17, 70:12
**owed** [4] - 15:9, 35:1, 36:7, 46:14
**own** [11] - 7:19, 8:7, 17:14, 31:12, 33:4, 34:4, 34:16, 35:15, 54:12, 58:12, 73:8
**owner** [1] - 7:17

## P

**p.m** [11] - 2:6, 23:18, 24:8, 25:8, 25:11, 25:25, 42:12, 82:9
**P.O** [1] - 2:14
**Page** [1] - 83:5
**PAGE** [1] - 3:2

Christopher Robinson vs. Spring Oaks Capital     Deposition of Christopher B. Robinson

Case 2:23-cv-01381-AMM    Document 44-2    Filed 10/10/24    Page 33 of 165

7

**page** [25] - 12:25, 13:18, 13:21, 26:21, 31:21, 33:18, 41:3, 42:23, 42:24, 42:25, 43:14, 45:15, 49:1, 49:19, 49:20, 50:12, 51:20, 53:16, 54:15, 60:6, 64:16, 66:13, 77:6, 78:19

**pages** [1] - 42:22

**paid** [14] - 15:11, 38:9, 40:15, 44:8, 45:5, 45:7, 46:17, 46:19, 49:7, 50:4, 50:5, 68:6, 76:9, 77:18

**pandemic** [2] - 38:11, 44:11

**paperwork** [1] - 47:6

**paragraph** [16] - 20:3, 22:3, 22:17, 23:15, 32:17, 33:5, 33:20, 34:11, 34:23, 34:25, 35:4, 35:10, 35:11, 36:2, 36:3, 39:5

**Park** [1] - 1:23

**part** [2] - 34:17, 47:17

**partially** [1] - 44:1

**particular** [1] - 7:8

**particularity** [1] - 60:12

**parties** [3] - 84:12, 84:14, 84:17

**parts** [1] - 30:2

**partway** [2] - 29:15, 49:19

**party** [1] - 80:20

**passed** [1] - 64:17

**Patricia** [5] - 2:9, 12:20, 26:24, 41:2, 75:1

**pay** [16] - 15:15, 30:3, 40:1, 44:7, 47:21, 47:22, 49:7, 51:7, 51:8, 52:1, 52:2, 52:22, 53:25, 55:6, 56:9, 57:5

**payment** [2] - 46:3, 66:19

**people** [5] - 14:22, 23:6, 37:11, 44:13, 59:8

**per** [1] - 9:18

**perfect** [2] - 28:13, 71:14

**perhaps** [1] - 13:22

**period** [1] - 65:12

**person** [4] - 7:22, 21:6, 37:25, 80:8

**personal** [3] - 34:13, 34:19, 38:19

**personnel** [1] - 16:25

**Personnel** [1] - 16:14

**persons** [1] - 84:15

**phone** [7] - 23:2, 23:5, 23:8, 23:11, 23:13, 23:24

**Phone** [1] - 1:23

**phrase** [3] - 32:19, 33:19, 34:5

**physically** [1] - 17:9

**picked** [1] - 75:24

**picture** [1] - 17:6

**piece** [2] - 47:6, 81:24

**place** [3] - 6:25, 21:15, 29:25

**placed** [2] - 56:15, 58:10

**places** [2] - 16:9, 16:12

**plaintiff** [12] - 32:2, 33:25, 34:8, 34:11, 34:18, 35:1, 35:4, 35:24, 36:5, 39:6, 60:12, 62:24

**Plaintiff** [4] - 1:4, 2:12, 3:24, 59:14

**Plaintiff 's** [1] - 3:23

**plaintiff 's** [1] - 35:13, 35:16, 59:11

**PLLC** [1] - 2:14

**point** [3] - 44:9, 59:6, 74:25

**police** [1] - 38:1

**pops** [2] - 28:6, 28:11

**portion** [4] - 11:19, 13:5, 33:16, 45:19

**position** [4] - 30:4, 57:11, 80:12, 80:18

**possible** [2] - 6:2, 47:17

**possibly** [1] - 17:24

**potential** [1] - 62:25

**potentially** [1] - 50:24

**Practices** [1] - 32:21

**practices** [1] - 33:22

**pre** [1] - 5:4

**pre-marked** [1] - 5:4

**Premier** [4] - 50:14, 50:17, 51:3, 77:22

**prescribed** [1] - 36:19

**present** [2] - 62:24, 72:22

**pressure** [5] - 36:21, 37:17, 37:19, 37:20, 37:23

**pretty** [1] - 70:22

**prevent** [2] - 23:9,

68:25

**previously** [5] - 11:22, 11:23, 58:9, 58:24, 60:19

**primarily** [2] - 34:13, 34:19

**printed** [1] - 14:12

**privilege** [2] - 40:18, 40:22

**privileged** [2] - 40:3, 40:17

**problem** [5] - 21:13, 21:19, 25:1, 33:11, 34:9

**PROCEDURE** [1] - 83:22

**proceedings** [1] - 5:1

**process** [1] - 77:9

**produced** [2] - 27:1, 28:17

**Production** [1] - 3:24, 59:13

**production** [1] - 28:18

**professional** [1] - 56:19

**professionally** [3] - 14:21, 73:1, 73:2

**promotional** [1] - 66:18

**prompts** [1] - 17:3

**protection** [1] - 43:25

**provide** [1] - 82:3

**proximately** [1] - 36:4

**public** [2] - 2:4, 84:4

**publishing** [2] - 79:18, 80:13

**pull** [5] - 8:16, 41:12, 41:18, 42:3, 66:11

**pulled** [4] - 10:1, 56:11, 66:3, 66:5

**pulls** [2] - 41:19, 43:13

**purchased** [2] - 48:9, 55:13

**purports** [1] - 73:7

**purposes** [2] - 34:13, 34:20

**pursuant** [1] - 2:2

**put** [5] - 18:8, 31:22, 35:19, 71:6, 80:2

## Q

**qualifying** [1] - 65:10

**questions** [7] - 10:18, 32:16, 70:16, 71:3, 71:9, 71:22, 81:21

**quick** [2] - 21:11, 76:16

**quickly** [1] - 39:6

**quiet** [1] - 21:15

**quit** [1] - 60:20

## R

**raise** [1] - 5:19

**rate** [1] - 84:17

**rather** [4] - 6:8, 9:7, 21:18, 39:1

**RE** [1] - 83:3

**read** [7] - 12:2, 13:22, 20:7, 28:7, 28:12, 81:16, 81:23

**real** [3] - 21:11, 30:19, 39:6

**realizing** [1] - 47:3

**really** [15] - 18:25, 23:7, 24:25, 25:10, 25:12, 26:9, 38:14, 38:16, 38:19, 45:1, 45:9, 55:5, 58:3, 58:21, 74:1

**reasonable** [2] - 39:7, 39:22

**receivables** [1] - 79:4

**Receivables** [3] - 56:25, 57:1, 57:17

**receive** [8] - 16:19, 16:24, 18:2, 22:13, 23:8, 23:11, 24:18, 26:10

**received** [7] - 11:21, 17:1, 22:9, 22:14, 23:13, 23:14, 60:16

**receiving** [4] - 16:23, 29:10, 29:12, 63:24

**recent** [1] - 70:7

**recently** [2] - 68:16, 70:25

**Recess** [3] - 60:3, 71:19

**recognize** [11] - 10:21, 12:24, 13:2, 14:2, 28:21, 31:24, 41:9, 52:19, 54:21, 59:14, 59:16

**recollection** [2] - 11:20, 32:11

**recommendation** [1] - 6:6

**reconvene** [3] - 60:1, 71:12, 71:17

**record** [5] - 5:20, 6:12, 10:10, 83:25, 84:10

**recorded** [1] - 84:9

**recording** [2] - 6:9,

6:10

**records** [1] - 83:24

**red** [1] - 45:17

**redirect** [1] - 76:16

**reduced** [1] - 45:3

**reference** [5] - 18:14, 18:19, 18:22, 26:21, 35:25

**referenced** [1] - 58:8

**referred** [1] - 66:13

**referring** [1] - 34:21

**refresh** [2] - 11:20, 32:11

**refusing** [1] - 38:17

**regarding** [15] - 5:12, 5:15, 46:20, 55:19, 77:7, 77:12, 77:16, 77:22, 78:7, 78:11, 78:22, 78:25, 79:4, 79:7, 79:19

**regards** [1] - 72:13

**related** [2] - 7:22, 84:12

**relationship** [1] - 37:22

**relative** [1] - 84:8

**rely** [4] - 72:24, 73:2, 74:21, 75:8

**relying** [1] - 74:19

**remains** [1] - 43:21

**remark** [1] - 45:18

**remarks** [8] - 48:8, 55:13, 56:13, 58:5, 61:8, 79:23, 79:24, 80:2

**remember** [3] - 14:16, 15:13, 62:9

**remove** [3] - 49:24, 50:2, 58:21

**removed** [7] - 49:21, 50:5, 51:11, 52:6, 53:13, 54:7, 57:9

**reorganized** [2] - 27:3, 27:10

**repairs** [2] - 54:24, 55:1

**repeat** [2] - 50:1, 75:7

**repeated** [4] - 32:20, 32:22, 33:6, 33:21

**rephrasing** [1] - 33:8

**report** [68] - 3:21, 9:6, 33:8, 33:16, 35:13, 35:16, 35:23, 39:9, 39:17, 41:11, 41:12, 42:19, 42:21, 43:7, 43:13, 43:24, 46:12, 48:3, 48:13, 48:15, 48:18, 49:9, 49:11, 49:25, 50:3, 50:9, 51:15, 51:18, 52:10,

Christopher Robinson vs. Spring Oaks Capital    Deposition of Christopher B. Robinson

Case 2:23-cv-01381-AMM   Document 44-2   Filed 10/10/24   Page 34 of 165

8

52:13, 56:4, 56:11, 57:18, 57:25, 60:18, 61:7, 62:4, 62:20, 65:24, 66:1, 68:21, 72:16, 73:13, 73:18, 74:10, 76:20, 76:24, 77:3, 77:8, 77:12, 77:16, 77:19, 77:21, 78:7, 78:11, 78:14, 78:17, 78:21, 78:25, 79:3, 79:7, 79:11, 79:18, 79:22, 80:3, 80:14, 81:3, 81:5

**reported** [1] - 58:10
**Reported** [1] - 1:21
**reporter** [2] - 6:9, 83:25
**Reporter** [4] - 8:13, 8:25, 19:10, 84:24
**REPORTER** [1] - 83:4
**REPORTING** [1] - 1:22
**reporting** [2] - 57:12, 79:7
**represent** [1] - 5:11
**reputation** [1] - 76:7
**request** [6] - 21:1, 21:3, 21:9, 21:21, 22:25, 23:1
**Request** [1] - 59:13
**requested** [3] - 8:13, 8:25, 19:10
**REQUESTED** [1] - 4:5
**Requests** [3] - 3:23, 3:24, 59:12
**reside** [1] - 6:19
**resided** [1] - 11:9
**residing** [2] - 11:6, 29:5
**resolve** [1] - 58:21
**resolved** [16] - 33:12, 33:13, 33:14, 35:20, 37:16, 58:10, 58:15, 58:16, 60:20, 60:21, 73:10, 73:16, 73:21, 75:20
**respect** [3] - 17:17, 18:2, 62:23
**respond** [1] - 5:22
**responded** [1] - 63:3
**response** [5] - 16:22, 18:6, 27:1, 62:21, 68:12
**responses** [2] - 59:11, 70:17
**Responses** [1] - 3:23
**responsibility** [1] - 80:13

**rest** [1] - 57:19
**result** [4] - 51:4, 60:14, 62:3, 63:2
**Resurgent** [3] - 56:25, 57:1, 57:17
**resurgent** [1] - 79:4
**Retain** [1] - 83:24
**retained** [1] - 14:14
**RETURN** [2] - 83:22
**Return** [1] - 83:23
**right-hand** [2] - 13:5, 28:1
**rights** [6] - 60:25, 61:5, 61:10, 74:20, 76:2, 76:4
**road** [3] - 11:3, 27:20, 29:4
**Robinson** [46] - 3:14, 3:16, 3:18, 5:10, 6:13, 7:18, 7:23, 8:1, 8:4, 10:12, 10:13, 10:16, 10:19, 10:25, 12:21, 12:23, 12:24, 13:20, 26:22, 27:5, 27:15, 28:16, 28:19, 28:20, 29:3, 31:18, 31:22, 41:3, 41:7, 41:8, 42:8, 42:23, 42:25, 43:16, 45:16, 47:7, 49:1, 49:20, 50:13, 54:19, 59:9, 60:6, 63:20, 66:14, 76:19
**ROBINSON** [8] - 1:3, 1:13, 2:2, 3:5, 5:5, 83:2, 83:3, 84:3
**robo** [1] - 23:2
**Rock** [2] - 30:5, 30:14
**Rossman** [5] - 2:13, 5:11, 75:24, 76:13, 83:23
**ROSSMAN** [33] - 2:13, 3:8, 4:3, 5:9, 10:6, 10:11, 12:19, 12:22, 26:24, 27:13, 27:14, 33:3, 40:5, 40:8, 40:13, 40:14, 40:19, 40:24, 41:2, 41:6, 59:20, 59:24, 60:4, 71:2, 71:11, 71:17, 74:24, 75:4, 76:15, 81:20, 81:23, 82:3, 82:7
**roughly** [2] - 17:17, 38:10
**RPR** [1] - 1:21
**ruffles** [2] - 61:12, 61:13
**rules** [1] - 5:15

## S

**satisfactory** [2] - 66:22, 67:6
**save** [2] - 24:21, 24:23
**saw** [1] - 73:18
**scales** [1] - 8:16
**school** [3] - 9:19, 9:20, 9:23
**score** [1] - 45:3
**SCOTT** [1] - 84:2
**Scott** [2] - 2:5, 84:5
**scrambled** [1] - 44:1
**screen** [23] - 10:2, 10:5, 10:7, 10:8, 10:13, 10:21, 12:17, 13:23, 20:5, 27:15, 28:15, 31:22, 34:25, 36:2, 42:4, 46:9, 47:8, 54:19, 59:10, 60:9, 63:21, 76:17, 76:23
**scroll** [15] - 10:15, 11:14, 12:14, 13:18, 31:14, 34:10, 34:24, 42:6, 43:14, 47:14, 50:11, 53:16, 54:15, 77:6
**SEAL** [1] - 84:19
**second** [6] - 17:20, 20:2, 20:12, 31:16, 43:14, 74:18
**section** [5] - 34:15, 43:1, 48:7, 56:13, 58:5
**security** [3] - 16:9, 16:11, 17:21
**Security** [8] - 17:5, 17:6, 52:18, 52:19, 55:2, 70:10, 78:11
**see** [84] - 7:6, 10:12, 10:21, 10:24, 10:25, 11:2, 11:13, 11:17, 13:5, 13:8, 13:21, 13:23, 13:24, 15:21, 20:1, 20:5, 21:2, 21:4, 22:4, 22:23, 24:24, 25:3, 25:8, 27:10, 27:19, 27:23, 28:4, 28:8, 28:25, 29:9, 29:16, 30:25, 31:21, 32:1, 32:4, 34:10, 35:6, 42:24, 43:3, 43:7, 43:18, 44:6, 45:19, 46:18, 47:8, 47:14, 47:16, 47:22, 47:25, 48:8, 49:2, 49:13, 49:22, 50:14, 50:16, 50:20, 50:22, 51:8, 51:12, 51:23, 52:1, 52:7, 52:24,

53:14, 53:17, 54:5, 54:6, 55:7, 57:6, 57:8, 57:9, 60:8, 61:19, 61:21, 63:10, 64:5, 65:15, 65:25, 66:15, 69:3, 69:4, 69:13, 69:20, 70:16
**seeing** [3] - 10:6, 11:19, 53:3
**send** [5] - 19:23, 20:8, 20:14, 41:20, 82:2
**sending** [3] - 22:4, 22:6, 75:15
**sense** [1] - 23:25
**sent** [14] - 14:5, 14:13, 18:18, 26:5, 35:4, 35:9, 41:21, 41:22, 42:9, 42:10, 56:19, 58:18, 63:24, 81:19
**sentence** [10] - 20:13, 20:25, 21:23, 22:2, 23:15, 25:5, 34:4, 34:8, 61:6, 63:8
**sentences** [2] - 61:2, 75:23
**September** [13] - 11:11, 13:6, 13:24, 18:13, 18:14, 18:17, 18:21, 26:1, 26:5, 60:16, 62:24, 65:21, 68:19
**seq** [1] - 33:22
**service** [3] - 6:22, 16:13, 16:25
**Service** [2] - 16:14, 17:2
**Services** [3] - 53:17, 72:1, 78:15
**services** [1] - 29:13
**set** [1] - 10:7
**settled** [2] - 46:13, 46:16
**settled-less** [1] - 46:16
**seven** [2] - 71:12, 71:18
**several** [1] - 81:9
**share** [5] - 10:2, 10:5, 10:7, 10:8, 76:17
**SHEET** [1] - 83:1
**sheet** [1] - 83:23
**Shell** [1] - 30:1
**shift** [1] - 25:22
**show** [9] - 13:19, 41:2, 44:2, 47:20, 48:7, 50:5, 66:11, 67:24, 68:18
**showed** [2] - 66:9,

72:16
**showing** [8] - 10:19, 12:23, 27:15, 28:19, 35:24, 41:7, 43:15, 55:6
**shows** [15] - 11:25, 29:19, 43:4, 47:13, 47:25, 48:18, 49:12, 50:7, 52:22, 53:24, 54:2, 57:6, 64:2, 67:6, 79:12
**shrink** [1] - 13:20
**sic** [1] - 33:8
**side** [1] - 28:1
**sign** [1] - 81:23
**Signature** [1] - 83:21
**signatures** [1] - 48:17
**signed** [1] - 72:19
**signing** [1] - 18:9
**similar** [1] - 42:2
**simply** [3] - 19:23, 20:9, 20:17
**sit** [1] - 21:18
**situation** [1] - 58:23
**six** [4] - 17:23, 31:1, 63:13, 70:8
**sleep** [2] - 74:4, 74:11
**sleeping** [2] - 74:5, 74:8
**slow** [1] - 28:9
**small** [1] - 13:22
**smaller** [1] - 31:20
**smartest** [1] - 21:6
**smoke** [3] - 59:22, 59:24
**Social** [3] - 17:5, 17:6, 70:10
**sold** [3] - 48:11, 52:3, 55:7
**someone** [6] - 31:7, 31:10, 35:3, 37:14, 41:14
**sometime** [1] - 62:13
**Sorry** [1] - 22:13
**sorry** [16] - 6:18, 12:15, 14:11, 20:2, 21:14, 28:1, 32:25, 38:8, 42:20, 52:1, 52:17, 66:16, 66:20, 67:19, 67:22, 71:7
**soul** [1] - 44:19
**SOUTHERN** [1] - 1:2
**speaker** [1] - 61:18
**specific** [4] - 36:18, 36:23, 38:12, 67:4
**specifically** [5] - 7:11, 33:16, 34:5, 34:17, 77:5

Christopher Robinson vs. Spring Oaks Capital          Deposition of Christopher B. Robinson

Case 2:23-cv-01381-AMM   Document 44-2   Filed 10/10/24   Page 35 of 165

9

**Spherion** [4] - 6:22, 6:24, 7:3, 7:5

**Spring** [44] - 3:12, 3:14, 3:16, 3:18, 3:23, 5:11, 11:16, 14:6, 18:18, 19:18, 22:6, 22:9, 22:14, 23:8, 23:12, 24:18, 27:23, 28:2, 32:4, 36:24, 37:5, 37:23, 57:22, 58:4, 58:19, 59:11, 62:3, 62:17, 64:13, 68:20, 68:23, 72:13, 72:14, 72:17, 72:19, 73:7, 73:8, 73:12, 73:15, 75:14, 75:15, 79:8, 81:7, 81:14

**SPRING** [2] - 1:6, 83:3

**squawk** [1] - 75:1

**SS** [1] - 84:1

**stamp** [1] - 63:20

**stand** [2] - 6:14, 59:25

**standing** [1] - 65:23

**stars** [1] - 69:5

**start** [6] - 7:10, 7:19, 8:6, 12:16, 31:19, 75:1

**started** [3] - 8:8, 8:21, 53:21

**starting** [1] - 32:17

**starts** [4] - 31:17, 41:4, 43:17, 76:18

**State** [2] - 2:5, 84:5

**STATE** [1] - 84:1

**state** [6] - 6:11, 14:4, 32:22, 35:8, 37:18, 42:11

**statement** [11] - 12:4, 21:9, 29:10, 29:15, 46:11, 46:16, 49:8, 49:15, 56:16, 65:10, 70:19

**statements** [7] - 27:2, 27:3, 27:7, 29:12, 46:20, 48:14, 70:24

**STATES** [1] - 1:1

**stating** [1] - 46:11

**status** [13] - 47:21, 47:22, 49:7, 51:7, 51:8, 52:1, 52:2, 52:22, 53:24, 53:25, 55:6, 56:9, 57:5

**statutes** [1] - 73:3

**stay** [1] - 24:24

**stealing** [1] - 37:11

**stenotype** [1] - 84:9

**steps** [4] - 17:12, 18:6, 18:24, 72:3

**still** [3] - 38:25, 44:20, 60:5

**stole** [1] - 37:15

**stolen** [3] - 16:10, 17:5, 17:9

**stop** [1] - 5:20

**Street** [1] - 2:10

**stress** [19] - 37:8, 38:13, 38:18, 38:22, 39:16, 44:25, 45:8, 45:11, 46:24, 47:1, 48:20, 51:15, 52:10, 53:3, 53:10, 54:9, 55:21, 57:16, 77:25

**stressful** [1] - 39:19

**stuff** [10] - 8:17, 16:8, 17:7, 18:4, 30:1, 31:13, 37:13, 75:21, 76:7, 76:10

**subject** [1] - 18:11

**submitted** [3] - 62:23, 63:3, 63:5

**substantial** [1] - 84:15

**sue** [2] - 37:3, 81:2

**sued** [7] - 37:5, 38:2, 38:6, 38:10, 64:13, 79:14, 80:24

**suffered** [1] - 60:13

**sum** [1] - 76:2

**supposed** [1] - 50:4

**sworn** [2] - 5:7, 84:7

## T

**T-Mobile** [5] - 16:13, 17:23, 18:8, 19:8, 71:25

**tablet** [1] - 61:18

**taxes** [1] - 9:7

**Temporary** [1] - 71:25

**temporary** [2] - 6:22, 16:13

**ten** [2] - 31:6, 60:1

**ten-minute** [1] - 60:1

**tendency** [1] - 84:15

**term** [1] - 34:14

**testify** [1] - 84:7

**testifying** [1] - 84:7

**testimony** [7] - 45:11, 46:7, 62:15, 64:7, 64:12, 84:9, 84:10

**text** [3] - 22:20, 22:23, 23:17

**THE** [5] - 1:1, 1:1, 3:4, 59:18, 59:21

**theft** [8] - 18:11, 18:15, 18:19, 19:14,

19:19, 47:18, 50:25, 51:4

**therefore** [1] - 34:14

**thereof** [1] - 84:5

**they've** [1] - 65:22

**THIS** [1] - 84:19

**three** [12] - 30:13, 31:2, 36:20, 63:3, 63:7, 64:17, 65:4, 65:19, 65:22, 68:13, 68:14, 69:9

**titled** [1] - 59:11

**today** [6] - 5:13, 38:23, 46:7, 62:15, 69:24, 81:6

**together** [1] - 10:1

**took** [2] - 17:7, 84:3

**top** [5] - 10:24, 32:2, 43:1, 45:15, 48:25

**Total** [9] - 63:6, 64:24, 64:25, 65:19, 66:1, 66:24, 67:1, 67:3, 67:11

**total** [1] - 67:15

**totaled** [1] - 44:22

**totally** [1] - 23:25

**touched** [2] - 74:18, 75:23

**Tracy** [4] - 1:21, 2:3, 83:4, 84:23

**trade** [14] - 50:14, 51:21, 57:17, 58:3, 62:3, 62:17, 65:25, 68:20, 68:24, 78:6, 78:10, 78:15, 81:8, 81:9

**transaction** [1] - 29:19

**transactions** [1] - 29:19

**transcribed** [1] - 84:9

**transcript** [1] - 81:24

**TransUnion** [21] - 3:21, 35:23, 76:19, 76:24, 77:3, 77:19, 77:21, 78:6, 78:10, 78:14, 78:17, 78:21, 79:3, 79:11, 79:14, 79:18, 79:21, 80:2, 80:12, 80:18, 80:22

**travel** [1] - 31:2

**treat** [1] - 36:15

**trial** [1] - 32:7

**tried** [1] - 17:14

**truck** [12] - 7:12, 7:13, 7:14, 8:6, 8:22, 9:3, 9:5, 9:9, 24:3, 26:6, 30:12, 30:13

**Trucking** [1] - 9:2

**trucking** [3] - 7:16,

7:18, 8:1

**trucks** [4] - 8:17, 8:18, 8:19, 8:24

**true** [4] - 12:4, 25:10, 49:8, 84:10

**truly** [1] - 58:25

**truth** [2] - 84:7, 84:8

**try** [2] - 29:15, 76:16

**trying** [9] - 26:16, 37:3, 60:25, 61:4, 61:9, 67:5, 67:7, 67:12, 77:6

**two** [19] - 8:18, 8:19, 12:10, 16:9, 16:11, 16:16, 21:25, 22:19, 24:10, 30:25, 36:21, 40:8, 46:20, 65:8, 65:11, 65:16, 68:3, 71:9, 79:13

**typewriting** [1] - 84:10

**typically** [3] - 9:6, 43:21

## U

**U.S.C** [2] - 33:22, 34:15

**under** [3] - 8:6, 38:23, 60:5

**underneath** [2] - 11:24, 32:5

**understood** [33] - 19:17, 23:22, 24:11, 24:18, 26:18, 31:14, 33:15, 34:9, 38:8, 39:2, 39:11, 43:12, 44:15, 44:24, 51:23, 54:15, 55:6, 55:12, 56:3, 56:21, 59:9, 61:15, 62:21, 63:19, 69:4, 70:14, 71:1

**UNITED** [1] - 1:1

**unless** [1] - 71:4

**unpaid** [2] - 48:10, 55:14

**up** [33] - 8:8, 8:16, 8:20, 9:7, 15:11, 16:8, 18:9, 28:6, 28:11, 31:22, 34:24, 36:2, 37:15, 41:4, 42:3, 43:21, 48:18, 59:8, 61:17, 61:19, 65:13, 66:9, 66:11, 69:3, 70:3, 70:25, 71:8, 72:16, 75:24, 79:12

**update** [1] - 60:18

**updated** [4] - 35:12, 35:16, 35:22, 49:12

**upper** [2] - 13:3, 28:1

**upsetting** [1] - 60:22

**uses** [2] - 31:8, 31:10

**utility** [1] - 37:15

## V

**validation** [5] - 21:1, 21:3, 21:9, 21:22, 21:24

**vehicle** [2] - 44:18, 44:21

**Vending** [2] - 30:5, 30:14

**vendor** [2] - 79:24, 80:15

**verbal** [1] - 6:8

**verification** [6] - 21:2, 21:4, 21:10, 21:22, 21:24, 21:25

**verified** [1] - 43:4

**verify** [1] - 21:24

**version** [1] - 42:7

**via** [3] - 2:6, 82:1, 84:3

**Vicki** [1] - 41:13

**victim** [1] - 50:25

**video** [2] - 5:16, 82:2

**VIDEOCONFEREN CE** [1] - 1:13

**Videoconference** [1] - 2:1

**violate** [4] - 60:25, 61:5, 76:1, 76:4

**violated** [3] - 73:4, 74:20, 74:23

**violating** [1] - 61:10

**violation** [2] - 32:20, 35:12

**violations** [3] - 32:23, 33:7, 33:21

**virtue** [1] - 84:5

**Visa** [4] - 66:24, 67:1, 67:3, 67:11

**vs** [2] - 1:5, 83:3

## W

**wallet** [2] - 67:6, 69:15

**WATTS** [1] - 2:9

**Watts** [1] - 14:21

**ways** [3] - 22:19, 22:21, 24:12

**website** [2] - 18:7, 18:8

**Wells** [3] - 53:17, 54:17, 78:15

**WHEREUPON** [1] - 5:1

**whole** [1] - 84:7

Christopher Robinson vs. Spring Oaks Capital    Deposition of Christopher B. Robinson

Case 2:23-cv-01381-AMM   Document 44-2   Filed 10/10/24   Page 36 of 165

10

**wife** [3] - 31:12, 53:23, 61:14
**window** [2] - 28:6, 28:11
**witness** [4] - 5:6, 84:7, 84:9, 84:10
**WITNESS** [4] - 3:4, 59:18, 59:21, 84:19
**Wold** [4] - 1:21, 2:4, 83:4, 84:23
**wonder** [2] - 60:24, 61:4
**wondering** [2] - 61:8, 66:16
**wording** [1] - 15:18
**words** [12] - 5:21, 6:9, 14:20, 20:8, 33:4, 34:4, 34:17, 35:15, 58:12, 73:24, 75:19
**world** [1] - 21:7
**World** [5] - 54:20, 54:22, 55:19, 69:10, 78:22
**worries** [3] - 21:15, 27:13, 71:11
**worry** [1] - 45:6
**worse** [1] - 37:1
**worst** [1] - 10:4
**write** [5] - 9:7, 14:7, 15:16, 72:22, 72:25
**wrote** [2] - 14:9, 19:2

## Y

**y'all** [15] - 14:13, 16:2, 20:22, 21:12, 33:13, 34:21, 35:9, 35:20, 36:6, 36:8, 57:4, 57:24, 57:25, 61:7, 70:12
**year** [17] - 15:13, 26:3, 41:18, 44:8, 49:9, 49:21, 51:11, 52:6, 53:13, 54:6, 62:12, 62:16, 63:15, 63:18, 64:11, 68:10, 70:20
**years** [4] - 11:13, 24:4, 30:14, 43:22
**yourself** [1] - 41:12

## Z

**ZIP** [4] - 13:7, 13:9, 13:14, 13:15
**Zoom** [2] - 2:6, 84:3

April 05, 2022

**SPRING OAKS CAPITAL**

1400 Crossways Blvd, STE 100 B
Chesapeake, VA 23320
Toll Free Number: 866-281-3065
Office Hours:
M-Thurs, 8am-9pm EST, F 8am-6pm EST

To: Christopher B Robinson
20 Burney Mountain Rd
Falkville, AL 35622-5700

Reference:  ████1371

**Spring Oaks Capital, LLC is a debt collector.** We are trying to collect a debt that is now owned by Spring Oaks Capital SPV, LLC. We will use any information you give us to help collect the debt.

### Our information shows:

You had an Indigo Mastercard account originated with Celtic Bank with account number ████████3527. The creditor on 01/20/2022 was Celtic Bank. Your Celtic Bank account is now owned by Spring Oaks Capital SPV, LLC.

| | | |
|---|---|---|
| As of 01/20/2022 you owed: | | $675.09 |
| Between 01/20/2022 and today: | | |
| You were charged this amount in interest: | + | $0.00 |
| You were charged this amount in fees: | + | $0.00 |
| You paid or were credited this amount toward the debt: | - | $0.00 |
| **Total amount of the debt now:** | | **$675.09** |

### How can you dispute the debt?

- **Call or write to us by May 15, 2022, to dispute all or part of the debt.** If you do not, we will assume that our information is correct.

- **If you write to us by May 15, 2022,** we must stop collection on any amount you dispute until we send you information that shows you owe the debt. You may use the form below or write to us without the form. You may also include supporting documents.

### What else can you do?

- **Write to ask for the name and address of the original creditor,** if different from the current creditor. If you write by May 15, 2022, we must stop collection until we send you that information. You may use the form below or write to us without the form.

- **Go to www.cfpb.gov/debt-collection to learn more about your rights under federal law.** For instance, you have the right to stop or limit how we contact you.

- **Contact us about your payment options by visiting www.springoakscapital.com or calling 866-281-3065.**

SEE REVERSE SIDE FOR OTHER IMPORTANT INFORMATION

✄

DEPT 914    4379812922040
PO BOX 4115
CONCORD CA  94524

█████████████████████████████

ADDRESS SERVICE REQUESTED

███████████████████████████

CHRISTOPHER B ROBINSON
20 BURNEY MOUNTAIN RD
FALKVILLE AL 35622-5700

### How do you want to respond?

*Check all that apply.*
- ☐ **I want to dispute the debt because I think:**
  - ☐ This is not my debt.
  - ☐ The amount is wrong.
  - ☐ Other (please describe on reverse or attach additional information).
- ☐ **I want you to send me the name and address of the original creditor.**
- ☐ **I enclosed this amount:** $ _____

Make your check payable to Spring Oaks Capital, LLC. Include the reference number ████1371.

**Mail this form to:**

SPRING OAKS CAPITAL, LLC
ATTN: CORRESPONDENCE DEPT
PO BOX 1216
CHESAPEAKE VA  23327-1216
█████████████████████████████

Defendant's Exhibit B - Robinson Dep.  37 of 165

SOC_ROBINSON 000009
3PDIE-0401-1714663713-01534-1534
ROBINSON DEPOSITION EXHIBITS 000001

As required by law, you are hereby notified that a negative credit agency report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations. This does not affect your right to dispute the debt as set forth in this letter.

SOC_ROBINSON 000010

SPCIL-0401-1714663713-01534-1534

ROBINSON DEPOSITION EXHIBITS 000002

| FACTS | What does Spring Oaks Capital, LLC, and its affiliates, including Spring Oaks Capital SPV, LLC (collectively "Spring Oaks", "us", or "we") do with your personal information? |
|---|---|
| Why? | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information.  Please read this notice carefully to understand what we do. |
| What? | The types of personal information we collect and share depend on the product or service you have with us.  This information can include: <br><br> • Social Security Number   and   Date of Birth <br> • Address                          and   Telephone Number <br><br> When you are *no longer* our customer, we continue to share your information as described in this notice. |
| How? | All financial companies need to share customer's personal information to run their everyday business.  In the section below, we list the reasons financial companies can share their customer's personal information; the reasons Spring Oaks chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does Spring Oaks share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes -** such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus. | Yes | No |
| **For our marketing purposes -** to offer our products and services to you | No | No |
| **For joint marketing with other financial companies** | No | No |
| **For our affiliates' everyday business purposes -** information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes -** information about your creditworthiness | Yes | No |
| **For nonaffiliates to market to you** | No | No |

| Questions? | Call 866-281-3065 or go to www.springoakscapital.com |
|---|---|

Defendant's Exhibit B - Robinson Dep.  39 of 165

SOC_ROBINSON 000011
SPOIL-0401-1714663713-01534-1534
ROBINSON DEPOSITION EXHIBITS 000003

| Who we are | |
|---|---|
| **Who is providing this notice?** | Spring Oaks Capital LLC, and its affiliates, including Spring Oaks Capital SPV, LLC |

| What we do | |
|---|---|
| **How does Spring Oaks protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law.  These measures include computer safeguards and secured files and buildings. |
| **How does Spring Oaks collect my personal information?** | We collect your personal information, for example, when you<br><br>  ▪ call us    or    email us<br>  ▪ use our online portal    or    write us |
| **Why can't I limit all sharing?** | Federal law gives you the right to limit only<br><br>  ▪ sharing for affiliates' everyday business purposes - information about your creditworthiness<br>  ▪ affiliates from using your information to market to you<br>  ▪ sharing for nonaffiliates to market to you<br><br>State laws and individual companies may give you additional rights to limit sharing. |

| Definitions | |
|---|---|
| **Affiliates** | Companies related by common ownership or control.  They can be financial and nonfinancial companies. |
| **Nonaffiliates** | Companies not related by common ownership or control.  They can be financial and nonfinancial companies. |
| **Joint Marketing** | A formal agreement between nonaffiliated financial companies that together market financial products or services to you. |

| Other important information |
|---|
| Please refer to the following reference number if you need to contact us with any questions: 111641371. |

SOC_ROBINSON 000012
SPOIL-0401-1714663713-01534-1534
ROBINSON DEPOSITION EXHIBITS 000004

letters, text + email

50

OCT 03 2022

COMPLAINT
DISPUTE *none/s*
ATTY REP _____
BK _____
DECEASED _____
SETTLEMENT _____
DSA _____
POA _____
LAWSUIT _____
CERTIFIED *none/s*
GENERAL _____

September 27, 2022

**By Certified Mail**
SPRING OAKS CAPITAL LLC
PO BOX 1216
CHESAPEAKE, VA 23327

Dear Sir or Madam:

I understand you are claiming that I owe you and/or your client money.

I'm disputing this debt (and all other debts you claim that I have). You can find all the debts you claim to have on me – I dispute them all. Please note I do NOT want you to send me any information – I simply want you to know that I dispute any debts you claim to have on me. This is not a request for validation or verification. I am not interested in you sending me any documentation.

If you want to communicate with me, there are only two convenient ways I want you to communicate with me – text and email. All other ways are inconvenient, and I do not want you to communicate with me in any way other than email or text. You can email me at ████████@gmail.com and you can text me at (██████████)

The only convenient times to communicate with me (only by text and email) are Monday to Friday from 1 pm to 4 pm. All other times are inconvenient for me so only communicate with me from 1 pm to 4 pm.

Thank you.

CHRISTOPHER ROBINSON
Date of Birth: ██████982
Last 4 Social: XXX-XX-1094
20 BURNEY MOUNTAIN RD
FALKVILLE, AL 35622

*Certified Mail #9414811898765814632205 Date: 09/27/2022*

SOC_ROBINSON 000044
ROBINSON DEPOSITION EXHIBITS 000005

CHRISTOPHER ROBINSON
20 BURNEY MOUNTAIN RD
FALKVILLE AL 35622-5700

**$6.57    US POSTAGE**
**FIRST-CLASS**
Sep 27 2022
Mailed from ZIP 34747
1 oz First-Class Mail Letter

11923275



062S0012913542

**USPS CERTIFIED MAIL**



**9414 8118 9876 5814 6322 05**

SPRING OAKS CAPITAL LLC
PO BOX 1216
CHESAPEAKE VA 23327-1216

Robinson v Spring Oaks 000002

ROBINSON DEPOSITION EXHIBITS 000006

September 27, 2022

**By Certified Mail**
SPRING OAKS CAPITAL LLC
PO BOX 1216
CHESAPEAKE, VA 23327

Dear Sir or Madam:

I understand you are claiming that I owe you and/or your client money.

I'm disputing this debt (and all other debts you claim that I have). You can find all the debts you claim to have on me – I dispute them all. Please note I do NOT want you to send me any information – I simply want you to know that I dispute any debts you claim to have on me. This is not a request for validation or verification. I am not interested in you sending me any documentation.

If you want to communicate with me, there are only two convenient ways I want you to communicate with me – text and email. All other ways are inconvenient, and I do not want you to communicate with me in any way other than email or text. You can email me at ████████@gmail.com and you can text me at ████████.

The only convenient times to communicate with me (only by text and email) are Monday to Friday from 1 pm to 4 pm. All other times are inconvenient for me so only communicate with me from 1 pm to 4 pm.

Thank you.

CHRISTOPHER ROBINSON
Date of Birth: ████ 1982
Last 4 Social: XXX-XX-1094
20 BURNEY MOUNTAIN RD
FALKVILLE, AL 35622

*Certified Mail #9414811898765814632205 Date: 09/27/2022*

Robinson v Spring Oaks 000003

ROBINSON DEPOSITION EXHIBITS 000007

Date: October 31, 2022



Christopher B Robinson

20 BURNEY MOUNTAIN RD

FALKVILLE, AL 35622

**Post Office Box 1216**

**Chesapeake, VA 23327-1216**

**Toll Free Number: 866-281-3065**

**<u>Office Hours:</u>**

**M-Thurs. 8am-9pm EST**

**F 8am-6pm EST**

**ACCOUNT INFORMATION**
Original Creditor: Celtic Bank
Original Account No.: ████████3527
Current Creditor: Spring Oaks Capital SPV, LLC
Reference No.: ████1371
Balance: $675.09

Dear Christopher B Robinson,

Our office is in receipt of your dispute and/or request for validation of the debt.  Please be advised that we have reviewed your account and have confirmed the name and amount owed on the account.  Based on our investigation of your dispute, we have determined that you are the correct consumer listed for this account.

Enclosed you will find documents associated with your account provided in response to your dispute and/or request for validation.  Should you have any questions regarding this account, please feel free to contact us.

Thank you,

Spring Oaks Capital, LLC

We are a debt collector, but this is not an attempt to collect a debt.

**SEE FOLLOWING PAGES FOR IMPORTANT INFORMATION**

Defendant's Exhibit B - Robinson Dep.  44 of 165

SOC_ROBINSON 000001

ROBINSON DEPOSITION EXHIBITS 000008

**For Connecticut Residents**

This collection agency is licensed in Connecticut, License number CCA-1916692. NMLS #1916692.

**For Colorado Residents:**

The address and telephone number of our local office is as follows: Colorado Manager, Inc., 8690 Wolff Court, Suite 110, Westminster, CO 80031 (Phone 303-920-4763).

**For Massachusetts Residents:**

NOTICE OF IMPORTANT RIGHTS

You have the right to make a written or oral request that telephone calls regarding your debt not be made to you at your place of employment. Any such oral request will be valid for only ten days unless you provide written confirmation of the request postmarked or delivered within seven days of such request. You may terminate this request by writing to the debt collector.

**For Minnesota Residents:**

This collection agency is licensed by the Minnesota Department of Commerce.

**For North Carolina Residents:**

Spring Oaks Capital, LLC's North Carolina company number is as follows: 119507661.

**For New York Residents:**

If a creditor or debt collector receives a money judgment against you in court, state and federal laws may prevent the following types of income from being taken to pay the debt: 1. Supplemental security income, (SSI); 2. Social security; 3. Public assistance (welfare); 4. Spousal support, maintenance (alimony) or child support; 5. Unemployment benefits;  6. Disability benefits; 7. Workers' compensation benefits; 8. Public or private pensions; 9. Veterans' benefits; 10. Federal student loans, federal student grants, and federal work study funds; and 11. Ninety percent of your wages or salary earned in the last sixty days.

**For New York City Residents:**

You may also reach us by calling Tim Rees at 866-539-7554.  New York City Department of Consumer Affairs License Number(s): 2097110-DCA.

**For Tennessee Residents:**

Spring Oaks Capital, LLC is licensed by the Collection Service Board of the Department of Commerce and Insurance.

SOC_ROBINSON 000002

ROBINSON DEPOSITION EXHIBITS 000009

3527

GENESIS FS CARD SERVICES
PO BOX 4477
BEAVERTON OR 97076-4477

| Account Number | 3527 |
| New Balance | $304.00 |
| Minimum Payment Due | $44.00 |
| Payment Due Date | 07/18/21 |

GENESIS FS CARD SERVICES ◄ Make check/money
PO BOX 23039                           order payable to
COLUMBUS GA 31902-3039

AMOUNT ENCLOSED | $

Please write your account number on your check/money order
and do not send cash.

CHRISTOPHER B ROBINSON        **0000000
20 BURNEY MOUNTAIN RD
FALKVILLE AL  35622-5700

Address/Phone Number Change

☐ Please check here and complete Address/Phone
Number Change Form on reverse side.

**Make your payment online at www.myindigocard.com**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Please detach this portion and return with your payment to ensure proper credit. Retain lower portion for your records.

## indigo®

**MASTERCARD ACCOUNT STATEMENT**
3527
May 23, 2021 - June 21, 2021



### Account Summary

| | |
|---|---|
| Credit Line | $300.00 |
| Available Credit | $0.00 |
| Past Due Amount | $0.00 |
| Overlimit Amount | $4.00 |
| Statement Closing Date | June 21, 2021 |
| # of Days in Billing Cycle | 30 |

### Purchase/Cash Advance Balance Summary

| | |
|---|---|
| Previous Balance | $0.00 |
| Payments | $0.00 |
| Other Credits | $0.00 |
| Purchases | $224.54 |
| Cash Advances | $0.00 |
| Adjustments | $0.00 |
| **Fees Charged** | **$79.46** |
| **Interest Charged** | **$0.00** |
| New Purchase/Cash Advance Balance | $304.00 |

### Payment Information

| | |
|---|---|
| **Total New Balance** | **$304.00** |
| **Minimum Payment Due** | **$44.00** |
| **Payment Due Date** | **July 18, 2021** |

**Late Payment Warning:** If we do not receive your minimum payment by the date listed above, you may have to pay a late fee of up to $40.

**Minimum Payment Warning:** If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance. For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 9 month(s) | $341 |

If you would like information about credit counseling services, call 1-866-946-9545.

Mail payment to:
Genesis FS Card Services
PO BOX 23039
COLUMBUS GA 31902-3039

Please mail billing inquiries to:
Genesis FS Card Services
P.O. Box 4499
Beaverton, OR 97076-4499

QUESTIONS?
Call 1-866-946-9545
www.myindigocard.com

**YOUR ACCOUNT IS CURRENTLY $4.00 OVER YOUR $300.00 CREDIT LINE.
PLEASE REMIT THIS TO US IMMEDIATELY.**

### Transactions

| Reference Number | Tran Date | Post Date | Description of Transaction or Credit | Amount |
|---|---|---|---|---|
| 252478011570000822107068 | 06/06 | 06/07 | HARDEES 1501387 HARTSELLE AL | $6.00 |
| 527082411588388000426022 | 06/06 | 06/07 | HARTSELLE FOODMART HARTSELLE AL | $10.00 |
| 555480711574000000001114 | 06/06 | 06/07 | JACK'S # 241    Q22 HARTSELLE AL | $10.53 |
| 527082411588388000426006 | 06/06 | 06/07 | HARTSELLE FOODMART HARTSELLE AL | $15.19 |
| 527048711578838000793529 | 06/05 | 06/07 | TACO BELL #037141 HARTSELLE AL | $16.93 |
| 553095911578838001136872 | 06/05 | 06/07 | O'REILLY AUTO PARTS 10 HARTSELLE AL | $162.39 |
| 252478011590010081098640 | 06/08 | 06/09 | BUFFALO ROCK VENDING H HUNTSVILLE AL | $1.75 |
| 252478011600011115314879 | 06/09 | 06/10 | BUFFALO ROCK VENDING H HUNTSVILLE AL | $1.75 |

### Fees

| Reference Number | Tran Date | Post Date | Description of Transaction or Credit | Amount |
|---|---|---|---|---|
| 750130114917400000000000 | 05/29 | 05/31 | ANNUAL FEE | $75.00 |
| | 06/21 | 06/21 | CREDIT PROTECTION FEES | $4.46 |
| | | | **TOTAL FEES FOR THIS PERIOD** | **$79.46** |

### 2021 Totals Year-to-Date

| | |
|---|---|
| Total fees charged in 2021 | $79.46 |
| Total interest charged in 2021 | $0.00 |

PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION.

Defendant's Exhibit B - Robinson Dep. 46 of 165

SOC_ROBINSON 000003

ROBINSON DEPOSITION EXHIBITS 000010

5TD0-0445-5008-3527

00000000 - 032528 - 0002 - 0003 - 7

# indigo®

**MASTERCARD ACCOUNT STATEMENT**
███████████3527
May 23, 2021 - June 21, 2021



| Interest Charge Calculation | | | |
|---|---|---|---|
| Your **Annual Percentage Rate (APR)** is the annual interest rate on your account. | | | |
| **Type of Balance** | **Annual Percentage Rate (APR)** | **Balance Subject to Interest Rate** | **Interest Charge** |
| Purchases | 29.90% | $0.00 | $0.00 |
| Cash Advances | 29.90% | $0.00 | $0.00 |
| | (v) = Variable Rate | | |

Defendant's Exhibit B - Robinson Dep.  47 of 165

SOC_ROBINSON 000004

ROBINSON DEPOSITION EXHIBITS 000011

## ADDRESS / PHONE NUMBER CHANGE FORM

If you provide us with a cellular phone number, you are expressly consenting that (i) we and our agents may contact you at that number and (ii) we may use automated telephone dialing systems to initiate such contacts and/or leave recorded messages.

3527

_____
ADDRESS

_____
CITY                          STATE           ZIP CODE

( )_____              ( )_____
HOME PHONE                     BUSINESS PHONE

_____
EMAIL ADDRESS

Detach here ▼ and return above portion with your remittance. After detaching, retain lower portion for your future reference.

**This Account is issued by Celtic Bank and serviced by Genesis FS Card Services, Inc.**

**What To Do If You Think You Find A Mistake On Your Statement**

If you think there is an error on your statement, write to us at: Genesis FS Card Services, P.O. Box 4499, Beaverton, Oregon 97076.

In your letter, give us the following information:
- *Account Information:* Your name and Account number.
- *Dollar Amount:* The dollar amount of the suspected error.
- *Description of Problem:* If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us within 60 days after the error appeared on your statement.

You must notify us of any potential errors *in writing.* You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

While we investigate whether or not there has been an error, the following are true:
- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

**Your Rights If You Are Dissatisfied With Your Credit Card Purchases**

If you are dissatisfied with the goods or services that you have purchased with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase.

To use this right, all of the following must be true:
1. The purchase must have been made in your home state or within 100 miles of your current mailing address, and the purchase price must have been more than $50. (Note: Neither of these is necessary if your purchase was based on an advertisement we mailed to you, or if we own the company that sold you the goods or services.)
2. You must have used your credit card for the purchase. Purchases made with cash advances from an ATM or with a check that accesses your credit card account do not qualify.
3. You must not yet have fully paid for the purchase.

If all of the criteria above are met and you are still dissatisfied with the purchase, contact us *in writing* at: Genesis FS Card Services, P.O. Box 4499, Beaverton, Oregon 97076.

While we investigate, the same rules apply to the disputed amount as discussed above. After we finish our investigation, we will tell you our decision. At that point, if we think you owe an amount and you do not pay, we may report you as delinquent.

**PAYMENTS**

Payments should be mailed with the payment coupon and in the envelope provided to the Genesis FS Card Services payment address indicated on the payment coupon. Any payment received in that form and at that address on or before 5:00 PM. Eastern Time on a normal banking day will be credited to your Account that day. If your payment is received in that form and at that address after 5:00 PM. Eastern Time on a normal banking day, or anytime on a nonbanking day, we will credit it to your Account the next banking day. Payments can also be made online by visiting www.myindigocard.com. When you provide a check as payment, you authorize us either to use the information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day we receive your payment and you will not receive your check back from your financial institution. Payments received at other than the remittance address on the face of this statement may be subject to a delay in crediting of up to 5 days after the date of receipt.

**ANNUAL FEE (if applicable)**

If you wish to terminate your ability to use your Card to obtain further Purchases and Cash Advances in order to avoid paying the renewal Annual Fee, you must deliver written notice of termination to us within thirty (30) days from the mailing date of the statement containing the renewal Annual Fee notice. Your notice must be sent to us at Genesis FS Card Services, P.O. Box 4477, Beaverton, OR 97076. Upon receipt, we will close your Account and the renewal Annual Fee will not be charged to your Account. Terminating credit availability will not cancel your obligations to pay amounts outstanding on your Account, and you will be required to pay your outstanding balance with interest in accordance with the terms of your Cardholder Agreement. These rights do not apply to an Annual Fee charged in connection with the opening of your Account.

**CREDIT BUREAU REPORTING**

We may report information about your Account to credit bureaus. Late payments, missed payments, or other defaults on your Account may be reflected in your credit report.

**HOW INTEREST CHARGES ARE DETERMINED**

Your interest charge for any Billing Cycle will include the following components, the total of which constitutes your total interest charge for the Billing Cycle:
1. A Cash Advance Transaction Fee interest charge imposed on each Cash Advance transaction posted during a Billing Cycle in an amount equal to the greater of $10 or 5% of the amount of each Cash Advance. The Cash Advance Transaction Fee interest charges will be added to the

calculation of your Average Daily Balance of Cash Advances. We will not charge any Cash Advance Transaction Fees, however, during the one-year period beginning on the date you open your Account.
2. Periodic interest charge computed by applying the applicable Monthly Periodic Rate or Rates, determined as provided below under Computing the Purchase and Cash Advance Balance Monthly Periodic Rates and Corresponding Annual Percentage Rates (APR) to:
   a. your Average Daily Balance of Cash Advances (including new Cash Advances); and
   b. your Average Daily Balance of Purchases (including new Purchases).
   However, if the total of the amounts so computed is an amount less than $.50, then a minimum interest charge of $.50 will be imposed instead of such smaller amounts and will be treated as an interest charge on Purchases.
3. A Foreign Currency Conversion Fee interest charge in an amount equal to 1% of the converted U.S. dollar amount of each transaction, including Cash Advances and Purchases, that is effected in any currency other than U.S. dollars.

**When Interest Charges Begin to Accrue.** Interest charges on Purchases will be imposed at the applicable Monthly Periodic Rate from the date each Purchase is made, and will continue to accrue on unpaid balances as long as they remain unpaid. However, we do not assess interest charges in the following circumstances:
1. If you paid the New Balance at the beginning of your previous Billing Cycle by the Payment Due Date during the previous Billing Cycle, or if that New Balance was $0 or a credit balance, then:
   a. if you pay the New Balance on your current Statement in full by the Payment Due Date in your current Billing Cycle, we will not assess interest charges on Purchases during your current Billing Cycle; and
   b. if you make a payment that is less than the New Balance by the Payment Due Date in your current Billing Cycle, we will credit that payment as of the first day in your current Billing Cycle.
2. If you had a New Balance at the beginning of your previous Billing Cycle and you did not pay that New Balance by the Payment Due Date during that previous Billing Cycle, then we will not assess interest charges on any Purchases during the current Billing Cycle if you pay the New Balance at the beginning of your current Billing Cycle by the Payment Due Date in your current Billing Cycle.

Periodic interest charges on Cash Advances will be imposed at the applicable Monthly Periodic Rate from the date each Cash Advance is made and will continue to accrue on unpaid balances as long as they remain unpaid. There is no grace period on Cash Advances and there is no period within which to pay to avoid interest charges on Cash Advances.

**Calculating the Purchase and Cash Advance Balance Subject to Interest Charges**

**Average Daily Balance of Purchases (including new Purchases):** To get the Average Daily Balance of Purchases, we take the beginning Purchase balance of your Account each day, including unpaid interest charges on Purchases and Foreign Currency Conversion Fee interest charges on Purchases, and any new Purchases as of the date of transaction, and subtract the applicable portion of any payments and credits as of the transaction date. On the first day of a Billing Cycle, we also add any unpaid fees. This gives us the daily balance for Purchases. Then we add all these daily balances for the Billing Cycle together and divide the total by the number of days in the Billing Cycle. This gives us the Average Daily Balance of Purchases.

**Average Daily Balance of Cash Advances (including new Cash Advances):** To get the Average Daily Balance of Cash Advances, we take the beginning Cash Advance balance of your Account each day, including unpaid interest charges on Cash Advances and Foreign Currency Conversion Fee interest charges on Cash Advances, add any new Cash Advances as of the date of transaction, and the Cash Advance Transaction Fee interest charge on any Cash Advances as of the transaction date of each Cash Advance, and subtract the applicable portion of any payments and credits as of the transaction date. This gives us the daily balance for Cash Advances. Then we add all these daily balances for the Billing Cycle together and divide the total by the number of days in the Billing Cycle. This gives us the Average Daily Balance of Cash Advances.

**Computing the Purchase and Cash Advance Balance Monthly Periodic Rates and Corresponding Annual Percentage Rates (APR)**

**Monthly Periodic Rates:** The Monthly Periodic Rate is calculated by dividing the APR by 12. The Purchase APR is 29.9% and the Monthly Periodic Rate for Purchases is 2.4916%.

The Cash Advance APR is 29.9% and the Monthly Periodic Rate for Cash Advances is 2.4916%.

**OTHER DISCLOSURES**

For AR, HI, IA, ME Residents: This communication is from a debt collector. This is an attempt to collect debt and any information obtained will be used for the purpose.

SOC_ROBINSON 000005

ROBINSON DEPOSITION EXHIBITS 000012

3527

GENESIS FS CARD SERVICES
PO BOX 4477
BEAVERTON OR 97076-4477

| Account Number | ▇▇▇▇▇3527 |
| --- | --- |
| New Balance | $345.10 |
| Minimum Payment Due | $85.10 |
| Payment Due Date | 08/18/21 |

**GENESIS FS CARD SERVICES**
**PO BOX 23039**
**COLUMBUS GA 31902-3039**
◄ Make check/money
order payable to

AMOUNT ENCLOSED   $

Please write your account number on your check/money order
and do not send cash.

**CHRISTOPHER B ROBINSON**
**20 BURNEY MOUNTAIN RD**
**FALKVILLE AL 35622-5700**
**0000000

_Address/Phone Number Change_
☐ Please check here and complete Address/Phone
Number Change Form on reverse side.

**Make your payment online at www.myindigocard.com**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Please detach this portion and return with your payment to ensure proper credit. Retain lower portion for your records.

## indigo®

**MASTERCARD ACCOUNT STATEMENT**
▇▇▇▇3527
June 22, 2021 - July 19, 2021



mastercard

### Account Summary

| | |
| --- | --- |
| Credit Line | $300.00 |
| Available Credit | $0.00 |
| Past Due Amount | $40.00 |
| Overlimit Amount | $45.10 |
| Statement Closing Date | July 19, 2021 |
| # of Days in Billing Cycle | 28 |

### Purchase/Cash Advance Balance Summary

| | |
| --- | --- |
| Previous Balance | $304.00 |
| Payments | $0.00 |
| Other Credits | $0.00 |
| Purchases | $0.00 |
| Cash Advances | $0.00 |
| Adjustments | $0.00 |
| **Fees Charged** | **$33.53** |
| **Interest Charged** | **$7.57** |
| New Purchase/Cash Advance Balance | $345.10 |

### Payment Information

| | |
| --- | --- |
| **Total New Balance** | **$345.10** |
| **Minimum Payment Due** | **$85.10** |
| **Payment Due Date** | **August 18, 2021** |

**Late Payment Warning:** If we do not receive your minimum payment by the date listed above, you may have to pay a late fee of up to $40.

**Minimum Payment Warning:** If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance. For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
| --- | --- | --- |
| Only the minimum payment | 9 month(s) | $383 |

If you would like information about credit counseling services, call 1-866-946-9545 .

| Mail payment to: | Please mail billing inquiries to: | QUESTIONS? |
| --- | --- | --- |
| Genesis FS Card Services | Genesis FS Card Services | Call 1-866-946-9545 |
| PO BOX 23039 | P.O. Box 4499 | www.myindigocard.com |
| COLUMBUS GA 31902-3039 | Beaverton, OR 97076-4499 | |

YOUR MINIMUM PAYMENT INCLUDES ANY OVERLIMIT AND PAST DUE AMOUNTS.
PLEASE REMIT IMMEDIATELY.

### Fees

| Reference Number | Tran Date | Post Date | Description of Transaction or Credit | Amount |
| --- | --- | --- | --- | --- |
| | 07/19 | 07/19 | CREDIT PROTECTION FEES | $4.53 |
| | 07/19 | 07/19 | LATE PAYMENT CHARGE | $29.00 |
| | | | **TOTAL FEES FOR THIS PERIOD** | **$33.53** |

### Interest Charged

| Reference Number | Tran Date | Post Date | Description of Transaction or Credit | Amount |
| --- | --- | --- | --- | --- |
| | 07/19 | 07/19 | INTEREST CHARGE PURCHASE | $7.57 |
| | | | **TOTAL INTEREST FOR THIS PERIOD** | **$7.57** |

### 2021 Totals Year-to-Date

| | |
| --- | --- |
| Total fees charged in 2021 | $112.99 |
| Total interest charged in 2021 | $7.57 |

### Interest Charge Calculation

Your **Annual Percentage Rate (APR)** is the annual interest rate on your account.

| Type of Balance | Annual Percentage Rate (APR) | Balance Subject to Interest Rate | Interest Charge |
| --- | --- | --- | --- |
| Purchases | 29.90% | $304.16 | $7.57 |
| Cash Advances | 29.90% | $0.00 | $0.00 |

(v) = Variable Rate

**Defendant's Exhibit B - Robinson Dep. 49 of 165**

SOC_ROBINSON 000028

ROBINSON DEPOSITION EXHIBITS 000013

## ADDRESS / PHONE NUMBER CHANGE FORM

If you provide us with a cellular phone number, you are expressly consenting that (i) we and our agents may contact you at that number and (ii) we may use automated telephone dialing systems to initiate such contacts and/or leave recorded messages.

_____
ADDRESS

_____
CITY                              STATE              ZIP CODE

(     )                                   (     )
HOME PHONE                          BUSINESS PHONE

_____
EMAIL ADDRESS

3527

Detach here ▼ and return above portion with your remittance. After detaching, retain lower portion for your future reference.

**This Account is issued by Celtic Bank and serviced by Genesis FS Card Services, Inc.**

**What To Do If You Think You Find A Mistake On Your Statement**

If you think there is an error on your statement, write to us at: Genesis FS Card Services, P.O. Box 4499, Beaverton, Oregon 97076.

In your letter, give us the following information:
- *Account Information:* Your name and Account number.
- *Dollar Amount:* The dollar amount of the suspected error.
- *Description of Problem:* If you think there is an error on your bill, describe what you believe is wrong and why you are unsure it is a mistake.

You must contact us within 60 days after the error appeared on your statement.

You must notify us of any potential errors *in writing*. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

While we investigate whether or not there has been an error, the following are true:
- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

**Your Rights If You Are Dissatisfied With Your Credit Card Purchases**

If you are dissatisfied with the goods or services that you have purchased with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase.

To use this right, all of the following must be true:
1. The purchase must have been made in your home state or within 100 miles of your current mailing address, and the purchase price must have been more than $50. (Note: Neither of these is necessary if your purchase was based on an advertisement we mailed to you, or if we own the company that sold you the goods or services.)
2. You must have used your credit card for the purchase. Purchases made with cash advances from an ATM or with a check that accesses your credit card account do not qualify.
3. You must not yet have fully paid for the purchase.

If all of the criteria are met and you are still dissatisfied with the purchase, contact us *in writing* at: Genesis FS Card Services, P.O. Box 4499, Beaverton, Oregon 97076.

While we investigate, the same rules apply to the disputed amount as discussed above. After we finish our investigation, we will tell you our decision. At that point, if we think you owe an amount and you do not pay, we may report you as delinquent.

**PAYMENTS**

Payments should be mailed with the payment coupon and in the envelope provided to the Genesis FS Card Services payment address indicated on the payment coupon. Any payment received in that form and at that address on or before 5:00 P.M. Eastern Time on a normal banking day will be credited to your Account that day. If your payment is received in that form and at that address after 5:00 P.M. Eastern Time on a normal banking day, or anytime on a nonbanking day, we will credit it to your Account the next banking day. Payments can also be made online by visiting www.myindigocard.com. When you provide a check as payment, you authorize us either to use the information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day we receive your payment and you will not receive your check back from your financial institution. Payments received at other than the remittance address on the face of this statement may be subject to a delay in crediting of up to 5 days after the date of receipt.

**ANNUAL FEE (if applicable)**

If you wish to terminate your ability to use your Card to obtain further Purchases and Cash Advances in order to avoid paying the renewal Annual Fee, you must deliver written notice of termination to us within thirty (30) days from the mailing date of the statement containing the renewal Annual Fee notice. Your notice must be sent to us at Genesis FS Card Services, P.O. Box 4477, Beaverton, OR 97076. Upon receipt, we will close your Account and the renewal Annual Fee will not be charged to your Account. Terminating credit availability will not cancel your obligations to pay amounts outstanding on your Account, and you will be required to pay your outstanding balance with interest in accordance with the terms of your Cardholder Agreement. These rights do not apply to an Annual Fee charged in connection with the opening of your Account.

**CREDIT BUREAU REPORTING**

We may report information about your Account to credit bureaus. Late payments, missed payments, or other defaults on your Account may be reflected in your credit report.

**HOW INTEREST CHARGES ARE DETERMINED**

Your interest charge for any Billing Cycle will include the following components, the total of which constitutes your total interest charge for the Billing Cycle:
1. A Cash Advance Transaction Fee interest charge imposed on each Cash Advance Transaction posted during a Billing Cycle in an amount equal to the greater of 3% of the amount of each Cash Advance or $10. The Cash Advance Transaction Fee interest charges will be added to the

calculation of your Average Daily Balance of Cash Advances. We will not charge any Cash Advance Transaction Fees, however, during the one-year period beginning on the date you open your Account.
2. Periodic interest charge computed by applying the applicable Monthly Periodic Rate or Rates, determined as provided below under **Computing the Purchase and Cash Advance Balance Monthly Periodic Rates and Corresponding Annual Percentage Rates (APR)** to:
   a. your *Average Daily Balance of Cash Advances* (including new Cash Advances); and
   b. your Average Daily Balance of Purchases (including new Purchases).

   However, if the total of the amounts so computed is an amount less than $.50, then a minimum interest charge of $.50 will be imposed instead of such smaller amounts and will be treated as an interest charge on Purchases.
3. A Foreign Currency Conversion Fee interest charge in an amount equal to 1% of the converted U.S. dollar amount of each transaction, including Cash Advances and Purchases, that is effected in any currency other than U.S. dollars.

**When Interest Charges Begin to Accrue.** Interest charges on Purchases will be imposed at the applicable Monthly Periodic Rate from the date each Purchase is made, and will continue to accrue on unpaid balances as long as they remain unpaid. However, we do not assess interest charges in the following circumstances:
1. If you paid the New Balance at the beginning of your previous Billing Cycle by the Payment Due Date during the previous Billing Cycle, or if that New Balance was $0 or a credit balance, then:
   a. if you pay the New Balance on your current Statement in full by the Payment Due Date in your current Billing Cycle, we will not assess interest charges on Purchases during your current Billing Cycle; and
   b. if you make a payment that is less than the New Balance by the Payment Due Date in your current Billing Cycle, we will credit that payment as of the first day in your current Billing Cycle.
2. If you had a New Balance at the beginning of your previous Billing Cycle and you did not pay that New Balance by the Payment Due Date during that previous Billing Cycle, then we will not assess interest charges on any Purchases during the current Billing Cycle if you pay the New Balance at the beginning of your current Billing Cycle by the Payment Due Date in your current Billing Cycle.

Periodic interest charges on Cash Advances will be imposed at the applicable Monthly Periodic Rate from the date each Cash Advance is made and will continue to accrue on unpaid balances as long as they remain unpaid. There is no grace period on Cash Advances and there is no period within which to pay to avoid interest charges on Cash Advances.

**Calculating the Purchase and Cash Advance Balance Subject to Interest Charges**

**Average Daily Balance of Purchases (including new Purchases):** To get the Average Daily Balance of Purchases, we take the beginning Purchase balance of your Account each day, including unpaid interest charges on Purchases and Foreign Currency Conversion Fee interest charges on Purchases, add any new Purchases as of the date of transaction, and subtract the applicable portion of any payments and credits as of the transaction date. On the first day of a Billing Cycle, we also add any unpaid fees. This gives us the daily balance for Purchases. Then we add all these daily balances for the Billing Cycle together and divide the total by the number of days in the Billing Cycle. This gives us the Average Daily Balance of Purchases.

**Average Daily Balance of Cash Advances (including new Cash Advances):** To get the Average Daily Balance of Cash Advances, we take the beginning Cash Advance balance of your Account each day, including unpaid interest charges on Cash Advances and Foreign Currency Conversion Fee interest charges on Cash Advances, add any new Cash Advances as of the date of transaction, and the Cash Advance Transaction Fee interest charge on any Cash Advance as of the transaction date of each Cash Advance, and subtract the applicable portion of any payments and credits as of the transaction date. This gives us the daily balance for Cash Advances. Then we add all these daily balances for this Billing Cycle together and divide the total by the number of days in the Billing Cycle. This gives us the Average Daily Balance of Cash Advances.

**Computing the Purchase and Cash Advance Balance Monthly Periodic Rates and Corresponding Annual Percentage Rates (APR)**

**Monthly Periodic Rates:** The Monthly Periodic Rate is calculated by dividing the APR by 12. The Purchase APR is 29.9% and the Monthly Periodic Rate for Purchases is 2.4916%.

The Cash Advance APR is 29.9% and the Monthly Periodic Rate for Cash Advances is 2.4916%.

**OTHER DISCLOSURES**

For AR, HI, IA, ME Residents: This communication is from a debt collector. This is an attempt to collect debt and any information obtained will be used for the purpose.

SOC_ROBINSON 000029

ROBINSON DEPOSITION EXHIBITS 000014

3527

GENESIS FS CARD SERVICES
PO BOX 4477
BEAVERTON OR  97076-4477

| | |
|---|---|
| Account Number | 3527 |
| New Balance | $398.83 |
| Minimum Payment Due | $138.83 |
| Payment Due Date | 09/18/21 |
| AMOUNT ENCLOSED | $ |

GENESIS FS CARD SERVICES    ← Make check/money
PO BOX 23039                    order payable to
COLUMBUS GA 31902-3039

Please write your account number on your check/money order
and do not send cash.

CHRISTOPHER B ROBINSON        **0000000
20 BURNEY MOUNTAIN RD
FALKVILLE AL  35622-5700

Address/Phone Number Change

☐ Please check here and complete Address/Phone
Number Change Form on reverse side.

**Make your payment online at www.myindigocard.com**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Please detach this portion and return with your payment to ensure proper credit. Retain lower portion for your records.

## indigo®

**MASTERCARD ACCOUNT STATEMENT**
3527
July 20, 2021 - August 19, 2021


mastercard

### Account Summary

| | |
|---|---|
| Credit Line | $300.00 |
| Available Credit | $0.00 |
| Past Due Amount | $80.00 |
| Overlimit Amount | $98.83 |
| Statement Closing Date | August 19, 2021 |
| # of Days in Billing Cycle | 31 |

### Purchase/Cash Advance Balance Summary

| | |
|---|---|
| Previous Balance | $345.10 |
| Payments | $0.00 |
| Other Credits | $0.00 |
| Purchases | $0.00 |
| Cash Advances | $0.00 |
| Adjustments | $0.00 |
| **Fees Charged** | **$45.14** |
| **Interest Charged** | **$8.59** |
| New Purchase/Cash Advance Balance | $398.83 |

### Payment Information

| | |
|---|---|
| **Total New Balance** | **$398.83** |
| **Minimum Payment Due** | **$138.83** |
| **Payment Due Date** | **September 18, 2021** |

**Late Payment Warning:** If we do not receive your minimum payment by the date listed above, you may have to pay a late fee of up to $40.

**Minimum Payment Warning:** If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance. For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 10 month(s) | $442 |

If you would like information about credit counseling services, call 1-866-946-9545 .

| Mail payment to: | Please mail billing inquiries to: | QUESTIONS? |
|---|---|---|
| Genesis FS Card Services | Genesis FS Card Services | Call 1-866-946-9545 |
| PO BOX 23039 | P.O. Box 4499 | www.myindigocard.com |
| COLUMBUS GA 31902-3039 | Beaverton, OR 97076-4499 | |

YOUR MINIMUM PAYMENT INCLUDES ANY OVERLIMIT AND PAST DUE AMOUNTS.
PLEASE REMIT IMMEDIATELY.

### Fees

| Reference Number | Tran Date | Post Date | Description of Transaction or Credit | Amount |
|---|---|---|---|---|
| | 08/19 | 08/19 | CREDIT PROTECTION FEES | $5.14 |
| | 08/19 | 08/19 | LATE PAYMENT CHARGE | $40.00 |
| | | | **TOTAL FEES FOR THIS PERIOD** | **$45.14** |

### Interest Charged

| Reference Number | Tran Date | Post Date | Description of Transaction or Credit | Amount |
|---|---|---|---|---|
| | 08/19 | 08/19 | INTEREST CHARGE PURCHASE | $8.59 |
| | | | **TOTAL INTEREST FOR THIS PERIOD** | **$8.59** |

### 2021 Totals Year-to-Date

| | |
|---|---|
| Total fees charged in 2021 | $158.13 |
| Total interest charged in 2021 | $16.16 |

### Interest Charge Calculation

Your **Annual Percentage Rate (APR)** is the annual interest rate on your account.

| Type of Balance | Annual Percentage Rate (APR) | Balance Subject to Interest Rate | Interest Charge |
|---|---|---|---|
| Purchases | 29.90% | $345.26 | $8.59 |
| Cash Advances | 29.90% | $0.00 | $0.00 |

(v) = Variable Rate

Defendant's Exhibit B - Robinson Dep. 51 of 165

SOC_ROBINSON 000030

ROBINSON DEPOSITION EXHIBITS 000015

## ADDRESS / PHONE NUMBER CHANGE FORM

If you provide us with a cellular phone number, you are expressly consenting that (i) we and our agents may contact you at that number and (ii) we may use automated telephone dialing systems to initiate such contacts and/or leave recorded messages.

ADDRESS

CITY                                STATE              ZIP CODE

( )
HOME PHONE                                BUSINESS PHONE

EMAIL ADDRESS

3527

---

Detach here ▼ and return above portion with your remittance. After detaching, retain lower portion for your future reference.

**This Account is issued by Celtic Bank and serviced by Genesis FS Card Services, Inc.**

**What To Do If You Think You Find A Mistake On Your Statement**

If you think there is an error on your statement, write to us at: Genesis FS Card Services, P.O. Box 4499, Beaverton, Oregon 97076.

In your letter, give us the following information:
- *Account Information:* Your name and Account number.
- *Dollar Amount:* The dollar amount of the suspected error.
- *Description of Problem:* If you think there is an error on your bill, describe what you believe is wrong and why you are not sure it is a mistake.

You must contact us within 60 days after the error appeared on your statement.

You must notify us of any potential errors *in writing.* You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

While we investigate whether or not there has been an error, the following are true:
- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

**Your Rights If You Are Dissatisfied With Your Credit Card Purchases**

If you are dissatisfied with the goods or services that you have purchased with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase.

To use this right, all of the following must be true:
1. The purchase must have been made in your home state or within 100 miles of your current mailing address, and the purchase price must have been more than $50. (Note: Neither of these is necessary if your purchase was based on an advertisement we mailed to you, or if we own the company that sold you the goods or services.)
2. You must have used your credit card for the purchase. Purchases made with cash advances from an ATM or with a check that accesses your credit card account do not qualify.
3. You must not yet have fully paid for the purchase.

If all of the criteria are met and you are still dissatisfied with the purchase, contact us *in writing* at: Genesis FS Card Services, P.O. Box 4499, Beaverton, Oregon 97076.

While we investigate, the same rules apply to the disputed amount as discussed above. After we finish our investigation, we will tell you our decision. At that point, if we think you owe an amount and you do not pay, we may report you as delinquent.

**PAYMENTS**

Payments should be mailed with the payment coupon and in the envelope provided to the Genesis FS Card Services payment address indicated on the payment coupon. Any payment received in that form and at that address on or before 5:00 P.M. Eastern Time on a normal banking day will be credited to your Account that day. If your payment is received in that form and at that address after 5:00 P.M. Eastern Time on a normal banking day, or anytime on a nonbanking day, we will credit it to your Account the next banking day. Payments can also be made online by visiting www.myindigocard.com. When you provide a check as payment, you authorize us either to use the information from your check to make a one-time electronic fund transfer from your Account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day we receive your payment and you will not receive your check back from your financial institution. Payments received at other than the remittance address on the face of this statement may be subject to a delay in crediting of up to 5 days after the date of receipt.

**ANNUAL FEE (if applicable)**

If you wish to terminate your ability to use your Card to obtain further Purchases and Cash Advances in order to avoid paying the renewal Annual Fee, you must deliver written notice of termination to us within thirty (30) days from the mailing date of the statement containing the renewal Annual Fee notice. Your notice must be sent to us at Genesis FS Card Services, P.O. Box 4477, Beaverton, OR 97076. Upon receipt, we will close your Account and the renewal Annual Fee will not be charged to your Account. Terminating credit availability will not cancel your obligations to pay amounts outstanding on your Account, and you will be required to pay your outstanding balance with interest in accordance with the terms of your Cardholder Agreement. These rights do not apply to an Annual Fee charged in connection with the opening of your Account.

**CREDIT BUREAU REPORTING**

We may report information about your Account to credit bureaus. Late payments, missed payments, or other defaults on your Account may be reflected in your credit report.

**HOW INTEREST CHARGES ARE DETERMINED**

Your interest charge for any Billing Cycle will include the following components, the total of which constitutes your total interest charge for the Billing Cycle:
1. A Cash Advance Transaction Fee interest charge imposed on each Cash Advance transaction posted during a Billing Cycle in an amount equal to the greater of 3% of the amount of each Cash Advance or $1.00. The Cash Advance Transaction Fee interest charges will be added to the

calculation of your Average Daily Balance of Cash Advances. We will not charge any Cash Advance Transaction Fees, however, during the one-year period beginning on the date you open your Account.
2. Periodic interest charge computed by applying the applicable Monthly Periodic Rate or Rates, determined as provided below under Computing the Purchase and Cash Advance Balance Monthly Periodic Rates and Corresponding Annual Percentage Rates (APR) to:
   a. your *Average Daily Balance* of Cash Advances (including new Cash Advances); and
   b. your Average Daily Balance of Purchases (including new Purchases).

However, if the total of the amounts so computed is an amount less than $.50, then a minimum interest charge of $.50 will be imposed instead of such smaller amounts and will be treated as an interest charge on Purchases.
3. A Foreign Currency Conversion Fee interest charge in an amount equal to 1% of the converted U.S. dollar amount of each transaction, including Cash Advances and Purchases, that is effected in any currency other than U.S. dollars.

**When Interest Charges Begin to Accrue.** Interest charges on Purchases will be imposed at the applicable Monthly Periodic Rate from the date each Purchase is made, and will continue to accrue on unpaid balances as long as they remain unpaid. However, we do not assess interest charges in the following circumstances:
1. If you paid the New Balance at the beginning of your previous Billing Cycle by the Payment Due Date during the previous Billing Cycle, or if that New Balance was $0 or a credit balance, then:
   a. if you pay the New Balance on your current Statement in full by the Payment Due Date in your current Billing Cycle, we will not assess interest charges on Purchases during your current Billing Cycle; and
   b. if you make a payment that is less than the New Balance by the Payment Due Date in your current Billing Cycle, we will credit that payment as of the first day in your current Billing Cycle.
2. if you had a New Balance at the beginning of your previous Billing Cycle and you did not pay that New Balance by the Payment Due Date during that previous Billing Cycle, then we will not assess interest charges on any Purchases during the current Billing Cycle if you pay the New Balance at the beginning of your current Billing Cycle by the Payment Due Date in your current Billing Cycle.

Periodic interest charges on Cash Advances will be imposed at the applicable Monthly Periodic Rate from the date each Cash Advance is made and will continue to accrue on unpaid balances as long as they remain unpaid. There is no grace period on Cash Advances and there is no period within which to pay to avoid interest charges on Cash Advances.

**Calculating the Purchase and Cash Advance Balance Subject to Interest Charges**

**Average Daily Balance of Purchases (including new Purchases):** To get the Average Daily Balance of Purchases, we take the beginning Purchase balance of your Account each day, including unpaid interest charges on Purchases and Foreign Currency Conversion Fee interest charges on Purchases, add any new Purchases as of the date of transaction, and subtract the applicable portion of any payments and credits as of the transaction date. On the first day of a Billing Cycle, we also add any unpaid fees. This gives us the daily balance for Purchases. Then we add all these daily balances for the Billing Cycle together and divide the total by the number of days in the Billing Cycle. This gives us the Average Daily Balance of Purchases.

**Average Daily Balance of Cash Advances (including new Cash Advances):** To get the Average Daily Balance of Cash Advances, we take the beginning Cash Advance balance of your Account each day, including unpaid interest charges on Cash Advances and Foreign Currency Conversion Fee interest charges on Cash Advances, add any new Cash Advances as of the date of transaction, and the Cash Advance Transaction Fee interest charge on any Cash Advances as of the transaction date of each Cash Advance, and subtract the applicable portion of any payments and credits as of the transaction date. This gives us the daily balance for Cash Advances. Then we add all these daily balances for the Billing Cycle together and divide the total by the number of days in the Billing Cycle. This gives us the Average Daily Balance of Cash Advances.

**Computing the Purchase and Cash Advance Balance Monthly Periodic Rates and Corresponding Annual Percentage Rates (APR)**

**Monthly Periodic Rates:** The Monthly Periodic Rate is calculated by dividing the APR by 12. The Purchase APR is 29.9% and the Monthly Periodic Rate for Purchases is 2.4916%.

The Cash Advance APR is 29.9% and the Monthly Periodic Rate for Cash Advances is 2.4916%.

**OTHER DISCLOSURES**

For AR, HI, IA, ME Residents: This communication is from a debt collector. This is an attempt to collect debt and any information obtained will be used for the purpose.

SOC_ROBINSON 000031

ROBINSON DEPOSITION EXHIBITS 000016

GENESIS FS CARD SERVICES
PO BOX 4477
BEAVERTON OR 97076-4477

Make check/money order payable to ◄

| | |
|---|---|
| Account Number | 3527 |
| New Balance | $454.70 |
| Minimum Payment Due | $194.70 |
| Payment Due Date | 10/18/21 |
| AMOUNT ENCLOSED | $ |

Please write your account number on your check/money order and do not send cash.

Address/Phone Number Change

☐ Please check here and complete Address/Phone Number Change Form on reverse side.

**Make your payment online at www.myindigocard.com**

Please detach this portion and return with your payment to ensure proper credit. Retain lower portion for your records.

# indigo®

**MASTERCARD ACCOUNT STATEMENT**
5100-0445-5008-3527
August 20, 2021 - September 20, 2021


mastercard

## Account Summary

| | |
|---|---|
| Credit Line | $300.00 |
| Available Credit | $0.00 |
| Past Due Amount | $120.00 |
| Overlimit Amount | $154.70 |
| Statement Closing Date | September 20, 2021 |
| # of Days in Billing Cycle | 32 |

## Purchase/Cash Advance Balance Summary

| | |
|---|---|
| Previous Balance | $398.83 |
| Payments | $0.00 |
| Other Credits | $0.00 |
| Purchases | $0.00 |
| Cash Advances | $0.00 |
| Adjustments | $0.00 |
| **Fees Charged** | **$45.94** |
| **Interest Charged** | **$9.93** |
| New Purchase/Cash Advance Balance | $454.70 |

## Payment Information

| | |
|---|---|
| Total New Balance | $454.70 |
| Minimum Payment Due | $194.70 |
| Payment Due Date | October 18, 2021 |

**Late Payment Warning:** If we do not receive your minimum payment by the date listed above, you may have to pay a late fee of up to $40.

**Minimum Payment Warning:** If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance. For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 10 month(s) | $503 |

If you would like information about credit counseling services, call 1-866-946-9545 .

Mail payment to:
Genesis FS Card Services
PO BOX 23039
COLUMBUS GA 31902-3039

Please mail billing inquiries to:
Genesis FS Card Services
P.O. Box 4499
Beaverton, OR 97076-4499

QUESTIONS?
Call 1-866-946-9545
www.myindigocard.com

YOUR MINIMUM PAYMENT INCLUDES ANY OVERLIMIT AND PAST DUE AMOUNTS.
PLEASE REMIT IMMEDIATELY.

## Fees

| Reference Number | Tran Date | Post Date | Description of Transaction or Credit | Amount |
|---|---|---|---|---|
| | 09/20 | 09/20 | CREDIT PROTECTION FEES | $5.94 |
| | 09/20 | 09/20 | LATE PAYMENT CHARGE | $40.00 |
| | | | **TOTAL FEES FOR THIS PERIOD** | **$45.94** |

## Interest Charged

| Reference Number | Tran Date | Post Date | Description of Transaction or Credit | Amount |
|---|---|---|---|---|
| | 09/20 | 09/20 | INTEREST CHARGE PURCHASE | $9.93 |
| | | | **TOTAL INTEREST FOR THIS PERIOD** | **$9.93** |

## 2021 Totals Year-to-Date

| | |
|---|---|
| Total fees charged in 2021 | $204.07 |
| Total interest charged in 2021 | $26.09 |

## Interest Charge Calculation

Your **Annual Percentage Rate (APR)** is the annual interest rate on your account.

| Type of Balance | Annual Percentage Rate (APR) | Balance Subject to Interest Rate | Interest Charge |
|---|---|---|---|
| Purchases | 29.90% | $399.01 | $9.93 |
| Cash Advances | 29.90% | $0.00 | $0.00 |

(v) = Variable Rate

PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION
Page 1 of 2

Defendant's Exhibit B - Robinson Dep. 53 of 165

SOC_ROBINSON 000032

ROBINSON DEPOSITION EXHIBITS 000017

## ADDRESS / PHONE NUMBER CHANGE FORM

If you provide us with a cellular phone number, you are expressly consenting that (i) we and our agents may contact you at that number and (ii) we may use automated telephone dialing systems to initiate such contacts and/or leave recorded messages.

ADDRESS

_____

CITY                          STATE              ZIP CODE

( )_____       _____

HOME PHONE                    BUSINESS PHONE

EMAIL ADDRESS

3527

---

Detach here ▼ and return above portion with your remittance. After detaching, retain lower portion for your future reference.

**This Account is issued by Celtic Bank and serviced by Genesis FS Card Services, Inc.**

**What To Do If You Think You Find A Mistake On Your Statement**

If you think there is an error on your statement, write to us at: Genesis FS Card Services, P.O. Box 4499, Beaverton, Oregon 97076.

In your letter, give us the following information:
- *Account Information:* Your name and Account number.
- *Dollar Amount:* The dollar amount of the suspected error.
- *Description of Problem:* If you think there is an error on your bill, describe what you believe is wrong and why you are unsure it is a mistake.

You must contact us within 60 days after the error appeared on your statement.

You must notify us of any potential errors *in writing*. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

While we investigate whether or not there has been an error, the following are true:
- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

**Your Rights If You Are Dissatisfied With Your Credit Card Purchases**

If you are dissatisfied with the goods or services that you have purchased with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase.

To use this right, all of the following must be true:
1. The purchase must have been made in your home state or within 100 miles of your current mailing address, and the purchase price must have been more than $50. (Note: Neither of these is necessary if your purchase was based on an advertisement we mailed to you, or if we own the company that sold you the goods or services.)
2. You must have used your credit card for the purchase. Purchases made with cash advances from an ATM or with a check that accesses your credit card account do not qualify.
3. You must not yet have fully paid for the purchase.

If all of the criteria are met and you are still dissatisfied with the purchase, contact us *in writing* at: Genesis FS Card Services, P.O. Box 4499, Beaverton, Oregon 97076.

While we investigate, the same rules apply to the disputed amount as discussed above. After we finish our investigation, we will tell you our decision. At that point, if we think you owe an amount and you do not pay, we may report you as delinquent.

**PAYMENTS**

Payments should be mailed with the payment coupon and in the envelope provided to the Genesis FS Card Services payment address indicated on the payment coupon. Any payment received in that form and at that address on or before 5:00 P.M. Eastern Time on a normal banking day will be credited to your Account that day. If your payment is received in that form and at that address after 5:00 P.M. Eastern Time on a normal banking day, or anytime on a nonbanking day, we will credit it to your Account the next banking day. Payments can also be made online by visiting www.myindigocard.com. When you provide a check as payment, you authorize us either to use the information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day we receive your payment and you will not receive your check back from your financial institution. Payments received at other than the remittance address on the face of this statement may be subject to a delay in crediting of up to 5 days after the date of receipt.

**ANNUAL FEE (if applicable)**

If you wish to terminate your ability to use your Card to obtain further Purchases and Cash Advances in order to avoid paying the renewal Annual Fee, you must deliver written notice of termination to us within thirty (30) days from the mailing date of the statement containing the renewal Annual Fee notice. Your notice must be sent to us at Genesis FS Card Services, P.O. Box 4477, Beaverton, OR 97076. Upon receipt, we will close your Account and the renewal Annual Fee will not be charged to your Account. Terminating credit availability will not cancel your obligations to pay amounts outstanding on your Account, and you will be required to pay your outstanding balance with interest in accordance with the terms of your Cardholder Agreement. These rights do not apply to an Annual Fee charged in connection with the opening of your Account.

**CREDIT BUREAU REPORTING**

We may report information about your Account to credit bureaus. Late payments, missed payments, or other defaults on your Account may be reflected in your credit report.

**HOW INTEREST CHARGES ARE DETERMINED**

Your interest charge for any Billing Cycle will include the following components, the total of which constitutes your total interest charge for the Billing Cycle:
1. A Cash Advance Transaction Fee interest charge imposed on each Cash Advance transaction posted during a Billing Cycle, in an amount equal to the greater of $5.00 or 5% of the amount of each Cash Advance. The Cash Advance Transaction Fee interest charges will be added to the

calculation of your Average Daily Balance of Cash Advances. We will not charge any Cash Advance Transaction Fees, however, during the one-year period beginning on the date you open your Account.
2. Periodic interest charge computed by applying the applicable Monthly Periodic Rate or Rates, determined as provided below under **Computing the Purchase and Cash Advance Balance Monthly Periodic Rates and Corresponding Annual Percentage Rates (APR)** to:
    a. your Average Daily Balance of Cash Advances (including new Cash Advances); and
    b. your Average Daily Balance of Purchases (including new Purchases).
    However, if the total of the amounts so computed is an amount less than $.50, then a minimum interest charge of $.50 will be imposed instead of such smaller amounts and will be treated as an interest charge on Purchases.
3. A Foreign Currency Conversion Fee interest charge in an amount equal to 1% of the converted U.S. dollar amount of each transaction, including Cash Advances and Purchases, that is effected in any currency other than U.S. dollars.

**When Interest Charges Begin to Accrue.** Interest charges on Purchases will be imposed at the applicable Monthly Periodic Rate from the date each Purchase is made, and will continue to accrue on unpaid balances as long as they remain unpaid. However, we do not assess interest charges in the following circumstances:
1. If you paid the New Balance at the beginning of your previous Billing Cycle by the Payment Due Date during the previous Billing Cycle, or if that New Balance was $0 or a credit balance, then:
    a. if you pay the New Balance on your current Statement in full by the Payment Due Date in your current Billing Cycle, we will not assess interest charges on Purchases during your current Billing Cycle; and
    b. if you make a payment that is less than the New Balance by the Payment Due Date in your current Billing Cycle, we will credit that payment as of the first day in your current Billing Cycle.
2. If you had a New Balance at the beginning of your previous Billing Cycle and you did not pay that New Balance by the Payment Due Date during that previous Billing Cycle, then we will not assess interest charges on any Purchases during the current Billing Cycle if you pay the New Balance at the beginning of your current Billing Cycle by the Payment Due Date in your current Billing Cycle.

Periodic interest charges on Cash Advances will be imposed at the applicable Monthly Periodic Rate from the date each Cash Advance is made and will continue to accrue on unpaid balances as long as they remain unpaid. There is no grace period on Cash Advances and there is no period within which to pay to avoid interest charges on Cash Advances.

**Calculating the Purchase and Cash Advance Balance Subject to Interest Charges**

**Average Daily Balance of Purchases (including new Purchases):** To get the Average Daily Balance of Purchases, we take the beginning Purchase balance of your Account each day, including unpaid interest charges on Purchases and Foreign Currency Conversion Fee interest charges on Purchases, add any new Purchases as of the date of transaction, and subtract the applicable portion of any payments and credits as of the transaction date. On the first day of a Billing Cycle, we also add any unpaid fees. This gives us the daily balance for Purchases. Then we add all these daily balances for the Billing Cycle together and divide the total by the number of days in the Billing Cycle. This gives us the Average Daily Balance of Purchases.

**Average Daily Balance of Cash Advances (including new Cash Advances):** To get the Average Daily Balance of Cash Advances, we take the beginning Cash Advance balance of your Account each day, including unpaid interest charges on Cash Advances and Foreign Currency Conversion Fee interest charges on Cash Advances, add any new Cash Advances as of the date of transaction, and the Cash Advance Transaction Fee interest charge on any Cash Advances as of the transaction date of each Cash Advance, and subtract the applicable portion of any payments and credits as of the transaction date. This gives us the daily balance for Cash Advances. Then we add all these daily balances for the Billing Cycle together and divide the total by the number of days in the Billing Cycle. This gives us the Average Daily Balance of Cash Advances.

**Computing the Purchase and Cash Advance Balance Monthly Periodic Rates and Corresponding Annual Percentage Rates (APR)**

**Monthly Periodic Rates:** The Monthly Periodic Rate is calculated by dividing the APR by 12. The Purchase APR is 29.9% and the Monthly Periodic Rate for Purchases is 2.4916%.

The Cash Advance APR is 29.9% and the Monthly Periodic Rate for Cash Advances is 2.4916%.

**OTHER DISCLOSURES**

For AR, HI, IA, ME Residents: This communication is from a debt collector. This is an attempt to collect debt and any information obtained will be used for the purpose.

SOC_ROBINSON 000033

ROBINSON DEPOSITION EXHIBITS 000018

GENESIS FS CARD SERVICES
PO BOX 4477
BEAVERTON OR  97076-4477

| | |
|---|---|
| Account Number | ▆▆▆3527 |
| New Balance | $512.81 |
| Minimum Payment Due | $252.81 |
| Payment Due Date | 11/18/21 |
| AMOUNT ENCLOSED | $ |

GENESIS FS CARD SERVICES
PO BOX 23039
COLUMBUS GA 31902-3039

Make check/money
order payable to

Please write your account number on your check/money order
and do not send cash.

CHRISTOPHER B ROBINSON         **0000000
20 BURNEY MOUNTAIN RD
FALKVILLE AL  35622-5700

Address/Phone Number Change

☐ Please check here and complete Address/Phone
Number Change Form on reverse side.

**Make your payment online at www.myindigocard.com**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Please detach this portion and return with your payment to ensure proper credit. Retain lower portion for your records.

## indigo®

**MASTERCARD ACCOUNT STATEMENT**
▆▆▆3527
September 21, 2021 - October 19, 2021



### Account Summary

| | |
|---|---|
| Credit Line | $300.00 |
| Available Credit | $0.00 |
| Past Due Amount | $160.00 |
| Overlimit Amount | $212.81 |
| Statement Closing Date | October 19, 2021 |
| # of Days in Billing Cycle | 29 |

### Purchase/Cash Advance Balance Summary

| | |
|---|---|
| Previous Balance | $454.70 |
| Payments | $0.00 |
| Other Credits | $0.00 |
| Purchases | $0.00 |
| Cash Advances | $0.00 |
| Adjustments | $0.00 |
| **Fees Charged** | **$46.78** |
| **Interest Charged** | **$11.33** |
| New Purchase/Cash Advance Balance | $512.81 |

### Payment Information

| | |
|---|---|
| **Total New Balance** | **$512.81** |
| **Minimum Payment Due** | **$252.81** |
| **Payment Due Date** | **November 18, 2021** |

**Late Payment Warning:** If we do not receive your
minimum payment by the date listed above, you may
have to pay a late fee of up to $40.

**Minimum Payment Warning:** If you make only the
minimum payment each period, you will pay more in
interest and it will take you longer to pay off your
balance. For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 11 month(s) | $568 |

If you would like information about credit counseling services,
call 1-866-946-9545 .

| | | |
|---|---|---|
| **Mail payment to:**<br>Genesis FS Card Services<br>PO BOX 23039<br>COLUMBUS GA 31902-3039 | **Please mail billing inquiries to:**<br>Genesis FS Card Services<br>P.O. Box 4499<br>Beaverton, OR 97076-4499 | **QUESTIONS?**<br>Call 1-866-946-9545<br>www.myindigocard.com |

### YOUR MINIMUM PAYMENT INCLUDES ANY OVERLIMIT AND PAST DUE AMOUNTS. PLEASE REMIT IMMEDIATELY.

### Fees

| Reference Number | Tran Date | Post Date | Description of Transaction or Credit | Amount |
|---|---|---|---|---|
| | 10/19 | 10/19 | CREDIT PROTECTION FEES | $6.78 |
| | 10/19 | 10/19 | LATE PAYMENT CHARGE | $40.00 |
| | | | **TOTAL FEES FOR THIS PERIOD** | **$46.78** |

### Interest Charged

| Reference Number | Tran Date | Post Date | Description of Transaction or Credit | Amount |
|---|---|---|---|---|
| | 10/19 | 10/19 | INTEREST CHARGE PURCHASE | $11.33 |
| | | | **TOTAL INTEREST FOR THIS PERIOD** | **$11.33** |

### 2021 Totals Year-to-Date

| | |
|---|---|
| Total fees charged in 2021 | $250.85 |
| Total interest charged in 2021 | $37.42 |

### Interest Charge Calculation

Your **Annual Percentage Rate (APR)** is the annual interest rate on your account.

| Type of Balance | Annual Percentage Rate (APR) | Balance Subject to Interest Rate | Interest Charge |
|---|---|---|---|
| Purchases | 29.90% | $454.93 | $11.33 |
| Cash Advances | 29.90% | $0.00 | $0.00 |

(v) = Variable Rate

PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION
Page 1 of 2

SOC_ROBINSON 000034

ROBINSON DEPOSITION EXHIBITS 000019

3527

## ADDRESS / PHONE NUMBER CHANGE FORM

If you provide us with a cellular phone number, you are expressly consenting that (i) we and our agents may contact you at that number and (ii) we may use automated telephone dialing systems to initiate such contacts and/or leave recorded messages.

ADDRESS

CITY                                    STATE               ZIP CODE

( )
HOME PHONE                              BUSINESS PHONE

EMAIL ADDRESS

---

Detach here ▼ and return above portion with your remittance. After detaching, retain lower portion for your future reference.

**This Account is issued by Celtic Bank and serviced by Genesis FS Card Services, Inc.**

**What To Do If You Think You Find A Mistake On Your Statement**

If you think there is an error on your statement, write to us at: Genesis FS Card Services, P.O. Box 4499, Beaverton, Oregon 97076.

In your letter, give us the following information:
- *Account Information:* Your name and Account number.
- *Dollar Amount:* The dollar amount of the suspected error.
- *Description of Problem:* If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us within 60 days after the error appeared on your statement.

You must notify us of any potential errors *in writing.* You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

While we investigate whether or not there has been an error, the following are true:
- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

**Your Rights If You Are Dissatisfied With Your Credit Card Purchases**

If you are dissatisfied with the goods or services that you have purchased with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase.

To use this right, all of the following must be true:
1. The purchase must have been made in your home state or within 100 miles of your current mailing address, and the purchase price must have been more than $50. (Note: Neither of these is necessary if your purchase was based on an advertisement we mailed to you, or if we own the company that sold you the goods or services.)
2. You must have used your credit card for the purchase. Purchases made with cash advances from an ATM or with a check that accesses your credit card account do not qualify.
3. You must not yet have fully paid for the purchase.

If all of the criteria are met and you are still dissatisfied with the purchase, contact us *in writing* at: Genesis FS Card Services, P.O. Box 4499, Beaverton, Oregon 97076.

While we investigate, the same rules apply to the disputed amount as discussed above. After we finish our investigation, we will tell you our decision. At that point, if we think you owe an amount and you do not pay, we may report you as delinquent.

**PAYMENTS**

Payments should be mailed with the payment coupon and in the envelope provided to the Genesis FS Card Services payment address indicated on the payment coupon. Any payment received in that form and at that address on or before 5:00 PM. Eastern Time on a normal banking day will be credited to your Account that day. If your payment is received in that form and at that address after 5:00 PM. Eastern Time on a normal banking day, or anytime on a nonbanking day, we will credit it to your Account the next banking day. Payments can also be made online by visiting www.myindigocard.com. When you provide a check as payment, you authorize us either to use the information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day we receive your payment and you will not receive your check back from your financial institution. Payments received at other than the remittance address on the face of this statement may be subject to a delay in crediting of up to 5 days after the date of receipt.

**ANNUAL FEE (if applicable)**

If you wish to terminate your ability to use your Card to obtain further Purchases and Cash Advances in order to avoid paying the renewal Annual Fee, you must deliver written notice of termination to us within thirty (30) days from the mailing date of the statement containing the renewal Annual Fee notice. Your notice must be sent to us at Genesis FS Card Services, P.O. Box 4477, Beaverton, OR 97076. Upon receipt, we will close your Account and the renewal Annual Fee will not be charged to your Account. Terminating credit availability will not cancel your obligations to pay amounts outstanding on your Account, and you will be required to pay your outstanding balance with interest in accordance with the terms of your Cardholder Agreement. These rights do not apply to an Annual Fee charged in connection with the opening of your Account.

**CREDIT BUREAU REPORTING**

We may report information about your Account to credit bureaus. Late payments, missed payments, or other defaults on your Account may be reflected in your credit report.

**HOW INTEREST CHARGES ARE DETERMINED**

Your interest charge for any Billing Cycle will include the following components, the total of which constitutes your total interest charge for the Billing Cycle:
1. A Cash Advance Transaction Fee interest charge imposed on each Cash Advance transaction posted during a Billing Cycle in an amount equal to the greater of $1.00 or three percent (3%) of each Cash Advance. Any Cash Advance Transaction Fee interest charges will be added to the

calculation of your Average Daily Balance of Cash Advances. We will not charge any Cash Advance Transaction Fees, however, during the one-year period beginning on the date you open your Account.
2. Periodic interest charge computed by applying the applicable Monthly Periodic Rate or Rates, determined as provided below under Computing the Purchase and Cash Advance Balance Monthly Periodic Rates and Corresponding Annual Percentage Rates (APR) to:
   a. your *Average Daily Balance of Cash Advances* (including new Cash Advances); and
   b. your Average Daily Balance of Purchases (including new Purchases).
   However, if the total of the amounts so computed is an amount less than $.50, then a minimum interest charge of $.50 will be imposed instead of such smaller amounts and will be treated as an interest charge on Purchases.
3. A Foreign Currency Conversion Fee interest charge in an amount equal to 1% of the converted U.S. dollar amount of each transaction, including Cash Advances and Purchases, that is effected in any currency other than U.S. dollars.

**When Interest Charges Begin to Accrue.** Interest charges on Purchases will be imposed at the applicable Monthly Periodic Rate from the date each Purchase is made, and will continue to accrue on unpaid balances as long as they remain unpaid. However, we do not assess interest charges in the following circumstances:
1. If you paid the New Balance at the beginning of your previous Billing Cycle by the Payment Due Date during the previous Billing Cycle, or if that New Balance was $0 or a credit balance, then:
   a. if you pay the New Balance on your current Statement in full by the Payment Due Date in your current Billing Cycle, we will not assess interest charges on Purchases during your current Billing Cycle; and
   b. if you make a payment that is less than the New Balance by the Payment Due Date in your current Billing Cycle, we will credit that payment as of the first day in your current Billing Cycle.
2. If you had a New Balance at the beginning of your previous Billing Cycle and you did not pay that New Balance by the Payment Due Date during that previous Billing Cycle, then we will not assess interest charges on any Purchases during the current Billing Cycle if you pay the New Balance at the beginning of your current Billing Cycle by the Payment Due Date in your current Billing Cycle.)

Periodic interest charges on Cash Advances will be imposed at the applicable Monthly Periodic Rate from the date each Cash Advance is made and will continue to accrue on unpaid balances as long as they remain unpaid. There is no grace period on Cash Advances and there is no period within which to pay to avoid interest charges on Cash Advances.

**Calculating the Purchase and Cash Advance Balance Subject to Interest Charges**

**Average Daily Balance of Purchases (including new Purchases):** To get the Average Daily Balance of Purchases, we take the beginning Purchase balance of your Account each day, including unpaid interest charges on Purchases and Foreign Currency Conversion Fee interest charges on Purchases, add any new Purchases as of the date of transaction, and subtract the applicable portion of any payments and credits as of the transaction date. On the first day of a Billing Cycle, we also add any unpaid fees. This gives us the daily balance for Purchases. Then we add all these daily balances for the Billing Cycle together and divide the total by the number of days in the Billing Cycle. This gives us the Average Daily Balance of Purchases.

**Average Daily Balance of Cash Advances (including new Cash Advances):** To get the Average Daily Balance of Cash Advances, we take the beginning Cash Advance balance of your Account each day, including unpaid interest charges on Cash Advances and Foreign Currency Conversion Fee interest charges on Cash Advances, add any new Cash Advances as of the date of transaction, and the Cash Advance Transaction Fee interest charge on any Cash Advances as of the transaction date of each Cash Advance, and subtract the applicable portion of any payments and credits as of the transaction date. This gives us the daily balance for Cash Advances. Then we add all these daily balances for this Billing Cycle together and divide the total by the number of days in the Billing Cycle. This gives us the Average Daily Balance of Cash Advances.

**Computing the Purchase and Cash Advance Balance Monthly Periodic Rates and Corresponding Annual Percentage Rates (APR)**

**Monthly Periodic Rates:** The Monthly Periodic Rate is calculated by dividing the APR by 12. The Purchase APR is 29.9% and the Monthly Periodic Rate for Purchases is 2.4916%.

The Cash Advance APR is 29.9% and the Monthly Periodic Rate for Cash Advances is 2.4916%.

**OTHER DISCLOSURES**

For AR, HI, IA, ME Residents: This communication is from a debt collector. This is an attempt to collect debt and any information obtained will be used for the purpose.

Dep.  56 of 165

SOC_ROBINSON 000035

ROBINSON DEPOSITION EXHIBITS 000020

**3527**

GENESIS FS CARD SERVICES
PO BOX 4477
BEAVERTON OR 97076-4477

| | |
|---|---|
| Account Number | **3527** |
| New Balance | $565.58 |
| Minimum Payment Due | $305.58 |
| Payment Due Date | 12/18/21 |
| AMOUNT ENCLOSED | $ |

GENESIS FS CARD SERVICES  ◄ Make check/money
PO BOX 23039                         order payable to
COLUMBUS GA 31902-3039

Please write your account number on your check/money order
and do not send cash.

CHRISTOPHER B ROBINSON        **0000000
20 BURNEY MOUNTAIN RD
FALKVILLE AL  35622-5700

Address/Phone Number Change

☐ Please check here and complete Address/Phone
Number Change Form on reverse side.

**Make your payment online at www.myindigocard.com**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Please detach this portion and return with your payment to ensure proper credit. Retain lower portion for your records.

## indigo®

**MASTERCARD ACCOUNT STATEMENT**
3527
October 20, 2021 - November 19, 2021


mastercard

### Account Summary

| | |
|---|---|
| Credit Line | $300.00 |
| Available Credit | $0.00 |
| Past Due Amount | $200.00 |
| Overlimit Amount | $265.58 |
| Statement Closing Date | November 19, 2021 |
| # of Days in Billing Cycle | 31 |

### Purchase/Cash Advance Balance Summary

| | |
|---|---|
| Previous Balance | $512.81 |
| Payments | $0.00 |
| Other Credits | $0.00 |
| Purchases | $0.00 |
| Cash Advances | $0.00 |
| Adjustments | $0.00 |
| **Fees Charged** | **$40.00** |
| **Interest Charged** | **$12.77** |
| New Purchase/Cash Advance Balance | $565.58 |

### Payment Information

| | |
|---|---|
| **Total New Balance** | **$565.58** |
| **Minimum Payment Due** | **$305.58** |
| **Payment Due Date** | **December 18, 2021** |

**Late Payment Warning:** If we do not receive your minimum payment by the date listed above, you may have to pay a late fee of up to $40.

**Minimum Payment Warning:** If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance. For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 11 month(s) | $625 |

If you would like information about credit counseling services, call 1-866-946-9545 .

| Mail payment to: | Please mail billing inquiries to: | QUESTIONS? |
|---|---|---|
| Genesis FS Card Services | Genesis FS Card Services | Call 1-866-946-9545 |
| PO BOX 23039 | P.O. Box 4499 | www.myindigocard.com |
| COLUMBUS GA 31902-3039 | Beaverton, OR 97076-4499 | |

YOUR MINIMUM PAYMENT INCLUDES ANY OVERLIMIT AND PAST DUE AMOUNTS.
PLEASE REMIT IMMEDIATELY.

### Fees

| Reference Number | Tran Date | Post Date | Description of Transaction or Credit | Amount |
|---|---|---|---|---|
| | 11/19 | 11/19 | LATE PAYMENT CHARGE | $40.00 |
| | | | **TOTAL FEES FOR THIS PERIOD** | **$40.00** |

### Interest Charged

| Reference Number | Tran Date | Post Date | Description of Transaction or Credit | Amount |
|---|---|---|---|---|
| | 11/19 | 11/19 | INTEREST CHARGE PURCHASE | $12.77 |
| | | | **TOTAL INTEREST FOR THIS PERIOD** | **$12.77** |

### 2021 Totals Year-to-Date

| | |
|---|---|
| Total fees charged in 2021 | $290.85 |
| Total interest charged in 2021 | $50.19 |

### Interest Charge Calculation

Your **Annual Percentage Rate (APR)** is the annual interest rate on your account.

| Type of Balance | Annual Percentage Rate (APR) | Balance Subject to Interest Rate | Interest Charge |
|---|---|---|---|
| Purchases | 29.90% | $512.81 | $12.77 |
| Cash Advances | 29.90% | $0.00 | $0.00 |

(v) = Variable Rate

PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION
Page 1 of 2

Defendant's Exhibit B - Robinson Dep.  57 of 165

SOC_ROBINSON 000036

ROBINSON DEPOSITION EXHIBITS 000021

## ADDRESS / PHONE NUMBER CHANGE FORM

If you provide us with a cellular phone number, you are expressly consenting that (i) we and our agents may contact you at that number and (ii) we may use automated telephone dialing systems to initiate such contacts and/or leave recorded messages.

3527

ADDRESS

_____

CITY                                    STATE            ZIP CODE

( )
HOME PHONE                              BUSINESS PHONE

_____

EMAIL ADDRESS

Detach here ▼ and return above portion with your remittance. After detaching, retain lower portion for your future reference.

**This Account is issued by Celtic Bank and serviced by Genesis FS Card Services, Inc.**

**What To Do If You Think You Find A Mistake On Your Statement**

If you think there is an error on your statement, write to us at Genesis FS Card Services, P.O. Box 4499, Beaverton, Oregon 97076.

In your letter, give us the following information:
• *Account Information:* Your name and Account number.
• *Dollar Amount:* The dollar amount of the suspected error.
• *Description of Problem:* If you think there is an error on your bill, describe what you believe is wrong and why you are unsure it is a mistake.

You must contact us within 60 days after the error appeared on your statement.

You must notify us of any potential errors *in writing.* You may call us, but if you do we are not required to investigate any potential errors and may have to pay the amount in question.

While we investigate whether or not there has been an error, the following are true:
• We cannot try to collect the amount in question, or report you as delinquent on that amount.
• The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
• While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
• We can apply any unpaid amount against your credit limit.

**Your Rights If You Are Dissatisfied With Your Credit Card Purchases**

If you are dissatisfied with the goods or services that you have purchased with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase.

To use this right, all of the following must be true:
1. The purchase must have been made in your home state or within 100 miles of your current mailing address, and the purchase price must have been more than $50. (Note: Neither of these is necessary if your purchase was based on an advertisement we mailed to you, or if we own the company that sold you the goods or services.)
2. You must have used your credit card for the purchase. Purchases made with cash advances from an ATM or with a check that accesses your credit card account do not qualify.
3. You must not yet have fully paid for the purchase.

If all of the criteria are met and you are still dissatisfied with the purchase, contact us *in writing* at: Genesis FS Card Services, P.O. Box 4499, Beaverton, Oregon 97076.

While we investigate, the same rules apply to the disputed amount as discussed above. After we finish our investigation, we will tell you our decision. At that point, if we think you owe an amount and you do not pay, we may report you as delinquent.

**PAYMENTS**

Payments should be mailed with the payment coupon and in the envelope provided to the Genesis FS Card Services payment address indicated on the payment coupon. Any payment received in that form and at that address on or before 5:00 P.M. Eastern Time on a normal banking day will be credited to your Account that day. If your payment is received in that form and at that address after 5:00 P.M. Eastern Time on a normal banking day, or anytime on a nonbanking day, we will credit it to your Account the next banking day. Payments can also be made online by visiting www.myindigocard.com. When you provide a check as payment, you authorize us either to use the information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day we receive your payment and you will not receive your check back from your financial institution. Payments received at other than the remittance address on the face of this statement may be subject to a delay in crediting of up to 5 days after the date of receipt.

**ANNUAL FEE (if applicable)**

If you wish to terminate your ability to use your Card to obtain further Purchases and Cash Advances in order to avoid paying the renewal Annual Fee, you must deliver written notice of termination to us within thirty (30) days from the mailing date of the statement containing the renewal Annual Fee notice. Your notice must be sent to us at Genesis FS Card Services, P.O. Box 4477, Beaverton, OR 97076. Upon receipt, we will close your Account and the renewal Annual Fee will not be charged to your Account. Terminating credit availability will not cancel your obligations to pay amounts outstanding on your Account, and you will be required to pay your outstanding balance with interest in accordance with the terms of your Cardholder Agreement. These rights do not apply to an Annual Fee charged in connection with the opening of your Account.

**CREDIT BUREAU REPORTING**

We may report information about your Account to credit bureaus. Late payments, missed payments, or other defaults on your Account may be reflected in your credit report.

**HOW INTEREST CHARGES ARE DETERMINED**

Your interest charge for any Billing Cycle will include the following components, the total of which constitutes your total interest charge for the Billing Cycle:
1. A Cash Advance Transaction Fee interest charge imposed on each Cash Advance transaction posted during a Billing Cycle in an amount equal to the greater of $1.00 or 5% of the amount of each Cash Advance. The Cash Advance Transaction Fee interest charges will be added to the

calculation of your Average Daily Balance of Cash Advances. We will not charge any Cash Advance Transaction Fees, however, during the one-year period beginning on the date you open your Account.
2. Periodic interest charge computed by applying the applicable Monthly Periodic Rate or Rates, determined as provided below under Computing the Purchase and Cash Advance Balance Monthly Periodic Rates and Corresponding Annual Percentage Rates (APR) to:
    a. your *Average Daily Balance of Cash Advances* (including new Cash Advances); and
    b. your Average Daily Balance of Purchases (including new Purchases).
    However, if the total of the amounts so computed is an amount less than $.50, then a minimum interest charge of $.50 will be imposed instead of such smaller amounts and will be treated as an interest charge on Purchases.
3. A Foreign Currency Conversion Fee interest charge in an amount equal to 1% of the converted U.S. dollar amount of each transaction, including Cash Advances and Purchases, that is effected in any currency other than U.S. dollars.

**When Interest Charges Begin to Accrue.** Interest charges on Purchases will be imposed at the applicable Monthly Periodic Rate from the date each Purchase is made, and will continue to accrue on unpaid balances as long as they remain unpaid. However, we do not assess interest charges in the following circumstances:
1. If you paid the New Balance at the beginning of your previous Billing Cycle by the Payment Due Date during the previous Billing Cycle, or if that New Balance was $0 or a credit balance, then:
    a. if you pay the New Balance on your current Statement in full by the Payment Due Date in your current Billing Cycle, we will not assess interest charges on Purchases during your current Billing Cycle; and
    b. if you make a payment that is less than the New Balance by the Payment Due Date in your current Billing Cycle, we will credit that payment as of the first day in your current Billing Cycle.
2. If you had a New Balance at the beginning of your previous Billing Cycle and you did not pay that New Balance by the Payment Due Date during that previous Billing Cycle, then we will not assess interest charges on any Purchases during the current Billing Cycle if you pay the New Balance at the beginning of your current Billing Cycle by the Payment Due Date in your current Billing Cycle.

Periodic interest charges on Cash Advances will be imposed at the applicable Monthly Periodic Rate from the date each Cash Advance is made and will continue to accrue on unpaid balances as long as they remain unpaid. There is no grace period on Cash Advances and there is no period within which to pay to avoid interest charges on Cash Advances.

**Calculating the Purchase and Cash Advance Balance Subject to Interest Charges**

**Average Daily Balance of Purchases (including new Purchases):** To get the Average Daily Balance of Purchases, we take the beginning Purchase balance of your Account each day, including unpaid interest charges on Purchases and Foreign Currency Conversion Fee interest charges on Purchases, and any new Purchases as of the date of transaction, and subtract the applicable portion of any payments and credits as of the transaction date. On the first day of a Billing Cycle, we also add any unpaid fees. This gives us the daily balance for Purchases. Then we add all these daily balances for the Billing Cycle together and divide the total by the number of days in the Billing Cycle. This gives us the Average Daily Balance of Purchases.

**Average Daily Balance of Cash Advances (including new Cash Advances):** To get the Average Daily Balance of Cash Advances, we take the beginning Cash Advance balance of your Account each day, including unpaid interest charges on Cash Advances and Foreign Currency Conversion Fee interest charges on Cash Advances, add any new Cash Advances as of the date of transaction, and the Cash Advance Transaction Fee interest charge on any Cash Advances as of the transaction date of each Cash Advance, and subtract the applicable portion of any payments and credits as of the transaction date. This gives us the daily balance for Cash Advances. Then we add all these daily balances for this Billing Cycle together and divide the total by the number of days in the Billing Cycle. This gives us the Average Daily Balance of Cash Advances.

**Computing the Purchase and Cash Advance Balance Monthly Periodic Rates and Corresponding Annual Percentage Rates (APR)**

**Monthly Periodic Rates:** The Monthly Periodic Rate is calculated by dividing the APR by 12. The Purchase APR is 29.9% and the Monthly Periodic Rate for Purchases is 2.4916%.

The Cash Advance APR is 29.9% and the Monthly Periodic Rate for Cash Advances is 2.4916%.

**OTHER DISCLOSURES**

For AR, HI, IA, ME Residents: This communication is from a debt collector. This is an attempt to collect debt and any information obtained will be used for the purpose.

SOC_ROBINSON 000037

ROBINSON DEPOSITION EXHIBITS 000022

GENESIS FS CARD SERVICES
PO BOX 4477
BEAVERTON OR  97076-4477

| Account Number | 5100-0445-5008-3527 |
|---|---|
| New Balance | $619.66 |
| Minimum Payment Due | $360.66 |
| Payment Due Date | 01/18/22 |

**AMOUNT ENCLOSED** $

GENESIS FS CARD SERVICES
PO BOX 23039
COLUMBUS GA 31902-3039

Make check/money
order payable to

Please write your account number on your check/money order
and do not send cash.

CHRISTOPHER B ROBINSON        **0000000
20 BURNEY MOUNTAIN RD
FALKVILLE AL  35622-5700

___Address/Phone Number Change___

☐ Please check here and complete Address/Phone
Number Change Form on reverse side.

**Make your payment online at www.myindigocard.com**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Please detach this portion and return with your payment to ensure proper credit. Retain lower portion for your records.

# indigo®

**MASTERCARD ACCOUNT STATEMENT**
3527
November 20, 2021 - December 20, 2021


mastercard

### Account Summary

| | |
|---|---|
| Credit Line | $300.00 |
| Available Credit | $0.00 |
| Past Due Amount | $240.00 |
| Overlimit Amount | $319.66 |
| Statement Closing Date | December 20, 2021 |
| # of Days in Billing Cycle | 31 |

### Purchase/Cash Advance Balance Summary

| | |
|---|---|
| Previous Balance | $565.58 |
| Payments | $0.00 |
| Other Credits | $0.00 |
| Purchases | $0.00 |
| Cash Advances | $0.00 |
| Adjustments | $0.00 |
| **Fees Charged** | **$40.00** |
| **Interest Charged** | **$14.08** |
| New Purchase/Cash Advance Balance | $619.66 |

### Payment Information

| | |
|---|---|
| Total New Balance | $619.66 |
| Minimum Payment Due | $360.66 |
| Payment Due Date | **January 18, 2022** |

**Late Payment Warning:** If we do not receive your minimum payment by the date listed above, you may have to pay a late fee of up to $40.

**Minimum Payment Warning:** If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance. For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 12 month(s) | $685 |

If you would like information about credit counseling services, call 1-866-946-9545 .

| Mail payment to: | Please mail billing inquiries to: | QUESTIONS? |
|---|---|---|
| Genesis FS Card Services | Genesis FS Card Services | Call 1-866-946-9545 |
| PO BOX 23039 | P.O. Box 4499 | www.myindigocard.com |
| COLUMBUS GA 31902-3039 | Beaverton, OR 97076-4499 | |

YOUR MINIMUM PAYMENT INCLUDES ANY OVERLIMIT AND PAST DUE AMOUNTS.
PLEASE REMIT IMMEDIATELY.

Your statement will soon be updated. We have made changes to make it easier to read and understand. In addition, we will be upgrading our website which may temporarily limit access to some parts of the site.
**Important:**
Your due date will change to the 22nd of the month starting in March 2022.

### Fees

| Reference Number | Tran Date | Post Date | Description of Transaction or Credit | Amount |
|---|---|---|---|---|
| | 12/20 | 12/20 | LATE PAYMENT CHARGE | $40.00 |
| | | | **TOTAL FEES FOR THIS PERIOD** | **$40.00** |

### Interest Charged

| Reference Number | Tran Date | Post Date | Description of Transaction or Credit | Amount |
|---|---|---|---|---|
| | 12/20 | 12/20 | INTEREST CHARGE PURCHASE | $14.08 |
| | | | **TOTAL INTEREST FOR THIS PERIOD** | **$14.08** |

### 2021 Totals Year-to-Date

| | |
|---|---|
| Total fees charged in 2021 | $330.85 |
| Total interest charged in 2021 | $64.27 |

Defendant's Exhibit B - Robinson Dep. 59 of 165

SOC_ROBINSON 000038
ROBINSON DEPOSITION EXHIBITS 000023

5TD0-0445-5008-3527

00000000 - 011909 - 0002 - 0003 - 7

# indigo®

**MASTERCARD ACCOUNT STATEMENT**
████████ 3527
November 20, 2021 - December 20, 2021



| Interest Charge Calculation | | | |
|---|---|---|---|
| Your **Annual Percentage Rate (APR)** is the annual interest rate on your account. | | | |

| Type of Balance | Annual Percentage Rate (APR) | Balance Subject to Interest Rate | Interest Charge |
|---|---|---|---|
| Purchases | 29.90% | $565.58 | $14.08 |
| Cash Advances | 29.90% | $0.00 | $0.00 |

(v) = Variable Rate

PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION
Page 2 of 3

SOC_ROBINSON 000039

ROBINSON DEPOSITION EXHIBITS 000024

## ADDRESS / PHONE NUMBER CHANGE FORM

If you provide us with a cellular phone number, you are expressly consenting that (i) we and our agents may contact you at that number and (ii) we may use automated telephone dialing systems to initiate such contacts and/or leave recorded messages.

3527

_____
ADDRESS

_____
CITY                          STATE           ZIP CODE

(       )                            (       )
HOME PHONE                    BUSINESS PHONE

_____
EMAIL ADDRESS

Detach here ▼ and return above portion with your remittance. After detaching, retain lower portion for your future reference.

**This Account is issued by Celtic Bank and serviced by Genesis FS Card Services, Inc.**

**What To Do If You Think You Find A Mistake On Your Statement**

If you think there is an error on your statement, write to us at: Genesis FS Card Services, P.O. Box 4499, Beaverton, Oregon 97076.

In your letter, give us the following information:
- *Account Information:* Your name and Account number.
- *Dollar Amount:* The dollar amount of the suspected error.
- *Description of Problem:* If you think there is an error on your bill, describe what you believe is wrong and why you are so sure it is a mistake.

You must contact us within 60 days after the error appeared on your statement.

You must notify us of any potential errors *in writing*. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

While we investigate whether or not there has been an error, the following are true:
- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

**Your Rights If You Are Dissatisfied With Your Credit Card Purchases**

If you are dissatisfied with the goods or services that you have purchased with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase.

To use this right, all of the following must be true:
1. The purchase must have been made in your home state or within 100 miles of your current mailing address, and the purchase price must have been more than $50. (Note: Neither of these is necessary if your purchase was based on an advertisement we mailed to you, or if we own the company that sold you the goods or services.)
2. You must have used your credit card for the purchase. Purchases made with cash advances from an ATM or with a check that accesses your credit card account do not qualify.
3. You must not yet have fully paid for the purchase.

If all of the criteria are met and you are still dissatisfied with the purchase, contact us *in writing* at: Genesis FS Card Services, P.O. Box 4499, Beaverton, Oregon 97076.

While we investigate, the same rules apply to the disputed amount as discussed above. After we finish our investigation, we will tell you our decision. At that point, if we think you owe an amount and you do not pay, we may report you as delinquent.

**PAYMENTS**

Payments should be mailed with the payment coupon and in the envelope provided to the Genesis FS Card Services payment address indicated on the payment coupon. Any payment received in that form and at that address on or before 5:00 P.M. Eastern Time on a normal banking day will be credited to your Account that day. If your payment is received in that form and at that address after 5:00 P.M. Eastern Time on a normal banking day, or anytime on a nonbanking day, we will credit it to your Account the next banking day. Payments can also be made online by visiting www.myindigocard.com. When you provide a check as payment, you authorize us either to use the information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day we receive your payment and you will not receive your check back from your financial institution. Payments received at other than the remittance address on the face of this statement may be subject to a delay in crediting of up to 5 days after the date of receipt.

**ANNUAL FEE (if applicable)**

If you wish to terminate your ability to use your Card to obtain further Purchases and Cash Advances in order to avoid paying the renewal Annual Fee, you must deliver written notice of termination to us within thirty (30) days from the mailing date of the statement containing the renewal Annual Fee notice. Your notice must be sent to us at Genesis FS Card Services, P.O. Box 4477, Beaverton, OR 97076. Upon receipt, we will close your Account and the renewal Annual Fee will not be charged to your Account. Terminating credit availability will not cancel your obligations to pay amounts outstanding on your Account, and you will be required to pay your outstanding balance with interest in accordance with the terms of your Cardholder Agreement. These rights do not apply to an Annual Fee charged in connection with the opening of your Account.

**CREDIT BUREAU REPORTING**

We may report information about your Account to credit bureaus. Late payments, missed payments, or other defaults on your Account may be reflected in your credit report.

**HOW INTEREST CHARGES ARE DETERMINED**

Your interest charge for any Billing Cycle will include the following components, the total of which constitutes your total interest charge for the Billing Cycle:
1. A Cash Advance Transaction Fee interest charge imposed on each Cash Advance Transaction posted during a Billing Cycle, in an amount equal to the greater of $5 or 5% of the amount of each Cash Advance. This Cash Advance Transaction Fee interest charges will be added to the

calculation of your Average Daily Balance of Cash Advances. We will not charge any Cash Advance Transaction Fees, however, during the one-year period beginning on the date you open your Account.
2. Periodic interest charge computed by applying the applicable Monthly Periodic Rate or Rates, determined as provided below under **Computing the Purchase and Cash Advance Balance Monthly Periodic Rates and Corresponding Annual Percentage Rates (APR)** to:
   a. your *Average Daily Balance of Cash Advances* (including new Cash Advances); and
   b. your Average Daily Balance of Purchases (including new Purchases).
   However, if the total of the amounts so computed is an amount less than $.50, then a minimum interest charge of $.50 will be imposed instead of such smaller amounts and will be treated as an interest charge on Purchases.
3. A Foreign Currency Conversion Fee interest charge in an amount equal to 1% of the converted U.S. dollar amount of each transaction, including Cash Advances and Purchases, that is effected in any currency other than U.S. dollars.

**When Interest Charges Begin to Accrue.** Interest charges on Purchases will be imposed at the applicable Monthly Periodic Rate from the date each Purchase is made, and will continue to accrue on unpaid balances as long as they remain unpaid. However, we do not assess interest charges in the following circumstances:
1. If you paid the New Balance at the beginning of your previous Billing Cycle by the Payment Due Date during the previous Billing Cycle, or if that New Balance was $0 or a credit balance, then:
   a. if you pay the New Balance on your current Statement in full by the Payment Due Date in your current Billing Cycle, we will not assess interest charges on Purchases during your current Billing Cycle; and
   b. if you make a payment that is less than the New Balance by the Payment Due Date in your current Billing Cycle, we will credit that payment as of the first day in your current Billing Cycle.
2. If you had a New Balance at the beginning of your previous Billing Cycle and you did not pay that New Balance by the Payment Due Date during that previous Billing Cycle, then we will not assess interest charges on any Purchases during the current Billing Cycle if you pay the New Balance at the beginning of your current Billing Cycle by the Payment Due Date in your current Billing Cycle.

Periodic interest charges on Cash Advances will be imposed at the applicable Monthly Periodic Rate from the date each Cash Advance is made and will continue to accrue on unpaid balances as long as they remain unpaid. There is no grace period on Cash Advances and there is no period within which to pay to avoid interest charges on Cash Advances.

**Calculating the Purchase and Cash Advance Balance Subject to Interest Charges**

**Average Daily Balance of Purchases (including new Purchases):** To get the Average Daily Balance of Purchases, we take the beginning Purchase balance of your Account each day, including unpaid interest charges on Purchases and Foreign Currency Conversion Fee interest charges on Purchases, add any new Purchases as of the date of transaction, and subtract the applicable portion of any payments and credits as of the transaction date. On the first day of a Billing Cycle, we also add any unpaid fees. This gives us the daily balance for Purchases. Then we add all these daily balances for the Billing Cycle together and divide the total by the number of days in the Billing Cycle. This gives us the Average Daily Balance of Purchases.

**Average Daily Balance of Cash Advances (including new Cash Advances):** To get the Average Daily Balance of Cash Advances, we take the beginning Cash Advance balance of your Account each day, including unpaid interest charges on Cash Advances and Foreign Currency Conversion Fee interest charges on Cash Advances, add any new Cash Advances as of the date of transaction, and the Cash Advance Transaction Fee interest charge on any Cash Advances as of the transaction date of each Cash Advance, and subtract the applicable portion of any payments and credits as of the transaction date. This gives us the daily balance for Cash Advances. Then we add all these daily balances for this Billing Cycle together and divide the total by the number of days in the Billing Cycle. This gives us the Average Daily Balance of Cash Advances.

**Computing the Purchase and Cash Advance Balance Monthly Periodic Rates and Corresponding Annual Percentage Rates (APR)**

**Monthly Periodic Rates:** The Monthly Periodic Rate is calculated by dividing the APR by 12. The Purchase APR is 29.9% and the Monthly Periodic Rate for Purchases is 2.4916%.

The Cash Advance APR is 29.9% and the Monthly Periodic Rate for Cash Advances is 2.4916%.

**OTHER DISCLOSURES**

For AR, HI, IA, ME Residents: This communication is from a debt collector. This is an attempt to collect debt and any information obtained will be used for the purpose.

SOC_ROBINSON 000040

ROBINSON DEPOSITION EXHIBITS 000025

3527

GENESIS FS CARD SERVICES
PO BOX 4477
BEAVERTON OR 97076-4477

| | |
|---|---|
| Account Number | 3527 |
| New Balance | $675.09 |
| Minimum Payment Due | $419.09 |
| Payment Due Date | 02/18/22 |
| AMOUNT ENCLOSED | $ |

GENESIS FS CARD SERVICES ◀ Make check/money
PO BOX 23039                          order payable to
COLUMBUS GA 31902-3039

Please write your account number on your check/money order
and do not send cash.

CHRISTOPHER B ROBINSON          **0000000
20 BURNEY MOUNTAIN RD
FALKVILLE AL  35622-5700

Address/Phone Number Change

☐ Please check here and complete Address/Phone
Number Change Form on reverse side.

**Make your payment online at www.myindigocard.com**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Please detach this portion and return with your payment to ensure proper credit. Retain lower portion for your records.

## indigo®

**MASTERCARD ACCOUNT STATEMENT**
3527
December 21, 2021 - January 19, 2022



### Account Summary

| | |
|---|---|
| Credit Line | $300.00 |
| Available Credit | $0.00 |
| Past Due Amount | $281.00 |
| Overlimit Amount | $375.09 |
| Statement Closing Date | January 19, 2022 |
| # of Days in Billing Cycle | 30 |

### Purchase/Cash Advance Balance Summary

| | |
|---|---|
| Previous Balance | $619.66 |
| Payments | $0.00 |
| Other Credits | $0.00 |
| Purchases | $0.00 |
| Cash Advances | $0.00 |
| Adjustments | $0.00 |
| **Fees Charged** | **$40.00** |
| **Interest Charged** | **$15.43** |
| New Purchase/Cash Advance Balance | $675.09 |

### Payment Information

| | |
|---|---|
| Total New Balance | $675.09 |
| Minimum Payment Due | $419.09 |
| Payment Due Date | February 18, 2022 |

**Late Payment Warning:** If we do not receive your minimum payment by the date listed above, you may have to pay a late fee of up to $40.

**Minimum Payment Warning:** If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance. For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 12 month(s) | $746 |

If you would like information about credit counseling services, call 1-866-946-9545 .

| Mail payment to: | Please mail billing inquiries to: | QUESTIONS? |
|---|---|---|
| Genesis FS Card Services | Genesis FS Card Services | Call 1-866-946-9545 |
| PO BOX 23039 | P.O. Box 4499 | www.myindigocard.com |
| COLUMBUS GA 31902-3039 | Beaverton, OR 97076-4499 | |

YOUR MINIMUM PAYMENT INCLUDES ANY OVERLIMIT AND PAST DUE AMOUNTS.
PLEASE REMIT IMMEDIATELY.

Your statement will soon be updated. We have made changes to make it easier to read and
understand. In addition, we will be upgrading our website which may temporarily limit access
to some parts of the site.
**Important:**
Your due date will change to the 22nd of the month starting in March 2022.

### Fees

| Reference Number | Tran Date | Post Date | Description of Transaction or Credit | Amount |
|---|---|---|---|---|
| | 01/19 | 01/19 | LATE PAYMENT CHARGE | $40.00 |
| | | | **TOTAL FEES FOR THIS PERIOD** | **$40.00** |

### Interest Charged

| Reference Number | Tran Date | Post Date | Description of Transaction or Credit | Amount |
|---|---|---|---|---|
| | 01/19 | 01/19 | INTEREST CHARGE PURCHASE | $15.43 |
| | | | **TOTAL INTEREST FOR THIS PERIOD** | **$15.43** |

### 2022 Totals Year-to-Date

| | |
|---|---|
| Total fees charged in 2022 | $40.00 |
| Total interest charged in 2022 | $15.43 |

PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION.
Page 1 of 3

SOC_ROBINSON 000006

ROBINSON DEPOSITION EXHIBITS 000026






## indigo®

**MASTERCARD ACCOUNT STATEMENT**
3527
December 21, 2021 - January 19, 2022

| Interest Charge Calculation | | | |
|---|---|---|---|
| Your **Annual Percentage Rate (APR)** is the annual interest rate on your account. | | | |

| Type of Balance | Annual Percentage Rate (APR) | Balance Subject to Interest Rate | Interest Charge |
|---|---|---|---|
| Purchases | 29.90% | $619.66 | $15.43 |
| Cash Advances | 29.90% | $0.00 | $0.00 |

(v) = Variable Rate

Defendant's Exhibit B - Robinson Dep.  63 of 165

SOC_ROBINSON 000007

ROBINSON DEPOSITION EXHIBITS 000027

## ADDRESS / PHONE NUMBER CHANGE FORM

If you provide us with a cellular phone number, you are expressly consenting that (i) we and our agents may contact you at that number and (ii) we may use automated telephone dialing systems to initiate such contacts and/or leave recorded messages.

3527

_____
ADDRESS

_____
CITY                          STATE              ZIP CODE

( )_____       _____
HOME PHONE                    BUSINESS PHONE

_____
EMAIL ADDRESS

Detach here ▼ and return above portion with your remittance. After detaching, retain lower portion for your future reference.

**This Account is issued by Celtic Bank and serviced by Genesis FS Card Services, Inc.**

**What To Do If You Think You Find A Mistake On Your Statement**

If you think there is an error on your statement, write to us at: Genesis FS Card Services, P.O. Box 4499, Beaverton, Oregon 97076.

In your letter, give us the following information:
- *Account Information:* Your name and Account number.
- *Dollar Amount:* The dollar amount of the suspected error.
- *Description of Problem:* If you think there is an error on your bill, describe what you believe is wrong and why you may have to pay the amount in question.

You must contact us within 60 days after the error appeared on your statement.

You must notify us of any potential errors *in writing.* You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

While we investigate whether or not there has been an error, the following are true:
- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

**Your Rights If You Are Dissatisfied With Your Credit Card Purchases**

If you are dissatisfied with the goods or services that you have purchased with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase.

To use this right, all of the following must be true:
1. The purchase must have been made in your home state or within 100 miles of your current mailing address, and the purchase price must have been more than $50. (Note: Neither of these is necessary if your purchase was based on an advertisement we mailed to you, or if we own the company that sold you the goods or services.)
2. You must have used your credit card for the purchase. Purchases made with cash advances from an ATM or with a check that accesses your credit card account do not qualify.
3. You must not yet have fully paid for the purchase.

If all of the criteria are met and you are still dissatisfied with the purchase, contact us *in writing* at: Genesis FS Card Services, P.O. Box 4499, Beaverton, Oregon 97076.

While we investigate, the same rules apply to the disputed amount as discussed above. After we finish our investigation, we will tell you our decision. At that point, if we think you owe an amount and you do not pay, we may report you as delinquent.

**PAYMENTS**

Payments should be mailed with the payment coupon and in the envelope provided to the Genesis FS Card Services payment address indicated on the payment coupon. Any payment received in that form and at that address on or before 5:00 P.M. Eastern Time on a normal banking day will be credited to your Account that day. If your payment is received in that form and at that address after 5:00 P.M. Eastern Time on a normal banking day, or anytime on a nonbanking day, we will credit it to your Account the next banking day. Payments can also be made online by visiting www.myindigocard.com. When you provide a check as payment, you authorize us either to use the information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day we receive your payment and you will not receive your check back from your financial institution. Payments received at other than the remittance address on the face of this statement may be subject to a delay in crediting of up to 5 days after the date of receipt.

**ANNUAL FEE (if applicable)**

If you wish to terminate your ability to use your Card to obtain further Purchases and Cash Advances in order to avoid paying the renewal Annual Fee, you must deliver written notice of termination to us within thirty (30) days from the mailing date of the statement containing the renewal Annual Fee notice. Your notice must be sent to us at Genesis FS Card Services, P.O. Box 4477, Beaverton, OR 97076. Upon receipt, we will close your Account and the renewal Annual Fee will not be charged to your Account. Terminating credit availability will not cancel your obligations to pay amounts outstanding on your Account, and you will be required to pay your outstanding balance with interest in accordance with the terms of your Cardholder Agreement. These rights do not apply to an Annual Fee charged in connection with the opening of your Account.

**CREDIT BUREAU REPORTING**

We may report information about your Account to credit bureaus. Late payments, missed payments, or other defaults on your Account may be reflected in your credit report.

**HOW INTEREST CHARGES ARE DETERMINED**

Your interest charge for any Billing Cycle will include the following components, the total of which constitutes your total interest charge for the Billing Cycle:
1. A Cash Advance Transaction Fee interest charge imposed on each Cash Advance Transaction posted during a Billing Cycle in an amount equal to the greater of 5% of the amount of each Cash Advance or $5.00. The Cash Advance Transaction Fee interest charges will be added to the

calculation of your Average Daily Balance of Cash Advances. We will not charge any Cash Advance Transaction Fees, however, during the one-year period beginning on the date you open your Account.
2. Periodic interest charge computed by applying the applicable Monthly Periodic Rate or Rates, determined as provided below under **Computing the Purchase and Cash Advance Balance Monthly Periodic Rates and Corresponding Annual Percentage Rates (APR)** to:
   a. your *Average* Daily Balance of Cash Advances (including new Cash Advances); and
   b. your Average Daily Balance of Purchases (including new Purchases).
   However, if the total of the amounts so computed is an amount less than $.50, then a minimum interest charge of $.50 will be imposed instead of such smaller amounts and will be treated as an interest charge on Purchases.
3. A Foreign Currency Conversion Fee interest charge in an amount equal to 1% of the converted U.S. dollar amount of each transaction, including Cash Advances and Purchases, that is effected in any currency other than U.S. dollars.

**When Interest Charges Begin to Accrue.** Interest charges on Purchases will be imposed at the applicable Monthly Periodic Rate from the date each Purchase is made, and will continue to accrue on unpaid balances as long as they remain unpaid. However, we do not assess interest charges in the following circumstances:
1. If you paid the New Balance at the beginning of your previous Billing Cycle by the Payment Due Date during the previous Billing Cycle, or if that New Balance was $0 or a credit balance, then:
   a. if you pay the New Balance on your current Statement in full by the Payment Due Date in your current Billing Cycle, we will not assess interest charges on Purchases during your current Billing Cycle; and
   b. if you make a payment that is less than the New Balance by the Payment Due Date in your current Billing Cycle, we will credit that payment as of the first day in your current Billing Cycle.
2. If you had a New Balance at the beginning of your previous Billing Cycle and you did not pay that New Balance by the Payment Due Date during that previous Billing Cycle, then we will not assess interest charges on any Purchases during the current Billing Cycle if you pay the New Balance at the beginning of your current Billing Cycle by the Payment Due Date in your current Billing Cycle.

Periodic interest charges on Cash Advances will be imposed at the applicable Monthly Periodic Rate from the date each Cash Advance is made and will continue to accrue on unpaid balances as long as they remain unpaid. There is no grace period on Cash Advances and there is no period within which to pay to avoid interest charges on Cash Advances.

**Calculating the Purchase and Cash Advance Balance Subject to Interest Charges**

**Average Daily Balance of Purchases (including new Purchases):** To get the Average Daily Balance of Purchases, we take the beginning Purchase balance of your Account each day, including unpaid interest charges on Purchases and Foreign Currency Conversion Fee interest charges on Purchases, and any new Purchases as of the date of transaction, and subtract the applicable portion of any payments and credits as of the transaction date. On the first day of a Billing Cycle, we also add any unpaid fees. This gives us the daily balance for Purchases. Then we add all these daily balances for the Billing Cycle together and divide the total by the number of days in the Billing Cycle. This gives us the Average Daily Balance of Purchases.

**Average Daily Balance of Cash Advances (including new Cash Advances):** To get the Average Daily Balance of Cash Advances, we take the beginning Cash Advance balance of your Account each day, including unpaid interest charges on Cash Advances and Foreign Currency Conversion Fee interest charges on Cash Advances, and any new Cash Advances as of the date of transaction, and the Cash Advance Transaction Fee interest charge on any Cash Advances as of the transaction date of each Cash Advance, and subtract the applicable portion of any payments and credits as of the transaction date. This gives us the daily balance for Cash Advances. Then we add all these daily balances for this Billing Cycle together and divide the total by the number of days in the Billing Cycle. This gives us the Average Daily Balance of Cash Advances.

**Computing the Purchase and Cash Advance Balance Monthly Periodic Rates and Corresponding Annual Percentage Rates (APR)**

**Monthly Periodic Rates:** The Monthly Periodic Rate is calculated by dividing the APR by 12. The Purchase APR is 29.9% and the Monthly Periodic Rate for Purchases is 2.4916%.

The Cash Advance APR is 29.9% and the Monthly Periodic Rate for Cash Advances is 2.4916%.

**OTHER DISCLOSURES**

For AR, HI, IA, ME Residents: This communication is from a debt collector. This is an attempt to collect debt and any information obtained will be used for the purpose.

GE 970-CB (REV. 1-21)   Dep. 64 of 165

SOC_ROBINSON 000008

ROBINSON DEPOSITION EXHIBITS 000028



AlaFile E-Notice

01-CV-2023-903239.00

To:  SPRING OAKS CAPITAL, LLC
     C/O CORP. SERVICE CO, INC
     641 SOUTH LAWRENCE STREET
     MONTGOMERY, AL, 36104

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

CHRISTOPHER ROBINSON V. SPRING OAKS CAPITAL, LLC
01-CV-2023-903239.00

The following complaint was FILED on 9/14/2023 10:15:55 AM

Notice Date:     9/14/2023 10:15:55 AM

JACQUELINE ANDERSON  SMITH
CIRCUIT COURT CLERK
JEFFERSON COUNTY, ALABAMA
JEFFERSON COUNTY, ALABAMA
716 N. RICHARD ARRINGTON BLVD.
BIRMINGHAM, AL, 35203

205-325-5355
jackie.smith@alacourt.gov

Defendant's Exhibit B - Robinson Dep.  65 of 165

ROBINSON DEPOSITION EXHIBITS 000029

| State of Alabama<br>Unified Judicial System<br>Form C-34   Rev. 7/2023 | SUMMONS<br>- CIVIL - | Court Case Number<br>01-CV-2023-903239.00 |
|---|---|---|

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
## CHRISTOPHER ROBINSON V. SPRING OAKS CAPITAL, LLC

**NOTICE TO:** SPRING OAKS CAPITAL, LLC, C/O CORP. SERVICE CO, INC 641 SOUTH LAWRENCE STREET, MONTGOMERY, AL 36104

*(Name and Address of Defendant)*

THE COMPLAINT OR OTHER DOCUMENT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT, AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT OR OTHER DOCUMENT, WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF(S) OR ATTORNEY(S) OF THE PLAINTIFF(S), JOHN GRIFFIN WATTS

*[Name(s) of Attorney(s)]*

WHOSE ADDRESS(ES) IS/ARE: 301 19th Street North, BIRMINGHAM, AL 35203

*[Address(es) of Plaintiff(s) or Attorney(s)]*

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT OR OTHER DOCUMENT WERE SERVED ON YOU OR A JUDGMENT BY DEFAULT MAY BE RENDERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT OR OTHER DOCUMENT.

### TO ANY SHERIFF OR ANY PERSON AUTHORIZED BY THE ALABAMA RULES OF CIVIL PROCEDURE TO SERVE PROCESS:

☐ You are hereby commanded to serve this Summons and a copy of the Complaint or other document in this action upon the above-named Defendant.

☑ Service by certified mail of this Summons is initiated upon the written request below of pursuant to the Alabama Rules of the Civil Procedure.

CHRISTOPHER ROBINSON

*[Name(s)]*

| 09/14/2023 | /s/ JACQUELINE ANDERSON SMITH | By: |
|---|---|---|
| *(Date)* | *(Signature of Clerk)* | *(Name)* |

☑ Certified Mail is hereby requested.   /s/ JOHN GRIFFIN WATTS

*(Plaintiff's/Attorney's Signature)*

### RETURN ON SERVICE

**Certified Mail**

☐ Return receipt of certified mail received in this office on _____

*(Date)*

**Personal/Authorized**

☐ I certify that I personally delivered a copy of this Summons and the Complaint or other document to _____ in _____ County, Alabama on _____

*(First and Last Name of Person Served)*   *(Name of County)*   *(Date)*

Document left:

☐ with above-named Defendant;

☐ with an individual authorized to receive service of process pursuant to Rule 4(c), Alabama Rules of Civil Procedure;

☐ at the above-named Defendant's dwelling house or place or usual place of abode with some person of suitable age and discretion then residing therein.

**Return of Non-Service**

☐ I certify that service of process of this Summons and the Complaint or other document was refused by _____ in _____ County, Alabama on _____ who is:

*(First and Last Name of Person Served)*   *(Name of County)*   *(Date)*

☐ the above-named Defendant;

☐ an individual authorized to receive service of process pursuant to Rule 4(c), Alabama Rules of Civil Procedure;

☐ As a designated process server pursuant to Rule 4(i)(1)(B), Alabama Rules of Civil Procedure, I certify that I am at least 19 years of age, I am not a party to this proceeding, and I am not related within the third degree by blood or marriage to the party seeking service of process.

| *(Type of Process Server)* | *(Server's Signature)* | *(Address of Server)* |
|---|---|---|
| *(Badge or Precinct Number of Sheriff or Constable)* | *(Server's Printed Name)* | |
| *(Badge or Precinct Number of Sheriff or Constable)* | *(Telephone Number of Designated Process Server)* | |

ROBINSON DEPOSITION EXHIBITS 000030

DOCUMENT 21

ELECTRONICALLY FILED
9/14/2023 10:15 AM
01-CV-2023-903239.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
JACQUELINE ANDERSON SMITH, CLERK

| State of Alabama<br>Unified Judicial System<br>Form ARCiv-93   Rev. 9/18 | **COVER SHEET**<br>**CIRCUIT COURT - CIVIL CASE**<br>(Not For Domestic Relations Cases) | Ca:<br>01 |
|---|---|---|

Date of Filing:            Judge Code:
09/14/2023

## GENERAL INFORMATION

**IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA**
**CHRISTOPHER ROBINSON v. SPRING OAKS CAPITAL, LLC**

**First Plaintiff:** ☐ Business ☑ Individual ☐ Government ☐ Other   **First Defendant:** ☑ Business ☐ Individual ☐ Government ☐ Other

**NATURE OF SUIT:** Select primary cause of action, by checking box (check only one) that best characterizes your action:

**TORTS: PERSONAL INJURY**
☐ WDEA - Wrongful Death
☐ TONG - Negligence: General
☐ TOMV - Negligence: Motor Vehicle
☐ TOWA - Wantonness
☐ TOPL - Product Liability/AEMLD
☐ TOMM - Malpractice-Medical
☐ TOLM - Malpractice-Legal
☐ TOOM - Malpractice-Other
☐ TBFM - Fraud/Bad Faith/Misrepresentation
☑ TOXX - Other: _____

**TORTS: PERSONAL INJURY**
☐ TOPE - Personal Property
☐ TORE - Real Properly

**OTHER CIVIL FILINGS**
☐ ABAN - Abandoned Automobile
☐ ACCT - Account & Nonmortgage
☐ APAA - Administrative Agency Appeal
☐ ADPA - Administrative Procedure Act
☐ ANPS - Adults in Need of Protective Service

**OTHER CIVIL FILINGS (cont'd)**
☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/ Enforcement of Agency Subpoena/Petition to Preserve
☐ CVRT - Civil Rights
☐ COND - Condemnation/Eminent Domain/Right-of-Way
☐ CTMP - Contempt of Court
☐ CONT - Contract/Ejectment/Writ of Seizure
☐ TOCN - Conversion
☐ EQND - Equity Non-Damages Actions/Declaratory Judgment/ Injunction Election Contest/Quiet Title/Sale For Division
☐ CVUD - Eviction Appeal/Unlawful Detainer
☐ FORJ - Foreign Judgment
☐ FORF - Fruits of Crime Forfeiture
☐ MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
☐ PFAB - Protection From Abuse
☐ EPFA - Elder Protection From Abuse
☐ QTLB - Quiet Title Land Bank
☐ FELA - Railroad/Seaman (FELA)
☐ RPRO - Real Property
☐ WTEG - Will/Trust/Estate/Guardianship/Conservatorship
☐ COMP - Workers' Compensation
☐ CVXX - Miscellaneous Circuit Civil Case

**ORIGIN:** F ☑ INITIAL FILING   A ☐ APPEAL FROM DISTRICT COURT   O ☐ OTHER

R ☐ REMANDED   T ☐ TRANSFERRED FROM OTHER CIRCUIT COURT

**HAS JURY TRIAL BEEN DEMANDED?** ☑ YES ☐ NO   Note: Checking "Yes" does not constitute a demand for a jury trial. (See Rules 38 and 39, Ala.R.Civ.P, for procedure)

**RELIEF REQUESTED:** ☑ MONETARY AWARD REQUESTED ☐ NO MONETARY AWARD REQUESTED

**ATTORNEY CODE:**
WAT056               9/14/2023 10:15:48 AM               /s/ JOHN GRIFFIN WATTS
                     Date                                Signature of Attorney/Party filing this form

**MEDIATION REQUESTED:** ☐ YES ☑ NO ☐ UNDECIDED

**Election to Proceed under the Alabama Rules for Expedited Civil Actions:** ☐ YES ☑ NO

ROBINSON DEPOSITION EXHIBITS 000031


ELECTRONICALLY FILED
9/14/2023 10:15 AM
01-CV-2023-903239.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
JACQUELINE ANDERSON  SMITH, CLERK

# IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

| | |
|---|---|
| **CHRISTOPHER ROBINSON,** ) | |
| an individual, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No.:** |
| ) | |
| **SPRING OAKS CAPITAL, LLC;** ) | |
| **Fictitious Defendants "A", "B" and** ) | |
| **"C" thereby intending to refer to** ) | |
| **the legal entity, person, firm or** ) | |
| **corporation which was responsible** ) | **JURY TRIAL DEMANDED** |
| **for or conducted the wrongful acts** ) | |
| **alleged in the Complaint; Names of** ) | |
| **the Fictitious parties are unknown** ) | |
| **to the Plaintiff at this time but will** ) | |
| **be added by amendment when** ) | |
| **ascertained** ) | |
| ) | |
| ) | |
| **Defendants.** ) | |

## COMPLAINT

**COMES NOW** the Plaintiff, by and through counsel, in the above styled

cause, and for Plaintiff's Complaint against the Defendant[1] states as follows:

1.      This action arises out of Defendant's repeated violations of the Fair Debt

Collection Practices Act[2], 15 U.S.C. § 1692 et seq. ("FDCPA") by the

---

[1] "Defendant" means all defendants, including fictitiously named defendants.

[2] Any reference the FDCPA or any part thereof encompasses all relevant parts and subparts of each statute.

Defendant's Exhibit B - Robinson Dep.  68 of 165

ROBINSON DEPOSITION EXHIBITS 000032

Defendant and its agents in their illegal efforts to collect a consumer debt from Plaintiff.

## PARTIES

2.    Plaintiff **CHRISTOPHER ROBINSON (hereinafter "Plaintiff")** is a natural person who is a resident of Alabama.

3.    Defendant **SPRING OAKS CAPITAL, LLC (hereinafter "Defendant")**, is a debt collection firm that engages in the business of debt collection.  Its principal business purpose is the collection of defaulted debts, and it uses various instruments of interstate commerce to accomplish debt collection including sending letters, calling on the phone, credit reporting, filing of lawsuits, etc.

4.    **Fictitious Defendants "A", "B" and "C"** thereby intending to refer to the legal entity, person, firm or corporation which was responsible for or conducted the wrongful acts alleged in the Complaint; names of the Fictitious parties are unknown to the Plaintiff at this time but will be added by amendment when ascertained.

5.    Any reference to any **Defendant** refers to all **Defendants** and **Fictitious Defendants**.

Defendant's Exhibit B - Robinson Dep.  69 of 165

ROBINSON DEPOSITION EXHIBITS 000033

## JURISDICTION

6.  Personal jurisdiction exists over **Defendant** as **Defendant** has the necessary minimum contacts with the State of Alabama and this suit arises out of **Defendant's** specific conduct with **Plaintiff** in Alabama.  All the actions described in this suit occurred in Alabama.

## VENUE

7.  Venue is proper as **Defendant** does business in this judicial district.

## FACTUAL ALLEGATIONS

8.  Congress found it necessary to pass the FDCPA due to rampant abusive practices by dishonorable debt collectors. 15 USC § 1692 is entitled "Congressional findings and declaration of purpose" and it states as follows:

    (a)  There is **abundant evidence** of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy.**

    (b)  Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

    (c)  **Means other than** misrepresentation or other **abusive debt collection practices are available for the effective collection of debts.**

    (d)  Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

    (e)  It is the **purpose** of this title to **eliminate abusive debt collection practices** by debt collectors, to **insure that those debt collectors who refrain from using abusive debt collection**

-3-

ROBINSON DEPOSITION EXHIBITS 000034

**practices are not competitively disadvantaged,** and to promote consistent State action to protect consumers against debt collection abuses.

[Emphasis added].

9.     **Plaintiff** allegedly incurred a financial obligation that was primarily for personal, family or household purposes and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

10.    **Defendant** is considered a "debt collector" and began engaging in debt collection activities against **Plaintiff.**

11.    The primary and principal business of **Defendant** is to collect alleged defaulted debts.

12.    At the time that **Defendant** received the alleged debt of **Plaintiff**, the alleged debt was in default.

13.    **Defendant** claimed **Plaintiff** owed **Defendant** money.

14.    **Defendant** began collection activities against **Plaintiff.**

15.    **Plaintiff** sent a letter to **Defendant,** and it was delivered to **Defendant** on **October 3, 2022**.

16.    The letter clearly instructed **Defendant** that all debts it claimed to have on **Plaintiff** were disputed.

-4-

ROBINSON DEPOSITION EXHIBITS 000035

17. Despite this, and in violation of the FDCPA, **Defendant** updated **Plaintiff's** credit reports with an account from **Defendant** without marking the account as disputed.

18. On **July 21, 2023, Defendant** updated its account on the **July 28, 2023 Trans Union** report of **Plaintiff** without showing the account as disputed.

19. All of the above-described actions by **Defendant** and collection agents of **Defendant** were made in violation of the FDCPA.

20. The conduct of the **Defendant** has proximately caused **Plaintiff** damages.

-5-

ROBINSON DEPOSITION EXHIBITS 000036

## CAUSES OF ACTION

### COUNT I.

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. § 1692 et seq.

21.   The acts and omissions of **Defendant** and its agents constitute numerous and multiple violations of the FDCPA (and Regulation F) with respect to **Plaintiff**, including, but not limited to, violations of  1692d, 1692e, 1692e(8), 1692e(10), 1692f and 1692f(1) along with Regulation F related to these sections and communication between debt collectors (such as **Defendant**) and **Plaintiff**.

22.   As a result of **Defendant**'s violations of the FDCPA, **Plaintiff** is entitled to damages and reasonable attorney's fees and costs from **Defendant**.

-6-

ROBINSON DEPOSITION EXHIBITS 000037

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED, Plaintiff** prays that judgment

be entered against **Defendant** for all damages allowable, costs, expenses, attorney

fees, injunctive relief to prevent further violations, and for such other and further

relief as may be just and proper.

Respectfully Submitted,

**/s/ Patricia S. Lockhart**
Patricia S. Lockhart (LOC023)
Watts & Herring, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(256) 276-2527
patricia@wattsherring.com
**Attorney for Plaintiff**

**/s/ John G. Watts**
**John G. Watts (WAT056)**
**M. Stan Herring (HER037)**
Watts & Herring, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 879-2447
(888) 522-7167 *facsimile*
john@wattsherring.com
stan@wattsherring.com
**Attorneys for Plaintiff**

-7-

Defendant's Exhibit B - Robinson Dep.  74 of 165

ROBINSON DEPOSITION EXHIBITS 000038

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Serve defendant via certified mail at the following address:

**SPRING OAKS CAPITAL, LLC**
**c/o CORPORATION SERVICE COMPANY INC.**
**641 SOUTH LAWRENCE ST.**
**MONTGOMERY, AL 36104**

-8-

Defendant's Exhibit B - Robinson Dep.  75 of 165

ROBINSON DEPOSITION EXHIBITS 000039

**JACQUELINE ANDERSON SMITH, CLERK**
CIRCUIT COURT OF JEFFERSON COUNTY
CIVIL DIVISION-ROOM 400
716 RICHARD ARRINGTON JR. BLVD NORTH
BIRMINGHAM, ALABAMA 35203



9589 0710 5270 0495 1151

US POSTAGE ™ PITNEY BOWES

ZIP 35203 $ 009.01⁰
02 4W
0000374811 SEP. 15. 2023

Defendant's Exhibit B - Robinson Dep.  76 of 165

ROBINSON DEPOSITION EXHIBITS 000040

Personal Credit Report for:

# CHRISTOPHER ROBINSON

File Number:
██████7524

Date Created:
**11/29/2023**

Visit **transunion.com/dispute** to start a dispute online.

## 👤 Personal Information

You have been on our files since 03/01/2001. Your SSN has been masked for your protection.

**Credit Report Date**

11/29/2023

**Social Security Number**

XXX-XX-1094

**Date of Birth**

██████1982

**Name**

CHRISTOPHER B. ROBINSON

## Also Known As

**AKA**

CHRISTOPHER BRAN ROBINSON

**AKA**

CHRISTOPHER BRANDON ROBINSON

**AKA**

CHRIS B. ROBINSON

## Addresses

ROBINSON DEPOSITION EXHIBITS 000041

**Current Address**

20 BURNEY MOUNTAIN RD FALKVILLE, AL 35622-5700

**Date Reported**

08/30/2019

**Other Address**

███████████████████████

**Date Reported**

07/31/2011

**Other Address**

██████████████████████████████

**Date Reported**

02/24/2009

**Other Address**

██████████████████████

**Date Reported**

01/04/2007

**Other Address**

██████████████████████████

**Date Reported**

12/04/2005

**Other Address**

██████████████████████

**Other Address**

█████████████████████████

**Date Reported**

10/21/2008

**Other Address**

██████████████████████████

**Date Reported**

05/03/2007

**Other Address**

████████████████████████

**Date Reported**

04/01/2007

Other Address

████████████████████████

**Date Reported**

04/01/2007

Other Address

████████████████████████

**Date Reported**

02/17/2012

Other Address

████████████████████████

**Date Reported**

10/14/2010

Other Address

████████████████████

████████

06/20/2010

Other Address

████████████████████████

**Date Reported**

03/31/2010

Other Address

████████████████████████████

**Date Reported**

03/31/2010

Other Address

████████████████████████

**Date Reported**

01/02/2010

Other Address

████████████████████████████

**Date Reported**

05/07/2009

Other Address

████████████████████████

**Date Reported**

12/19/2007

Robinson v Spring Oaks 000084

ROBINSON DEPOSITION EXHIBITS 000043



**Other Address**

**Date Reported**

04/02/2007

**Other Address**

**Date Reported**

03/06/2007

## Phone Numbers

**Phone Number**

**Phone Number**



# Employers

| Employer |
| --- |
| **CAPITAL MATERIALS**<br><br>Date Verified<br>11/21/2023 |
| **SPD TRUCKING**<br><br>Date Verified<br>03/21/2023 |
| **KOHLER**<br><br>Date Verified<br>05/05/2021 |
| **WALMART DISTRUBUTION**<br><br>Occupation · Date Verified<br>SHIPPING · 01/31/2021 |
| **WALMART DISTRIBUTION CENTER**<br><br>Date Verified<br>01/09/2021 |
| **MILES TRUCKING** |

ROBINSON DEPOSITION EXHIBITS 000045

| Occupation | Date Verified |
|---|---|
| DRIVER | 08/31/2020 |

**TMC TRUCKING**

| Occupation | Date Verified |
|---|---|
| TRUCK DRIVER | 07/09/2016 |

## 🏛 Accounts

Typically, creditors report any changes made to your account information monthly. This means that some accounts listed below may not reflect the most recent activity until the creditor's next reporting. This information may include things such as balances, payments, dates, remarks, ratings, etc. The rating key is provided to help you understand some of the account information that could be reported. Pay Status represents the current status of accounts and indicates how you are currently paying. For accounts that have been paid and closed, sold, or transferred, Pay Status represents the last reported status of the account.

**Payment/Remarks Key**

**Ratings**

| | |
|---|---|
| OK | Current, paying or paid as agreed |
| N/R | Not Reported |
| X | Unknown |
| 30 | Account 30 days late |
| 60 | Account 60 days late |
| 90 | Account 90 days late |
| 120 | Account 120 or more days late |
| COL | Transferred to collection |
| VS | Voluntarily surrendered |
| RPO | Repossession |
| C/O | Charged off by account provider |
| FC | Foreclosure |

**Remarks**

**AAP:** Loan assumed by another party

**ACQ:** Acquired from another lender

**ACR:** Account closed due to refinance

**ACT:** Account closed due to transfer

**AFR:** Account acquired by RTC/FDIC

**AID:** Account information disputed by consumer

**AJP:** Adjustment pending

Robinson v Spring Oaks 000087

ROBINSON DEPOSITION EXHIBITS 000046

**AMD:** Active military duty

**AND:** Affected by natural disaster

**BAL:** Balloon payment

**BKL:** Included in bankruptcy

**BKW:** Bankruptcy withdrawn

**CAD:** Dispute account/closed by consumer

**CBC:** Account closed by consumer

**CBD:** Dispute resolved/consumer disagrees/closed by consumer

**CBG:** Canceled by credit grantor

**CBL:** Chapter 7 bankruptcy

**CBR:** Chapter 11 bankruptcy

**CBT:** Chapter 12 bankruptcy

**CLA:** Placed for collection

**CLO:** Closed

**CLS:** Credit line suspended

**CRB:** Collateral released–balance owing

**CTR:** Account closed–transfer to refinance

**CTS:** Contact subscriber

**DDR:** -none-

**DLU:** Deed in lieu

**DM:** Bankruptcy dismissed

**DRC:** Dispute resolved/consumer disagrees

**DRG:** Dispute resolved reported by credit grantor

**ER:** Election of remedy

**ETB:** Early termination/balance owing

**ETI:** Early termination by default

**ETO:** Early termination/obligation settled

**ETS:** Early termination/status pending

**FCL:** Foreclosure

**FPD:** Account paid, foreclosure started

**FPI:** Foreclosure initiated

**FRD:** Foreclosure collateral sold

**FTB:** Full termination/balance owing

**FTO:** Full termination/obligation satisfied

**FTS:** Full termination/status pending

**INA:** Inactive account

**INP:** Debt being paid through insurance

**INS:** Paid by insurance

**IRB:** Involuntary repossession/balance owing

**IRE:** Involuntary repossession

**IRO:** Involuntary repossession/obligation satisfied

Defendant's Exhibit B - Robinson Dep.  83 of 165

Robinson v Spring Oaks 000088

ROBINSON DEPOSITION EXHIBITS 000047

**JUG:** Judgment granted

**LA:** Lease assumption

**LMN:** Loan Modified Not GOVT (government)

**LNA:** Credit line is no longer available

**MCC:** Managed by credit counseling service

**MOV:** No forwarding address

**NIR:** Student loan not in repayment

**NPA:** Now paying

**PAL:** Purchase by another lender

**PCL:** Paid collection

**PDD:** Paid by dealer

**PDE:** Payment deferred

**PDI:** Principle deferred/initial payment only

**PFC:** Account paid from collateral

**PLL:** Prepaid lease

**PLP:** Profit and loss now paying

**PNR:** First payment never received

**PPA:** Paying partial payment agreement

**PPD:** Paid by co-maker

**PPL:** Paid profit and loss

**PRD:** Payroll deduction

**PRL:** Profit and loss write-off

**PWG:** Account payment, wage garnish

**REA:** Reaffirmation of debt

**REP:** Substitute/replacement account

**RFN:** Refinanced

**RPD:** Paid repossession

**RPO:** Repossession

**RRE:** Repossession redeemed

**RVN:** Returned voluntarily

**RVR:** Returned voluntarily/redeemed

**SET:** Settled–less than full balance

**SGL:** Government secured guaranteed

**SIL:** Simple interest loan

**SLP:** Student loan perm assign government

**SPL:** Single payment loan

**STL:** Credit card lost/stolen

**TRF:** Transfer

**TRL:** Transferred to another lender

**TTR:** Transferred to recovery

**WEP:** Chapter 13 bankruptcy

Robinson v Spring Oaks 000089

ROBINSON DEPOSITION EXHIBITS 000048

For account information other than payment history, we may show brackets >◄ to indicate information that may negatively affect your credit health.

## Accounts with Adverse Information

Adverse information typically remains on your credit file for up to 7 years from the date of the delinquency. To help you understand what is generally considered adverse, we have added >brackets< to those items in this report. For your protection, your account numbers have been partially masked, and in some cases scrambled.

| Account Name |
| --- |
| ALLY FINANCIAL ▮▮▮▮▮ |

### Account Information

| | |
| --- | --- |
| **Address** | |
| **Phone** | |
| **Monthly Payment** | |
| **Date Opened** | |
| **Responsibility** | |
| **Account Type** | |
| **Loan Type** | |
| **Balance** | |
| **Date Updated** | |
| **Payment Received** | |
| **High Balance** | |
| **Pay Status** | |
| **Terms** | |
| **Date Closed** | |
| **Estimated month and year this item will be removed** | |

Defendant's Exhibit B - Robinson Dep.  85 of 165

Robinson v Spring Oaks 000090

ROBINSON DEPOSITION EXHIBITS 000049

**Remarks**

Completed investigation of CRA dispute-consumer disagreed; SETTLED-LESS THAN FULL BLNC; PAID IN FULL/WAS A CHARGE OFF

## Payment History

Robinson v Spring Oaks 000091

https://annualcreditreport.transunion.com/dss/disclosure.page

ROBINSON DEPOSITION EXHIBITS 000050

| October 2019 | November 2019 | December 2019 | January 2020 | February 2020 | March 2020 |
|---|---|---|---|---|---|

Total Month

**COVINGTON CREDIT -** ████████████

Robinson v Spring Oaks 000092

ROBINSON DEPOSITION EXHIBITS 000051

## Account Information

**Address**

**Phone**

**Monthly Payment**

**Date Opened**

**Responsibility**

**Account Type**

**Loan Type**

**Balance**

**Date Updated**

**Payment Received**

**Pay Status**

**Terms**

**Date Closed**

**High Balance (Hist.)**

**Estimated month and year this item will be removed**

P

**Remarks**

## Payment History



Total Mont

DISCOVER BANK

## Account Information

**Address**

**Phone**

**Date Opened**

**Responsibility**

Robinson v Spring Oaks 000094

ROBINSON DEPOSITION EXHIBITS 000053

**Account Type**

**Loan Type**

**Balance**

**Date Updated**

**Last Payment Made**

**Pay Status**

**Terms**

**Date Closed**

**Date Paid**

**High Balance (Hist.)**

**Credit Limit (Hist.)**

**Estimated month and year this item will be removed**

Payment History

Robinson v Spring Oaks 000095

14/67

ROBINSON DEPOSITION EXHIBITS 000054

February 2019        March 2019        April 2019        May 2019        June 2019        July 2019



Defendant's Exhibit B - Robinson Dep.  91 of 165

Robinson v Spring Oaks 000096

ROBINSON DEPOSITION EXHIBITS 000055



Robinson v Spring Oaks 000097

ROBINSON DEPOSITION EXHIBITS 000056

| February 2022 | March 2022 | April 2022 | May 2022 | June 2022 | July 2022 |
| --- | --- | --- | --- | --- | --- |



Total Month

FIRST PREMIER BANK 

## Account Information

Defendant's Exhibit B - Robinson Dep.  93 of 165

Robinson v Spring Oaks 000098

ROBINSON DEPOSITION EXHIBITS 000057

**Address**

**Phone**

**Date Opened**

**Responsibility**

**Account Type**

**Loan Type**

**Balance**

**Date Updated**

**Payment Received**

**Pay Status**

**Terms**

**Date Closed**

**Credit Limit (Hist.)**

**Estimated month and year this item will be removed**

Payment History

ROBINSON DEPOSITION EXHIBITS 000058

| June 2021 | July 2021 | August 2021 | September 2021 | October 2021 | November 2021 |



Robinson v Spring Oaks 000100

ROBINSON DEPOSITION EXHIBITS 000059

| June 2022 | July 2022 | August 2022 | September 2022 | October 2022 | November 2022 |
|---|---|---|---|---|---|



Robinson v Spring Oaks 000101

https://annualcreditreport.transunion.com/dss/disclosure.page

ROBINSON DEPOSITION EXHIBITS 000060

| June 2023 | July 2023 | August 2023 | September 2023 | October 2023 | November 2023 |
|---|---|---|---|---|---|



Total Month

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MRV BANKS/REVVI

## Account Information

**Address**

**Phone**

**Date Opened**

**Responsibility**

**Account Type**

**Loan Type**

**Balance**

**Date Updated**

**Payment Received**

Defendant's Exhibit B - Robinson Dep.  97 of 165

Robinson v Spring Oaks 000102

ROBINSON DEPOSITION EXHIBITS 000061

**Pay Status**

**Terms**

**Date Closed**

**High Balance (Hist.)**

**Credit Limit (Hist.)**                                 C

**Estimated month and year this item will be removed**

Payment History

Robinson v Spring Oaks 000103

22/67

ROBINSON DEPOSITION EXHIBITS 000062

| November 2022 | December 2022 | January 2023 | February 2023 | March 2023 | April 2023 |
| --- | --- | --- | --- | --- | --- |



May 2023

Total Mont

SECURITY FINANCE CORPORATION

## Account Information

**Address**

**Phone**

ROBINSON DEPOSITION EXHIBITS 000063

**Monthly Payment**

**Date Opened**

**Responsibility**

**Account Type**

**Loan Type**

**Balance**

**Date Updated**

**Payment Received**

**Last Payment Made**

**Pay Status**

**Terms**

**Date Closed**

**High Balance (Hist.)**

**Estimated month and year this item will be removed**

Payment History

ROBINSON DEPOSITION EXHIBITS 000064

October 2020          November 2020          December 2020          January 2021          February 2021          March 2021



ROBINSON DEPOSITION EXHIBITS 000065



Robinson v Spring Oaks 000107

ROBINSON DEPOSITION EXHIBITS 000066

| October 2022 | November 2022 | December 2022 | January 2023 | February 2023 | March 2023 |
| --- | --- | --- | --- | --- | --- |



Defendant's Exhibit B - Robinson Dep.  103 of 165

Robinson v Spring Oaks 000108

ROBINSON DEPOSITION EXHIBITS 000067

October 2023



Total Month

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

WELLS FARGO CARD SERVICES

## Account Information

**Address**

**Phone**

**Date Opened**

**Responsibility**

**Account Type**

**Loan Type**

**Balance**

**Date Updated**

**Payment Received**

**Last Payment Made**

**Pay Status**

Defendant's Exhibit B - Robinson Dep.   104 of 165

Robinson v Spring Oaks 000109

ROBINSON DEPOSITION EXHIBITS 000068

**Terms**

**Date Closed**

**High Balance (Hist.)**

**Credit Limit (Hist.)**

**Estimated month and year this item will be removed**

Payment History

| | January 2017 | February 2017 | March 2017 | April 2017 | May 2017 | June 2017 |

Defendant's Exhibit B - Robinson Dep.  105 of 165

Robinson v Spring Oaks 000110

ROBINSON DEPOSITION EXHIBITS 000069

| January 2018 | February 2018 | March 2018 | April 2018 | May 2018 | June 2018 |



Robinson v Spring Oaks 000111

ROBINSON DEPOSITION EXHIBITS 000070

| January 2019 | February 2019 | March 2019 | April 2019 | May 2019 | June 2019 |
|---|---|---|---|---|---|



Robinson v Spring Oaks 000112

ROBINSON DEPOSITION EXHIBITS 000071

| January 2020 | February 2020 | March 2020 | April 2020 | May 2020 | June 2020 |
|---|---|---|---|---|---|



Robinson v Spring Oaks 000113

https://annualcreditreport.transunion.com/dss/disclosure.page

ROBINSON DEPOSITION EXHIBITS 000072

| January 2021 | February 2021 | March 2021 | April 2021 | May 2021 | June 2021 |



ROBINSON DEPOSITION EXHIBITS 000073

| January 2022 | February 2022 | March 2022 | April 2022 | May 2022 | June 2022 |
|---|---|---|---|---|---|

ROBINSON DEPOSITION EXHIBITS 000074

| January 2023 | February 2023 | March 2023 | April 2023 | May 2023 | June 2023 |



Total Month

WORLD FINANCE CORPORATION

## Account Information

**Address**

**Phone**

**Monthly Payment**

**Date Opened**

Defendant's Exhibit B - Robinson Dep.  111 of 165

Robinson v Spring Oaks 000116

ROBINSON DEPOSITION EXHIBITS 000075

**Responsibility**

**Account Type**

**Loan Type**

**Balance**

**Date Updated**

**Payment Received**

**Pay Status**

**Terms**

**Date Closed**

**High Balance (Hist.)**

**Estimated month and year this item will be removed**

**Remarks**

Payment History

ROBINSON DEPOSITION EXHIBITS 000076

| January 2021 | February 2021 | March 2021 | April 2021 | May 2021 | June 2021 |
| --- | --- | --- | --- | --- | --- |



July 2021

Total Mont

LVNV FUNDING LLC

## Account Information

**Address**

**Phone**

**Date Opened**

**Responsibility**

Defendant's Exhibit B - Robinson Dep.   113 of 165

Robinson v Spring Oaks 000118

ROBINSON DEPOSITION EXHIBITS 000077

**Account Type**

**Loan Type**

**Balance**

**Date Updated**

**High Balance**

**Original Creditor**

**Past Due**

**Pay Status**

**Estimated month and year this item will be removed**

**Remarks**



---

RESURGENT RECEIVABLES LLC

## Account Information

**Address**

**Phone**

**Date Opened**

**Responsibility**

**Account Type**

**Loan Type**

**Balance**

**Date Updated**

**High Balance**

**Original Creditor**

Defendant's Exhibit B - Robinson Dep.  114 of 165

Robinson v Spring Oaks 000119

ROBINSON DEPOSITION EXHIBITS 000078

**Past Due**

**Pay Status**

**Estimated month and year this item will be removed**

**Remarks**



---

SPRING OAKS CAPITAL LLC ▬▬▬

## Account Information

| | |
|---|---|
| **Address** | PO BOX 1216 CHESAPEAKE, VA 23327 |
| **Phone** | (866) 281-3065 |
| **Date Opened** | 03/26/2022 |
| **Responsibility** | Individual Account |
| **Account Type** | Open Account |
| **Loan Type** | FACTORING COMPANY ACCOUNT |
| **Balance** | $675 |
| **Date Updated** | 11/24/2023 |
| **High Balance** | $675 |
| **Original Creditor** | CELTIC BANK |
| **Past Due** | $675 |
| **Pay Status** | >Collection< |
| **Estimated month and year this item will be removed** | 07/2028 |
| **Remarks** | Account previously in dispute-now resolved. reported by credit grant; >PLACED FOR COLLECTION< |

---

SPRING OAKS CAPITAL LLC1 ▬▬▬

## Account Information

ROBINSON DEPOSITION EXHIBITS 000079

| | |
|---|---|
| **Address** | PO BOX 1246 CHESAPEAKE, VA 23327 |
| **Phone** | (866) 281-3065 |
| **Date Opened** | 09/30/2023 |
| **Responsibility** | Individual Account |
| **Account Type** | Open Account |
| **Loan Type** | FACTORING COMPANY ACCOUNT |
| **Balance** | $342 |
| **Date Updated** | 11/24/2023 |
| **High Balance** | $342 |
| **Original Creditor** | WORLD ACCEPTANCE CORPORATION |
| **Past Due** | $342 |
| **Pay Status** | >Collection< |
| **Estimated month and year this item will be removed** | 03/2028 |
| **Remarks** | >PLACED FOR COLLECTION< |

## Satisfactory Accounts

The following accounts are reported with no adverse information. For your protection, your account numbers have been partially masked, and in some cases scrambled. Please note: Accounts are reported as "Current; Paid or paying as agreed" if paid within 30 days of the due date. Accounts reported as Current may still incur late fees or interest charges if not paid on or before the due date.

| **Account Name** |
|---|
| BANK OF MISSOURI/TOTAL VISA ▇▇▇▇▇▇ |

### Account Information

**Address**

**Phone**

**Monthly Payment**

Defendant's Exhibit B - Robinson Dep.  116 of 165

ROBINSON DEPOSITION EXHIBITS 000080

**Date Opened**

**Responsibility**

**Account Type**

**Loan Type**

**Balance**

**Date Updated**

**Payment Received**

**Last Payment Made**

**High Balance**

**Credit Limit**

**Pay Status**

**Terms**



---

BRIGIT / COASTAL COMMUNITY BANK

## Account Information

**Address**

**Phone**

**Monthly Payment**

**Date Opened**

**Responsibility**

**Account Type**

**Loan Type**

**Balance**

Defendant's Exhibit B - Robinson Dep.  117 of 165

Robinson v Spring Oaks 000122

ROBINSON DEPOSITION EXHIBITS 000081



Date Updated

Payment Received

Last Payment Made

Pay Status

Terms

High Balance (Hist.)

Payment History

| August 2023 | September 2023 | October 2023 | November 2023 |
|---|---|---|---|

Total Mont

BRIGIT / COASTAL COMMUNITY BANK

## Account Information

Address

Phone

Monthly Payment

Date Opened

Responsibility

Defendant's Exhibit B - Robinson Dep.  118 of 165

Robinson v Spring Oaks 000123

ROBINSON DEPOSITION EXHIBITS 000082

**Account Type**

**Loan Type**

**Balance**

**Date Updated**

**Payment Received**

**Last Payment Made**

**High Balance**

**Pay Status**

**Terms**

**Date Closed**

**Remarks**



---

MONEYLION INCLLI

## Account Information

**Address**

**Phone**

**Monthly Payment**

**Date Opened**

**Responsibility**

**Account Type**

**Loan Type**

**Balance**

**Date Updated**

Defendant's Exhibit B - Robinson Dep.  119 of 165

Robinson v Spring Oaks 000124

ROBINSON DEPOSITION EXHIBITS 000083

**Payment Received**

**Last Payment Made**

**Pay Status**

**Terms**

**High Balance (Hist.)**

Payment History



| July 2023 | August 2023 | September 2023 | October 2023 |
| --- | --- | --- | --- |

Total Mont

SYNOVUS/FIRST DIGITAL

## Account Information

**Address**

**Phone**

**Monthly Payment**

**Date Opened**

**Responsibility**

**Account Type**

Defendant's Exhibit B - Robinson Dep.  120 of 165

Robinson v Spring Oaks 000125

ROBINSON DEPOSITION EXHIBITS 000084

**Loan Type**

**Balance**

**Date Updated**

**Payment Received**

**Last Payment Made**

**High Balance**

**Credit Limit**

**Pay Status**

**Terms**

Payment History

October 2023



Total Mon

---

WORLD FINANCE CORPORATIO

## Account Information

**Address**

**Phone**

**Monthly Payment**

**Date Opened**

**Responsibility**

**Account Type**

**Loan Type**

Defendant's Exhibit B - Robinson Dep.   121 of 165

Robinson v Spring Oaks 000126

ROBINSON DEPOSITION EXHIBITS 000085



**Balance**

**Date Updated**

**Payment Received**

**Last Payment Made**

**High Balance**

**Pay Status**

**Terms**

**Date Closed**

**Remarks**

Payment History

| August 2020 | September 2020 | October 2020 | November 2020 | December 2020 |
|---|---|---|---|---|

Total Mont

## 🔍 Inquiries

## Regular Inquiries

Regular Inquiries are posted when someone accesses your credit information from TransUnion. The presence of an inquiry means that the company listed received your credit information on the dates specified. These inquiries will remain on your credit file for up to 2 years.

Name

**US BANK**

| Location | Requested On | Phone |
|---|---|---|
| 9380 EXCELSIOR BLVD EP-M HOPKINS, MN 55343 | 11/21/2023 | (651) 605-8298 |

Inquiry Type
Individual

Defendant's Exhibit B - Robinson Dep.   122 of 165

Robinson v Spring Oaks 000127

ROBINSON DEPOSITION EXHIBITS 000086

**CB INDIGO**

| Location | Requested On | Phone |
|---|---|---|
| PO BOX 4499 | 11/04/2023 | (866) 946-9545 |
| BEAVERTON, OR 97076 | | |

Inquiry Type
Individual

---

**SYNOVUSVERV FIRSTDIGITAL**

| Location | Requested On | Phone |
|---|---|---|
| PO BOX 85650 | 09/20/2023 | (877) 259-3755 |
| SIOUX FALLS, SD 57118 | | |

Inquiry Type
Individual

---

**TBOMVERVENT TOTAL VISA**

| Location | Requested On | Phone |
|---|---|---|
| PO BOX 84930 | 09/07/2023 | (877) 480-6988 |
| SIOUX FALLS, SD 57118 | | |

Inquiry Type
Individual

---

**TBOMCONTFIN**

| Location | Requested On | Phone |
|---|---|---|
| 4550 NEW LINDEN HILL ROAD | 05/14/2023 | (866) 449-4514 |
| 4RTH FLOOR SUITE 400 | | |
| WILMINGTON, DE 19808 | | |

Inquiry Type
Individual

---

**CFNA**

| Location | Requested On | Phone |
|---|---|---|
| PO BOX 81315 | 05/03/2023 | (216) 362-3479 |
| CLEVELAND, OH 44181 | | |

Inquiry Type
Individual

## Promotional Inquiries

The companies listed below received your name, address and other limited information about you so they could make a firm offer of credit or insurance. They did not receive your full credit report. These inquiries are not seen by anyone but you and do not affect your score.

**Name**

**SYNOVUS/VERV-FIRSTDIGITAL**

| Location | Requested On | Phone |
|---|---|---|
| PO BOX 85650 | 08/18/2023 | (877) 259-3755 |
| SIOUX FALLS, SD 57118 | | |

**TBOM/VERVENT-TOTAL VISA**

| Location | Requested On | Phone |
|---|---|---|
| TRANSACTION SERVICES | 08/08/2023 | (888) 257-1159 |
| PO BOX 84930 | | |
| SIOUX FALLS, SD 57118 | | |

**PROGRESSIVE INSURANCE**

| Location | Requested On | Phone |
|---|---|---|
| PO BOX 43258 | 01/16/2023 | (216) 732-3038 |
| RICHMOND HEIG, OH 44123 | | |

## Account Review Inquiries

The listing of a company's inquiry in this section means that they obtained information from your credit file in connection with an account review or other business transaction with you. These inquiries are not seen by anyone but you and will not be used in scoring your credit file (except insurance companies may have access to other insurance company inquiries, certain collection companies may have access to other collection company inquiries, and users of a report for employment purposes may have access to other employment inquiries, where permitted by law).

**Name**

**TRANSUNION CONSUMER INTE**

| Location | Requested On | Phone |
|---|---|---|
| 760 MARKET STREET 10TH FLOOR | 11/26/2023 | (844) 580-6816 |
| SAN FRANCISCO, CA 94102 | | |

**TRANSUNION CONSUMER INTE**

| Location | Requested On | Phone |
|---|---|---|
| 100 CROSS STREET | 11/12/2023 | (805) 782-8282 |
| SAN LUIS OBISP, CA 93401 | | |

**SYNOVUS/VERV-FIRSTDIGITAL**

| Location | Requested On | Phone |
|---|---|---|
| PO BOX 85650 | 10/20/2023 | (877) 259-3755 |
| SIOUX FALLS, SD 57118 | | |

**TBOM/VERVENT-TOTAL VISA**

| Location | Requested On | Phone |
|---|---|---|
| PO BOX 84930 | 10/18/2023 | (877) 259-3755 |
| SIOUX FALLS, SD 57118 | | |

ROBINSON DEPOSITION EXHIBITS 000088

**CAPITAL ONE**

| Location | Requested On | Phone |
|---|---|---|
| P O Box 31293<br>Salt Lake City, UT 84131 | 05/09/2023 | (800) 955-7070 |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**DISCOVER FINANCIAL SERVICES LLC**

| Location | Requested On | Phone |
|---|---|---|
| 2500 LAKE COOK ROAD<br>RIVERWOODS, IL 60015 | 03/09/2023 | (800) 347-2683 |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**DISCOVER CARD**

| Location | Requested On | Phone |
|---|---|---|
| 2500 LAKE COOK ROAD<br>RIVERWOODS, IL 60015 | 02/09/2023 | (800) 347-2683 |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**MRV-VERVENT-REVVI**

| Location | Requested On | Phone |
|---|---|---|
| PO BOX 85800<br>SIOUX FALLS, SD 57118 | 01/03/2023 | (858) 451-2444 |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**CHRISTOPHER ROBINSON via TRANSUNION INTERACTIVE IN**

| Location | Requested On | Phone |
|---|---|---|
| 100 CROSS ST<br>STE 202<br>SAN LUIS OBISPO, CA 93401 | 11/29/2023, 11/29/2023, 07/28/2023 | (855) 681-3196 |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**CHRISTOPHER ROBINSON via TRANSUNION INTERACTIVE**

| Location | Requested On | Phone |
|---|---|---|
| 100 CROSS STREET 202<br>SAN LUIS OBISPO, CA 93401 | 11/27/2023, 10/23/2023, 10/15/2023, 09/23/2023, 09/15/2023, 08/15/2023, 07/15/2023, 06/15/2023, 05/15/2023, 04/10/2023, 03/10/2023, 01/07/2023, 12/07/2022, 11/28/2022, 10/09/2022 | (800) 493-2392 |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**CHRISTOPHER ROBINSON via KARMATRANSUNION INTERACT**

| Location | Requested On | Phone |
|---|---|---|
| 100 CROSS STREET<br>SAN LUIS OBISPO, CA 93401 | 11/26/2023 | (844) 580-6816 |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**CHRISTOPHER ROBINSON via TRANSUNION INTERACTIVE**

| Location | Requested On | Phone |
|---|---|---|
| 100 CROSS STREET 202<br>SAN LUIS OBISPO, CA 93401 | 11/26/2023 | (844) 580-6816 |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Robinson v Spring Oaks 000130

ROBINSON DEPOSITION EXHIBITS 000089

**803839730 via TRANSUNION INTERACTIVE**

| Location | Requested On | Phone |
|---|---|---|
| 100 CROSS STREET 202<br>SAN LUIS OBISPO, CA 93401 | 11/25/2023, 11/22/2023, 11/08/2023, 10/31/2023, 09/27/2023, 08/22/2023, 08/03/2023, 07/06/2023, 06/06/2023, 06/04/2023, 05/07/2023, 05/05/2023, 04/27/2023, 04/05/2023, 03/25/2023, 03/22/2023, 03/18/2023, 03/07/2023, 02/06/2023, 02/02/2023, 01/26/2023, 01/19/2023, 01/05/2023, 01/03/2023, 12/18/2022, 12/06/2022, 11/22/2022, 10/26/2022 | (800) 493-2392 |

**CONSUMERINFO.COM**

| Location | Requested On | Phone |
|---|---|---|
| 475 ANTON BLVD<br>COSTA MESA, CA 92626 | 11/25/2023, 10/30/2023, 09/24/2023, 09/08/2023, 09/04/2023, 07/31/2023, 07/23/2023, 05/02/2023, 03/14/2023, 12/20/2022, 11/27/2022, 11/23/2022, 11/13/2022, 11/03/2022, 10/27/2022, 10/25/2022, 10/15/2022, 10/09/2022, 10/05/2022, 09/29/2022, 09/17/2022 | (888) 397-3742 |

**550220241 via CREDITWISE CAPITAL1 TU-B**

| Location | Requested On | Phone |
|---|---|---|
| CAPITAL ONE N.A.<br>PO BOX 85870<br>RICHMOND, VA 23285 | 11/22/2023 | (877) 383-4802 |

**TRANSUNION INTERACTIVE**

| Location | Requested On | Phone |
|---|---|---|
| 100 CROSS STREET 202<br>SAN LUIS OBISPO, CA 93401 | 11/21/2023, 11/04/2023, 09/20/2023, 09/07/2023, 05/14/2023, 05/03/2023 | (800) 493-2392 |

**VERIFACTS LLC**

| Location | Requested On | Phone |
|---|---|---|
| 1980 INDUSTRIAL DRIVE<br>STERLING, IL 61081 | 11/21/2023, 06/29/2023, 02/28/2023, 02/24/2022 | (800) 542-7434 |

**CHRIS ROBINSON via TUCI ARRAY**

Robinson v Spring Oaks 000131

https://annualcreditreport.transunion.com/dss/disclosure.page

50/67

ROBINSON DEPOSITION EXHIBITS 000090

| Location | Requested On | Phone |
|---|---|---|
| 100 CROSS STREET<br>SUITE 101<br>SAN LUIS OBISPO, CA 93401 | 11/18/2023, 10/18/2023, 10/16/2023,<br>09/17/2023, 08/17/2023, 07/17/2023,<br>07/05/2023, 06/07/2023,<br>06/04/2023, 05/04/2023 | (844) 580-6816 |

**UPGRADE**

| Location | Requested On | Phone |
|---|---|---|
| 275 BATTERY ST SUITE 2300<br>SAN FRANCISCO, CA 94111 | 11/13/2023, 08/08/2023, 02/15/2023,<br>09/03/2022, 06/28/2022, 03/28/2022 | (855) 997-3100 |

**MIDLAND CREDIT MANAGEMENT**

| Location | Requested On | Phone |
|---|---|---|
| 320 EAST BIG BEAVER<br>SUITE 300<br>TROY, MI 48083 | 11/11/2023, 09/10/2023, 07/19/2023 | (877) 822-0381 |

**CHRIS ROBINSON via CREDITWISE CAPITAL1 TU-A**

| Location | Requested On | Phone |
|---|---|---|
| CAPITAL ONE N.A.<br>PO BOX 85870<br>RICHMOND, VA 23285 | 11/09/2023, 10/12/2023, 09/14/2023,<br>08/17/2023, 07/20/2023, 06/22/2023,<br>05/25/2023, 04/27/2023,<br>03/29/2023, 03/02/2023,<br>02/02/2023, 01/05/2023, 12/08/2022,<br>11/07/2022, 10/08/2022, 09/09/2022,<br>08/09/2022, 07/12/2022, 06/12/2022,<br>05/12/2022, 04/10/2022, 03/11/2022,<br>02/11/2022, 01/26/2022, 12/29/2021,<br>11/30/2021 | (877) 383-4802 |

**QUINSTREET**

| Location | Requested On | Phone |
|---|---|---|
| 950 TOWER LANE<br>FOSTER CITY, CA 94404 | 11/04/2023, 06/12/2023, 05/10/2023,<br>05/03/2023 | (650) 578-7700 |

**MONEVO INC**

| Location | Requested On | Phone |
|---|---|---|
| 8910 UNIVERSITY CNTR LANE<br>SUITE 400<br>SAN DIEGO, CA 92122 | 11/04/2023, 10/04/2023, 09/02/2023,<br>07/07/2023, 05/18/2023, 05/16/2023,<br>04/11/2023, 01/21/2023, 12/20/2022,<br>12/08/2022, 12/02/2022, 10/31/2022,<br>09/29/2022, 08/25/2022,<br>07/09/2022, 06/07/2022 | (619) 330-7083 |

**FTFINE DAY FUNDING**

ROBINSON DEPOSITION EXHIBITS 000091

| | Requested On | Phone |
|---|---|---|
| Location | 11/04/2023, 07/07/2023 | (844) 941-0035 |
| PO BOX 457 | | |
| KESHENA, WI 54135 | | |

**FTFINE DAY FUNDING**

| | Requested On | Phone |
|---|---|---|
| Location | 11/04/2023, 07/07/2023 | (844) 941-0035 |
| PO BOX 457 | | |
| KESHENA, WI 54135 | | |

**SPRING OAKS CAPITAL LLC**

| | Requested On | Phone |
|---|---|---|
| Location | 11/02/2023, 06/25/2022 | (833) 398-0024 |
| 1400 CROSSWAYS BLD | | |
| SUITE 100 B | | |
| CHESAPEAKE, VA 23320 | | |

**CARVANA LLC**

| | Requested On | Phone |
|---|---|---|
| Location | 10/15/2023, 06/26/2023, 04/01/2023, | (800) 333-4554 |
| 1930 W RIO SALADO PKWY | 11/13/2022, 09/26/2022, 05/12/2022, | |
| TEMPE, AZ 85281 | 03/12/2022 | |

**SAFECO INS AUTO**

| | Requested On | Phone |
|---|---|---|
| Location | 10/05/2023 | (888) 398-8924 |
| SAFECO PLAZA | | |
| 1001 FOURTH AVENUE | | |
| SEATTLE, WA 98154 | | |

**FRANKLIN COLLECTION**

| | Requested On | Phone |
|---|---|---|
| Location | 10/03/2023, 05/05/2023 | (662) 844-7776 |
| 2978 W. JACKSON ST. | | |
| TUPELO, MS 38803 | | |

**CHRISTOPHER ROBINSON via TUCI ARRAY**

| | Requested On | Phone |
|---|---|---|
| Location | 09/24/2023, 12/20/2022 | (844) 580-6816 |
| 100 CROSS STREET | | |
| SUITE 101 | | |
| SAN LUIS OBISPO, CA 93401 | | |

**TRANSUNION INTERACTIVE**

| | Requested On | Phone |
|---|---|---|
| Location | 09/24/2023, 04/24/2023, 12/20/2022, | (805) 782-8282 |
| 100 CROSS STREET | 09/22/2022 | |
| SUITE 202 | | |
| SAN LUIS OBISPO, CA 93401 | | |

**EMPIRE VER SERVICES INC**

Robinson v Spring Oaks 000133

ROBINSON DEPOSITION EXHIBITS 000092

Location
2390 NORTH FOREST RD
SUITE 12
GETZVILLE, NY 14068

Requested On
09/13/2023

Phone
(866) 827-0821

---

ONEMAIN FINANCIAL

Location
P.O. BOX 3327
EVANSVILLE, IN 47706

Requested On
09/02/2023, 07/24/2023,
09/22/2022, 09/14/2022, 09/12/2022,
08/19/2022, 07/06/2022, 06/28/2022

Phone
(844) 298-9773

---

AUTOMATION PERSONNEL via JD PALENTINE

Location
8000 BOOKTREE RD.
SUITE 210
WEXFORD, PA 15090

Requested On
08/17/2023

Phone
(877) 745-8525

---

FTNISWI

Location
P.O. BOX 542
LAC DU FLAMBEAU, WI 54538

Requested On
08/04/2023

Phone
(877) 558-1999

---

FACTORTRUST INCNISWI DBA

Location
P.O. BOX 542
LAC DU FLAMBEAU, WI 54538

Requested On
08/04/2023

Phone
(877) 558-1999

---

ETHOS TECHNOLOGIES INC.

Location
460 BRYANT STREET
3RD FLOOR
SAN FRANCISCO, CA 94107

Requested On
07/30/2023

Phone
(415) 322-2037

---

FACTACT FREE DISCLOSURE

Location
P O BOX 1000
CHESTER, PA 19016

Requested On
07/28/2023

Phone
(800) 888-4213

---

MONEYLION INC

Location
PO BOX 1547
SANDY, UT 84091

Requested On
07/21/2023, 12/24/2022, 11/22/2022,
09/22/2022

Phone
(212) 689-2410

---

UPGRADE

ROBINSON DEPOSITION EXHIBITS 000093

| Location | Requested On | Phone |
|---|---|---|
| 275 BATTERY ST SUITE 2300<br>SAN FRANCISCO, CA 94111 | 07/06/2023, 01/21/2023, 12/29/2022,<br>11/27/2022, 09/29/2022, 08/19/2022,<br>07/09/2022, 06/07/2022 | (855) 997-3100 |

---

### CREDIT BUREAU SYS-PADUCAH

| Location | Requested On | Phone |
|---|---|---|
| 100 FULTON CT<br>PADUCAH, KY 42001 | 06/29/2023 | (270) 744-9300 |

---

### MIDLAND CREDIT MANAGEMENT

| Location | Requested On | Phone |
|---|---|---|
| 320 EAST BIG BEAVER<br>SUITE 300<br>TROY, MI 48083 | 04/19/2023 | (877) 822-0381 |

---

### VENANCPS via VENANDI SYSTEMS LLC

| Location | Requested On | Phone |
|---|---|---|
| 19950 DODD BLVD SUITE 10<br>2<br>LAKEVILLE, MN 55044 | 04/10/2023 | (855) 200-7440 |

---

### CAPITAL ONE

| Location | Requested On | Phone |
|---|---|---|
| P.O. BOX 259407<br>PLANO, TX 75025 | 03/21/2023 | (800) 689-1789 |

---

### PL UOFALHOSP PFS via ECZOLLUOFALHOSP PFS

| Location | Requested On | Phone |
|---|---|---|
| 500 22ND ST SOUTH<br>BIRMINGHAM, AL 35233 | 02/15/2023 | (205) 325-8260 |

---

### WEBBANKAVANT LLC

| Location | Requested On | Phone |
|---|---|---|
| 222 N LASALLE ST<br>SUITE 1600<br>CHICAGO, IL 60601 | 01/31/2023 | (800) 712-5407 |

---

### LENDING CLUB BANK

| Location | Requested On | Phone |
|---|---|---|
| 595 MARKET ST<br>SUITE 200<br>SAN FRANCISCO, CA 94105 | 01/31/2023, 11/27/2022 | Phone number not available |

---

### GEICO INS

Robinson v Spring Oaks 000135

https://annualcreditreport.transunion.com/dss/disclosure.page

ROBINSON DEPOSITION EXHIBITS 000094

| Location | Requested On | Phone |
|---|---|---|
| ONE GEICO PLAZA WASHINGTON, DC 20079 | 12/03/2022 | (301) 986-3175 |

**UPSTART NETWORK INC**

| Location | Requested On | Phone |
|---|---|---|
| 2 CIRCLE STAR WAY 2ND FLOOR SAN CARLOS, CA 94070 | 11/27/2022, 10/27/2022, 09/22/2022, 09/14/2022, 03/28/2022, 12/15/2021 | (650) 204-1000 |

**HAPPY MONEY INC**

| Location | Requested On | Phone |
|---|---|---|
| 21515 HAWTHORNE BLVD 200 TORRANCE, CA 90503 | 11/27/2022 | (800) 878-0901 |

**NATL CREDIT ADJUSTERS**

| Location | Requested On | Phone |
|---|---|---|
| PO BOX 550 HUTCHINSON, KS 67504 | 11/01/2022 | (866) 964-5259 |

**COASTALCOMMUNITYPROSPER**

| Location | Requested On | Phone |
|---|---|---|
| 221 MAIN ST 3RD FLOOR SAN FRANCISCO, CA 94105 | 10/09/2022 | (866) 615-6319 |

**PROSPERWEBBANK**

| Location | Requested On | Phone |
|---|---|---|
| PROSPER WEBBANK 221 MAIN STREET SUITE 300 SAN FRANCISCO, CA 94105 | 09/14/2022 | (866) 615-6319 |

**FTSPEEDY SERVICING INC**

| Location | Requested On | Phone |
|---|---|---|
| SPEEDY SERVICING INC P O BOX 3512 CHAMPLAIN, NY 12919 | 08/19/2022 | (855) 222-0801 |

**RADIUS GLOBAL SOLUTIONS**

| Location | Requested On | Phone |
|---|---|---|
| 9550 REGENCY SQUARE BLVD SUITE 602 JACKSONVILLE, FL 32225 | 08/19/2022 | (888) 904-1800 |

CHRISTOPHER ROBINSON via TUCI - ENHANCED CR CV

Defendant's Exhibit B - Robinson Dep.  131 of 165

Robinson v Spring Oaks 000136

ROBINSON DEPOSITION EXHIBITS 000095

| Location | Requested On | Phone |
|---|---|---|
| 100 CROSS STREET 202 | 07/22/2022 | (844) 580-6816 |
| SAN LUIS OBISP, CA 93401 | | |

**SPRING OAKS CAPITAL LLC**

| Location | Requested On | Phone |
|---|---|---|
| 1400 CROSSWAYS BLVD | 07/15/2022, 06/25/2022 | (833) 398-0024 |
| STE. 100 B | | |
| CHESAPEAKE, VA 23320 | | |

**ON THE BARRELHEAD INC**

| Location | Requested On | Phone |
|---|---|---|
| 1309 E 3RD AVE | 06/28/2022, 06/16/2022 | (314) 359-9248 |
| UNIT 202 | | |
| DURANGO, CO 81301 | | |

**CHRISTOPHER ROBINSO via TUCI - LENDING TREE**

| Location | Requested On | Phone |
|---|---|---|
| 100 CROSS STREET | 06/16/2022 | (844) 580-6816 |
| SUITE 101 | | |
| SAN LUIS OBISPO, CA 93401 | | |

**ALLY FINANCIAL INC**

| Location | Requested On | Phone |
|---|---|---|
| PO BOX 380901 | 04/18/2022 | (877) 247-2559 |
| BLOOMINGTON, MN 55438 | | |

**AFFIRM INC**

| Location | Requested On | Phone |
|---|---|---|
| 650 CALIFORNIA STREET | 04/12/2022 | (855) 423-3729 |
| FLOOR 12 | | |
| SAN FRANCISCO, CA 94108 | | |

**FT UPROVA LLC**

| Location | Requested On | Phone |
|---|---|---|
| 635 E HIGHWAY 20 V | 03/28/2022 | (844) 253-4608 |
| UPPER LAKE, CA 95485 | | |

**CENTURYLINK INC**

| Location | Requested On | Phone |
|---|---|---|
| CENTURYLINK INC | 02/19/2022 | (800) 416-4190 |
| 100 CENTURYLINK DR | | |
| MONROE, LA 71203 | | |

0000000000000000101 via PGX-CREDIT.COM

Defendant's Exhibit B - Robinson Dep.  132 of 165

Robinson v Spring Oaks 000137

ROBINSON DEPOSITION EXHIBITS 000096

| Location | Requested On | Phone |
|---|---|---|
| 257 E 200 SOUTH SUITE 12 00 | 12/04/2021, 12/01/2021 | (801) 384-4100 |
| SALT LAKE CITY, UT 84111 | | |

 # Additional Information

---

The following disclosure of information might pertain to you. The additional information may include Special Messages, Office of Foreign Assets Control ("OFAC") Potential Matches, Inquiry Analysis, Military Lending Act ("MLA") Covered Borrower Information, Third Party Supplemental Information and/or Consumer Contributed Financial Information. Authorized parties may also receive the additional information below from TransUnion.

## Inquiry Analysis

The companies that request your credit report must first provide certain information about you. Within the past 90 days, companies that requested your report provided the following information.

| Name | | | Requested On |
|---|---|---|---|
| **CHRISTOPHER B. ROBINSON** | | | 11/21/2023 |
| Address 20 BURNEY MOUNTAIN RD FALKVILLE, AL 35622-5700 | Phone ████████ | Employer CAPITAL MATERIALS | |
| **CHRISTOPHER B. ROBINSON** | | | 11/04/2023 |
| Address 20 BURNEY MOUNTAIN RD FALKVILLE, AL 35622-5700 | Phone ████████ | | |
| **CHRISTOPHER ROBINSON** | | | 09/20/2023 |
| Address 20 BURNEY MOUNTAIN RD FALKVILLE, AL 35622-5700 | Phone ████████ | | |
| **CHRISTOPHER ROBINSON** | | | 09/07/2023 |
| Address 20 BURNEY MOUNTAIN RD FALKVILLE, AL 35622-5700 | | | |

## Third Party Supplemental Information

In addition to the information maintained in the above credit report, TransUnion will occasionally contact a third party for supplemental information in connection with a particular transaction in response to a request from a particular customer. Listed below is the supplemental data that TransUnion obtained from such third parties, as well as the name(s) of the TransUnion customer for whom it was obtained.

## Checking Account and Demand Deposit Account (DDA) Activity

ROBINSON DEPOSITION EXHIBITS 000097

**Data Source:**

ROBINSON DEPOSITION EXHIBITS 000098



ROBINSON DEPOSITION EXHIBITS 000099

## Supplemental Consumer Credit Information

Data Source:

Robinson v Spring Oaks 000141

https://annualcreditreport.transunion.com/dss/disclosure.page

60/67

ROBINSON DEPOSITION EXHIBITS 000100



## Supplemental Public Records and Residential Information

Requested On:



## Should you wish to contact TransUnion, you may do so,

‣ **Online:**

To report an inaccuracy, please visit: service.transunion.com ⤤

For answers to general questions, please visit www.transunion.com [↗]

- **By Mail:**

TransUnion Consumer Relations
P.O. Box 2000
Chester, PA 19016-2000

- **By Phone:**

(800) 916-8800

You may contact us Monday - Friday 8 AM - 11 PM Eastern Time and Saturday - Sunday 8 AM - 5 PM Eastern Time, except on major holidays.

For all correspondence, please have your TransUnion file number available (located at the top of this report).

# SUMMARY OF RIGHTS

**GENERAL SUMMARY OF RIGHTS UNDER THE FCRA**

Para informacion en espanol, visite www.consumerfinance.gov/learnmore [↗] o escribe a la Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, DC 20552.

**A Summary of Your Rights Under the Fair Credit Reporting Act**

The federal Fair Credit Reporting Act (FCRA) promotes the accuracy, fairness, and privacy of information in the files of consumer reporting agencies. There are many types of consumer reporting agencies, including credit bureaus and specialty agencies (such as agencies that sell information about check writing histories, medical records, and rental history records). For more information, including information about additional rights, go to www.consumerfinance.gov/learnmore [↗], or write to: Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, DC 20552.

- **You must be told if information in your file has been used against you.** Anyone who uses a credit report or another type of consumer report to deny your application for credit, insurance, or employment – or to take another adverse action against you – must tell you, and must give you the name, address, and phone number of the agency that provided the information.

- **You have the right to know what is in your file.** You may request and obtain all the information about you in the files of a consumer reporting agency (your 'file disclosure'). You will be required to provide proper identification, which may include your Social Security Number. In many cases, the disclosure will be free. You are entitled to a free disclosure if:

  - a person has taken adverse action against you because of information in your credit report;

  - you are the victim of identity theft and place a fraud alert on your file;

  - your file contains inaccurate information as a result of fraud;

  - you are on public assistance;

  - you are unemployed but expect to apply for employment within 60 days.

  In addition, all consumers are entitled to one free disclosure every 12 months upon request from each nationwide credit bureau and from nationwide specialty consumer reporting agencies. See www.consumerfinance.gov/learnmore [↗] for more additional information.

- **You have the right to ask for a credit score.** Credit scores are numerical summaries of your credit-worthiness based on information from credit bureaus. You may request a credit score from consumer reporting agencies that create scores or

Defendant's Exhibit B - Robinson Dep.  138 of 165

Robinson v Spring Oaks 000143

62/67

https://annualcreditreport.transunion.com/dss/disclosure.page

ROBINSON DEPOSITION EXHIBITS 000102

distribute scores used in residential real property loans, but you will have to pay for it. In some mortgage transactions, you will receive credit score information for free from the mortgage lender.

‣ **You have the right to dispute incomplete or inaccurate information.** If you identify information in your file that is incomplete or inaccurate, and report it to the consumer reporting agency, the agency must investigate unless your dispute is frivolous. See www.consumerfinance.gov/learnmore ⬀ for an explanation of dispute procedures.

‣ **Consumer reporting agencies must correct or delete inaccurate, incomplete, or unverifiable information.** Inaccurate, incomplete, or unverifiable information must be removed or corrected, usually within 30 days. However, a consumer reporting agency may continue to report information it has verified as accurate.

‣ **Consumer reporting agencies may not report outdated negative information.** In most cases, a consumer reporting agency may not report negative information that is more than seven years old, or bankruptcies that are more than 10 years old.

‣ **Access to your file is limited.** A consumer reporting agency may provide information about you only to people with a valid need usually to consider an application with a creditor, insurer, employer, landlord or other business. The FCRA specifies those with a valid need for access.

‣ **You must give your consent for reports to be provided to employers.** A consumer reporting agency may not give out information about you to your employer, or a potential employer, without your written consent given to the employer. Written consent generally is not required in the trucking industry. For more information, go to www.consumerfinance.gov/learnmore ⬀.

‣ **You may limit "prescreened" offers of credit and insurance you get based on information in your credit report.** Unsolicited "prescreened" offers for credit and insurance must include a toll-free phone number you can call if you choose to remove your name and address from the lists these offers are based on. You may opt-out with the nationwide credit bureaus at 1-888-567-8688 (888-5OPTOUT)

‣ **You have a right to place a security freeze on your credit report which will prohibit a consumer reporting agency from releasing information in your credit report without your express authorization.** The security freeze is designed to prevent credit, loans, and services from being approved in your name without your consent. However, you should be aware that using a security freeze to take control over who gets access to the personal and financial information in your credit report may delay, interfere with, or prohibit the timely approval of any subsequent request or application you make regarding a new loan, credit, mortgage, or any other account involving the extension of credit.

A security freeze does not apply to a person or entity, or its affiliates, or collection agencies acting on behalf of the person or entity, with which you have an existing account that requests information in your credit report for the purposes of reviewing or collecting the account. Reviewing the account includes activities related to account maintenance, monitoring, credit line increases, and account upgrades and enhancements.

‣ **As an alternative to a security freeze, you have the right to place an initial or extended fraud alert on your credit file at no cost.** An initial fraud alert is a 1-year alert that is placed on a consumer's credit file. Upon seeing a fraud alert display on a consumer's credit file, a business is required to take steps to verify the consumer's identity before extending new credit. If you are a victim of identity theft, you are entitled to an extended fraud alert, which is a fraud alert lasting 7 years.

‣ **You may seek damages from violators.** If a consumer reporting agency, or, in some cases, a user of consumer reports or a furnisher of information to a consumer reporting agency violates the FCRA, you may be able to sue in state or federal court. You may also have the right to file suit under state law.

‣ **Identity theft victims and active duty military personnel have additional rights.** For more information, visit www.consumerfinance.gov/learnmore ⬀.

**States may enforce the FCRA, and many states have their own consumer reporting laws. In some cases, you may have more rights under state law. For more information, contact your state or local consumer protection agency or your state Attorney General. For information about your federal rights, contact:**

Defendant's Exhibit B - Robinson Dep.  139 of 165

Robinson v Spring Oaks 000144

ROBINSON DEPOSITION EXHIBITS 000103

| TYPE OF BUSINESS | CONTACT |
|---|---|
| 1.a. Banks, savings associations, and credit unions with total assets of over $10 billion and their affiliates | a. Consumer Financial Protection Bureau 1700 G Street, N.W. Washington, DC 20552 |
| b. Such affiliates that are not banks, savings associations, or credit unions also should list, in addition to the CFPB: | b. Federal Trade Commission Consumer Response Center 600 Pennsylvania Avenue, N.W. Washington, DC 20580 (877) 382-4357 |
| 2. To the extent not included in item 1 above: a. National banks, federal savings associations, and federal branches and federal agencies of foreign banks | a. Office of the Comptroller of the Currency Customer Assistance Group 1301 McKinney Street, Suite 3450 Houston, TX 77010-9050 |
| b. State member banks, branches and agencies of foreign banks (other than federal branches, federal agencies, and Insured State Branches of Foreign Banks), commercial lending companies owned or controlled by foreign banks, and organizations operating under section 25 or 25A of the Federal Reserve Act. | b. Federal Reserve Consumer Help Center P.O. Box 1200 Minneapolis, MN 55480 |
| c. Nonmember Insured Banks, Insured State Branches of Foreign Banks, and insured state savings associations | c. FDIC Consumer Response Center 1100 Walnut Street, Box #11 Kansas City, MO 64106 |
| d. Federal Credit Unions | d. National Credit Union Administration Office of Consumer Financial Protection (OCFP) Division of Consumer Compliance Policy and Outreach 1775 Duke Street Alexandria, VA 22314 |
| 3. Air carriers | Asst. General Counsel for Aviation Enforcement & Proceedings Aviation Consumer Protection Division Department of Transportation 1200 New Jersey Avenue, S.E. Washington, DC 20590 |

ROBINSON DEPOSITION EXHIBITS 000104

| | |
|---|---|
| 4. Creditors Subject to the Surface Transportation Board | Office of Proceedings, Surface Transportation Board Department of Transportation 395 E Street, S.W. Washington, DC 20423 |
| 5. Creditors Subject to the Packers and Stockyards Act, 1921 | Nearest Packers and Stockyards Administration area supervisor |
| 6. Small Business Investment Companies | Associate Deputy Administrator for Capital Access United States Small Business Administration 409 Third Street, S.W., Suite 8200 Washington, DC 20416 |
| 7. Brokers and Dealers | Securities and Exchange Commission 100 F Street, N.E. Washington, DC 20549 |
| 8. Federal Land Banks, Federal Land Bank Associations, Federal Intermediate Credit Banks, and Production Credit Associations | Farm Credit Administration 1501 Farm Credit Drive McLean, VA 22102-5090 |
| 9. Retailers, Finance Companies, and All Other Creditors Not Listed Above | Federal Trade Commission Consumer Response Center 600 Pennsylvania Avenue, N.W. Washington, DC 20580 (877) 382-4357 |

# FRAUD VICTIM RIGHTS

**SUMMARY OF RIGHTS UNDER THE FCRA OF VICTIMS OF IDENTITY THEFT**

Para informacion en espanol, visite www.consumerfinance.gov/learnmore ⧉ o escribe a la Consumer Financial Protection Bureau, 1700 G Street N.W. Washington, DC 20552

**Remedying the Effects of Identity Theft**

You are receiving this information because you have notified a consumer reporting agency that you believe you are a victim of identity theft. Identity theft occurs when someone uses your name, Social Security Number, date of birth, or other identifying information, without authority, to commit fraud. For example, someone may have committed identity theft by using your personal information to open a credit card account or get a loan in your name. For more information, visit www.consumerfinance.gov/learnmore ⧉ or write to: Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, DC 20552.

The Fair Credit Reporting Act (FCRA) gives you specific rights when you are, or believe you that you are, a victim of identity theft. Here is a brief summary of the rights designed to help you recover from identity theft.

ROBINSON DEPOSITION EXHIBITS 000105

1. **You have the right to place a security freeze on your credit report, which will prohibit a consumer reporting agency from releasing information in your credit report without your express authorization.**

The security freeze is designed to prevent credit, loans, and services from being approved in your name without your consent. However, you should be aware that using a security freeze to take control over who gets access to the personal and financial information in your credit report may delay, interfere with, or prohibit the timely approval of any subsequent request or application you make regarding a new loan, credit, mortgage, or any other account involving the extension of credit.

A security freeze does not apply to a person or entity, or its affiliates, or collection agencies acting on behalf of the person or entity, with which you have an existing account that requests information in your credit report for the purposes of reviewing or collecting the account. Reviewing the account includes activities related to account maintenance, monitoring, credit line increases, and account upgrades and enhancements.

2. **As an alternative to a security freeze, you have the right to place an initial or extended fraud alert on your credit file at no cost.** An initial fraud alert is a 1-year alert that is placed on a consumer's credit file. Upon seeing a fraud alert display on a consumer's credit file, a business is required to take steps to verify the consumer's identity before extending new credit. If you are a victim of identity theft, you are entitled to an extended fraud alert, which is a fraud alert lasting 7 years.

To place either of these alerts, a consumer reporting agency will require you to provide appropriate proof of your identity, which may include your Social Security Number. If you ask for an extended alert, you will have to provide an identity theft report. An identity theft report includes a copy of a report you have filed with a federal, state, or local law enforcement agency, and additional information a consumer reporting agency may require you to submit. For more detailed information about the identity theft report, visit www.consumerfinance.gov/learnmore [↗].

You may place a fraud alert in your file by calling just one of the three nationwide credit reporting agencies. As soon as that agency processes your alert, it will notify the other two, which then must also place fraud alerts in your file.

- Equifax: 1-800-525-6285; www.equifax.com [↗]

- Experian: 1-888-397-3742; www.experian.com [↗]

- TransUnion: 1-800-680-7289; www.transunion.com [↗]

3. **You have the right to free copies of the information in your file (your "file disclosure").** An initial fraud alert entitles you to a copy of all information in your file at each of the three nationwide agencies, and an extended alert entitles you to two free file disclosures in a 12-month period following the placing of the alert. These additional disclosures may help you detect signs of fraud, for example, whether fraudulent accounts have been opened in your name or whether someone has reported a change in your address. Once a year, you also have the right to a free copy of the information in your file at any consumer reporting agency, if you believe it has inaccurate information due to fraud, such as identity theft. You also have the ability to obtain additional free file disclosures under other provisions of the FCRA. See www.consumerfinance.gov/learnmore [↗].

4. **You have the right to obtain documents relating to fraudulent transactions made or accounts opened using your personal information.** A creditor or other business must give you copies of applications and other business records relating to transactions and accounts that resulted from the theft of your identity, if you ask for them in writing. A business may ask you for proof of your identity, a police report, and an affidavit before giving you the documents. It also may specify an address for you to send your request. Under certain circumstances, a business can refuse to provide you with these documents. See www.consumerfinance.gov/learnmore [↗].

ROBINSON DEPOSITION EXHIBITS 000106

5. **You have the right to obtain information from a debt collector.** If you ask, a debt collector must provide you with certain information about the debt you believe was incurred in your name by an identity thief – like the name of the creditor and the amount of the debt.

6. **If you believe information in your file results from identity theft, you have the right to ask that a consumer reporting agency block that information from your file.** An identity thief may run up bills in your name and not pay them. Information about the unpaid bills may appear on your consumer report. Should you decide to ask a consumer reporting agency to block the reporting of this information, you must identify the information to block, and provide the consumer reporting agency with proof of your identity and a copy of your <u>identity theft report</u>. The consumer reporting agency can refuse or cancel your request for a block if, for example, you don't provide the necessary documentation or where the block results from an error or a material misrepresentation of fact made by you. If the agency declines or rescinds the block, it must notify you. Once a debt resulting from identity theft has been blocked, a person or business with notice of the block may not sell, transfer or place the debt for collection.

7. **You may also prevent businesses from reporting information about you to consumer reporting agencies if you believe the information is a result of identity theft.** To do so, you must send your request to the address specified by the business that reports the information to the consumer reporting agency. The business will expect you to identify what information you do not want reported and to provide an <u>identity theft report</u>.

To learn more about identity theft and how to deal with its consequences, visit <u>www.consumerfinance.gov/learnmore</u> ⧉, or write to the Consumer Financial Protection Bureau. You may have additional rights under state law. For more information, contact your local consumer protection agency or your state Attorney General.

In addition to the new rights and procedures to help consumers deal with the effects of identity theft, the FCRA has many other important consumer protections. They are described in more detail at <u>www.consumerfinance.gov/learnmore</u> ⧉.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER ROBINSON,** | ) | |
| | ) | **CIVIL ACTION NO.** |
| **Plaintiff,** | ) | **2:23-cv-01381-NAD** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **SPRING OAKS CAPITAL, LLC;** | ) | |
| **Fictitious Defendants "A", "B"** | ) | |
| **and "C",** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| _____ | ) | |

### PLAINTIFF'S RESPONSES TO SPRING OAKS CAPITAL, LLC'S FIRST INTERROGATORIES, REQUESTS FOR PRODUCTION OF DOCUMENTS, AND REQUESTS FOR ADMISSION TO PLAINTIFF

COMES NOW, the Plaintiff, Christopher Robinson ("Plaintiff" or "Robinson") and hereby responds to Defendant, Spring Oaks Capital, LLC (hereinafter referred to as "Spring Oaks" and "Defendant") Interrogatories, Requests for Production, and Requests for Admission as follows:

### INSTRUCTIONS AND DEFINITIONS

**Plaintiff objects to the Definitions and Instructions to the extent which Defendant attempts to impose additional obligations, burdens and duties beyond those required by law and the Rules of Civil Procedure. The ordinary and customary usage of words and phrases will be used in attempting to understand Defendant's requests and in attempting to respond to these Interrogatories and Requests for Documents, and these responses are supplied to the best that can be recalled at the time of the responses.**

### INTERROGATORIES

ROBINSON DEPOSITION EXHIBITS 000108

DEFENDANT'S INTERROGATORY NO. 1:

With respect to each and every communication between Plaintiff and Spring Oaks, please identify the following:

    **a)** The date of the communication;
    b) How the communication occurred (telephone, written correspondence, email, SMS message etc.);
    **c)** The identity of who initiated the communication;
    d) The content of the communication.

**Response:  I sent Spring Oaks a letter dated September 27, 2022, which appears to have been received on October 3, 2022. This was written correspondence. This letter disputed the debt and requesting that no validation, verification or information be sent to me and that I only be contacted by text or email between 1pm and 4pm on Monday thru Friday. For additional details of the content of the letter pursuant to FRCP 33(d), Plaintiff refers Defendant to the letter dated September 27, 2022 to Spring Oaks.**


DEFENDANT'S INTERROGATORY NO. 2:

Please identify every correspondence received by Plaintiff or any representative of Plaintiff from Spring Oaks.

**Response: I do not recall receiving any correspondence from Spring Oaks.**


DEFENDANT'S INTERROGATORY NO. 3:

Please identify every correspondence sent to Spring Oaks by Plaintiff or by any representative of Plaintiff.

**Response: A dispute letter was sent to Spring Oaks dated September 27, 2023**.


DEFENDANT'S INTERROGATORY NO. 4:

Please identify every correspondence sent by Plaintiff or any representative of Plaintiff to any credit reporting agency pertaining to the account at issue.

2

ROBINSON DEPOSITION EXHIBITS 000109

**Response:**   None that I recall.

DEFENDANT'S INTERROGATORY NO. 5:

Please identify every correspondence received by Plaintiff or any representative of Plaintiff from any credit reporting agency regarding the account at issue.

**Response:**   None that I recall.

DEFENDANT'S INTERROGATORY NO. 6:

Please itemize with particularity all damages alleged by Plaintiff.

**Response: I suffered mental anguish and emotional distress as a result of Defendant's actions. I have disputed the debt with my dispute letter dated September 27, 2022 that was received by them on or around October 3, 2022. They ignored my dispute and did not update my credit report as disputed. They even lied and said that it was previously in dispute and now resolved when I never quit disputing it and it never has been resolved. Being ignored like this is very upsetting. It makes me feel anxious and like I'm being harassed. Their actions were dishonest and made me constantly wonder how else they might be trying to violate my rights in collecting a disputed debt from me.**

DEFENDANT'S INTERROGATORY NO. 7:

Please identify documents evidencing the harm you alleged to have been caused or exacerbated by Spring Oaks.

**Response:   Plaintiff refers Defendant to the dispute letter dated September 27, 2022 as well as the credit reports being produced in this matter.**

DEFENDANT'S INTERROGATORY NO. 8:

Please identify, by name and address, all people with knowledge of the damages you allege were caused or exacerbated by Spring Oaks.

**Response: There is no one that I can recall.**

3

ROBINSON DEPOSITION EXHIBITS 000110

DEFENDANT'S INTERROGATORY NO. 9:

Please identify all healthcare providers, including but not limited to mental health practitioners, from whom Plaintiff has received service from the date of the injury described in the Complaint through the present date.

**Response: I have seen Dr. Sergey S. Ananyev, MD at Alabama Urologist. I have also seen a Dr. Frighter (I believe that's how you spell their name to the best of my knowledge) at Specialty Clinic of Hartselle. There may be other's, but this is who I can recall at this time.**

DEFENDANT'S INTERROGATORY NO. 10:

Please explain the factual basis for Plaintiff's allegation that "Defendant updated Plaintiff's credit reports with an account from Defendant without marking the account as disputed."

**Response:   Defendant's  credit report was marked with the language "Account previously in dispute–now resolved" rather than "Account information disputed by consumer" as outlined by  the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 e(8).**

DEFENDANT'S INTERROGATORY NO. 11:

Please identify all documents that support Plaintiff's allegation that "Defendant updated Plaintiff's credit reports with an account from Defendant without marking the account as disputed."

**Response:   My TransUnion credit report was inaccurately marked.**

DEFENDANT'S INTERROGATORY NO. 12:

Please explain the factual basis for Plaintiff's allegation that "[t]he conduct of the Defendant has proximately caused Plaintiff damages."

**Response: See Response to Interrogatory 6 above.**

DEFENDANT'S INTERROGATORY NO. 13:

4

ROBINSON DEPOSITION EXHIBITS 000111

Please identify all documents that support Plaintiff's allegation that "[t]he conduct of the Defendant has proximately caused Plaintiff damages."

**Response:  Plaintiff's counsel objects to this request to the extent it is vague, ambiguous and is a legal term calling for a legal conclusion. Subject to that objection, Plaintiff refers defendant to the phone messages from defendant, letter plaintiff sent as well as Plaintiff's credit reports reflecting defendant did not mark the account as disputed.**

DEFENDANT'S INTERROGATORY NO. 14:

Please identify all entities who saw or reviewed any credit report of Plaintiff from September 13, 2022  through the present date.

**Response:   Pursuant to FRCP 33(d), Plaintiff refers defendant to the Inquiries section on Plaintiff's credit reports pages 56-66 on the November 25, 2022 TransUnion report, pages  60-70 of the July 28, 2023 TransUnion credit report and pages 46-57 of the November 29, 2023 TransUnion credit report.**

DEFENDANT'S INTERROGATORY NO. 15:

With respect to Plaintiff's alleged dispute of the account at issue, please state the following:

  a)  The reason for the dispute;

  b)  The date that Plaintiff first communicated the dispute in writing to Spring Oaks;

  c)  How Plaintiff communicated a dispute to Spring Oaks in response to the April 5, 2022 communication he received from Spring Oaks and attached hereto as Exhibit "A".

  d)  The reasons why Plaintiff did not communicate a dispute in writing to Spring Oaks before September 27, 2022.

  e)  What information reported by Spring Oaks to any credit reporting agency regarding the account at issue is alleged to be inaccurate or incomplete.

**Response: I do not recall receiving a letter from Spring Oaks dated April 5, 2022. I sent Spring Oaks a letter dated September 27, 2022, which it appears**

5

ROBINSON DEPOSITION EXHIBITS 000112

to have received on October 3, 2022. I did not know who Spring Oaks was or that they existed. I disputed the debt because I dispute it. My identity was compromised when it was a part of a data breach. My information consisted of my date of birth, social security number, driver's license number and other personally identifying information. I had several accounts opened using my information that I did not recognize. I dispute that Spring Oaks has a right to collect the debt, that Spring Oaks owns this debt, the amount of the debt, or that it even is owed at all, or that anything having to do with it ever even belonged to me.

With regards to the credit reporting, Spring Oaks reporting that the account was disputed but has now been resolved is false. Additionally, there is no date of first delinquency on my Transunion report. Also, I don't agree with the amount being reported or that it is even owed or that Spring Oaks owns the debt.

DEFENDANT'S INTERROGATORY NO. 16:

Please identify all documents which support the basis for Plaintiff's dispute of the account at issue.

**Response:  There are no documents of which I am aware other than, my dispute and the false credit reporting. I don't owe Spring Oaks.**

DEFENDANT'S INTERROGATORY NO. 17:

Please identify all documents which show Plaintiff's credit score from September 13, 2022  through the present date.

**Response:  I am not aware of any.**

DEFENDANT'S INTERROGATORY NO. 18:

Please identify all attorney fees paid by Plaintiff to her counsel to date.

**Response:  To the extent this request seeks fees paid or an agreement to pay for representation in this matter or a request for attorney contract information, Plaintiff objects: irrelevant, immaterial, and calls for disclosure of privileged**

6

ROBINSON DEPOSITION EXHIBITS 000113

information. *Uinta Oil Refining Co. v. Continental Oil Co.*, 226 F.Supp. 495 [U.S.D.C. Utah 1964]; *Sargeant v. Sharp*, 579 F.2d 645, 649 [1st Cir.1978] [a fee agreement is irrelevant to the issue of entitlement and should not enter into the determination of the amount of a reasonable fee award]. Further, calculation of attorney's fees outside of the scope of discovery and not calculated to lead to admissible evidence, since fee award must be based on lodestar [marketplace] rates. This is a fee shifting case; fees and costs will be sought by petition or agreement under usual fee-shifting standards. Under these standards, the party's agreement with his lawyers may not be considered as a floor, standard, or ceiling. *Blanchard v. Bergeron*, 489 U.S. 87, 93 [1989]; *Venegas v. Mitchell*, 110 S.Ct. 1679 [1990]; *City of Burlington v. Dague*, 112 S.Ct. 2638 [1992]; *Amherst Leasing Corp. v. Emhart Corp.*, 65 F.R.D. 121, 126 [U.S.D.C. Conn. 1974] [motion to compel fee agreement denied]; *Stahler v. Jamesway Corp.*, 85 F.R.D. 85, 86 [U.S.D.C. E.D. Pa. 1979] [fee agreement not discoverable]; *Sanderson v. Winner*, 507 F.2d 477 [10th Cir. 1974]. Premature; not applicable unless and until plaintiff prevails [Rule 54] at which time a detailed fee application must be submitted; burdensome: Time records continue to accrue, work product privilege. Subject to those objections, plaintiff responds: Plaintiff has a contract with her attorney. The facts supporting such claims are stated in the complaint, plaintiff's disclosures, and these discovery responses.

DEFENDANT'S INTERROGATORY NO. 19:

With respect to each application for credit submitted by Plaintiff September 13, 2022 to the present, please identify:

    a) The name of the creditor or potential creditor;
    b) The date of the application; and
    c) The result of the application.
    d)

**Response:** **I have submitted three applications for credit since that time, but I don't recall the dates. I submitted an application for credit with Total Card, Indigo and First Digital. I was approved for all three credit cards.**

DEFENDANT'S INTERROGATORY NO. 20:

Defendant's Exhibit B - Robinson Dep.   150 of 165

ROBINSON DEPOSITION EXHIBITS 000114

With respect to every denial of credit Plaintiff received from September 13, 2022 to the present, please identify:

a) The name of the creditor or potential creditor;
b) The date of the denial;
c) The reason(s) for the denial.

**Response**: **I have not received a denial for credit since September 13, 2022.**

DEFENDANT'S INTERROGATORY NO. 21:

With respect to the letter referenced in paragraph 15 of Plaintiff's Complaint, please identify:

a) The name of the author of the letter.
b) The name of the person who signed the letter.
c) The name of the person who authorized the letter.
d) The name of the person who sent the letter.
e) The amount of money Plaintiff paid a third party to send the letter.
f) The amount of money Plaintiff pays monthly to the third party that sent the letter.
g) The amount of money Plaintiff paid for delivery of the letter.
h) The amount of money a third party paid for delivery of the letter.
i) The location from which the letter was sent.
j) The means by which the letter was sent.
k) How many other letters were sent with it.

**Response:** **My counsel at Watts & Herring, LLC prepared this letter and I reviewed and approved it before it was sent. As you can see from the face of the letter, no one signed it. The letter was sent on my behalf by Watts & Herring, LLC through CertifiedMailLabels.com. I did not pay any money to any third party to send the letter and do not pay any money to any third party monthly that sent the letter. A third party mailed the letter, but I do not know how much they were paid. It was sent by certified mail from Orlando, Florida. No other letters were sent with it.**

DEFENDANT'S INTERROGATORY NO. 22:

8

ROBINSON DEPOSITION EXHIBITS 000115

Identify all companies and persons retained by Plaintiff to dispute the debt owing to Spring Oaks Capital and for each company or person identified please state:

a) The date Plaintiff retained the person or company to dispute the debt owing to Spring Oaks Capital.
b) The contents of all written agreements and correspondence that Plaintiff had with such person or company.
c) A description of the services that were rendered by such person or company to Plaintiff.

**Response:**   **None other than my lawyers. I originally hired Watts & Herring.**

_____
**Christopher Robinson**

STATE OF ALABAMA          )
**COUNTY OF _____**          )

On this day, Christopher Robinson appeared before me, the undersigned notary public. After I administered an oath to her, upon her oath, she said that she read the foregoing and that the facts stated in it are within her personal knowledge and are true and correct.

SWORN TO and SUBSCRIBED before me by Christopher Robinson on March _____, 2024.

_____
Notary Public in and for the State of Alabama

My Commission Expires:_____

9

ROBINSON DEPOSITION EXHIBITS 000116

## REQUESTS FOR PRODUCTION OF DOCUMENTS

DEFENDANT'S REQUEST FOR PRODUCTION NO. 1:

Please produce all documents identified in Plaintiff's Federal Rule 26 Initial Disclosures.

**Response:   Plaintiff will produce documents responsive to this request.**

DEFENDANT'S REQUEST FOR PRODUCTION NO. 2:

Please produce all documents identified in Plaintiff's Complaint including, but not limited to full, complete, and unredacted copies of the credit reports referenced in Paragraph 17 of the Complaint.

**Response:   Plaintiff will produce documents responsive to this request.**

DEFENDANT'S REQUEST FOR PRODUCTION NO. 3:

Please produce a full, complete, and unredacted copy of the credit report(s) referenced in Paragraph 18 of the Complaint.

**Response:   Plaintiff will produce documents responsive to this request.**

DEFENDANT'S REQUEST FOR PRODUCTION NO. 4:

Please produce all documents identified in Plaintiff's response to Defendant's Interrogatory No. 1.

**Response:   Plaintiff will produce the dispute letter he sent Spring Oaks dated September 27, 2022.**

DEFENDANT'S REQUEST FOR PRODUCTION NO. 5:

Please produce all documents identified in Plaintiff's response to Defendant's Interrogatory No. 2.

**Response:   There are no documents responsive to this request.**

10

ROBINSON DEPOSITION EXHIBITS 000117

DEFENDANT'S REQUEST FOR PRODUCTION NO. 6:

Please produce all documents identified in Plaintiff's response to Defendant's Interrogatory No. 3.

**Response:   Plaintiff will produce the dispute letter he sent Spring Oaks dated September 27, 2022.**

DEFENDANT'S REQUEST FOR PRODUCTION NO. 7:

Please produce all documents identified in Plaintiff's response to Defendant's Interrogatory No. 4.

**Response:   There are no documents responsive to this request.**

DEFENDANT'S REQUEST FOR PRODUCTION NO. 8:

Please produce all documents identified in Plaintiff's response to Defendant's Interrogatory No. 5.

**Response:   There are no documents responsive to this request.**

DEFENDANT'S REQUEST FOR PRODUCTION NO. 9:

Please produce all documents identified in Plaintiff's response to Defendant's Interrogatory No. 6.

**Response:   Plaintiff will produce documents responsive to this request.**

DEFENDANT'S REQUEST FOR PRODUCTION NO. 10:

Please produce all documents identified in Plaintiff's response to Defendant's Interrogatory No. 7.

**Response:   Plaintiff will produce documents responsive to this request.**

Defendant's Exhibit B - Robinson Dep.  154 of 165

ROBINSON DEPOSITION EXHIBITS 000118

DEFENDANT'S REQUEST FOR PRODUCTION NO. 11:

Please produce all documents identified in Plaintiff's response to Defendant's Interrogatory No. 11.

**Response:   Plaintiff will produce documents responsive to this request, namely Plaintiff's Trans Union credit reports.**

DEFENDANT'S REQUEST FOR PRODUCTION NO. 12:

Please produce all documents identified in Plaintiff's response to Defendant's Interrogatory No. 13.

**Response:   Plaintiff will produce documents responsive to this request, namely the dispute letter and Plaintiff's Trans Union Credit reports.**

DEFENDANT'S REQUEST FOR PRODUCTION NO. 13:

Please produce all documents identified in Plaintiff's response to Defendant's Interrogatory No. 15.

**Response:   Plaintiff will produce documents responsive to this request, namely the dispute letter and Plaintiff's Trans Union Credit reports.**

DEFENDANT'S REQUEST FOR PRODUCTION NO. 14:

Please produce all documents identified in Plaintiff's response to Defendant's Interrogatory No. 16.

**Response:   Plaintiff does not have any documents responsive to this request.**

DEFENDANT'S REQUEST FOR PRODUCTION NO. 15:

Please produce all documents identified in Plaintiff's response to Defendant's Interrogatory No. 17.

**Response:   Plaintiff does not have any documents responsive to this request.**

Defendant's Exhibit B - Robinson Dep.   155 of 165

ROBINSON DEPOSITION EXHIBITS 000119

DEFENDANT'S REQUEST FOR PRODUCTION NO. 16:

Please produce all documents identified in Plaintiff's response to Defendant's Interrogatory No. 19.

**Response:   There are no documents responsive to this request.**


DEFENDANT'S REQUEST FOR PRODUCTION NO. 17:

Please produce all documents identified in Plaintiff's response to Defendant's Interrogatory No. 20.

**Response:   There are no documents responsive to this request.**


DEFENDANT'S REQUEST FOR PRODUCTION NO. 18:

Please produce all documents identified in Plaintiff's response to Defendant's Interrogatory No. 21.

**Response:   Plaintiff will produce a copy of the certified mailed dispute sent to Defendant.**


DEFENDANT'S REQUEST FOR PRODUCTION NO. 19:

Please produce all documents identified in Plaintiff's response to Defendant's Interrogatory No. 22.

**Response:   Plaintiff does not have any documents responsive to this request.**


DEFENDANT'S REQUEST FOR PRODUCTION NO. 20:

Please provide all documents between Plaintiff and any person to whom Plaintiff communicated about any fact asserted in the Complaint which documents refer, reflect, recite, or describe any fact alleged in the Complaint.

**Response:   Plaintiff's counsel objects to this request as overly broad and to the extent it seeks information protected by the attorney client privilege or to the extent this request seeks information prepared in anticipation of litigation and subject to the attorney work product doctrine.  Without waiving this objection**

ROBINSON DEPOSITION EXHIBITS 000120

and subject thereto, **Plaintiff will produce non-privileged documents responsive to this request and previously identified above.**

DEFENDANT'S REQUEST FOR PRODUCTION NO. 21:

Please produce full and complete documents showing any actual damage alleged to have been caused or exacerbated by Spring Oaks.

**Response:  Plaintiff will produce Plaintiff's dispute and Plaintiff's Trans Union credit reports.**

DEFENDANT'S REQUEST FOR PRODUCTION NO. 22:

Please produce for inspection each and every audio recording or other memorialization of the content of any telephone conversation between Plaintiff and Spring Oaks.

**Response: Plaintiff does not have any documents responsive to this request.**

DEFENDANT'S REQUEST FOR PRODUCTION NO. 23:

Please produce all documents received by Plaintiff from any source that is responsive to any discovery request herein.

**Response:   Plaintiff objects to this request as redundant and  already covered by other requests. Plaintiff further objects to this request as vague, ambiguous and overly broad.**

DEFENDANT'S REQUEST FOR PRODUCTION NO. 24:

Please provide a log of all documents in Plaintiff's possession which Plaintiff asserts are protected by the attorney work product and/or the attorney-client privilege. In your response, please provide the author, recipient, and document date of each document along with the identity of all persons, other than counsel, who to your knowledge have reviewed or seen the documents.

ROBINSON DEPOSITION EXHIBITS 000121

**Response:   There are no documents responsive to this request. The only things withheld are attorney-client communications and contract between attorney and client.**

DEFENDANT'S REQUEST FOR PRODUCTION NO. 25:

Provide copies of all drafts, correspondence, agreements, third-party retainers, credit repair organization agreements and any other document relating in any way to the letter referenced in paragraph 15 of Plaintiff's Complaint.

**Response:   As to the request for attorney contract information, Plaintiff objects: irrelevant, immaterial, and calls for disclosure of privileged information.** *Uinta Oil Refining Co. v. Continental Oil Co.*, **226 F.Supp. 495 [U.S.D.C. Utah 1964];** *Sargeant v. Sharp*, **579 F.2d 645, 649 [1st Cir.1978] [a fee agreement is irrelevant to the issue of entitlement and should not enter into the determination of the amount of a reasonable fee award]. Further, calculation of attorney's fees outside of the scope of discovery and not calculated to lead to admissible evidence, since fee award must be based on lodestar [marketplace] rates. This is a fee shifting case; fees and costs will be sought by petition or agreement under usual fee-shifting standards. Under these standards, the party's agreement with his lawyers may not be considered as a floor, standard, or ceiling.** *Blanchard v. Bergeron*, **489 U.S. 87, 93 [1989];** *Venegas v. Mitchell*, **110 S.Ct. 1679 [1990];** *City of Burlington v. Dague*, **112 S.Ct. 2638 [1992];** *Amherst Leasing Corp. v. Emhart Corp.*, **65 F.R.D. 121, 126 [U.S.D.C. Conn. 1974] [motion to compel fee agreement denied];** *Stahler v. Jamesway Corp.*, **85 F.R.D. 85, 86 [U.S.D.C. E.D. Pa. 1979] [fee agreement not discoverable];** *Sanderson v. Winner*, **507 F.2d 477 [10th Cir. 1974]. Premature; not applicable unless and until plaintiff prevails [Rule 54] at which time a detailed fee application must be submitted; burdensome: Time records continue to accrue, work product privilege. Subject to those objections, plaintiff responds: Plaintiff has a contract with her attorney. The facts supporting such claims are stated in the complaint, plaintiff's disclosures, and these discovery responses.**

**Plaintiff further states that he does not have any credit repair organization agreements or third-party agreements relating to the subject letter.**

## REQUESTS FOR ADMISSION

DEFENDANT'S REQUEST FOR ADMISSION NO. 1:

ADMIT that on April 5, 2022, you lived at the following address: 20 Burney Mountain Road, Falkville, Alabama 35622.

**Response:**   **Admitted.**

DEFENDANT'S REQUEST FOR ADMISSION NO. 2:

ADMIT that you received the validation notice attached hereto as Exhibit "A" by United States mail.

**Response:**   **Denied.**

DEFENDANT'S REQUEST FOR ADMISSION NO. 3:

ADMIT that you did not respond in writing to the validation notice attached hereto as Exhibit "A" within 30 days after you received it.

**Response:**   **Admitted that I did not response to Exhibit "A", Denied that I did not respond with 30 days after receiving it, as I did not receive it.**

DEFENDANT'S REQUEST FOR ADMISSION NO. 4:

ADMIT that you did not communicate any dispute in writing to Spring Oaks Capital in 2022.

**Response:**   **Denied.**

DEFENDANT'S REQUEST FOR ADMISSION NO. 5:

16

Defendant's Exhibit B - Robinson Dep.  159 of 165

ROBINSON DEPOSITION EXHIBITS 000123

ADMIT that you were not the author of the dispute letter dated September 27, 2022, attached hereto as Exhibit "B".

**Response:**   **Denied.**

DEFENDANT'S REQUEST FOR ADMISSION NO. 6:

ADMIT that you did not write Exhibit "B".

**Response:**   **Denied.**

DEFENDANT'S REQUEST FOR ADMISSION NO. 7:

ADMIT that you did not personally review Exhibit "B" before it was sent to Spring Oaks Capital.

**Response:**   **Denied.**

DEFENDANT'S REQUEST FOR ADMISSION NO. 8:

ADMIT that your actual signature does not appear on Exhibit "B".

**Response:**   **Admitted.**

DEFENDANT'S REQUEST FOR ADMISSION NO. 9:

ADMIT that you personally did not transmit Exhibit "B" to a carrier (such as Federal Express or the U.S. Postal Service) for delivery to Spring Oaks Capital.

**Response:**   **Admitted.**

DEFENDANT'S REQUEST FOR ADMISSION NO. 12:

ADMIT that on October 31 2022, you lived at the following address: 20 Burney Mountain Road, Falkville, Alabama 35622.

Defendant's Exhibit B - Robinson Dep.  160 of 165

ROBINSON DEPOSITION EXHIBITS 000124

**Response:   Admitted.**

DEFENDANT'S REQUEST FOR ADMISSION NO. 13:

ADMIT that you received the correspondence dated October 31, 2022, attached hereto as Exhibit "C".

**Response:   Denied.**

DEFENDANT'S REQUEST FOR ADMISSION NO. 14:

ADMIT that you did not provide any further dispute to Spring Oaks after you received the correspondence dated October 31, 2022, attached hereto as Exhibit "C".

**Response:   Denied.**

DEFENDANT'S REQUEST FOR ADMISSION NO. 15:

ADMIT that at no time did you dispute any aspect of the account at issue to Spring Oaks.

**Response:   Denied.**

DEFENDANT'S REQUEST FOR ADMISSION NO. 16:

ADMIT that Plaintiff retained a third party to issue one or more credit dispute letters such as Exhibit "A" attached hereto.

**Response:   Denied.**

DEFENDANT'S REQUEST FOR ADMISSION NO. 17:

ADMIT that Plaintiff paid a third party a fee to issue one or more credit dispute letters such as Exhibit "B" attached hereto.

ROBINSON DEPOSITION EXHIBITS 000125

**Response:**   **Denied.**


DEFENDANT'S REQUEST FOR ADMISSION NO. 18:

ADMIT that the fee Plaintiff paid to a third-party to issue the credit dispute letter attached hereto as Exhibit "B" exceeded the amount Plaintiff owes on the debt disputed.

**Response:**   **Denied, as I did not pay any fee to anyone to issue Exhibit "B". Also, Denied that I owe the debt disputed.**


DEFENDANT'S REQUEST FOR ADMISSION NO. 19:

ADMIT that you have not sought or received any medical attention for any action or behavior on the part of Spring Oaks.

**Response:**   **Admitted.**


DEFENDANT'S REQUEST FOR ADMISSION NO. 20:

ADMIT that amount reported by Spring Oaks regarding the account at issue to the credit reporting agencies to which it reports information was accurate.

**Response:**   **Denied.**


DEFENDANT'S REQUEST FOR ADMISSION NO. 21:

ADMIT that you have not applied for credit from September 13, 2022 through the present date.

**Response:**   **Denied.**


DEFENDANT'S REQUEST FOR ADMISSION NO. 22:

ROBINSON DEPOSITION EXHIBITS 000126

ADMIT that you have not been denied credit from September 13, 2022 through the present date.

**Response:**   **Denied.**

DEFENDANT'S REQUEST FOR ADMISSION NO. 23:

ADMIT that Plaintiff has not paid his attorney any fees to date.

**Response:**   **Admitted.**

DEFENDANT'S REQUEST FOR ADMISSION NO. 24:

ADMIT that you have not personally reviewed your entire credit report at any time from September 13, 2022 through the present date.

**Response:**   **Admitted. I have not read every single word of every one of my credit reports from September 13, 2022 to present.**

DEFENDANT'S REQUEST FOR ADMISSION NO. 25:

ADMIT that Plaintiff's credit score was not lowered as the result of any reporting on the part of Spring Oaks to any credit reporting agency.

**Response:**   **Denied.**

*/s/ Patricia S. Lockhart*
**John G. Watts (WAT056)**
**M. Stan Herring (HER037)**
**Patricia S. Lockhart**
**(LOC023)**
Watts & Herring, LLC
301 19th Street North
Birmingham, Alabama 35203
(205) 879-2447
Patricia@wattsherring.com
John@wattsherring.com

20

ROBINSON DEPOSITION EXHIBITS 000127

Stan@wattsherring.com
**Attorneys for Plaintiff**

Defendant's Exhibit B - Robinson Dep.  164 of 165

ROBINSON DEPOSITION EXHIBITS 000128

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **March 5, 2024**, the foregoing was electronically filed with the Clerk of this Court using the Court's electronic system, which will send notification of such filing to the following and/or that the above was served upon the following via electronic mail and/or U.S. mail, postage prepaid:

**Neal Moore**
Christian and Small LLP
505 20th Street North
Ste 1800
Birmingham, Al 35203
205-795-6588
ndmoore@csattorneys.com
**Attorney for Defendant**

_/s/ Patricia S. Lockhart_
OF COUNSEL

22

Defendant's Exhibit B - Robinson Dep.  165 of 165

ROBINSON DEPOSITION EXHIBITS 000129