FILED
2024 Oct-11  PM 03:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

# Exhibit "2"

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **CHRISTOPHER ROBINSON** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **CIVIL ACTION NO.:** |
| **SPRING OAKS CAPITAL, LLC,** | ) | |
| **et. al.** | ) | |
| | ) | **2:23-cv-01381-AMM** |
| **Defendant.** | ) | |

---

**ANSWERS AND RESPONSES TO PLAINTIFF'S FIRST SET OF DISCOVERY**
**REQUESTS BY SPRING OAKS CAPITAL, LLC**

---

Defendant Spring Oaks Capital, LLC ("Spring Oaks" and "Defendant") submits the herein answers, objections and responses to Plaintiff's First Set of Interrogatories, Document Requests, and Requests for Admission as follows:

**PRELIMINARY STATEMENT**

1.      These answers are based upon information presently known by Spring Oaks.   It is anticipated that further discovery, investigation, legal research and analysis will supply additional factual conclusions and legal contentions.   Spring Oaks reserves the right to rely on such additional discovery, investigation, legal research and analysis, and to make such additions, changes, and variations to these answers as warranted thereby.   These answers are made in a good faith effort to supply as much information and specification as presently known.

2.      Each answer herein is subject to all objections on any grounds that would require exclusion of all or part of any statement herein as if such request was asked of, or statements

contained herein were made by, a witness testifying at trial, all such objections being expressly reserved.

3.      The absence of an objection that a request is irrelevant is not intended to be a waiver of that objection and Spring Oaks reserves the right to object on relevancy grounds at any stage of these proceedings.

4.      To the extent any request or any part thereof is intended to elicit information protected from discovery by the attorney-client privilege or the attorney work product doctrine, Spring Oaks objects thereto and asserts the protection and privileges provided thereby to the fullest extent.

Referencing and expressly incorporating each of these general objections, Spring Oaks hereby responds and objects as follows:

## ANSWERS TO INTERROGATORIES

**INTERROGATORY NO. 1**:

Identify the person or persons responsible for receiving, processing, investigating and/or responding to Christopher Robinson's letter delivered to you on or about October 3, 2022.

**Answer:** Spring Oaks objects to this interrogatory as overly broad and vague and ambiguous as to "responsible for receiving, processing, investigating and/or responding," and to the extent it seeks information that is not relevant or likely to lead to the discovery of admissible evidence.   Subject to and without waiving said objections, Spring Oaks identifies the following individuals: Ny'Asia Davis, Lauren Hurlocker and Keara Moore and refers Plaintiff to the documents produced in response to Plaintiff's Request for Production of Documents.

**INTERROGATORY NO. 2:**

Identify and describe the exact procedure or protocol followed upon receipt of Christopher Robinson's letter disputing a debt being collected by you.

**Answer:** Spring Oaks objects to this interrogatory as overly broad and unduly burdensome. Spring Oaks further objects because this request is vague and ambiguous as to "procedure or protocol."  Subject to and without waiving the objections, Spring Oaks noted the account as "disputed" upon receipt of Plaintiff's letter disputing the debt.  Spring Oaks then conducted a reasonable investigation of Plaintiff's claim disputing the debt, confirmed Plaintiff is the correct consumer on the account and confirmed that the information on the account is accurate.  On October 31, 2022, Spring Oaks emailed correspondence to Plaintiff informing Plaintiff of the results of its investigation of Plaintiff's dispute.  Spring Oaks did not receive a response of any kind from Plaintiff until Plaintiff filed this lawsuit, more than 11 months after Spring Oaks informed Plaintiff of its investigation results and findings.

### INTERROGATORY NO. 3:

Specify the training given to the person or persons identified in Interrogatory #1 concerning the receiving, processing, investigating and/or responding to Christopher Robinson's letter delivered to you on or about October 3, 2022.

**Answer:** Spring Oaks objects to the interrogatory as overly broad and unduly burdensome to the extent it seeks information not relevant to Plaintiff's claims.  Spring Oaks further objects to the interrogatory because it is vague and ambiguous as to "training given" in specific relation to Plaintiff's disputed account.  Spring Oaks further objects to the extent that this request seeks information that is proprietary and confidential. Spring Oaks will produce relevant employee

3

training documents responsive to this request upon execution of mutually agreeable protective order.

**INTERROGATORY NO. 4:**

Describe any and all steps taken by SPRING OAKS to investigate Christopher Robinson's dispute the subject of this action.

**Answer:** Spring Oaks objects to this interrogatory as vague and ambiguous as to "investigate." Subject to and without waiving this objection, Spring Oaks noted the account as "disputed" upon receipt of Plaintiff's letter disputing the debt.   Spring Oaks then conducted a reasonable investigation of Plaintiff's claim disputing the debt, confirmed Plaintiff is the correct consumer on the account and confirmed that the information on the account is accurate.   On October 31, 2022, Spring Oaks emailed correspondence to Plaintiff informing Plaintiff of the results of its investigation of Plaintiff's dispute.   Spring Oaks did not receive a response of any kind from Plaintiff until Plaintiff filed this lawsuit, over 11 months after Spring Oaks informed Plaintiff of its investigation results and findings.

**INTERROGATORY NO. 5:**

Identify the person or persons responsible for deciding on the language used to mark Christopher Robinson's credit report in response to the dispute.

**Answer:** Spring Oaks objects to this interrogatory as vague and ambiguous as to the phase "deciding on the language used to mark. . ."   Further, Spring Oaks did not "decide" on "language used to mark" Plaintiff's "credit report" and instead Spring Oaks reported to TransUnion certain codes contained within the "Credit Reporting Resource Guide" published by the Consumer Data Industry Association.   Subject to and without waiving the objections, see TransUnion and the

authors of the Credit Reporting Resource Guide produced in response to Plaintiff's Request for Production of Documents.

**INTERROGATORY NO. 6:**

Specify the rationale or reasoning behind choosing the language "Account previously in dispute-now resolved" for marking Christopher Robinson's credit report.

    **Answer:** Spring Oaks objects to this interrogatory as overly broad and unduly burdensome. Spring Oaks objects to this interrogatory as vague and ambiguous as to the "rationale or reasoning."  Subject to and without waiving the objections, Spring Oaks did not "choose" any "language" in reporting Plaintiff's account to TransUnion and instead relied upon the Consumer Data Industry Association compliance condition codes contained within the "Credit Reporting Resource Guide" to report on the account.

**INTERROGATORY NO. 7:**

Explain in detail why SPRING OAKS did not use the language "Account information disputed by consumer" in marking Christopher Robinson's credit report.

    **Answer:** Spring Oaks objects that this interrogatory seeks information that is not relevant or likely to lead to the discovery of admissible evidence and is argumentative, specifically, by requesting a response to a vague hypothetical.  Subject to and without waiving the objections, Spring Oaks did not "use" any "language" in reporting Plaintiff's account to TransUnion and instead relied upon the Consumer Data Industry Association compliance condition codes contained within the "Credit Reporting Resource Guide" to report on the account.

**INTERROGATORY NO. 8:**

List all credit reporting agencies SPRING OAKS communicated with concerning Christopher Robinson's account from September 2021 to the present.

**Answer:** TransUnion.

**INTERROGATORY NO. 9:**

Detail any communications, instructions, or guidelines given to or received from Equifax, Experian and TransUnion concerning the marking of Christopher Robinson's account.

**Answer:** Spring Oaks objects that this interrogatory is vague and ambiguous as to "concerning the marking of Christopher Robinson' account."   Subject to and without waiving the objection, none.

**INTERROGATORY NO. 10:**

Describe any and all changes or updates made to Christopher Robinson's credit report from the date of receipt of the dispute letter to the present.

**Answer:** Spring Oaks objects that this interrogatory is overbroad and unduly burdensome to the extent it seeks information better known to Plaintiff or other non-parties to this lawsuit, and because it is vague and ambiguous as to "changes or updates made" without specifying by whom.

**INTERROGATORY NO. 11:**

Identify any third-party vendors or contractors involved in any part of the process from receiving Christopher Robinson's dispute letter the subject of this action to marking Christopher Robinson's credit report.

**Answer:** None.

**INTERROGATORY NO. 12:**

Describe any performance metrics, incentives, or goals, by whatever name called, related to the receiving, processing, investigating and/or responding to consumer disputes within SPRING OAKS in place at the time you received, processed, investigated and responded to Christopher Robinson's dispute letter.

**Answer:** Spring Oaks objects that the interrogatory is overly broad and unduly burdensome, seeks information that is not relevant or likely to lead to the discovery of admissible evidence.   Spring Oaks further objects that the interrogatory is vague and ambiguous to "performance metrics, incentives, or goals."   Subject to and without waiving the objections, none.

## INTERROGATORY NO. 13:

Identify and describe any research, studies, or internal documents that discuss the implications of different credit report markings on a consumer's credit score or creditworthiness for the last ten (10) years.

**Answer:** Spring Oaks objects that the interrogatory is overly broad and unduly burdensome, seeks information that is not relevant or likely to lead to the discovery of admissible evidence.   Spring Oaks further objects that the interrogatory is vague and ambiguous to "research, studies, or internal documents."   Subject to and without waiving the objections, none.

## INTERROGATORY NO. 14:

Specify any and all software tools or platforms used in the dispute investigation process, including but not limited to those used for credit reporting.

**Answer:** Spring Oaks objects that the interrogatory is overly broad and unduly burdensome, seeks information that is not relevant or likely to lead to the discovery of admissible evidence.   Subject to and without waiving the objections, InterProse.

7

**INTERROGATORY NO. 15:**

Detail the qualifications, training, and experience of the person or persons responsible for marking, changing or updating Christopher Robinson's credit report.

**Answer:** Spring Oaks objects that the interrogatory is overly broad and unduly burdensome, seeks information that is not relevant or likely to lead to the discovery of admissible evidence. Spring Oaks further objects to the extent that this request seeks information that is proprietary and confidential. Subject to and without waiving the objections, Spring Oaks develops and implements internal, standardized policies for account handling and all employees are knowledgeable and aware of such policies. Spring Oaks will produce relevant employee training documents responsive to this request upon execution of mutually agreeable protective order.

**INTERROGATORY NO. 16:**

Detail all forms of communication (e.g., email, call, text, letter) and their respective dates, initiated by SPRING OAKS towards Christopher Robinson since the receipt of the dispute letter.

**Answer:** See the documents produced in response to Plaintiff's Requests for Production of Documents which include the initial notice that Spring Oaks sent to Plaintiff on April 5, 2022, and the dispute response email Spring Oaks sent to Plaintiff on October 31, 2022.

**RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS**

1.      Produce all internal policies, procedures, guidelines, or training materials related to the receiving, processing, investigating and/or responding to of consumer dispute letters for the time period 12 months prior to receiving Christopher Robinson's dispute letter up to the present date.

**Response:** Spring Oaks objects to this request on the grounds that it is vague, overly broad, unduly burdensome, and not proportionate to the needs of the case, insofar as it is not limited to matters at issue in this lawsuit.   Spring Oaks further objects to the extent that this request seeks documents that are proprietary and confidential and not relevant or likely to lead to the discovery of admissible information.   Subject to and without waiving the objections, Spring Oaks will produce to Plaintiff the policies and procedures in effect from October 1, 2022 through October 31, 2022 pertaining to the handling, processing, and reporting of written consumer disputes upon the entry of a suitable, mutually agreed-upon Protective Order.

2.      Produce all internal policies, procedures, guidelines, or training materials related to the changing, altering or updating a consumer's credit information to the credit bureaus for the time period 12 months prior to receiving Christopher Robinson's dispute letter up to the present date.

**Response:** Spring Oaks objects to this request on the grounds that it is vague, overly broad, unduly burdensome, and not proportionate to the needs of the case, insofar as it is not limited to matters at issue in this lawsuit.   Spring Oaks further objects to the extent that this request seeks documents that are proprietary and confidential and not relevant or likely to lead to the discovery of admissible information.   Subject to and without waiving the objections, Spring Oaks will produce to Plaintiff the policies and procedures in effect from October 1, 2022 through October 31, 2022 pertaining to the handling, processing, and reporting of written consumer disputes upon the entry of a suitable, mutually agreed-upon Protective Order.

3.      Produce all internal policies, procedures, guidelines, or training materials related to the changing, altering or updating a consumer's credit information to the credit bureaus when you receive a letter from the consumer disputing the alleged debt you are collecting or in response to a

letter from the consumer disputing the alleged debt you are collecting for the time period 12 months prior to receiving Christopher Robinson's dispute letter up to the present date.

**Response:** Spring Oaks objects to this request on the grounds that it is vague, overly broad, unduly burdensome, and not proportionate to the needs of the case, insofar as it is not limited to matters at issue in this lawsuit.   Spring Oaks further objects to the extent that this request seeks documents that are proprietary and confidential and not relevant or likely to lead to the discovery of admissible information.   Subject to and without waiving the objections, Spring Oaks will produce to Plaintiff the policies and procedures in effect from October 1, 2022 through October 31, 2022 pertaining to the handling, processing, and reporting of written consumer disputes upon the entry of a suitable, mutually agreed-upon Protective Order.

4.      Produce any and all policies, procedures, guidelines, training materials and documents evidencing the decision-making process on how to mark Christopher Robinson's credit report post the receipt of the dispute letter.

**Response:** Spring Oaks objects to this request on the grounds that it is vague, overly broad, unduly burdensome, and not proportionate to the needs of the case, insofar as it is not limited to matters at issue in this lawsuit.   Spring Oaks further objects to the extent that this request seeks documents that are proprietary and confidential and not relevant or likely to lead to the discovery of admissible information.   Subject to and without waiving the objections, Spring Oaks will produce to Plaintiff the policies and procedures in effect from October 1, 2022 through October 31, 2022 pertaining to the handling, processing, and reporting of written consumer disputes upon the entry of a suitable, mutually agreed-upon Protective Order.

5.      Produce all communications, including emails, memos, letters, and other documents, between SPRING OAKS and credit reporting agencies including but not limited to Equifax, Experian and TransUnion regarding Christopher Robinson's account from 12 months prior to receiving the dispute letter up to the present date.

**Response:** Responsive documents in Spring Oaks' possession regarding the reporting of Plaintiff's account to TransUnion are produced herein.

6.      Produce any internal documents, studies, or research discussing the implications of different credit report markings on consumers' credit scores or creditworthiness.

**Response:** Spring Oaks objects to this request on the grounds that it is vague, overly broad, unduly burdensome, and not proportionate to the needs of the case, insofar as it is not limited to matters at issue in this lawsuit.   Subject to and without waiving the foregoing objections, none.

7.      Produce any and all information, documents or communications discussing or instructing the use of the language "Account previously in dispute-now resolved reported by credit grantor" in relation to marking credit reports from 2021 to present.

**Response:** Spring Oaks objects to this request on the grounds that it is vague, overly broad, unduly burdensome, and not proportionate to the needs of the case, insofar as it is not limited to matters at issue in this lawsuit.   Spring Oaks further objects to this request to the extent it seeks documents protected from discovery by the attorney-client privilege and/or attorney work product doctrine.   Subject to and without waiving the objections, Spring Oaks produces the "Credit Reporting Resource Guide" published by the Consumer Data Industry Association herein.

8.      Produce the full credit reporting history of Christopher Robinson as held, reported or accessed by SPRING OAKS.

**Response:** Spring Oaks objects to this request on the grounds that it seeks information in the possession and control of Plaintiff, and that it is vague and ambiguous as to "full credit reporting history."  Subject to and without waiving the objections, responsive documents are produced herein.

9.      Produce all data, information, documents, communications, or records related to any third-party vendors or contractors involved in any part of the process from receiving, processing and investigating Christopher Robinson's dispute letter to marking, changing, altering or updating Christopher Robinson's credit information with the credit bureaus.

**Response:** None.

10.      Produce any software manuals, user guidelines, or training materials related to platforms or tools used in the dispute investigation and credit reporting process from 12 months prior to receiving the dispute letter up to the present date.

**Response:** Spring Oaks objects to this request on the grounds that it is vague, overly broad, unduly burdensome, and not proportionate to the needs of the case, insofar as it is not limited to matters at issue in this lawsuit.  Spring Oaks further objects to the extent that this request seeks documents that are proprietary and confidential and not relevant or likely to lead to the discovery of admissible information.  Subject to and without waiving the objections, Spring Oaks will produce to Plaintiff the policies and procedures in effect from October 1, 2022 through October 31, 2022 pertaining to the handling, processing, and reporting of written consumer disputes upon the entry of a suitable, mutually agreed-upon Protective Order.

11.     Produce all records of internal communications, discussions or meetings related to Christopher Robinson's dispute, its investigation, and subsequent credit report marking, changes or updates with the credit bureaus.

**Response:** Spring Oaks objects to this request to the extent it seeks documents protected from discovery by the attorney-client privilege and/or attorney work product doctrine.   Spring Oaks objects to this request on the grounds that it is vague, overly broad, unduly burdensome, and not proportionate to the needs of the case, insofar as it is not limited to matters at issue in this lawsuit.   Spring Oaks further objects to the extent that this request seeks documents that are proprietary and confidential and not relevant or likely to lead to the discovery of admissible information.   Subject to and without waiving the objections, responsive documents are produced herein.

12.     Produce any and all documents, communications, or training materials related to performance metrics, incentives, or goals associated with the handling of consumer disputes within SPRING OAKS.

**Response:** Spring Oaks objects to this request on the grounds that it is vague, overly broad, unduly burdensome, and not proportionate to the needs of the case, insofar as it is not limited to matters at issue in this lawsuit.   Spring Oaks further objects to the extent that this request seeks documents that are proprietary and confidential and not relevant or likely to lead to the discovery of admissible information.   Subject to and without waiving the objections, none.

13.     Produce your account notes, by whatever name called, for Christopher Robinson's alleged debt on which you were collecting or attempting to collect that is the subject of this action documenting any and all actions taken on the alleged account, communications (internally or

13

otherwise), investigations of any disputes by Christopher Robinson, correspondence received and sent, and/or any credit reporting.

**Response:** Spring Oaks objects to this request to the extent it seeks documents protected from discovery by the attorney-client privilege and/or attorney work product doctrine.   Subject to and without waiving these objections, responsive documents are enclosed.

## RESPONSES TO REQUESTS FOR ADMISSIONS

1. Admit that Spring Oaks received a letter from Christopher Robinson on October 3, 2022.

   **Response:** Admit.

2. Admit that the letter from Christopher Robinson made clear he disputed the alleged debt that SPRING OAKS claims Christopher Robinson owed.

   **Response:** Spring Oaks objects to this request on the basis that the letter is a written document.   Subject to and without waiving the objections, Spring Oaks admits only that it understood from Plaintiff's letter that Plaintiff disputed the debt held by Spring Oaks. Spring Oaks denies any characterization regarding Plaintiff's specific intent or clarity of the letter.

3. Admit that Christopher Robinson explicitly mentioned in the letter that he did NOT want SPRING OAKS to send any documentation.

   **Response:** Spring Oaks objects to this request on the basis that the letter is a written document.   Subject to and without waiving the objections, to the extent an answer is required, Spring Oaks denies this request because the letter states that Plaintiff did not want Spring Oaks to send any "information," and he was not "interested in" receiving documentation.

14

4.  Admit that Christopher Robinson explicitly mentioned in the letter that he did NOT want SPRING OAKS to send any validation.

**Response:** Spring Oaks objects on the basis that the letter is a written document.   Subject to and without waiving the objections, to the extent an answer is required, Spring Oaks denies this request because while the letter states that it was not "a request for validation," there is no "explicit" statement not to send any validation.

5.  Admit that the dispute letter from Christopher Robinson was not a request for validation of the alleged debt.

**Response:** Spring Oaks objects on the basis that the letter is a written document.   Spring Oaks further objects to the extent that this request seeks a legal opinion or legal conclusion about what constitutes a "request for validation.   Subject to and without waiving these objections, to the extent an answer is required, Spring Oaks can neither truthfully admit or deny because Spring Oaks does not know Plaintiff's intent in sending the letter.

6.  Admit that the dispute letter from Christopher Robinson was not a request for verification of the alleged debt.

**Response:** Spring Oaks objects on the basis that the letter is a written document.   Spring Oaks further objects to the extent that this request seeks a legal opinion or legal conclusion about what constitutes a "request for verification."   Subject to and without waiving these objections, to the extent an answer is required, Spring Oaks can neither truthfully admit or deny because Spring Oaks does not know Plaintiff's intent in sending the letter.

7.  Admit that SPRING OAKS is familiar with the industry standard language used by other collectors when updating consumer account information to the credit bureaus.

**Response:** Spring Oaks objects that this request is overly broad, vague, and ambiguous as to "industry standard language used by other collectors."   Spring Oaks further objects that the request seeks information that is not relevant or likely to lead to the discovery of admissible evidence.   Subject to and without waiving the objections, Spring Oaks admits only that some credit reporting terms are "standardized," such as the compliance condition codes contained within the Credit Reporting Resource Guide published by the Consumer Data Industry Association, but denies any familiarity with unspecified terms used by unspecified debt collectors.

8. Admit that SPRING OAKS is familiar with the industry standard language used by other collectors when updating consumer account information to the credit bureaus when a consumer disputes an account, namely: "Account information disputed by consumer."

    **Response:** Spring Oaks objects that this request is overly broad, vague, and ambiguous as to "industry standard language used by other collectors."   Spring Oaks further objects that the request seeks information that is not relevant or likely to lead to the discovery of admissible evidence.   Subject to and without waiving the objections, Spring Oaks admits only that some credit reporting terms are "standardized," such as the compliance condition codes contained within the Credit Reporting Resource Guide published by the Consumer Data Industry Association, but denies any familiarity with unspecified terms used by unspecified debt collectors.

9. Admit that SPRING OAKS chose to mark Christopher Robinson's credit report with the language "Account previously in dispute – now resolved" rather than "Account information disputed by consumer."

**Response:** Denied.   Spring Oaks did not "choose" any "language" in reporting Plaintiff's account to TransUnion and instead relied upon the Consumer Data Industry Association compliance condition codes contained within the "Credit Reporting Resource Guide" to note the account.

10. Admit that SPRING OAKS' decision to use the aforementioned language was not an accident or oversight.

**Response:** Denied. Spring Oaks did not "decide" to "use" any "aforementioned language" in reporting Plaintiff's account to TransUnion and instead relied upon the Consumer Data Industry Association compliance condition codes contained within the "Credit Reporting Resource Guide" to note the account.

11. Admit that the decision to use the aforementioned language was a conscious corporate policy or decision.

**Response:** Denied. Spring Oaks did not "decide" to "use" any "aforementioned language" in reporting Plaintiff's account to TransUnion and instead relied upon the Consumer Data Industry Association compliance condition codes contained within the "Credit Reporting Resource Guide" to note the account.

12. Admit that SPRING OAKS is aware of how to mark a credit report to reflect that a debt is disputed by the consumer.

**Response:** Admit.

**ROSSMAN ATTORNEY GROUP, PLLC**

Date: March 1, 2024          */s/ John K. Rossman*
                            John K. Rossman
                            Attorney for Spring Oaks Capital, LLC
                            P.O. Box 24140
                            Edina, MN 55424
                            612-439-5551
                            John.Rossman@rossmanattorneygroup.com

**VERIFICATION FOR INTERROGATORY RESPONSES**

I, Catherine Calko, have read the foregoing Answers to Interrogatories and declare under penalty of perjury that the information set forth therein is true and correct to the best of my knowledge.

EXECUTED on this 1st day of March, 2024.

_____
Catherine Calko