FILED
2024 Oct-11  PM 05:01
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER ROBINSON** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **CIVIL ACTION NO.:** |
| **SPRING OAKS CAPITAL,** | ) | |
| **LLC, et. al.** | ) | **2:23-CV-01381-AMM** |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

---

### PLAINTIFF'S MEMORANDUM IN SUPPORT OF
### PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

---

Respectfully Submitted,

*/s/ M. Stan Herring*
**John G. Watts (WAT056)**
**M. Stan Herring (HER037)**
**W. James Sears (SEA036)**
WATTS & HERRING, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 879-2447
(888) 522-7167 *facsimile*
stan@wattsherring.com
john@wattsherring.com
james@wattsherring.com

**Attorneys for Plaintiff**

# Table of Contents

INTRODUCTION...................................................................................................3

STATEMENT OF UNDISPUTED FACTS...............................................................6

ARGUMENT .....................................................................................................10

   I.   Spring Oaks violated § 1692e and § 1692e(8) of the FDCPA when it communicated account information to TransUnion that failed to report that Robinson's disputed debt was disputed when Spring Oaks knew Robinson, in fact, disputed the debt. .....................................................................................10

     a.   Legal authority relevant to the issue of whether Spring Oaks violated § 1692e and § 1692e(8). .....................................................................................10

     b.   Robinson's dispute letter clearly disputed the debt and Spring Oaks knew that the debt was disputed...................................................................................14

     c.   Spring Oaks communicated to TransUnion, contrary to the truth, that Robinson no longer disputed the debt and that the dispute had been resolved. 18

     d.   Spring Oaks' failure to truthfully report that the disputed debt is disputed violated § 1692e and § 1692e(8) of the FDCPA. ............................................19

   II.   Spring Oaks' Obligations Under § 1692e(8) of the FDCPA to Report the Account as Disputed Are Not Altered or Modified by § 1692g of the FDCPA...21

CONCLUSION ..................................................................................................23

**COMES NOW**, the Plaintiff, CHRISTOPHER ROBINSON, by and through the undersigned counsel, and for his Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment, states as follows:

## INTRODUCTION

Plaintiff's Motion for Partial Summary Judgment respectfully moves this Honorable Court to enter the limited finding as a matter of law that the Defendant, SPRING OAKS CAPITAL, LLC, (herein "Spring Oaks" or "Defendant"), a debt collector, violated § 1692e and § 1692e(8) of the Fair Debt Collection Practices Act, 15 U.S.C., (the "FDCPA") by making false, deceptive, and misleading representations to TransUnion regarding whether a debt which it was attempting to collect from the Plaintiff, Christopher Robinson (herein "Robinson"), was disputed.  Robinson respectfully requests entry of this limited finding and to proceed to a jury trial on damages and on Robinson's remaining FDCPA claims against Spring Oaks for the same conduct the basis of this Motion.

The undisputed facts pertinent to this Motion show that after Spring Oaks initiated attempts to collect a consumer debt against Robinson, he sent a dispute letter on September 27, 2022, to Spring Oaks stating in clear terms that he disputed all debt which Spring Oaks claimed he owed.  Spring Oaks received this letter and

then initially reported the status of the debt to TransUnion, a credit reporting agency, as disputed.

Shortly thereafter, however, and without any change in Robinson's dispute, Spring Oaks altered the reporting to TransUnion. It removed the dispute status and, in its place, communicated to TransUnion that Robinson's debt was <u>no longer in dispute</u> and that the dispute had been resolved. Spring Oaks' subsequent reporting led to its trade line on Robinson's TransUnion credit report to falsely state:

> "Account previously in dispute - now resolved.
> reported by credit grant[or]; >PLACED FOR COLLECTION<"

At no time did Robinson withdraw, alter, or resolve his dispute of the debt.

The undisputed facts show that Spring Oaks' communication with TransUnion was done knowingly and intentionally. Spring Oaks received the dispute letter from Robinson, understood that he disputed the debt, followed its procedures to relay a series of codes to TransUnion communicating that he disputed the debt, performed its own internal investigation that reached its own conclusion, but then deliberately changed the codes communicating he disputed the debt, and replaced those codes with new codes to falsely communicate not only that the debt was no longer in dispute, but also that the dispute had been resolved. There was no miscommunication on Spring Oaks' part to TransUnion although it knew fully well

that Robinson continued to dispute the debt. It communicated exactly what it intended to communicate.

Under the clear letter of the law, § 1692e(8), Spring Oaks was prohibited from communicating any false or misleading representation about whether Robinson's disputed debt was disputed. This is a clear and straightforward violation of § 1692e(8) which specifically prohibits the false, deceptive, or misleading representation in connection with the collection of any debt, <u>specifically prohibiting</u> "communicating or threatening to communicate to any person credit information which is known or should be known to be false, <u>including the failure to communicate that a disputed debt is disputed</u>." 15. U.S.C. § 1692e(8) (Emphasis added).

Spring Oaks' decision to update Robinsons' debt account information to TransUnion, including the dispute status, was strictly voluntary. Nothing in the FDCPA mandates that a debt collector must send account updates to a credit reporting agency like TransUnion. This includes any dispute status that Spring Oaks might learn during the course of collecting on any such account. But, when a debt collector *chooses* to update, report, or furnish, i.e., communicate, any information about an account, it must do so truthfully and in accordance with § 1692e and § 1692e(8), which includes the truthful status of whether a disputed debt is, in fact, disputed. Spring Oaks failed to do this in violation of the FDCPA.

## STATEMENT OF UNDISPUTED FACTS

1.      At all times, Spring Oaks was and is a debt collector as defined by § 1692a(6) of the FDCPA.  Robinson was a consumer as defined by § 1692a(3) of the FDCPA.  The alleged debt which Spring Oaks attempted to collect from Robinson, and which he disputed, arose out of transactions that were primarily for personal, family, and household purposes.  **(Doc. 1-1 pp. 8-10.)**

2.      On April 5, 2023, Spring Oaks mailed a collection letter for the collection of a single consumer debt account against Robinson. (Exhibit 2, Spring Oaks Capital Responses to Written Discovery, Interrogatory Response No. 16, **(Doc. 46-1 p. 9)**.

3.      On September 27, 2022, Robinson mailed via certified mail a dispute letter dated September 27, 2022, (herein, the "dispute letter") to Spring Oaks. (Exhibit 3, Deposition Transcript of Plaintiff, Christopher Robinson, filed by Defendant as Exhibit "B", Robinson Dep. 13:23-14:13 **(Doc. 44-2 p. 7)**; Exhibit 3, B-b, Robinson Dep. Exhibit B – September 27, 2022, Letter to Spring Oaks **(Doc. 44-2 p. 42-43)**.)

4.       The dispute letter stated in pertinent part "I am disputing this debt (and all other debts you claim that I have). You can find all the debts you claim to have on me - I dispute them all." (Ex. 3, B-b, Robinson Dep. Exhibit B – September 27, 2022, Letter to Spring Oaks **(Doc. 44-2 p. 42-43)**.)

5.      Spring Oaks received the dispute letter on October 3, 2022. (Exhibit 1, Deposition Transcript of Spring Oaks Capital Corporate Representative 30(b)(6) filed by Defendant as Ex. "A", Calko Dep. 111:1-7 **(Doc. 44-1 p. 29)**.)

6.      For all times during the year 2022, including the period Spring Oaks received the dispute letter, Spring Oaks reported credit information it obtained through the course of collecting on debt to the credit reporting agency TransUnion. (Ex. 1, Calko Dep. 47:3-9 **(Doc. 44-1 p. 13)**.)

7.      During 2022, Spring Oaks reported on its collection accounts on a weekly basis to TransUnion, reporting on at least 500,000 debt accounts throughout the course of the year.  (Ex. 1, Calko Dep. 105:23-106:17 **(Doc 44-1 p. 28)**.)

8.      Spring Oaks was not required or compelled by law to furnish account information to credit reporting agencies.  (Ex. 1, Calko Dep. 159:21-23 **(Doc. 44-1 p. 41)**.  Spring Oaks chose to report on its collection accounts voluntarily.  It did so as part of what it characterizes as the collection activity and credit reporting lifecycle. (Ex. 1, Calko Dep. 163:8-15 **(Doc. 44-1 p. 42)**.)

9.      Upon receipt of Robinson's dispute letter, Spring Oaks recognized and understood from Robinson's letter that he disputed the debt.  (Ex. 1, Calko Dep. 115:22-117:2 **(Doc. 44-1 pp. 30-31)**; Ex. 2, Request for Admission Response No. 2 **(Doc. 46-1 p. 15)**.

10.     Spring Oaks employees followed its procedures to review the correspondence and to process it using and inputting a system of codes which were then relayed to TransUnion as Spring Oaks' method to furnish account information and updates.  (Ex. 1, Calko Dep. 34:19-35:24 **(Doc. 44-1 p. 10)**, 43:14-44:11 **(Doc. 44-1 pp. 12)**, 115:22-117:2 **(Doc. 44-1 pp. 30-31)**).

11.     Spring Oaks adopted the use of these codes from the Consumer Data Industry Association compliance condition codes contained within the Credit Reporting Resource Guide.  (Ex. 1, Calko Dep. 170:22-171:12 **(Doc. 44-1 p. 44)**, 174:4-8 **(Doc. 44-1 p. 45)**); Ex. 2, Interrogatory Responses Nos. 5-7 **(Doc. 46-1 pp.5-6)**.

12.     The specific code chosen by Spring Oaks to signify that an account is disputed by a consumer is called the "XB" code.  (Ex. 1, Calko Dep. 46:3-4 **(Doc. 44-1 p. 13)**).

13.     Spring Oaks, having received Robinson's dispute letter, *initially* identified the letter as a consumer dispute and coded his account with the XB code which then communicated to TransUnion on October 7, 2022, that Robinson did, in fact, dispute the account.  (Ex. 1, Calko Dep. 115:22-117:21 **(Doc. 44-1 p. 30-31)**).

14.     Subsequent to having coded the account as disputed, Spring Oaks employees performed a routine, limited investigation of the dispute as part of its normal procedure, but *Spring Oaks then intentionally removed the XB code communicating to TransUnion that Robinson disputed the debt*.  Spring Oaks removed the XB code

knowing doing so would communicate to TransUnion that Robinson's disputed debt was no longer disputed.  (Ex. 1, Calko Dep. 94:1-10 **(Doc. 44-1 p. 25)**).

15.    Spring Oaks then added a different code, an "XH" code to communicate to TransUnion that Robinson's account was <u>previously in dispute</u> and that the dispute was <u>now resolved</u>. (Ex. 1, Calko Dep. 57:19-58:12 **(Doc. 44-1 p. 16)**, 62:9-15 **(Doc. 44-1 p. 17)**, 92:12-21 **(Doc. 44-1 p. 24)**.

16.    At no time did Robinson withdraw, alter, or cancel his dispute of the Spring Oaks debt. (Ex. 3, Robinson Dep. 60:5-61:12 **(Doc. 44-2 pp. 18-19)**.

17.    After changing these codes, Spring Oaks' tradeline on Robinson's TransUnion reports reported:

> "Account previously in dispute - now resolved.
> reported by credit grant[or]; >PLACED FOR COLLECTION<"

(Ex.1, Calko Dep. Ex. A-6: Excerpts from November 25, 2022, TransUnion Credit Report (Robinson v. Spring Oaks 000150, 202) **(Doc. 44-1, pp.99-100)**; Ex. 1, Calko Dep. Ex. A-7: Excerpts from July 28, 2023, TransUnion Credit Report (Robinson v. Spring Oaks 000004, 59-61) **(Doc. 44-1, pp.101-104)**; Ex. 1, Calko Dep. Ex. A-8: Excerpts from November 29, 2023, TransUnion Credit Report (Robinson v. Spring Oaks 000082, 119-120) **(Doc. 44-1, pp.105-107)**; Exhibit 4: Trans Union Credit Report dated 10/10/24 for Charles Robinson **(Doc. 47-1 p. 4)**.

18.    This tradeline reporting remained for a period from at least November 22, 2022, to as recently as October 10, 2024. (Ex. 1. Calko Dep. Ex. A-6 **(Doc. 44-1, pp.99-100)**; Ex. 4, **(Doc. 47-1 p. 4)**)

19.    Spring Oaks had the ability to allow the XB code to remain.  Doing so would continue to report the disputed debt as disputed.  (Ex. 1, Calko Dep. 58:5-59:17 **(Doc. 44-1 p. 16)**.

## **ARGUMENT**

**I.** **Spring Oaks violated § 1692e and § 1692e(8) of the FDCPA when it communicated account information to TransUnion that failed to report that Robinson's disputed debt was disputed when Spring Oaks knew Robinson, in fact, disputed the debt.**

   **a.   Legal authority relevant to the issue of whether Spring Oaks violated § 1692e and § 1692e(8).**

The issue for the Court to decide on Plaintiff's Motion for Partial Summary Judgment is whether Spring Oaks, knowing the debt was disputed, made a false, deceptive, or misleading representation by failing to communicate that Robinson's disputed debt was disputed when Spring Oaks continually updated Robinson's account information to TransUnion.

§ 1692e of the FDCPA prohibits a debt collector from using "...any false, deceptive, or misleading representations or means in connection with the collection of any debt." *Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1258 (11th Cir.

2014)(quoting 15 U.S.C., § 1692e).  This prohibition includes "[c]ommunicating or threatening to communicate to any person credit information which is known, or which should be known to be false, <u>including the failure to communicate that a disputed debt is disputed</u>."  15 U.S.C., § 1692e(8)(Emphasis added).

"Debt collectors violate § 1692e(8) when they report an alleged debt to credit reporting agencies but omit that the debtor disputes the debt." *Canady v. KAPS & CO (USA) LLC*, No. 4:20-cv-1253-CLM, 2021 WL 3492977, at \*4-5 (N.N. Ala. Aug. 9, 2021) (citing *Carlisle v. Nat'l Comm. Servs., Inc.*, 722 Fed. App'x 864, 869 (11th Cir. 2018)(unpublished); *Evans v. Portfolio Recovery Assocs., LLC*, 889 F. 3d 337, 349 (7th Cir. 2018); *Sayles v. Advanced Recovery Sys., Inc.*, 865 F. 3d 246, 249-50 (5th Cir. 2017); *Wilhelm v. Credico, Inc.*, 519 F. 3d 416, 418 (8th Cir. 2008).)

Where a consumer claimant establishes that a debt collector reported a debt to a reporting agency without reporting it as disputed after receiving a letter from the consumer disputing the debt, the consumer has established a prima facie case under § 1692e.  *Kirkland v. I.C. Sys.*, 6:23-cv-00050-LSC, at \*11 (N.D. Ala. June 6, 2024) (citing 15 U.S.C., § 1692e(8); *Canady*, at \*4. The FDCPA does not ordinarily require proof of intentional violation and is interpreted as a strict liability statute.  *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185 (11th Cir. 2010)(citing 15 U.S.C. § 1692k; *Ellis v. Solomon and Solomon, P.C.*, 591 F.3rd 130, 135 (2nd Cir. 2010); *Sparks v.*

*Phillips Cohen Associates, Ltd.*, 641 F. Supp. 2d 1234, 1243 (S.D. Ala. 2008) (citing *In re Cambron*, 379 B.R. 371, 374 (M.D. Ala. 2007).

A debt collector must follow reporting laws only if and when the debt collector chooses to so report.  15 U.S.C. §§ 1601-1693r, See *Kirkland v. I.C. Sys.*, Case No.: 6:23-cv-00050-LSC, at *10-11 (N.D. Ala., June 6, 2024).  This is to say, a debt collector has no statutory duty to proactively report, but it does have a § 1692e(8) duty to report truthfully if and when and when it does decide to credit report. If a debt collector learns of a dispute, it does not have a duty to proactively report this dispute to a credit reporting agency, nor does it have a duty to update or revise any reporting it made prior to the dispute.  But, if a debt collector learns of a dispute and should it then decide to report on the account to a credit reporting agency, it must accurately report the disputed debt as disputed.  See *Wilhelm v. Credico*, 519 v. F. 3d 416, 418 (8th Cir. 2008).

As such, a consumer's cause of action under § 1692e(8) follows a careful distinction.

A proper claim under § 1692e(8) does *not* allege that as soon as a debt collector knew that the plaintiff disputed a debt that the debt collector had to then proactively report the consumers' debt as disputed.

Rather, a proper claim under § 1692e(8) alleges that the debt collector knew that the plaintiff disputed a debt and that debt collector then decided at some point

to report on the disputed debt, the debt collector had to make sure it reported the disputed debt as disputed. *Kirkland*, at \*10-11, *Wilhelm*, at 418.

Whether the debt collector's knowledge of the dispute came directly from the consumer or from another source does not change the debt collector's § 1692e(8) obligations. "Indeed, the "knows or should know" standard of § 1692e(8) 'requires no notification by the consumer... and instead, depends solely on the debt collector's knowledge that a debt is disputed, regardless of how that knowledge is acquired.'" *Evans v. Portfolio Recovery Assocs., LLC*, 889 F. 3d 337, 347 (7th Cir. 2018) (quoting *Brady v. Credit Recovery Co., Inc.*, 160 F. 3d 64, 67 (1st Cir. 1998)); see also *Rusk v. Specialized Loan Servicing*, Case No. CV418-211, at \*26-27 (S.D. Ga. May 28, 2020) (relying on the *Evans* Court's analysis to hold that the consumer's verbal notification she disputed loan delinquency was sufficient for a jury to find she had disputed the debt pursuant to § 1692e(8).), *Scaife v. Nat'l Credit Sys.*, Case No.: 1:20-cv-00379-CLM, at \*10-11 (relying on the *Evans* Court's analysis in finding that a fact question existed as to whether the consumer disputed the debt to the debt collector who reported the debt without communicating that it was disputed.)

Once a debt collector acquires the knowledge that the consumer disputes the debt, the debt collector cannot shirk its § 1692e(8) responsibility by claiming that the knowledge was not acquired directly from the consumer. If, for example, a debt collector learns the debt is disputed from other sources, such as previous collectors,

the original creditor, in an answer to a lawsuit, or the consumer's attorneys, it must adhere to § 1692e(8).  *Evans*, at 347.  Nor must the consumer use exacting language to communicate that he or she disputes a debt, so long as a debt collector "should know" based upon the consumer's dispute, and so long as it is clear he or she does, in fact, take issue with the debt. *Id*.  There is no magic word requirement (e.g., "dispute") to communicate a dispute.

Likewise, a debt collector does not escape § 1692e(8) responsibility because the debt collector disagrees with, denies, or concludes that the dispute is without merit, substance, or lacks detail.  "**Nothing within the text of § 1692e(8) requires the debtor's dispute to be valid or reasonable before triggering § 1692e(8)'s protections**." *Scaife*, at *11 (citing *Evans*, 889 F 3d at 346-47.)(emphasis added)  A debt collector does not need to find the dispute valid or reasonable so long as the consumer simply makes it clear he or she disputes the debt.  *Evans*, at 347.

**b. Robinson's dispute letter clearly disputed the debt and Spring Oaks knew that the debt was disputed.**

Spring Oaks sent a collection attempt by mail on April 5, 2022, to Robinson for the collection of a single debt it claimed was past due and owing. On September 27, 2022, Robinson mailed the dispute letter via certified mail directly to Spring Oaks, which it received on October 3, 2022.  The dispute letter stated, in part, "I understand you are claiming that I owe you and/or your client money.  I'm <u>disputing</u>

this debt (and all other debts you claim that I have.)  You can find all the debts you claim to have on me - <u>I dispute them all</u>." (Emphasis added).

Spring Oaks employees, as part of its procedure for processing such consumer correspondences, read the dispute letter and understood that Robinson disputed the debt. Per the Spring Oaks Rule 30(b)(6) representative discussing Spring Oak's processing of Robinson's dispute letter:

> Q: Okay.  Looking on 10/3, this line right here (indicating). It says, form inbound written correspondence added.  What does that mean?
>
> A: [...] It's basically a section within the system to log that we logged, you know, some type of inbound correspondence from the consumer.
>
> Q: [...] what does that entry do different than the entry on the previous page where they documented written correspondence or written dispute?
>
> A: The dispute is specifically for logging disputes and identifying accounts as being disputed.  The inbound correspondence tab is filled out, you know, essentially for all types of correspondence. [...]
>
> Q: Okay.  And then so the line says above, disputed changed from false to true.  Tell me what that means.
>
> A: It means that the agent filled out the dispute form and the account was now identified and coded as disputed.
>
> Q: And would that result in the XB code being sent to the credit bureau the next time the credit report was updated.
>
> A: Yes.

Q:  Okay.  So all this happens on 10/3.  It looks like on 10/7, is that the next – that appears to be the next time the credit report was updated?

A: Yes.

Q: And so if we were able to pull the credit report on 10/8, it should show that the account is disputed; is that right?

[...]

A: The report was sent and created.  I don't know how quickly TransUnion would update the code.

(Calko Dep. 115:22-117:13)

Spring Oaks knew Robinson disputed the debt per his dispute letter.  It, accordingly, updated Robinson's account with an "XB" code to transmit a communication to TransUnion signifying that the account was disputed.

Spring Oaks was not required to update the credit report, but if and when *for each and every time* it decided on its own to do so, it was required to report it as disputed so long as the debt remained disputed.  Spring Oaks *initially* handled this correctly by marking the account as disputed but then, on a subsequently reporting, changed its reporting to represent that the account was no longer currently in dispute in violation of § 1692e(8). Spring Oaks by its own admission knows to report an account as disputed when a consumer disputes it and further knows how to do so.

- 16 -

And, it knows sending another code, such as XH, results in the removal of the account dispute by the credit bureaus.

At any stage, Spring Oaks had three choices in order to comply with the mandates of the FDCPA with regard to reporting on Robinson's debt account in response to having gained knowledge that Robinson disputed the debt.

**First**, Spring Oaks could have done nothing. There is no operation in law imposing a duty on a consumer debt collector to proactively report the status of a credit account to a credit reporting agency, including whether a consumer disputes the debt. Likewise, it had no obligation to update any prior reporting.

**Second**, it could have deleted the credit reporting altogether eliminating the presence of its tradeline and with it all reporting on the account from Robinson's TransUnion account.

**Third**, it could report Robinson's account information to TransUnion accurately by including in its reporting that Robinson disputed the debt.

Spring Oaks had options. It had choices. Nothing forced it to report or update the credit reporting. Robinson's dispute letter in no way placed Spring Oaks into some lose-lose predicament. Spring Oaks decided on its own volition, to report on the account. But in choosing to do so, it had to do so in a way that adhered to § 1692e(8). And while it did so initially, when it subsequently changed the codes and changed its reporting to remove the disputed designation, it violated § 1692e(8).

c. **Spring Oaks communicated to TransUnion, contrary to the truth, that Robinson no longer disputed the debt and that the dispute had been resolved.**

Soon after its initial reporting, Spring Oaks, having conducted its own limited investigation into the dispute as a part of its procedure in processing dispute investigations, then removed the XB code removing any reporting to TransUnion that Robinson disputed the debt. This removal of the dispute code falsely communicated to TransUnion that Robinson did not dispute the debt.

In addition to removing the dispute code, Spring Oaks also entered an XH code signifying to TransUnion that Robinson *previously* disputed the debt and that the dispute was <u>resolved</u>. The resulting tradeline for Spring Oak's account on Robinson's TransUnion report stated:

> "Account previously in dispute - now resolved.
> reported by credit grant[or]; >PLACED FOR COLLECTION<"

Nothing in Spring Oaks' reporting to TransUnion indicated that Robinson's disputed debt remained disputed. At no time did Robinson withdraw, cancel, alter, or resolve his dispute. At no time did Spring Oaks receive any indication or information from any other source that Robinson withdrew, canceled, altered, or resolved his dispute.

**d. Spring Oaks' failure to truthfully report that the disputed debt is disputed violated § 1692e and § 1692e(8) of the FDCPA.**

Nevertheless, Spring Oaks knew Robinson disputed the debt and, with that knowledge, voluntarily and falsely reported to TransUnion that Robinson no longer disputed the debt and that the dispute had been resolved. Spring Oaks removal and replacement of codes signified to and resulted in TransUnion reporting account information that was false, deceptive, and misleading in direct violation of the plain meaning of § 1692e as enumerated in § 1692e(8). Note, the present tense of the operative word "is" in § 1692e(8) stating "…including the failure to communicate that a disputed debt **is** disputed" requires reporting of nothing less than the then current dispute status at the time of reporting. § 1692e(8) (emphasis added). Spring Oaks' representation that the account was "previously in dispute", especially coupled with the false representation that the dispute was "now resolved", fails to communicate the then current dispute status of Robinson's dispute and conveys a false, deceptive, and misleading representation as to whether Robinson does or does not currently dispute the account. § 1692e.

While the FDCPA is largely interpreted as a strict liability statute, and § 1692e(8)'s knowledge requirement applies only as a condition precedent to the act of reporting, the undisputed facts show that Spring Oaks' failure to report the disputed debt as disputed was deliberate. Spring Oaks knew precisely what it had

learned from Robinson, i.e., that he disputed the debt.  Spring Oaks knew precisely what removal of the XB dispute code signified to TransUnion, i.e, that Robinson no longer disputed the debt.  And Spring Oaks knew precisely what the XH codes signified to TransUnion, i.e., that the account was previously in dispute and that the dispute had been resolved.

Again, it must be stated that Spring Oaks had a choice whether to report the account along with the accurate dispute status or not.  Spring Oaks cannot claim to be excused from § 1692e(8) because it was forced into a situation where it had to report on the account.  Spring Oaks cannot point to a lack of substance or validity within the dispute letter, as judged by its own investigation or otherwise, to excuse it from § 1692e(8).

Spring Oaks may not claim that any lack of control over its coding system excuses it from reporting anything that fails to adhere to § 1692e(8), whether it was just following industry standard codes or not.  (Especially when use of the industry standards is not compelled by law and so amounts to a voluntary adoption.)

If Spring Oaks felt that industry standards required it to violate § 1692e(8), there were simple litigation-free options available to Spring Oaks.

Delete the credit reporting.

Simply do not report at all.

But Spring Oaks wanted -- it demanded -- that credit reporting occur as it is a powerful tool to force consumers to pay. It was a part of the "lifecycle" of its "collection activity", in furtherance of collecting debts from consumers. (Calko Dep. 163:8-15). And it chose to violate the law, § 1692e(8). A consequence is this lawsuit and facing a jury on damages.

In summary, Spring Oaks had three options: to not report, to withdraw all reporting, or to report with the dispute.

It chose a fourth option. It chose to report an objective falsity, that the account was no longer disputed and that the dispute was resolved as part of its collection activity. And it did so in violation of § 1692e(8).

## II. Spring Oaks' Obligations Under § 1692e(8) of the FDCPA to Report the Account as Disputed Are Not Altered or Modified by § 1692g of the FDCPA.

The argument that dispute requirements found in § 1692g of the FDCPA modify or alter, or even negate, a debt collector's dispute obligations under the § 1692e(8) of the FDCPA has not been addressed by the Eleventh Circuit to the undersigned's knowledge, but has been directly argued, and rejected by the 7th Circuit. *Evans v. Portfolio Recovery Assocs*., LLC, 889 F. 3d 337 (7th Cir. 2018). *Evans* addressed such claims and arguments and flatly rejected a debt collector's efforts to subjugate § 1692e(8) to § 1692g. Subsequently, Eleventh Circuit District Courts have widely relied upon by the reasoning in *Evans* to hold that § 1692e(8)

and § 1692g are each different provisions with different requirements, and thus, one is not subjugated by the other[1].

The defendant in *Evans* argued that any dispute brought under a claim for violation of § 1692e(8) must necessarily have been disputed in accordance with § 1692g(b).  The Court disagreed:

> [t]o the extent §1692g(b) **defines 'disputed,' that definition applies only to the requirements of that provision and does not extend to § 1692e(8)**. *See Sayles*, 865 F.3d at 250 ("[ § 1692g(b)'s] debt dispute and verification requirements do not carry over to [ § 1692e(8) ] ...."); *Russell*, 763 F.3d at 392 ("Nothing in the text of the FDCPA suggests that a debtor's ability to state a claim under § 1692e is dependent upon the debtor first disputing the validity of the debt in accordance with § 1692g."); *Brady*, 160 F.3d at 66 ("Viewing the language of § 1692e(8) in the context of other provisions of the FDCPA, it makes logical sense to conclude that the meaning of 'disputed debt' in § 1692g(b) does not carry over to § 1692e(8).")" and concluding that even within the FDCPA itself different sections apply different standards and **"[g]iven the much more limited effect of [ § 1692e(8) ]," plaintiffs need not adhere to as many requirements to raise a dispute**. *Id.* ;*see also Hooks* , 717 F.3d at 286.

*Id.*at 347-48 (Emphasis added).

Spring Oaks cannot, therefore, argue that it did not need to comply with § 1692e(8) because Robinson's dispute letter did not comply with or was not submitted

---

[1] See also *Rusk v. Specialized Loan Servicing*, Case No. CV418-211, at *26-27 (S.D. Ga. May 28, 2020), *Scaife v. Nat'l Credit Sys.*, Case No.: 1:20-cv-00379-CLM, at *10-11,  *Canady v. KAPS & CO (USA) LLC*, No. 4:20-cv-1253-CLM, 2021 WL 3492977, at *4 (N.N. Ala. Aug. 9, 2021), *Valdes v. LVNV Funding LLC*, 6:21-cv-1438-RBD-EJK, at *4 (M.D. Fla. Nov. 2, 2023), *Lawson v. I.C. Sys., Inc.*, 3:18-cv-00083-AKK, at *16 (N.D. Ala. Jun. 17, 2019).

in accordance with § 1692g(b).  Per *Evans*, compliance with § 1692g does not gatekeep a claim under § 1692e(8).  *Id*.  Any argument claiming otherwise must likewise be rejected.

## CONCLUSION

There being no genuine dispute or issue of material fact, Plaintiff's Motion for Partial Summary Judgment is due to be granted finding as a matter of law that the Defendant, Spring Oaks, violated § 1692e and § 1692e(8) by failing to communicate that the Plaintiff's, Robinson's, disputed debt was disputed when it reported Robinson's alleged debt to TransUnion.  This reporting was false, deceptive, and misleading, as Robinson at all times disputed the debt.  Under the plain language of the FDCPA, failure to communicate to any person that a disputed debt is disputed, is a violation of § 1692e(8).

**WHEREFORE, PREMISES CONSIDERED**, the Plaintiff respectfully requests that this honorable Court grant Plaintiff's Motion for Partial Summary Judgment finding that the Defendant, Spring Oaks, violated § 1692e and § 1692e(8), and to proceed to jury trial on damages and on the Plaintiff's remaining claims against the Defendant.

Respectfully Submitted,

*/s/ M. Stan Herring*
**John G. Watts (WAT056)**
**M. Stan Herring (HER037)**
**W. James Sears (SEA036)**
WATTS & HERRING, LLC

The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 879-2447
(888) 522-7167 *facsimile*
stan@wattsherring.com
john@wattsherring.com
james@wattsherring.com

**Attorneys for Plaintiff**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **October 11, 2024,** a copy of the foregoing has been served on the following counsel for by using the CM/ECF system, U.S. Mail, postage prepaid and properly addressed and/or email to the email addresses below:

**John K Rossman**
ROSSMAN ATTORNEY GROUP PLLC
4628 Bruce Avenue
Edna, MN 55424
952-201-1507
Email: john.rossman@rossmanattorneygroup.com

**Neal D Moore , III**
CHRISTIAN AND SMALL LLP
505 20th Street North
Suite 1800
Birmingham, AL 35203
205-795-6588
Fax: 205-328-7234
Email: ndmoore@csattorneys.com

***Counsel for the defendant***
***Spring Oaks Capital, LLC***


*/s/ M. Stan Herring*
OF COUNSEL