## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER ROBINSON,** | ) | |
| | ) | **CIVIL ACTION NO.** |
| **Plaintiff,** | ) | **2:23-cv-01381-AMM** |
| | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **SPRING OAKS CAPITAL, LLC;** | ) | |
| **Fictitious Defendants "A", "B"** | ) | |
| **and "C",** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## DEFENDANT SPRING OAKS CAPITAL, LLC'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### Introduction

Plaintiff Christopher Robinson ("Plaintiff") seeks a "limited finding" that Defendant Spring Oaks Capital ("Spring Oaks") violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e and § 1692e(8), by making "false, deceptive, and misleading representations" to consumer reporting agency ("CRA") Trans Union as to whether Plaintiff's debt with Spring Oaks was "disputed." ECF 49, p. 3. Plaintiff further seeks a finding that Spring Oaks' alleged violation of the FDCPA was performed "knowingly and intentionally." *Id*. at 4. Plaintiff's motion relies on mischaracterizations of the facts and is unsupported by law.

1

## Table of Contents

**Introduction** ............................................................................1

Table of Contents ......................................................................2

Statement of Facts .....................................................................3

    A.    Spring Oaks Disputes Plaintiff's Statement of Facts ..............................3

    B.    Additional Undisputed Facts Requiring Denial of Plaintiff's Motion ...12

**Argument** ...............................................................................14

    I.    Standard of Law for Summary Judgment ..............................................14

    II.    Spring Oaks accurately reported Plaintiff's dispute. ............................16

    a.Spring Oaks is not liable for acts of Trans Union or annualcreditreport.com. ............................................................................................16

    b.Spring Oaks Accurately Reported Code XB to TransUnion. ............................................................................................19

    c.Spring Oaks Accurately Reported Code XH to TransUnion. ............................................................................................20

    d.Alternatively, Even if Spring Oaks Had Reported that the Dispute was "Previously" Disputed and Now "Resolved," Such Reporting Would Not Violate § 1692e(8). ............................................................22

**Conclusion** ............................................................................24

**Statement of Facts**

**A. Spring Oaks Disputes Plaintiff's Statement of Facts**

> **1. There is no evidence in the record as to whether Plaintiff's debt qualifies under 15 U.S.C. § 1692a(5).**

Plaintiff asserts, without any factual support, that the debt at issue was incurred for personal, family, and household expenses. ECF 49, at 6. In support of this threshold assertion, Plaintiff cites only to the Complaint which simply states the legal conclusion that the debt meets the statutory definition provided by 15 U.S.C. § 1692a(5). *Id.*; *see also* ECF 1-1, ¶9. In its Answer, Spring Oaks did not admit the allegation that the debt was incurred for personal, family, or household expenses. ECF 3, ¶9. Plaintiff cites no factual evidence or affidavit to support this claim. Indeed, there is no evidence in the record that Plaintiff's debts were incurred for personal, family, and household expenses. Plaintiff was asked about Paragraph 9 of the Complaint at his deposition. Defendant's counsel asked Plaintiff to explain, "what is meant" by the statement in the Complaint that the debt was incurred "primarily for personal, family, or household expenses," and Plaintiff testified that "I guess it [*sic*] referring to y'all saying I have a credit card through you, credit card debt." ECF 44-2, Def. Ex. B, Robinson Dep., p. 12 (34:10–20).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th

Cir. 1991). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice. But when it comes time for summary judgment, the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." *TocMail, Inc. v. Microsoft Corp*., 67 F.4th 1255, 1262–63 (11th Cir. 2023) (internal quotation marks, citations omitted).

Plaintiff reiterates the unsupported factual allegation about the nature of his debt throughout his Motion (*see, e.g.,* ECF 49, p. 3 ("…attempts to collect a consumer debt…"); p. 6, ¶2 ("…consumer debt account…"). Because Plaintiff has failed to meet his burden with respect to the fundamental question of whether the debt at issue qualifies under 15 U.S.C. § 1692a(5), Spring Oaks disputes this fact.

### 2. Plaintiff did not mail the dispute letter to Spring Oaks.

A short response to Plaintiff's statement of facts is complicated because Plaintiff overstates aspects of the basic facts. For example, Plaintiff claims that "Robinson mailed via certified mail a dispute letter … to Spring Oaks." ECF 49 at 6. In support, Plaintiff cites to his deposition testimony. *Id.* However, the cited testimony establishes that the letter was written and mailed, not by Robinson, but by his attorneys. ECF 44-2, p. 7 (Robinson Dep., 14:5–13).

Previous motion practice in this action has established that there may be a difference in legal obligations arising from disputes placed directly by consumers

and disputes placed on a consumer's behalf. *See* ECF 29, pp. 1–3. Accordingly, Spring Oaks objects to Plaintiff's inaccurate characterization of personally sending the dispute letter.

> ### 3. Plaintiff mischaracterizes the nature of Spring Oaks' investigation of his baseless dispute.

Plaintiff alleges, without any evidence, that the investigation conducted by Spring Oaks was "limited" and "routine." ECF 49 at 8. The citation provided for this paragraph contains no information about the nature of the investigation. *See* ECF 44-1, p. 25. The record does, however, contain the results of the investigation, which were communicated in writing to Plaintiff by Spring Oaks, and which include regular billing statements reflecting charges by Plaintiff on the account at issue and that the credit card statements on the account were mailed to Plaintiff at his address while the account was open. *See* ECF 44-1, pp. 58–63. Plaintiff implies the investigation into his dispute was superficial and thus Defendant could not in good conscious think the dispute was resolved.  Considering Plaintiff never provided any details about his dispute, or the basis thereof, an investigation that provided Plaintiff with his own credit card statements pertaining to the disputed debt is not fairly categorized as "limited."

### 4. Plaintiff misrepresents the record as to Spring Oaks' use of XB and XH reporting codes.

Plaintiff alleges that after investigating the dispute, Spring Oaks "*intentionally removed the XB code communicating to TransUnion that Robinson disputed the debt.* Spring Oaks removed the XB code knowing doing so would communicate to TransUnion that Robinson's disputed debt was no longer disputed." ECF 49, pp. 8–9 (emphasis in the original). Plaintiff further alleges that Spring Oaks then reported code XH "to communicate to TransUnion that Robinson's account was <u>previously in dispute</u> and that the dispute was <u>now resolved</u>." *Id*. at 9 (emphasis in the original). The deposition testimony cited by Plaintiff in support of these allegations does not support Plaintiff's claim.

Plaintiff cites the following testimony to support his claim that Spring Oaks knowingly caused TransUnion to report that the debt was "no longer disputed." *Id*. at 9, ¶14. However, the testimony does not support the claim:

```
25  Q.      And they -- the employees in this case, in
                                                    Page 93
 1  the Robinson case, used the XH code.  They didn't
 2  do that by accident, did they?
 3  A.      No.
 4  Q.      They did that intentionally as a part of
 5  their training, right?
 6  A.      The XH code is, I mean, that is a step
 7  that's outlined in the job aid.
 8  Q.      So it wasn't a mistake or an error to do
 9  that, right?
10  A.      Correct.
```

6

ECF 44-1, p. 25 (Calko Dep. 94:1–10). The testimony establishes that Spring Oaks "intentionally" reported the XB code when it received the written dispute and then reported the XH code upon completion of Spring Oaks' investigation. *Id*. The testimony does **<u>not</u>** establish, as Plaintiff represents, that Spring Oaks intentionally" or knowingly, communicated to Trans Union that the "debt was no longer disputed."

Contrary to Plaintiff's misrepresentation, there is no testimony to support the claim that Spring Oaks reported to Trans Union that Plaintiff's "debt was no longer disputed." Rather, the record makes clear that the XH code is reported by Spring Oaks when the account has been disputed and Spring Oaks has completed its investigation. *See* Calko Dep., ECF 44-1, 92:2–3; 92:13–18:

```
13   Q.        Right.  And Spring Oaks knows that that
14   code translates into account previously in dispute,
15   the data furnisher has completed its investigation,
16   correct?
17   A.        That's how it's defined in the compliance
18   condition code.
19   Q.        Correct.  And Spring Oaks knows that
20   that's how it's defined, right?
21   A.        Yes.
```

ECF 44-1, at 24. The Consumer Data Industry Association ("CDIA") guidelines clearly show that the XH code is defined with no reference to whether the debt is "no longer disputed," contrary to Plaintiff's allegations.

| Code | Description |
|------|-------------|
| XH | Account previously in dispute; the data furnisher has completed its investigation. (To be used for direct disputes under the FCRA, FDCPA disputes or FCBA disputes)<br><br>*Definition: Reported when the investigation of a dispute by the data furnisher was completed.* |

ECF 44-1, p. 171. Spring Oaks' deposition testimony confirms that, without further input from a consumer who previously disputed a debt, Spring Oaks does not, and indeed *cannot*, know whether the consumer continues to dispute the debt, or no longer disputes the debt, following Spring Oaks' investigation. ECF 44-1, p. 24 (Calko Dep., 92:2–3; 90:13–91:8).

Similarly, Plaintiff's claim that Spring Oaks uses the XH code to somehow communicate that a dispute is "now resolved" (see, e.g., ECF 49, pp. 9, 18, 19) is entirely unsupported by the record. In support of this allegation in his statement of facts, Plaintiff cites the following three sections deposition testimony, **none of which support the allegation**.

```
19  Q.       And as a part of that process, do they
20  select whether or how the code for the credit
21  reporting will be changed?
22           MR. ROSSMAN:  Objection.  Mischaracterizes
23  previous testimony.
24  A.       The agent selects a code to reflect that
25  the investigation was completed.  They may also
                                              Page 57
1   chose to select a code that the investigation was
2   completed and the consumer still disagrees.
3   Q.       And what is the name of that code?
4            MR. ROSSMAN:  Objection.  Foundation.
5   Q.       Let me make it a little clearer.  What is
6   the name of the code that updates I guess the
7   system that the investigation has been completed?
8   A.       As I mentioned it depends on other
9   factors.  There's two different codes to indicate
10  that the investigation has been completed.
11  Q.       Okay.  What are those codes?
12  A.       The codes are XH and XC.
```

ECF 44-1, p. 16 (Calko Dep., 57:19–58:12);

```
9   Q.       Do Spring Oaks' policies and procedures
10  require the agents after investigation to either
11  change the code on the account to XC or XH?
12  A.       Yes.
13  Q.       Okay.  And why is that?
14  A.       That signifies that our investigation is
15  complete.
```

*Id.* at p. 17 (Calko Dep., 62:9–15);

```
12   A.      Spring Oaks reports a code, XH.
13   Q.      Right.  And Spring Oaks knows that that
14   code translates into account previously in dispute,
15   the data furnisher has completed its investigation,
16   correct?
17   A.      That's how it's defined in the compliance
18   condition code.
19   Q.      Correct.  And Spring Oaks knows that
20   that's how it's defined, right?
21   A.      Yes.
```

*Id*. at p. 24 (Calko Dep., 92:12–21). The evidence relied upon by Plaintiff does not show that Spring Oaks reported the dispute was "now resolved." Spring Oaks reported – truthfully – that its investigation was complete. The language "now resolved" may appear in Plaintiff's credit report, but not because of Spring Oaks.

Though there is no evidence <u>supporting</u> Plaintiff's claims Spring Oaks reported the dispute as "now resolved", there is clear evidence in the record <u>to the contrary</u>, showing the "now resolved" language Plaintiff objects to did not originate with Spring Oaks. Spring Oaks' corporate representative testified clearly that Spring Oaks reported "a code, not words" to Trans Union (ECF 44-1, p. 5, Calko Dep., 14:25) and that "Spring Oaks just reports the code, the XH. It does not report any language or tell TransUnion or annualcreditreport.com what language to use." *Id*. at 44, Calko Dep., 169:25–170:3. "Spring Oaks doesn't dictate the language that's in the credit report." *Id*., Calko Dep., 172:16–17. Plaintiff's counsel specifically inquired about the language "now resolved" appearing on Plaintiff's credit report, and Spring Oaks testified clearly and definitively that "Spring Oaks did not dictate

that language. We used an XH code to indicate that the investigation was complete."
*Id.* at 45, Calko Dep., 175:6–10.

Therefore, Plaintiff's allegations that Spring Oaks used the XH code knowing that doing so "would communicate to TransUnion that Robinson's disputed debt was no longer disputed" or that the dispute is "now resolved" is not supported by the evidence cited by Plaintiff or any other evidence in the record. Plaintiff's overstatement of this matter, or confusion about it, cannot substitute for a genuine dispute of material fact.

### 5. There is no evidence that Spring Oaks removed the "disputed" designation from Plaintiff's account.

Plaintiff admits that Spring Oaks correctly reported that his account was disputed but alleges that Spring Oaks subsequently "changed its reporting to remove the disputed designation." ECF 49, p. 17. This allegation is unsupported by the record. Spring Oaks reported codes XB and XH, as discussed above, but never reported code XR, which is defined by the CDIA guidelines as follows:

| | if applicable. |
|---|---|
| XR | Removes the most recently reported Compliance Condition Code<br><br>**Important Note: Do not use XR as a default code. If no Compliance Condition Code applies in the current reporting period, blank fill this field.** |

ECF 44-1, p. 171. Spring Oaks never reported XR, and never "remove[d] the disputed designation." Contrary to Plaintiff's allegation that reporting XH operated

to "remove[] any reporting to TransUnion that Robinson disputed the debt[,]" ECF 49, p. 18) the XH code explicitly includes an acknowledgement of the dispute.

| Code | Description |
|------|-------------|
| XH | Account previously in dispute; the data furnisher has completed its investigation. (To be used for direct disputes under the FCRA, FDCPA disputes or FCBA disputes) <br><br> *Definition: Reported when the investigation of a dispute by the data furnisher was completed.* |

ECF 44-1, p. 171. Plaintiff's claim that reporting XH "remov[es] any reporting to TransUnion that Robinson disputed the debt" is simply incorrect.

**B. Additional Undisputed Facts Requiring Denial of Plaintiff's Motion**

**1. Spring Oaks did inform Trans Union that Plaintiff's debt was disputed.**

It is an undisputed fact that Spring Oaks reported code XB to Trans Union. ECF 44-1, pp. 30–31 (Calko Dep., 116:21–117:2). By reporting code XB, Spring Oaks signified that Plaintiff's "[a]ccount information has been disputed by the consumer directly to the data furnisher...the data furnisher is conducting its investigation."

| | | |
|------|-------------|---|
| XB | Account information has been disputed by the consumer directly to the data furnisher under the Fair Credit Reporting Act (FCRA); the data furnisher is conducting its investigation. <br><br> *Definition: Reported when the completeness or accuracy of the account information is disputed directly to the data furnisher by the consumer under the FCRA and investigation of the dispute is in progress by the data furnisher.* <br><br> *Code XB should be reported for FDCPA disputes.* <br><br> **Important Note: Code XB should no longer be reported after the investigation is completed; the XB should be removed by reporting the removal code or changed to another code.** | |

ECF 44-1, p. 169; *see also* ECF 49, Plaintiff's Brief, p. 8 ("Spring Oaks, having received Robinson's dispute letter, *initially* identified the letter as a consumer dispute and coded his account with the XB code which then communicated to TransUnion on October 7, 2022, that Robinson did, in fact, dispute the account.")

This undisputed fact necessitates the denial of Plaintiff's motion for partial summary judgment, because it establishes that Spring Oaks complied with the requirements of 15 U.S.C. § 1692e(8), and that Spring Oaks did **not** fail to communicate that a disputed debt was disputed. Since Plaintiff seeks summary judgment solely on the basis that Spring Oaks allegedly failed to communicate that Robinson's debt was disputed (see ECF 49, p. 23), Plaintiff's motion for summary judgment should be denied in its entirety.

## 2. Spring Oaks' reporting was true, accurate, and not misleading.

Upon receiving the dispute letter written and mailed by Plaintiff's attorneys, that did not reference any honest basis for Plaintiff's dispute, Spring Oaks reported code XB to Trans Union.

| | |
|---|---|
| XB | Account information has been disputed by the consumer directly to the data furnisher under the Fair Credit Reporting Act (FCRA); the data furnisher is conducting its investigation.<br><br>*Definition: Reported when the completeness or accuracy of the account information is disputed directly to the data furnisher by the consumer under the FCRA and investigation of the dispute is in progress by the data furnisher.*<br><br>*Code XB should be reported for FDCPA disputes.*<br><br>**Important Note: Code XB should no longer be reported after the investigation is completed; the XB should be removed by reporting the removal code or changed to another code.** |

ECF 44-1, p. 169.

Spring Oaks investigated Plaintiff's dispute and confirmed that its files were accurate. In accordance with the industry standards laid out in the CDIA manual, including the "important note" associated with code XB, instructing that the XB code should no longer be reported after the investigation is completed, Spring Oaks updated the code to XH, signifying that Spring Oaks had completed its investigation of Plaintiff's dispute.

| Code | Description |
|------|-------------|
| XH | Account previously in dispute; the data furnisher has completed its investigation. (To be used for direct disputes under the FCRA, FDCPA disputes or FCBA disputes)<br><br>*Definition: Reported when the investigation of a dispute by the data furnisher was completed.* |

ECF 44-1, p. 171.

Spring Oaks' reporting was entirely compliant with industry standards, and was truthful, accurate, and not misleading. Plaintiff disputed the account. The investigation was over. These facts necessitate the denial of Plaintiff's motion for partial summary judgment.

## Argument

## I.    Standard of Law for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it could "affect the outcome of the suit under the governing law." *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1303 (11th Cir. 2016) (internal quotation marks omitted). Accordingly,

a genuine dispute of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[T]he moving party has the burden of demonstrating that there are no genuine issues of material fact[.]" *Paylor v. Hartford Fire Ins.*, 748 F.3d 1117, 1121 (11th Cir. 2014). In determining whether the movant has met this burden, courts view the evidence in the light most favorable to the non-moving party. *See Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1263–64 (11th Cir. 2010). The court must draw all reasonable inferences in the non-movant's favor. *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc); *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011).

The nature of a summary judgment movant's burden varies depending on which party would bear the burden of proof on a disputed issue at trial. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). "When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial." *Baker v. Upson Reg'l Med. Ctr.*, 94 F.4th 1312, 1317 (11th Cir. 2024) (quoting *Four Parcels of Real Prop.*, 941 F.2d at 1438). That is, the moving party must demonstrate that, on all the essential elements on which it bears the burden of proof at trial, no reasonable jury

could find for the nonmoving party. *Baker*, 94 F.4th at 1317 (citing *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991)).

Here, Plaintiff is the moving party and has the burden of proof at trial, and therefore, must make an affirmative showing that no reasonable jury could find for Spring Oaks. Such a showing is impossible on the record before the Court.

## II.    Spring Oaks accurately reported Plaintiff's dispute.

### a.    Spring Oaks is not liable for acts of Trans Union or annualcreditreport.com.

Plaintiff's claim arises from 15 U.S.C. § 1692e(8), which prohibits the "failure to communicate that a disputed debt is disputed." *Id*. Determining whether a violation of § 1692e(8) occurred in this instance depends entirely on the substance of the communication from Spring Oaks to TransUnion. The statute prohibits Spring Oaks from "communicating" false information or failing to communicate that a debt is disputed. In Plaintiff's words, "when a debt collector chooses to update, report, or furnish, i.e., communicate, any information about an account, it must do so truthfully and in accordance with § 1692e and § 1692e(8)." ECF 49, p. 5. The statute does not assign any liability to Spring Oaks for what information TransUnion may report to annualcreditreport.com or what annualcreditreport.com publishes or makes available to the consumer. Plaintiff attempts to obscure this distinction, and his claim is reliant on allegations about the words that ultimately appeared on his Trans Union

credit reports, which were obtained through annualcreditreport.com. *See* ECF 49, p.9, ¶¶17–18.

15 U.S.C. § 1692e(8) also does not require that a data furnisher report the dispute in perpetuity. Rather, the language of the statute merely requires that the dispute be reported, which Spring Oaks did by using both the XB and XH codes. *See* 15 U.S.C. § 1692e(8); *see also Foster v. AFNI, Inc.*, No. 2:18-CV-12340-TGB, 2020 WL 1531651, *6 (E.D. Mich. Mar. 31, 2020) (finding no authority for the proposition that single dispute letter "should operate in perpetuity, despite action and response" from debt collector); *Wood v. Sec. Credit Servs., LLC*, No. 20 C 2369, 2023 WL 3614919, *4 (N.D. Ill. May 23, 2023) (appeal pending in 7th Cir., Case No. 23-2071) ("*Wood v. SCS*") (finding no authority for claim that "debt collector's obligation to report a debt as disputed lasts indefinitely").

The "truthfulness" of Sping Oaks reporting must be based on what it actually reported to the CRA, not on what the CRA (or annualcreditreport.com) then decides to put in Plaintiff's report. The evidence in the record establishes that Spring Oaks communicated two pieces of information to TransUnion: the dispute code "XB," and the dispute code "XH." There is a material distinction between Spring Oaks' communication to TransUnion and the information ultimately published by TransUnion or annualcreditreport.com. There is no basis for the assumption that the content of a credit report comes directly from a creditor. For example, consumer

reporting agencies commonly misreport consumer information as a result of 'mixed files,' which occur when credit information relating to one consumer is mistakenly placed in the file of another. *See TransUnion LLC v. Ramirez,* 594 U.S. 413, 417, 141 S. Ct. 2190, 2200, 210 L. Ed. 2d 568 (2021). Thus, Plaintiff's purported credit report from annualcreditreport.com is insufficient evidence of what Spring Oaks communicated to TransUnion.

Even in the absence of a mistake like a 'mixed file,' it is clear that the consumer reporting agencies may add, subtract, or alter information presented by data furnishers. Here, the unrefuted evidence shows that Spring Oaks communicated only the dispute codes XB and XH to TransUnion. Trans Union and/or annualcreditreport.com apparently added "remarks" to Spring Oaks' reporting, and those precise "remarks" are what Plaintiff's entire suit is about.

Spring Oaks cannot be liable for such editorializing. Spring Oaks' use of the XB and XH codes was aligned with the industry standard use of these codes as defined by the CDIA. Any alleged error in the content that ultimately appears on the annualcreditreport.com report was introduced either by TransUnion or by annualcreditreport.com. But there is no evidence Spring Oaks introduced the "resolved" language so the undisputed facts relied on by Plaintiff are importantly wrong. Plaintiff's failure of proof on this question is grounds for denying summary

judgment for Plaintiff.  To the contrary, it is a basis to grant summary judgment for Spring Oaks.

### b.  Spring Oaks Accurately Reported Code XB to TransUnion.

The undisputed evidence in this case, consisting of testimony from Spring Oaks's corporate representative and business records, conclusively establishes that Spring Oaks received the Communication purporting to be from Plaintiff on October 3, 2022 and updated its internal reporting system that same day to reflect a dispute. ECF 1-1, ¶15; ECF 44-1, p. 29 (Calko Dep., p. 111:1–3); ECF 44-1, p. 30–31 (Calko Dep., p. 116:21–117:6); ECF 44-1, p. 73–74 (Account Notes). Just four days later, on October 7, 2022, Spring Oaks communicated dispute code "XB" to TransUnion. ECF 44-1, p. 30–31 (Calko Dep., p. 116:24–117:7); ECF 44-1, p. 73–74 (Account Notes). Following the guidelines established by the CDIA, Spring Oaks reports dispute code XB "when the completeness or accuracy of the account information is disputed…and investigation of the dispute is in progress[.]" ECF 44-1, p. 169.

By reporting dispute code XB to TransUnion, Spring Oaks accurately reflected the status of the account and communicated to TransUnion that the account was disputed. Other courts considering similar allegations and factual circumstances have found that reporting dispute code XB "plainly mark[s]" the account as disputed and therefore complies with § 1692e(8). *See Davis v. Nationwide Collection Agencies, Inc., No. 17-13618, 2018 WL 3020440, at \*2 (E.D. Mich. June 18, 2018);*

*Burns v. Keybridge Med. Revenue Care*, No. 2:20-CV-12732, 2021 WL 3089247, at *2 (E.D. Mich. July 22, 2021)*; *Foster*, No. 2:18-CV-12340-TGB, 2020 WL 1531651, *6; *Fulton v. Equifax Info. Servs., LLC*, No. 15-14110, 2016 WL 5661588, at *3 (E.D. Mich. Sept. 30, 2016).

### c. Spring Oaks Accurately Reported Code XH to TransUnion.

Spring Oaks investigated Plaintiff's dispute and informed Plaintiff that it had reviewed the dispute, confirmed that Plaintiff was the "correct consumer listed for this account," and that the amount owed on the account was correct. ECF 44-1, p. 56. Spring Oaks then updated its reporting to TransUnion by reporting code XH, defined by the CDIA to be reported "when the investigation of a dispute by the data furnisher was completed." *Id.* at 171; *id.* at 44 (Calko Dep., p. 171:18–20). "The XH code is a dispute code that indicates that the data furnisher, Spring Oaks, has completed its investigation." *Id.* at 24 (Calko Dep., p. 91:6–8).

The July 28, 2023 annualcreditreport.com report produced by Plaintiff shows that the Spring Oaks account was updated on July 21, 2023. ECF 44-1, p. 103. The July 28, 2023 report includes the language that Plaintiff contests in this litigation, found in the "remarks" section of the report: "Account previously in dispute-now resolved. reported by credit grant; >PLACED FOR COLLECTION<" [*sic*]. *Id.*

The undisputed evidence in this case establishes that at no time did Spring Oaks communicate that the dispute was "now resolved" or "no longer disputed."

Spring Oaks "did not dictate that language" but simply "used an XH code to indicate that the investigation was complete." *Id.* at 45 (Calko Dep., p. 175:6–10). Spring Oaks "just reports the code, the XH. It does not report any language or tell TransUnion or annualcreditreport.com what language to use." *Id.* at 44 (Calko Dep., p. 169:25–170:3). Spring Oaks does not dictate the verbiage used by TransUnion or annualcreditreport.com in the "remarks" section of a consumer's credit report. *Id.* (Calko Dep., p. 170:9–10; 172:16–17. Plaintiff has presented no evidence supporting his allegation that Spring Oaks communicated to TransUnion that Plaintiff's <u>dispute</u> was resolved, just that its <u>investigation</u> was over. This truthful reporting complies with the requirements of 15 U.S.C. 1692e(8). *See Harris v. The Bureaus*, No. 1:20-cv-297-MHC-LTW, 2021 WL 7708311 at *2 (N.D. Ga. January 14, 2021).

In examining a similar situation, the United States District Court in the Eastern District of Michigan has found that it is appropriate to remove the XB code and report the XH code after completing the investigation of a consumer dispute. In *Foster*, 2020 WL 1531651, the court observed that the CDIA guidelines "expressly state that XB should no longer be reported after the investigation is complete" and rejected the plaintiff's argument that removing the XB code was a violation of § 1692e(8). *Id*. at *7. The *Foster* court found that use of the XH code after the debt collector completed its investigation was accurate and appropriate based on the guidance from the CDIA. *Id*. The court observed that the "description for code 'XH'

includes nothing about whether the debtor agrees with the outcome or acquiesces to the debt." *Id*.

**d. Alternatively, Even if Spring Oaks Had Reported that the Dispute was "Previously" Disputed and Now "Resolved," Such Reporting Would Not Violate § 1692e(8).**

The evidence demonstrates that Spring Oaks reported the CDIA codes XB and XH to TransUnion and that the language in the annualcreditreport.com report about which Plaintiff complains was not dictated by, or transmitted to TransUnion by, Spring Oaks. However, even if Spring Oaks had communicated the language that the dispute was "previously disputed" and "now resolved," such a communication would not violate § 1692e(8).

Spring Oaks investigated and responded to Plaintiff's dispute by providing him with documentation supporting the debt and informing him that they had validated the debt. ECF 44-1, p. 56. Plaintiff did not respond to Spring Oaks's validation letter. In light of Plaintiff's failure to respond, Spring Oaks did not, and could not, have knowledge that Plaintiff continued to dispute the debt after Spring Oaks provided validation. Plaintiff has presented no authority that would suggest that a dispute, once it is investigated and validated, continues to operate indefinitely in the absence of any response from the consumer.

The *Foster* court reached the same conclusion, noting no authority for the plaintiff's proposition that a singular dispute letter which "notably, does not

specifically dispute the debt … should operate in perpetuity, despite action and response" by the defendant debt collector. *Foster*, No. 2:18-CV-12340-TGB, 2020 WL 1531651 at *7. As the court notes in *Foster*, this position is "untenable, and contrary to the purpose of § 1692e(8) of the FDCPA[.]" The court held that "on this record, Defendant could not have had knowledge that Plaintiff disputed the outcome of its investigation." *Id*.

Other courts agree. In *Wood v. SCS*, 2023 WL 3614919, the district court stated that it was not aware of any cases "that hold that once a debtor disputes a debt, the debt collector's obligation to report a debt as disputed lasts indefinitely." *Id.* at *4. Following *Foster*, the *Wood v. SCS* court held that "when a debt collector investigates a dispute and communicates the results to the consumer, the dispute is resolved unless the consumer indicates that it disagrees with the results." *Id*. Cases where the consumer attempts to perpetuate a dispute through silence are distinguishable from *Wood v. Credit One Bank*, 277 F. Supp. 3d 821 (E.D. Va. 2017) ("*Wood v. Credit One*"), where the consumer continued to submit disputes (six separate disputes, alleging fraud, within the span of 74 days). In *Wood v. Credit One*, the district court held that the use of the XH code was misleading, because the consumer continued to dispute the debt and dispute the results of Credit One's investigation. *Id*. at 854. Such is not the case here.

Moreover, does it not make more sense that validation of the debt, which in this case included copies of Plaintiff's credit card statements, means the dispute <u>is</u> resolved, as opposed to the assumption that the dispute persists even in the face of contrary facts?  The Defendant submits the purpose of disputes under the FDCPA is to have the right amount collected from the right person.  A debtor can and should dispute a debt when the debtor believes it has been paid, or that the debt is not his.  The collector has no interest in pursuing a paid debt or pursing the wrong party.

 Mutual interests are served by a good faith dispute.  If the debtor has an honest doubt about the debt, and the verification showed it was his, would this not resolve the dispute?  Why would the debtor continue to maintain a pointless, baseless, or even false dispute?  And, if the debtor opts for this dishonest option, he should at least say so, rather than just assume the collector must anticipate he will continue to protest a verified debt.  So if Spring Oaks <u>had</u> reported the dispute as resolved, why would this be false in the absence of the debtor reasserting an honest dispute?  But the Court need not answer this somewhat rhetorical, yet very telling, question, to deny Plaintiff's summary judgment because Spring Oaks did not say the dispute was "resolved" regardless.

## Conclusion

Spring Oaks did report that Plaintiff's account was disputed. Spring Oaks' reporting of the dispute was truthful, accurate, and consistent with industry

standards. Plaintiff's objections to the language used by Trans Union and annualcreditreport.com do not create liability for Spring Oaks, and Plaintiff is not entitled to partial summary judgment.

Respectfully submitted,


/s/ Neal D. Moore, III
Neal D. Moore, III
*Attorney for Defendant,*
*Spring Oaks Capital, LLC*


**OF COUNSEL:**
CHRISTIAN & SMALL, LLP
505 20th Street, Suite 1800
Birmingham, Alabama 35203
ndmoore@csattorneys.com


/s/ John K. Rossman
John K. Rossman
*Attorney for Defendant (Admitted Pro Hac Vice)*
*Spring Oaks Capital, LLC*


**OF COUNSEL:**
ROSSMAN ATTORNEY GROUP, PLLC
4628 Bruce Avenue
Edina, Minnesota 55424
John.rossman@rossmanattorneygroup.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 1, 2024, a copy of the foregoing document

has been served via electronic filing to the following:

John G. Watts
M. Stan Herring
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
john@wattsherring.com
stan@wattsherring.com

Patricia S. Lockhart
McCarthy Law, PLC
5723 Annandale Lane
Irondale, Alabama 35210
patricialockhartlaw@gmail.com


/s/ Neal D. Moore, III
OF COUNSEL

4363613.1