FILED
2024 Nov-15  PM 04:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **CHRISTOPHER ROBINSON** ) | |
| ) | |
| **Plaintiff,** ) | **CIVIL ACTION NO.:** |
| ) | |
| **v.** ) | **2:23-CV-01381-AMM** |
| ) | |
| **SPRING OAKS CAPITAL, LLC, et. al.** ) | |
| ) | |
| **Defendant.** ) | |

## PLAINTIFF'S REPLY TO DEFENDANT SPRING OAK CAPITAL, LLC'S, OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**COMES NOW**, the Plaintiff, CHRISTOPHER ROBINSON, ("Robinson" or "Plaintiff") by and through the undersigned counsel, and hereby replies to Defendant Spring Oaks Capital, LLC's ("S/O" or "Defendant") Opposition to Plaintiff's Motion for Partial Summary Judgment.

## <u>INTRODUCTION</u>

This case is a simple straightforward question of whether S/O failed to report Robinson's disputed debt as disputed. S/O failed to show that there is a genuine dispute as to the material fact that S/O's removal of XB code changed its reporting to TransUnion from disputed to not disputed. This alone is on its face a violation of § 1692e(8). S/O also failed to show that there is a genuine issue of material fact that

S/O's addition of the XH code falsely reported to TransUnion that the account was previously in dispute and now resolved. As such, Plaintiff's Motion for Partial Summary Judgment is, respectfully, due to be granted.

This case is not about who wrote the dispute letter or whether the dispute letter contained specifics as to the nature of the dispute. This case is not about whether or not S/O conducted an investigation, the extent or result of such investigation, or whether S/O sent Robinson any correspondence about an investigation. Nor is this case is about whether S/O followed its own industry's guidelines.

## FACTS

### A. Robinson's reply to Spring Oaks' dispute of Robinson's Statement of Facts.

**Spring Oak's dispute:** There is no evidence that Robinson's debt qualifies as a consumer debt under FDCPA. (ECF 53, *3)

**Robinson's Reply:** Courts are obligated to construe consumer protection statutes broadly in favor of consumers including whether a debt is within the meaning of the FDCPA. *Agrelo v. Affinity Management Services, LLC*, 841 F. 3d 944, 950 (11th Cir. 2016)(recognizing the Eleventh Circuit's broad interpretation of a debt under the FDCPA.)

Robinson denies that the credit card was his and explained his factual basis for why the alleged debt was the result of unsolved identity theft. ECF 44-2, p. 6,

11:24-12:12; EFC 44-2, p.7-8, 16:7-18:12.  In instances of unsolved identity theft, a consumer could never have firsthand knowledge of the purpose of primary use of the debt.  This inability to prove the primary purpose  "...would create an obstacle for plaintiffs that would 'contravene both the plain meaning and purpose of the FDCPA.'"  *Woodward v. O'Brien*, 415 F. Supp. 3d 794, 798 (S.D. Ohio 2019)(denying debt collector summary judgment based on plaintiff's inability to prove primary purpose of debt which plaintiff stated resulted from identity theft.)(internal citations omitted).  Additionally, S/O's April 5, 2022, written collection attempt to Robinson identified itself as a debt collector and advised the notice was an attempt to collect a debt in compliance with § 1692e(11).  ECF 44-1, p. 64. S/O would not have included this statement if the debt did not qualify within the meaning of the FDCPA.  See *Woodward*, at 798. (finding that the debt collector's written notice stating it was "an attempt to collect a debt" was meant to comply with the FDCPA and thus was evidence that the debt itself was within the meaning of the FDCPA.)

**Spring Oak's dispute:**  The letter was written and mailed, not by Robinson, but by his attorneys.  ECF 53, p. 4.

**Robinson's Reply:** The Plaintiff was always forthcoming to both the Defendant and to this Court about the origin of Robinson's dispute letter.  ECF 46, p. 6, ¶ 3, citing ECF 44-2, p.7, 13:23-14:13.  The Plaintiff made it clear that his attorneys drafted the

letter and he approved it. ECF 44-2, p.7, 13:23-14:22.  The Defendant tries to generate a scandal here - that a law firm assisted a client with a letter, an act the Defendant itself no doubt has availed itself of in its communications with its hundreds of thousands of consumer debtors over the year of 2022 alone (Doc. 44-1, p. 28, 105:23-106:17).  This factual gripe has no impact on Defendant's legal duty to adhere to § 1692e(8).  The closest the Defendant comes to explaining any legal impact is its passing reference to its previous motion practice where it made the *now abandoned* attempt to define the Plaintiff's law firm as a "Credit Repair Organization" under the FCRA in an incorrect attempt to conflate its dispute obligations under the FCRA and the FDCPA as a way to sidestep liability.  ECF 53, p. 4; ECF 26.

The source of a debt collector's knowledge of a consumer's dispute does not alleviate a debt collector from its § 1692e(8) obligations.  *Evans v. Portfolio Recovery Assocs., LLC*, 889 F. 3d 337, 347 (7th Cir. 2018) (holding that "Indeed, the "knows or should know" standard of § 1692e(8) '... depends solely on the debt collector's knowledge that a debt is disputed, regardless of how that knowledge is acquired.'")(internal citations omitted).  Defendant's accusation that the Plaintiff is playing hide-the-ball is not only wrong, but shows the lack of merit in its arguments as a whole.

**Spring Oak's dispute:** Plaintiff mischaracterizes the nature of S/O investigation of Plaintiff's "baseless" dispute as "limited" and "routine". ECF 53, p. 5.

**Robinson's Reply:** The investigation was certainly limited and most definitely routine. S/O's dispute investigation process is outlined by its own written procedures. ECF 44-1, p. 10, 34:19-38:4. Nothing in the record indicates its investigation into the dispute went beyond this procedure - so the investigation was, quite simply, routine. The scope and methodology of the investigation was limited to comparing information in the dispute letter to information from the Defendant's own "system of record". ECF 44-1, p. 15, 53:11-54:3.

And while the investigation was routine and limited, it is wrong for the Defendant to say that Robinson's dispute was "baseless". ECF 53, p.5. Robinson explained in factual detail his basis that the alleged debt was the result of identity theft. ECF 44-2, p. 6, 11:24-12:12; EFC 44-2, p.7-8, 16:7-18:12.

**Spring Oak's disputes:** The Plaintiff misrepresents S/O's use of the XB and XH reporting codes. ECF 53, p.6. The "testimony" establishes that S/O reported the XB code and then reported the XH code when it completed its investigation. ECF 53, p. 7. The "testimony" does "**not**" establish that S/O intentionally or knowingly communicated to TransUnion that the debt was no longer disputed. *Id*. (Emphasis original).

**Robinson's Reply:** There is no misrepresentation.  The record clearly and decisively establishes the undisputed facts that the Defendant added the XB code that reports the debt as disputed, reported it, but then removed the XB code, and then reported it as not disputed.  *Removal of the XB code and then reporting alone was a violation of § 1692e(8)*.  The record also decisively establishes that S/O's reporting the XH code communicated that the debt was "previously in dispute", i.e., no longer in dispute, which was false *and also is a violation of § 1692e(8)*.

First, the "XB" code was S/O's method to communicate to TransUnion that the debt was disputed by the consumer. This is firmly established by the record.  ECF 44-1, p. 13, 45:7-25; ECF 44-1, p. 13, 46:1-4; ECF 44-1, p. 13, 47:3-7.

Secondly, S/O added this XB code to Robinson's account.  S/O, in reviewing and referring to Robinson's account notes, testified that Robinson's account notes confirmed this. ECF 44-1, p. 30, 116:18-117:2 (referring to ECF 44-1, p. 73). The account notes showed:

| | |
|---|---|
| 10/3/2022 12:49 | Disputed changed from [false] to [true] |

ECF 44-1, p. 73.

Thirdly, after its investigation was complete, S/O replaced the XB code with the XH code as reflected in S/O's account notes:

| | |
|---|---|
| 10/31/2022 9:09 | Dispute Resolved XH - Previously in dispute, now resolved, reported by CR |

ECF 44-1, p. 73.

This *XH* code indicated to *S/O* the *XH* code's exact meaning relayed to *TransUnion;* that the "Dispute [was] resolved", that the account was "Previously in dispute", i.e., no longer disputed, ceasing to be, expired, this is an ex-dispute, that the dispute is, again, "now resolved", and that this dispute status *will be* or is *to be* "reported by [credit reporter]" - the auxiliary verb "will be" or, alternately, "to be", easily being interpreted into the obvious context of the shorthand entry that the reporting of the XH code only occurs *after* S/O's entry of the XH code.

Fourthly, S/O confirmed it was its policy to remove the XB code after completion of an investigation. ECF 44-1, p. 17, 62:9-15; EFC 44-1, p. 21, 78:9-12.

And the notes then confirm *immediately* after entry of the XH code, removal of the XB code:

| 10/31/2022 9:09 | Disputed changed from [true] to [false] |
|---|---|

ECF 44-1, p. 73.

And finally, this false dispute status was, along with the addition of the false and inaccurate XH code, reported to TransUnion, by S/O thereby violating § 1692e(8):

| 11/4/2022 6:36 | Debt reported to Credit Bureaus |
|---|---|

ECF 44-1, p. 72.

**Spring Oak's dispute:**   There is no evidence that S/O removed the "disputed" designation from Plaintiff's account. ECF 53, p. 11.

**Robinson's Reply:** There is absolutely evidence that S/O removed the "disputed" designation from Robinson's account. This incorrect contention is addressed largely *supra*. S/O's policies and procedures are to change the codes, including the XB code, after an investigation to either XH or XC. ECF 44-1, p. 17, 62:9-15, p. 21, 78:9-12. The "disputed designation", i.e., the XB code was removed on October 31, 2022, at 9:09. ECF 44-1, p. 73. The October 31, 2022, entry, "[true] to [false]", reflects the removal and is the opposite operation as the *addition* of the XB code seen on October 3, 2022, at 12:49, showing as "[false] to [true]". ECF 44-1, p. 73; ECF 44-1, p. 30, 116:18-25.

## B. <u>Robinson's reply to Spring Oaks' "Additional Facts".</u>

**Spring Oaks' Fact:** S/O did inform TransUnion that Plaintiff's debt was disputed. ECF 53, p. 12.

**Robinson's Reply:** S/O, in support of this fact, completely omits the fact that, as explained in detail *supra*, S/O removed the XB code thereby removing the dispute status and then subsequently reported to TransUnion that the debt was not disputed. This is as if S/O said - if we ignore the parts where S/O reported the disputed debt as not disputed then you cannot say S/O failed to report the debt as disputed.

**Spring Oaks' Fact:** S/O's reporting was true, accurate, and not misleading. ECF 53, p. 13.

**Robinson's Reply:** This is not a "fact", disputed or not.  This is just an argument. S/O posits that because it was compliant with industry guidelines from the CDIA it cannot have violated the law.  But following CDIA guidelines (the "Metro-2") does not shield S/O from liability and adherence to any self-regulating industry guideline does not excuse it from failing to comply with the law. *See Coulter v. Chase Bank USA, N.A.*, No. 18-1538, 2020 WL 5820700, at *12 (E.D. Pa. Sept. 20, 2020) (listing cases)." *Jackson v. Ray Klein, Inc.*, 20-cv-1367, at *4 (N.D. Ill. Aug. 12, 2021). *Coulter* stated that CDIA guidelines do not necessarily reflect or comply with the federal statutes such as the FCRA and FDCPA and federal courts have rejected the proposition "that adherence to these industry guidelines shields it from [federal statutory] liability" and noting, "the relevant case law plainly runs counter to this argument. *Coulter v. Chase Bank U.S.*, CIVIL ACTION No. 18-1538, at *24-25 (E.D. Pa. Sep. 30, 2020) *citing Florence v. Cenlar Fed. S&L*, No. 16-587, 2018 U.S. Dist. LEXIS 34151, at *20 (D. Nev. Mar. 1, 2018) ("industry guidelines—such as Metro 2—do not establish the standards for accuracy under the FCRA."); *Burrows v. Experian Info. Sols., Inc.*, No. 16-6356, 2017 U.S. Dist. LEXIS 39845, at *21-22 (N.D. Cal. Mar. 20, 2017) ("FCRA does not mandate compliance with Metro 2 or any other particular set of industry standards.").

## ARGUMENT

### A. Robinson did not claim Spring Oaks is liable for the acts of TransUnion or Annualcreditreport.com.

As much as S/O would like to make this about what TransUnion communicated to any user of its credit report (ECF 53, p. 16), this case is and always has been about what S/O falsely communicated to TransUnion. Annualcreditreport.com is simply a platform to obtain a TransUnion report and is merely a distraction within a distraction. What TransUnion reports itself is circumstantial evidence of S/O's false communication to TransUnion. And there is ample direct evidence of what S/O reported directly to TransUnion.

**B. An investigation conducted by Spring Oaks or a lack of information in the dispute letter does not free Spring Oaks from its § 1692e(8) obligation to truthfully report the disputed debt as disputed.**

Even if, *in arguendo*, the Defendant had reason to believe that Robinson should not have disputed his debt, through an investigation or otherwise, S/O would still be under a § 1692e(8) duty to truthfully report it as disputed. *Evans*, 889 F. 3d 337, 346-347; *Sayles v. Advanced Recovery Sys., Inc.*, 865 F. 3d 246, 250 (5th Cir. 2017); *Wilhelm v. Credico, Inc.*, 519 F. 3d 416, 418 (8th Cir. 2008). *Evans* held that when Portfolio Recovery Associates (PRA), a debt collector, received a letter from the consumer disputing accuracy, even though PRA claimed it confirmed the amount, PRA's failure to report the debt as disputed was "a clear violation" of § 1692e(8). *Evans*, 889 F. 3d 337, at 346. PRA argued that the consumer's letter was a "sham, designed to create liability", and that § 1692e(8) should only be given effect

to "true disputes" that can only "be meaningfully investigated and addressed". *Id*., at 346-347. PRA pointed to its own confirmation that the debt was accurate to justify no § 1692e(8) duty to report the debt as disputed. *Id*., at 347.

The *Evans* court held that PRA's arguments failed because the court's "task is to interpret the words of Congress, not add to them." *Id.*, (internal citations omitted). It found that § 1692e(8) did not restrict the consumer to any other definition of "dispute" or restrict the consumer to a specific procedure to properly exercise her rights under § 1692e(8). *Id.*, at 346. Indeed, for a consumer's dispute to obligate the debt collector to adhere to § 1692e(8), a consumer's dispute, by the plain meaning of the statute, does not require the dispute to be valid or reasonable. *Id.*, at 347. A consumer only needs to make it clear that the debt is disputed. *Id.* In fact, "[A] consumer can dispute a debt for 'no reason at all…'". *Id*., (quoting *DeKoven v. Plaza Assocs*., 599 F. 3d 578, 582 (7th Cir. 2010)).

The Defendant has no basis to excuse itself from § 1692e(8) because it undertook an investigation, especially where the extent, methodology, and results of which are all under the Defendant's control. Nothing in the FDCPA calls for any "investigation" by a debt collector. The idea that an investigation can in any way nullify or mitigate § 1692e(8) is another attempt by S/O to wrongly conflate FCRA obligations with the FDCPA. ECF 26.

**C. The ruling in *Foster*, relied upon by the Defendant, is factually distinguishable from this case and abandons its role in interpreting the plain statutory language of §1692e(8).**

S/O argues that this Court should adopt the reasoning used by the court in *Foster v. AFNI, Inc*., No. 2:18-cv-12340-TGB, 2020 WL 1531651, (E.D. Mich. Mar. 31, 2020). (ECF 53, p. 22-23). The court in *Foster* interprets §1692e(8) well beyond its plain meaning. Additionally, the facts are distinguishable from the current case. The issue in *Foster* was whether the Plaintiff provided evidence that the debt collector knew or should have known that the debt was disputed. *Foster*, at *1. The court determined that the plaintiff's §1692e(8) claim failed as a matter of law because the plaintiff failed to respond to AFNI's letter sent after its investigation. *Id.*, at *15.  The court stated that the plaintiff "...elected to not respond to Defendant after receiving notice that AFNI had concluded its investigation, and she never told Defendant that she still disputed the debt." *Id.*, at *18. *Foster* found that the plaintiff's admission that she received the response letter and did not respond was crucial to allow AFNI to escape knowledge of her dispute. *Id.*, at *18.

But Robinson, unlike in *Foster*, stated unequivocally that he did <u>NOT</u> want S/O to send any information and he was not requesting any validation or verification. (Doc. 44-2, ECF 42-43).  On its face, Robinson's letter imposes knowledge on S/O that the debt continues to be disputed regardless of any investigation or response letter.  (Doc. 44-2, ECF 9, 24:18-22).  It can hardly be said that Robinson was

"silent" as to his continuing nature of the dispute. ECF 53, p. 23. S/O claims it sent an email in response, but Robinson denies receiving this, thus creating a jury question. (Doc. 45, ECF 7). See *Pizitz v. Ryan*, 403 So. 2d 222, 223 (Ala. 1981)(Recognizing longstanding principle that an addressee's testimony that he never received mail is sufficient to create a fact question).

And as much as *Foster* relied on the *Evans* court in much of its reasoning, it clearly did not adhere to *Evan*'s restraint in only applying the plain meaning of §1692e(8). See *Evans*, 889 F. 3d 337, 346-347 (looking to the ordinary meaning of "dispute"; noting the court's "task is to interpret the words of Congress, not add to them."; declining debt collector's invitation "'to read into §1692e(8) a requirement that is not in the text'" "'...given the FDCPA's comprehensive and reticulated statutory scheme, involving clear definitions, precise requirements, and particularized remedies...'")(internal citations omitted). There is nothing in the FDCPA, as created by the *Foster* court, that terminates or reverses a consumer's ability to dispute a debt under §1692e(8), certainly not a debt collector's letter. For these same reasons, the Court is counselled to reject *Wood v. SCS*, 2023 WL 3614919.

## **CONCLUSION**

For the foregoing reasons, S/O has failed to show this court that there is a genuine dispute as to the material fact that S/O reported Robinson's disputed debt as

not disputed to TransUnion thereby violating §1692e(8). As such, Plaintiff's

Motion for Partial Summary Judgment (ECF 48) is, respectfully, due to be granted.

Respectfully Submitted,

*/s/ M. Stan Herring*
**John G. Watts (WAT056)**
**M. Stan Herring (HER037)**
**W. James Sears (SEA036)**
WATTS & HERRING, LLC

The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 879-2447
stan@wattsherring.com
john@wattsherring.com
james@wattsherring.com

**Attorneys for Plaintiff**

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on November 15, 2024, a copy of the foregoing has been served on the following counsel for by using the CM/ECF system, U.S. Mail, postage prepaid and properly addressed and/or email to the email addresses below:

**John K Rossman**
**ROSSMAN ATTORNEY GROUP PLLC**
**4628 Bruce Avenue**
**Edna, MN 55424**
**952-201-1507**
**Email: john.rossman@rossmanattorneygroup.com**

**Neal D Moore , III**
**CHRISTIAN AND SMALL LLP**
**505 20th Street North**
**Suite 1800**
**Birmingham, AL 35203**
**205-795-6588**
**Fax: 205-328-7234**
**Email: ndmoore@csattorneys.com**

*Counsel for the defendant*
*Spring Oaks Capital, LLC*

       */s/ M. Stan Herring*
       **OF COUNSEL**